# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

**04 10469 JLT**

Albert William Bleau Jr.
    Plaintiff

MAGISTRATE JUDGE Alexander

v.     Case No. _____

Greater Lynn Mental Health & Retardation Association (GLMHRA), Eastern Mass Housing Corporation (EMHC), Attorney Roderick MacKleish, Attorney Robert Sherman and Attorney Robert J. Griffin
    Defendants

RECEIPT # 54374
AMOUNT $ 150
SUMMONS ISSUED yes
LOCAL RULE 4.1 ___
WAIVER FORM ___
MCF ISSUED ___
BY DPTY. CLK. ___
DATE 3/8/04

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

1. Plaintiff resides at the following location: 60 Humphrey St. R, Swampscott, Massachusetts 01907

2. Defendants reside at the following locations: GLMHRA at 37 Friend St., Box 308, Lynn, MA, 01903; EMHC at 37 Friend St., Box 308, Lynn, MA 01903; Attorney Roderick MacKleish, with a law office at Greenberg Traurig, One International Place, 100 Oliver St., Boston, MA 02110; Attorney. Robert Sherman, with law offices at Greenberg Traurig, One International Place, 100 Oliver St., Boston, MA 02110; Attorney Robert Griffin, with a law office at Krokidas & Bluestein, 141 Tremont St., Boston, MA 02111

3. This action is brought pursuant to:

   - Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, et seq., for employment discrimination on the basis of a disability against an employer which constitutes a program or activity receiving Federal financial assistance. Jurisdiction is asserted under 28 U.S.C. §§ 1331, 1337 and/or 1343. Equitable and other relief is sought under 29 U.S.C. s 794a.

   - American with Disabilities Act of 1990, as amended, 42 U.S.C §§ 12101, et seq., for employment discrimination on the basis of disability against a private employer. Jurisdiction is specifically conferred on this court by 42 U.S.C. s 2000e-5(f). See 42 U.S.C. s 12117(a). Equitable and other relief is sought pursuant to 42 U.S.C. s 2000e-5(g). Id.

1

4.   The acts complained of in this suit concern:

   (A) _____   Failure to hire Plaintiff. I was refused a job on the following dates: <u>August, September, October, November, 2003. I was denied a Promised consultant contract on or about January 2001</u>

   (B) _____   Termination of Plaintiff's employment. I was terminated from my employment on the following dates: Voted April <u>20, 2000 & removed from payroll on September 8, 2000.</u>

   (C) _____   Other Acts as specified below:

<u>Defendants and their board members, employees and consultants conducted prohibited inquiries of my "perceived disability" and alleged drug addiction and alcoholism</u>

<u>Defendants violated federal laws and regulations and plaintiff's rights concerning the confidentiality of plaintiff's medical and therapy records.</u>

<u>Defendants violated federal laws and regulations and plaintiff's rights concerning Post-Hire Medical Examinations and Inquiries</u>

<u>Defendants have engaged in a continuous pattern of retaliation against me since April 20, 2000 and especially since I filed my first EEOC complaint in October 2000.</u>

5.   The conduct of the defendants was discriminatory because it was based upon a disability.

<u>I was "perceived – alleged" to have a disability by the Defendants. Confidential medical and counseling therapy records were shared with unauthorized employees, board members, consultants, legal counsel, outside individuals and state and private agencies, business associates and prospective employers and customers resulting in my forced leave of absence in November 1999, the reversal of the board vote to return me from leave in January 2000, the vote for my termination on April 20, 2000, the cancellation of a proposed consultant contract with GLMHRA & EMHC and Defendants GLMHRA and EMHC's refusal to hire me in August-November 2003.</u>

<u>A drug test was performed by the Director of the EAP program at my home at 7:30AM with less than 10 hours notice in violation of Federal regulations pertaining to Post Hire Medical Inquiries and Testing and in violation of the company's personnel practices. The test was ordered by Attorney Roderick MacKleish. I tested negative yet the Defendants circulated rumors in the community and within GLMHRA & EMHC that I was a Drug Addict and an alcoholic.</u>

<u>GLMHRA & EMHC violated a severance agreement that had been signed in November 2000. They refused to pay me $10,000 in training funds. They have disparaged my reputation and they have refused to act against board members, Attorneys, consultants and employees who have been retaliating against me. Defendants have refused to send out a joint letter announcing my departure and future business interests and outlining my accomplishments at GLMHRA</u>

2

and EMHC that was required in the severance agreement. These actions were done in retaliation for my filing a complaint with the EEOC and because I later complained about the retaliation.

