UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Albert William Bleau, Jr.,        :
                                  :
            Plaintiff             :
                                  :
                                  :
vs.                               :    Civil Action
                                  :    No. 04-10469JLT(REK)
                                  :
Greater Lynn Mental Health        :
& Retardation Association, Inc.,  :
 et al.,                          :
                                  :
            Defendants            :


**Declaration of Robert F. Tucker**
**In Support Of The Motion Of Defendant**
**Greater Lynn Mental Health and Retardation Association, Inc.,**
**To Dismiss Or In The Alternative For Summary Judgment**

Robert F. Tucker declares as follows:

    1.    My name is Robert F. Tucker.  I reside in Lynn,

Massachusetts.

    2.    I was a member of the Board of Directors of Greater

Lynn Mental Health and Retardation Association, Inc., (Greater

Lynn) for six years.  I was appointed in 1998; served as

treasurer for two years (1999 and 2000); and as president for

three years (2001 through 2003).

    3.    Greater Lynn is a regional mental health agency.  A

nonprofit corporation, Greater Lynn receives substantial support

from the Commonwealth of Massachusetts, primarily through its

Department of Mental Health and its Department of Mental

Retardation.  Greater Lynn provides residential facilities, out-patient clinic services, job placement and support, counseling, and other mental health services to clients in Middlesex and Essex counties.

4.    The business affairs of Greater Lynn are managed by its Board of Directors.  The Board appoints several officers who are responsible for the day-to-day operations of the agency.  When I first became a member of the Board, the executive director was the agency's principal officer.  Officers of the agency now include a chief executive officer, a chief financial officer, and a director of administration.

5.    I have known the plaintiff, Albert W. Bleau, for approximately fifteen years.  Mr. Bleau was Greater Lynn's executive director at the time that I became a member of the Board of Directors.  He had held this position for a considerable time, perhaps since the mid-1970s.

6.    During my tenure as treasurer, the Board became aware of various matters that led it to terminate Mr. Bleau's employment.  About two years later, during my tenure as president, the Board undertook to recruit a new executive director.  I participated in the process that the Board established to solicit applicants for the position and to select from among those thought most qualified the three individuals for the Board to interview and from among whom to choose the successful candidate. Mr. Bleau was not among those thought most qualified.

7.    My following testimony recounts the circumstances of the Board's decisions in 2000 and 2003 with respect to Mr. Bleau. None of these decisions was the result of a belief that Mr. Bleau suffers from a disability that adversely affects his performance as an administrator.

8.    During the fall of 1999, the Board of Directors of Greater Lynn was informed of certain personnel matters, among which were issues that involved Mr. Bleau and his (now former) wife, who was also an employee of the agency.  Some of these issues were resolved when Mr. Bleau's wife resigned from her position and left the agency's employ; others remained open and of concern to the Board and to counsel.

9.    The Board received advice from counsel and, relying upon that advice, authorized counsel to commence an investigation.  The scope of this investigation included Mr. Bleau's management of the agency's employee fringe benefit program; certain expenditures of agency funds that Mr. Bleau made or that were made under his direction; and Mr. Bleau's management of the operations of Eastern Massachusetts Housing Corporation (Eastern Mass.), a defendant in this action and a close affiliate of Greater Lynn of which Mr. Bleau was also the executive director.

10.    Counsel at this time were Roderick MacLeish, Esq., and Robert Sherman, Esq., both of whom are defendants in this action.

11.    In December, 1999, the Attorney General of the Commonwealth made an initial inquiry.  Early in February, 2000, the Attorney General informed the Board that his Public Charities

4

Division had initiated an investigation of Greater Lynn and that
Mr. Bleau was under investigation by his Criminal Division.  The
Board informed the Attorney General that Greater Lynn would co-
operate fully with his investigation.

12.  I met with two assistant attorneys general, both
assigned to the Public Charities Division, several times during
the winter and spring of 2000.  I became aware that the Attorney
General regarded Greater Lynn to be in serious financial and
management difficulty.  The Attorney General placed the responsi-
bility for these difficulties in the hands of the agency's Board
of Directors and identified Mr. Bleau as the individual whose
actions had created them.  In particular, the Attorney General
asserted that Mr. Bleau had made improper expenditures of state
contract funds; that he had misused agency and employee retire-
ment funds; and that the agency had submitted incorrect financial
reports to the Department of Mental Health and the Department of
Mental Retardation.  The Attorney General informed me and other
members of the Board that, unless a management agreement were
negotiated pursuant to which the Board would retain the services
of a management adviser, restructure its membership, and appoint
a new executive director, the Attorney General would commence an
action to place Greater Lynn in receivership.