Defendants and GLMHRA Auditors and consultants have continued a pattern of retaliation and have interfered with the plaintiff's applications for employment at other companies and have interfered with Plaintiff's attempts to expand his consultant and private business pursuits. This retaliation has continued despite numerous attempts by the Plaintiff to end it. Letters and calls have been sent to the EEOC, the MCAD, and the Defendants.

Key officers, consultants, legal counsel and senior staff of EMHC and GLMHRA: Robert Tucker, President; Thomas Costin, Clerk; James Cowdell, Administrative Assistant; Paul Cote, Executive Director; Elaine White, Director of Operations; Kelly Johnson, Mental Retardation Residential Director and others who were aware of my confidential medical records and had been retaliating against me participated in a recent hiring process for Executive Director. They influenced other board members and staff in their decision not to consider me for employment. They did not recuse themselves or disclose their substantial conflict of interest during my termination from GLMHRA. They did not dispel the false rumors and allegations that they and others had previously disseminated.

For additional details see the attached letter sent to Stephen Lewis of the Massachusetts Commission Against Discrimination (MCAD) dated February 29, 2004

6. The facts surrounding my claim of employment discrimination are as follows:

I was hired as the Executive Director of GLMHRA in 1974 and was the founder of EMHC. I was the Executive Director of EMHC from 1978 – November 2000. During its first three years of existence, EMHC was a subsidiary of GLMHRA. The GLMHRA Officers were also the board members and officers of the EMHC. In 1981 with the approval of the GLMHRA, EMHC became an independent 501(c3) Charitable Educational Corporation.

EMHC has no payroll employees. They contract for their Maintenance, Management, and Accounting employees and services from GLMHRA. I have included EMHC as a Defendant in the complaint despite the fact that they have no employees because they are a totally owned and controlled subsidiary of GLMHRA. They hold most of the real estate assets used by GLMHRA in the conduct of their business. These assets exceed $29 Million Dollars. They also could have cash assets exceeding One Million Dollars.

The assets of EMHC could be necessary to satisfy the monetary damages requested in this complaint. Additionally, when I applied for the Executive Director's position at GLMHRA on August 8, 2003, I was also applying for the position of Executive Director of EMHC. The Executive Director of GLMHRA, once hired, is also the Executive Director of EMHC. Board members of EMHC can be removed by a vote of the Board of GLMHRA.

Historically, EMHC was an affiliate of GLMHRA, but an independent corporation. During the years 1999 - 2000, I was the Executive Director of the EMHC and GLMHRA had its own Executive Directors. After I left EMHC in November 2000, GLMHRA consolidated EMHC into GLMHRA. GLMHRA illegally made EMHC its subsidiary in February 2000. It

appointed the members of the Board of Directors making EMHC a subsidiary of GLMHRA. GLMHRA manages all of EMHC assets, financial statements and payment of bills. GLMHRA transferred over $600,000 of EMHC assets to GLMHRA and sold EMHC real estate assets in New Hampshire at $400,000 below market value without the approval of the EMHC legally constituted board.

This action by GLMHRA was illegal and a violation of Internal Revenue Charitable Rules which require a vote of the EMHC Board to sell assets. All expenditures have to be for charitable educational purposes. Since EMHC was not a foundation, it could not transfer assets to GLMHRA unless the corporation were dissolved and then only by a vote of an independent board of directors. These actions would also be subject to review by the IRS. This action was recommended and approved by Attorney Robert Griffin, GLMHRA's de-facto Receiver, and approved by the Attorney General's staff: Jamie Katz and Eric Carriker. Attorney Robert Griffin specializes in non-profit law and is aware of IRS rules and regulations.

See the attached correspondence from Attorney Robert Griffin to the Plaintiff dated October 15, 1998. He carefully describes recently amended IRS non-profit rules and regulations regarding employee, board member and consultant conflict of interest and IRS penalties. Plaintiff gave this letter to members of the Board of Directors of EMHC and GLMHRA. the Plaintiff had received a similar correspondence from James Mecone and John Sanella of Mullen & Company that was also shared with the Boards.

Defendants appear to have engaged in activities that were in violation of IRS regulations.