13.  As part of its response to the Attorney General's in-
vestigation, the Board appointed additional counsel who worked
with Messrs. MacLeish and Sherman to negotiate a resolution of
the investigation.  These negotiations culminated in a management

agreement between Greater Lynn and the Attorney General.  Along
the way towards this agreement, the Board received information
from the Attorney General sufficient to warrant its terminating
Mr. Bleau's employment.

14.  I should mention that, in the course of conducting the
Board's internal investigation, counsel had provided information
on the basis of which the Board had determined to relieve
Mr. Bleau of his duties as Greater Lynn's executive director and
to place him on paid administrative leave.  The Board of Eastern
Mass. did not take similar action, and Mr. Bleau remained in his
position as that agency's executive director.

15.  At its meeting on the 20th of April, 2000, the Board of
Greater Lynn voted to terminate Mr. Bleau's employment.  The vote
was divided, and I voted with the majority.  My reasons for doing
so included the information that the Board's internal investiga-
tion had developed, the information that the Board had received
from the Attorney General, and my belief that avoidance of pro-
tracted litigation with the Attorney General was in the agency's
best interests.  I was then (as I am now) quite unaware that
Mr. Bleau suffers from any disability that might affect his job
performance, and I made my decision to vote in favor of terminat-
ing his employment without giving any consideration to his per-
sonal circumstances.

16.  I believe that it is significant that Mr. Bleau made no
mention to the Board during the course of its consideration of
his continued service of any disability that affected his job

performance.  To the contrary, Mr. Bleau uniformly contested the criticism of his management of the agency's retirement funds, finances, and operations and contended that he had made sound decisions, all of which were, or he believed them to be at the time, in the agency's best interests.  As an example of his position, I am attaching to this declaration a letter that Mr. Bleau, through counsel, submitted to the Attorney General and the Board. The substance of this letter is typical of the contentions and arguments that Mr. Bleau made in other writings and in oral presentations before the Board.

17.  I would like to record that I reached my decision to vote to terminate Mr. Bleau's employment only after considerable reflection and a reversal of some of my initial judgments. During the course of the Board's internal investigation and in response to the Attorney General's initial demands, I remained opposed to taking action against Mr. Bleau.  My reasons for doing so included my initial belief that the process was unfair, that the information was unconvincing, and that Mr. Bleau's record of service warranted the Board's supporting him.  Again, I was not influenced at any time by any concern that Mr. Bleau suffered from a disability.

18.  In early May, 2000, Greater Lynn entered into a management agreement with the Attorney General.  Pursuant to this agreement, Robert Griffin, Esq., a defendant in this action, was appointed to the position of management adviser.

19.  At about the same time, the Board terminated the services of Messrs. MacLeish and Sherman as counsel and appointed its present counsel.

20.  During the period May through December, 2000, I participated on behalf of the Board in continuing negotiations with the Attorney General.  The Attorney General opposed any further role for Mr. Bleau with either Greater Lynn or Eastern Mass.; required the agency to revise its employee benefits program; and sought the resignations of all of the members of the Board and their replacement by persons with no prior contact with or knowledge of the agency.

21.  The Attorney General also urged Greater Lynn to merge with Eastern Mass. as well as to correct certain accounting matters, primarily interagency loans and transfers, and to liquidate certain assets that Eastern Mass. held for the benefit of Greater Lynn or its employee benefits funds.

22.  The Board's efforts to accommodate the Attorney General precipitated conflict with Eastern Mass. and with Mr. Bleau.  The controversy continued through the summer of 2000, and I, along with the agency's acting executive director, endeavored to negotiate a resolution of the various disagreements.  We were able to do so in the late fall.  As part of this resolution, Greater Lynn entered into an agreement with Mr. Bleau that, among other things, the Board intended would put an end to Mr. Bleau's association with the agency and Eastern Mass.  I am attaching a copy of this agreement to this declaration as an exhibit.