I have attached three letters from the Clerk of EMHC, Martena Fallon. One was sent to GLMHRA President, Robert Tucker dated May 5, 2001, another to the EMHC Board dated January 2, 2001 and the other on January 20, 2001. Ms. Fallon is the only legal member of the EMHC Board of Directors.

EMHC is no longer an independent corporation and should be considered a real estate holding company for GLMHRA. Its assets should be available to satisfy any monetary damages assessed against GLMHRA.

At least twenty employees at GLMHRA provide various services for EMHC and some of these employees work exclusively on duties associated with the EMHC properties. Therefore, it can be argued that EMHC has the required number of fifteen or more employees needed to be a Defendant in this complaint of discrimination under the American with Disabilty Act of 1990, as amended.

EMHC qualifies as a Defendant under the 1973 Rehabilitation Act, as amended. EMHC receives over one million dollars annually in federal funds from Housing & Urban Development (HUD) and over two million dollars from rental contracts with GLMHRA. The rental contracts are partially financed with federal grants and reimbursements. EMHC and GLMHRA audits verify these transactions.

GLMHRA qualifies as a defendant under the 1973 Rehabilitation Act, as amended. GLMHRA receives over two million dollars in federal reimbursements and grants. GLMHRA receives over $30 Million dollars in federal and state grants. Most of the state grants contain federal

4

matching funds including Medicaid funds that have been granted to the Commonwealth for services provided by GLMHRA.

GLMHRA and EMHC are required by law to file annual audits with the state. Audits are on file with the Massachusetts' Attorney General's Charitable Division and with the Massachusetts' Office of Purchase of Service. GLMHRA audits were prepared by the Mullen & Company of Burlington, MA and the EMHC audits were prepared by Demakis & Demakis of 56 Central St. Lynn, MA.

Additionally, Mullen & Company prepares an annual certified report detailing all federal funds received by EMHC and GLMHRA.

Attorney Roderick MacKleish, Attorney Robert Sherman and Attorney Robert Griffin have been included as Defendants in this complaint. They qualify under the definition of employers employing over fifteen individuals. They also received federal funds and qualify as Defendants under the 1973 Rehabilitation Act, as amended. Attorneys Robert Sherman and Eric MacKleish were law partners and became affiliated with the law firm of Greenberg and Traurig on or about September 1, 2000. Attorney Robert Sherman is presently a Partner in the Firm. Robert Sherman is a personal friend of the Attorney General and organized his fundraising during his first election to State office. MacKleish and Sherman represent numerous non-profit companies and have allegedly received referrals and contracts from the Attorney General's Office.

Attorney Robert Griffin is a lawyer with the firm of Krokidas and Bluestein. Attorney Krokidas is his wife. Attorney Griffin specializes in Receiverships, non-profit law and Massachusetts Rate Setting Commission issues. He and his firm have earned hundreds of thousands of dollars annually from referrals from the Attorney General's Office. Paul Cote who was hired to replace me as the Executive Director of GLMHRA is a personnel friend and business associate of Attorney Griffin.

During 1999 through January 2000, the GLMHRA Board of Directors intermittently relinquished decision-making control over GLMHRA. From September 15 – January 1, 2000, Attorney's Roderick MacKleish and Robert Sherman made all major decisions of the Corporation, including who could enter GLMHRA properties. They suspended the personnel practices. They prohibited communication between the board and the staff and among staff. They made decisions concerning the hiring of consultants, the expenditure of funds and they determined their own payment for services. They made decisions concerning state contracts.

From May 2000 to January 1, 2001, after pressure from Jamie Katz of the Attorney General's Office, GLMHRA hired Attorney Robert Griffin who replaced Attorneys MacKleish and Sherman.

Attorney's MacKleish, Sherman and Griffin operated as de-facto Receiver's of GLMHRA, but without the liability protection afforded Court Appointed Receivers in the Commonwealth. They are therefore, liable for their discriminatory and retaliatory practices.

I have received outstanding employee evaluations at GLMHRA and EMHC each year including my last evaluation during the spring and summer of 1999.

I was requested to take a thirty- day leave from GLMHRA on November 1, 1999, which was extended in December. I met with the board in December and they voted to have me return from leave on January 21, 2001. Attorneys Roderick MacKleish and Robert Sherman and three GLMHRA staff members filed false allegations against me with the Attorney General's Office to prevent me from returning from leave. My leave was extended and on April 20, 2000 the board voted 4 to 3 with one abstention to terminate my services. My confidential medical and therapy records were shared with the board by Attorney Robert Sherman to achieve the necessary votes. Attorney Roderick MacKleish had reported false financial transactions against me to the board prior to the meeting.