23.   The Attorney General continued to press for the re-
placement of all of the members of the Board.  Further negotia-
tions, in which I participated, resulted in an agreement that,
among other things, provided for the resignation of all but two
of the members of the Board (myself and another); the recruitment
of new members from among those persons suggested by the Attorney
General, as well as others with an interest in mental health
agency operations; and the amendment of the Board's bylaws to
provide for staggered terms and a limit of six years of continu-
ous service.

24.   In December, 2000, the Board voted to accept the re-
sults of my negotiations with the Attorney General.  New board
members were appointed at the corporation's annual meeting, I was
elected president of the Board, and new members were appointed to
the board of Eastern Mass.

25.   I should mention that, while these governance matters
were being worked through, the executive director and other
members of the agency's staff, with the assistance of counsel,
were correcting the financial, management, and retirement
benefits administration problems that the Board's internal
investigation and the Attorney General's inquiry had identified.
Thus, when I became president, the principal remaining issues
that the Attorney General had raised and that Mr. Griffin in his
final report recommended that the agency resolve were the
restructuring of the administration of the agency's employee
benefits program; the merger of Eastern Mass. into Greater Lynn;

and the amendment of the Board's bylaws.  The Board amended its bylaws in December, 2001; a new administrative structure for the employee benefits program was implemented during 2002; and Eastern Mass. merged into Greater Lynn effective July 1st, 2003.

26.  As Greater Lynn regained stability, the Board turned its attention to the recruitment of a new executive director.  A special committee was established in July, 2003, and five Board members, including myself, were appointed to it.  Our task was to encourage qualified individuals from around the country to re-spond to our professional advertisements by submitting their résumés for the committee's review.  From among those applica-tions that the committee received, which, by the way, numbered approximately one hundred-twenty, the committee selected approxi-mately twenty for further evaluation and chose eleven individuals to interview.  Following these interviews, the committee recom-mended that the Board consider three candidates and offer the position to one of them.

27.  The recruitment and selection process proceeded as I have described.  Those applicants whom the committee determined after reviewing their résumés not to consider further received a letter thanking them for their interest.  Mr. Bleau was among those applicants.

28.  I understand that Mr. Bleau contends that the reason that Greater Lynn did not rehire him as its executive director is that the agency discriminated against him on the basis of his disability.  Mr. Bleau is quite mistaken.  First, as I mentioned

at the beginning of my testimony, I was unaware at the time and
remain unaware as I offer this testimony that Mr. Bleau suffers
from any disability.  Second, although the committee considered
Mr. Bleau's application, none of the members voted to pursue it.
Speaking for myself, I regarded other applicants to be more
qualified, and I believed that the executive director should be
someone new to the agency and new to the City of Lynn.

29.  I would like to take a moment to expand my testimony
concerning the committee's decision-making process.  As I men-
tioned, five Board members served as the voting members of the
committee.  The committee had the assistance of several senior
staff members.  Each member determined privately those applicants
that the member thought qualified for the position and whose
applications warranted further review.  I am able to report that
no member selected Mr. Bleau's application as one to pursue.  I
am also able to report that the committee discussed Mr. Bleau's
application briefly and that no member of the committee during
that discussion mentioned the member's belief that Mr. Bleau was
suffering from a disability or that Mr. Bleau was unsuited for
the position of executive director because he was suffering from
a disability.

30.  On the basis of my experience as a member of the Board
of Directors of Greater Lynn for six years and my direct involve-
ment in the management of the agency's response to the investiga-
tion that the Attorney General conducted during the second half
of my tenure, I believe that it would not have been in the best

interests of the agency to appoint Mr. Bleau as its executive director.  To the contrary, I believe that, had the agency done so, the Attorney General would have regarded the appointment as a breach of the agreement that I helped to negotiate.  Finally, I believe that the Board appointed an individual as the agency's executive director who is well-qualified and whose lack of involvement in the controversies that have troubled the agency over the last several years will prove a significant advantage.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this twenty-fourth day of May, 2004.

_____
          Robert F. Tucker

interests of the agency to appoint Mr. Bleau as its executive director. To the contrary, I believe that, had the agency done so, the Attorney General would have regarded the appointment as a breach of the agreement that I helped to negotiate. Finally, I believe that the Board appointed an individual as the agency's executive director who is well-qualified and whose lack of involvement in the controversies that have troubled the agency over the last several years will prove a significant advantage.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this twenty-fourth day of May, 2004.

Robert F. Tucker