I remained on the GLMHRA payroll until September 8, 2000, but continued as the paid Executive Director of EMHC. A severance agreement was signed on November 13, 2000 following my complaint with EEOC. I had also received assistance from the Geriatric Law Project at U Mass who had demanded that GLMHRA release over $200,000 of my retirement funds.

From November to the present time, the Defendants and consultants of GLMHRA and EMHC have engaged in retaliation against me. They have interfered with my business and my ability to gain employment in the Human Services Industry. They further discriminated against me in August 2003 when they failed to consider me for the vacant Executive Director's position at GLMHRA – EMHC.

This is sufficient direct evidence to support my initial complaint of discrimination including comments about my medications and therapy sessions that were shared with numerous individuals inside and outside the companies. Attorney Robert Sherman came to the board meeting on April 20, 2000 and shared my therapy records with the board and then asked for my resignation. The minutes are attached.

There is direct evidence of retaliation including a comment to a former GLMHRA employee by the Assistant Human Resource Director of the North Association for Retarded Citizens that she had heard that I had stolen all the retirement money from GLMHRA's employees. I have been unsuccessful in obtaining any consultant relationship with this company or any other Human Service's Agency in Massachusetts despite outstanding credentials. I have not received a single invitation for an inteview. See my attached resume.

McDonnell Douglas Corp v Green, 93 S. CT. 1817 (1973) allows an individual to use circumstantial evidence to prove a complaint of discrimination. It provides an inferential method to determine whether an individual has been discriminated in hiring, through retaliation, and in termination. This complaint will provid substantial circumstantial information to infer that discrimination and retaliation has occurred and continued from November 1999 through the present time.

I have attached numerous correspondences including a letter to Jennifer Hollingsworth of the State Attorney General's Office dated May 10, 2001, correspondence to GLMHRA & EMHC's Labor Attorney, Larry Donoghue, dated October 12, 2000 and a correspondence to me from James Cowdell, GLMHRA Administrative Assistant, dated November 17, 2000. These correspondences support my allegations of discrimination and retaliation.

Mr. Cowdell's letter was sent to me four days after the Severance Agreement was signed by GLMHRA and EMHC. This was also two weeks after my meeting with Mr. Cowdell and Paul Cote, the Executive Director. Both men had assured me that relations would be positive between me and GLMHRA & EMHC. They assured me that the Severance Agreement would be fully implemented and followed by GLMHRA & EMHC. They also assured me that the retaliation would end and the violators would be punished and legal action would be taken against them if necessary.

The letter prohibited me from communicating with GLMHRA, EMHC or its employees and ordered me to staff away from GLMHRA and EMHC properties. It directs me to communicate only with Attorney Larry Donoghue.

This is an extreme form of retaliation since Mr. Cowdell, GLMHRA, EMHC and Attorneys Griffin and Donoghue knew that I had a mentally retarded brother who had been residing in one of GLMHRA's group homes and in their Melrose Day Habilitation Program since 1989. They also knew that he was profoundly retarded and had a history of serious medical problems. My brother is deceased having died from a ruptured ulcer following a cookout at his Group Home in the spring of 2001. Paul Cote and GLMHRA reduced nursing services and other habilitatation services. By restricting my access to my brother's programs and their employees, I was prevented from learning of these reductions until after his death.

When I was called concerning my brother's hospitalization, I called President, Robert Tucker; Clerk, Thomas Costin and James Cowdell (it was a weekend and Donoghue's office was closed) and left messages on their machines and requested 24 hr. staffing and increased nursing for my brother. They never returned my calls and the extra staffing was not provided. My brother died the next day. Immediate surgery could have saved his life. I was not aware of the cookout and the food that he was fed or the cut back in nursing services until after his death. I was also not aware of the seriousness of his condition.

He nearly succumbed during a previous hospitalization. The hospital based staffing that I had requested had been provided to all hospitalized GLMHRA Mentally Retarded Citizens since 1981.

GLMHRA & EMHC have asserted that my termination was for cause. In fact the reasons for my termination were to prevent me from exposing and eliminating various unethical and illegal conflicts of interest, unethical business practices, regulatory violations, unauthorized expenditures, budget deficits and illegal activities. They shared my medical records and "perceived disability" with various board members and employees to gain the necessary support to have me terminated and to permanently remove me from any business relationship with GLMHRA and EMHC. They also disseminated this information to outside individuals and companies to prevent me from gaining employment or consultant contracts.

The October 12, 2000 letter to Attorney Larry Donoghue describe some of these practices. They are described in more detail in the attached letters dated February 29th and March 3, 2004 to Stephen Lewis of the Massachusetts Commission Against Discrimination.

GLMHRA asserted that I was terminated because I violated Department of Labor Regulations (ERISA) in the management of the Self Insured Plans, that I received unauthorized therapy benefits and that they needed a tax exempt bond to cover deficits. They stated that the bond-

7

holders, Van Kampen, would not approve a proposed real estate bond if I remained the Executive Director of GLMHRA. They also asserted that GLMHRA would be placed into receivership by the Attorney General's Office.

The board minutes of April 20, 2000 are attached. Attorney Robert Sherman is recorded presenting these justifications to the board.

In fact, GLMHRA with the assistance of EMHC had sufficient funds to meet all financial obligations. The EMHC, where I was the Executive Director, presented a plan to completely resolve all financial issues without the necessity of a new bond. The bondholders were legally and contractually obligated to release funds for recent EMHC building improvements. The bondholders had not requested my termination and in fact, I continued as the Executive Director of EMHC. EMHC owned the thirty or more properties that were incorporated in the various real estate bonds with Van Kampen. The Attorney General's Office could only place GLMHRA into receivership if it were in danger of bankruptcy and the life and safety of the disabled consumers were at risk. No such conditions existed at GLMHRA and EMHC and Board members should have known these facts. I personally informed the officers of both boards and Nancy Rizzo.

A letter from the bondholders, Van Kampen, dated July 14, 2000 supports my position. This correspondence is attached. The Acting Executive Director, Elaine White; Administrative Assistant, James Cowdell and President, Robert Tucker and Attorney Robert Griffin withheld this correspondence from the EMHC Board and me.

I have attached a correspondence from Attorney Leslie Slavin, a specialist in ERISA Law, that contradicts Attorney MacKleish, Attorney Sherman and Attorney Griffin's assertions that the Self Insured Plans were in violation of Department of Labor Regulations. Additional documentation was also presented to the boards.

Correspondence from Attorney Stephen Rosenfeld dated April 21, 2000 contradicts numerous allegations made to the GLMHRA Board and the Attorney General's Office by Defendants MacKleish and Sherman, and Elaine White, the Director of Operations; Janine Brown Smith, Comptroller and Contract Officer; and Kelly Johnson, Quality Assurance Director.

I have attached additional correspondences including: a letter to the Attorney General's Office dated April 2000 from Stephan Speropolous (cofounder of EMHC and President of EMHC until February 2001 and my termination appeal letter to President, Thomas Manning, dated April 21, 2000. A Cash Flow Analysis and management proposal prepared for the GLMHRA & EMHC Boards are also attached.

The March 3, 2004 correspondence to Stephen Lewis of the MCAD details the conflicts of interest and unethical and illegal activity of the Defendants.

Substantial direct and circumstantial evidence have been presented to conclude that discrimination and retaliation have occurred.

The Defendants were responsible for retaliation; for fabricating statements alleging that I was mentally unstable, a drug-addict, and an alcoholic and that I was unfit to lead the companies.

They alleged that I had mismanaged the self-insured plans. They terminated my services and prevented me from having any contact or future employment with GLMHRA & EMHC.

Defendants had the assistance of Eric Carriker, Jamie Katz and Jennifer Hollingsworth of the State Attorney General's Office and Association auditors, James Mecone and John Sanella and others to be named to cover-up substantial conflicts of interest and to cover-up unethical and illegal activities.

Defendants can not assert ignorance to the unethical, illegal and discriminatory practices at GLMHRA & EMHC.

With the exception of the February 29th and March 3rd correspondences to Stephen Lewis, all of the enclosed attachments were sent timely to all Defendants and to Eric Carricker and Jennifer Hollingsworth of the Attorney General's Office; to GLMHRA auditors, James Mecone and John Sanella and to GLMHRA-EMHC Labor Attorney, Larry Donoghue.

7. The approximate number of persons who are employed by the Defendant employers I am suing are: 800

8. The alleged discrimination occurred on or about the following dates or time periods: September 1, 1999 – September 2000, August – November 2003 and retaliation from October 2000 – March 2004.

9. I filed charges with the:

   ____ Equal Employment Opportunity Commission

   ____ Massachusetts' Commission Against Discrimination

10. The Equal Employment Opportunity Commission issued a Notice of Right to sue letter **(copy attached)**, which I received on or about the following date: December 12, 2003. The letter was mailed out according to the EEOC on Friday, December 5th. I was working in Connecticut from Sunday night, December 7th until Friday, December 12th.

11. The EEOC determined that there was no probable cause to believe that discrimination occurred. My reasons for questioning that determination are as follows:

The original complaint filed in October 2000 was settled by GLMHRA before any evidence or facts could be presented to the Commission.

When I filed my new charges of discrimination on October 28, 2003, there was no documentation concerning my disability on file at EEOC. In order to prove discrimination by the Defendants in the August 18th 2003 hiring, I have to show that my original complaint had merit. I also have to show that there had been a continuous pattern of retaliation by the Defendants from the time of the original complaint to the hiring process that occurred in August – November, 2003.

9

EEOC felt that the burden of proof to show that retaliation had occurred continuously from November 2000 to August 2003 was to great for them to pursue. It would require to many resources of the EEOC.

Prior to making their decision, the EEOC did not request that I file documentation concerning my original complaint of discrimination or the retaliation. They did not give me copies of GLMHRA & EMHC's response to my October 28, 2003 complaint or permit me to respond to their allegations. They accepted the Defendant's assertions as fact. I appealed the decision and requested an opportunity to present additional information. My appeal was denied. I have since requested a copy of the Defendant's response.

I subsequently appealed to the MCAD and was granted a hearing with Stephan Lewis and have filed a detailed complaint with the MACD. I will be reporting to the MACD that I have filed a complaint with the Federal Court.

I believe that I have provided sufficient evidence, both direct and circumstantial, for Injunctive Relief and Monetary Damages to be granted.

12. If relief is not granted I will be irreparably denied rights secured under the laws referred to in item Number 3. Above.

13. WHEREFORE, Plaintiff pray that:

The Court grant such relief as may be deemed appropriate, including:

_____ Injunctive orders:

Injunction be granted against the Defendants: GLMHRA & EMHC and its officers, board members, employees, consultants, agents and legal counsel; Attorneys Roderick McKleish, Robert Sherman, and Robert Griffin and their employees, partners, agents and consultants, and clients ordering them to refrain from any comments concerning my "alleged disability", medical records, therapy records or condition, drug addiction, alcoholism, or competence. The Plaintiff will draft a letter and resume that will be used by all Defendants concerning any inquiries concerning the Defendant unless prior approval is received from the Defendant.

_____ Monetary damages:

The Plaintiff should immediately be paid $150,000 the first of fifteen annual payments totaling $2,250,000. This will be compensation to the Plaintiff for the loss of his prior annual salary at GLMHRA of $136,000 per year and his prior annual consultant contract at EMHC of $34,700 per year for ten years plus ten years of family medical benefits and retirement benefits. The $150,000, coincidentally, is the annual salary offered for the recently advertised Executive Director's position at GLMHRA and EMHC.

____    Other:

GLMHRA & EMHC and the other Defendants in the complaint will abide by the Severance Agreement signed between the Defendants and the Plaintiff in November 2000.

A letter approved by the Plaintiff will be sent to all family members, board members, consultants, vendors and the newsletter list of EMHC and GLMHRA and to all employees, clients and consultants of the other Defendants in this case informing them of the Plaintiff's new business initiatives, outlining his accomplishments while at GLMHRA and EMHC and clarifying any prior false allegations by the Defendants.

Defendants GLMHRA & EMHC will immediately pay $10,000 in training funds to the Plaintiff. They will also reimburse him for all costs paid to Executive Search and Employment Counseling Firms such as Haldane Associates, Allen Associates and Steven's Associates or approximately $10,000.

AND costs and attorneys' fees.

## JURY DEMAND

I hereby DO _____ DO NOT __X__ demand a trial by jury.

*[signature]*
Original Signature of Plaintiff
Albert W. Bleau Jr.

60 Humphrey St. R
Swampscott, MA 01907
Residential Address

505 Paradise Rd #208
Swampscott, MA 01907
Mailing Address

(781) 962-2662
Telephone Number

March 8, 2004

11