UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


Albert William Bleau, Jr.,      :
                         :

         Plaintiff     :

                         :

vs.                      :   Civil Action
                         :   No. 04-10469JLT(REK)

                         :

Greater Lynn Mental Health    :
& Retardation Association, Inc., :
 et al.,                :

                         :

        Defendants    :


### Memorandum Of Defendant Greater Lynn Mental Health & Retardation Association, Inc., In Support Of Its Motion To Dismiss, Or, In The Alternative, For Summary Judgment

Defendant Greater Lynn Mental Health & Retardation Association (Greater Lynn) submits this memorandum in support of its motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 7.1, or, in the alternative, for summary judgment, pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, all of the claims that plaintiff Albert William Bleau, Jr. (Mr. Bleau), asserts against Greater Lynn (Greater Lynn's dispositive motion). Mr. Bleau's complaint does not state a claim upon which relief can be granted, and the issues raised are thus appropriate for disposition under either Rule 12(b)(6) or Rule 56.

## Introduction

Mr. Bleau alleges in his complaint that Greater Lynn dis-
criminated against him on the basis of a "perceived" disability
in violation of Title I of the Americans with Disabilities Act
of 1990, 42 U.S.C. §§ 12101-12213 (2000) (the ADA), and the
Rehabilitation Act of 1973, 29 U.S.C. § 794 (2000) (the
Rehabilitation Act).  According to the complaint, Greater Lynn
engaged in a number of activities that violated his rights under
federal and state law, including terminating him from his posi-
tion as the agency's executive director in the spring of 2000;
retaliating against him following his filing of a complaint with
the United States Equal Employment Opportunity Commission (EEOC)
in October, 2000; and failing to re-hire him as the agency's
chief executive officer in the fall of 2003.  Additionally,
Mr. Bleau alleges that Greater Lynn made defamatory remarks about
him; intentionally interfered with his advantageous business re-
lationships; breached an agreement (the Separation Agreement)
that he reached with Greater Lynn in November, 2000, following
Greater Lynn's termination of his employment; and, finally, that
Greater Lynn violated the regulations of the Internal Revenue
Service by "illegally ma[king] [defendant Eastern Massachusetts
Housing Corporation] its subsidiary in February 2000."  Complaint
¶¶ 5-6, at 2-4.

Mr. Bleau does not state the nature of his "perceived" disa-
bility, nor does he allege that he is, in fact, an individual
with a disability entitled to the protections of the ADA and

Rehabilitation Act.  Further, the allegations of the complaint, taken as true, do not state common law claims.  Finally, the Separation Agreement or a statute of limitations bars the majority of Mr. Bleau's federal and state law claims.

## Summary Of Undisputed Material Facts

Mr. Bleau's claims against Greater Lynn arise out of events that occurred during and after his employment by Greater Lynn and defendant Eastern Massachusetts Housing Corporation (Eastern Mass.).  Mr. Bleau served as Greater Lynn's executive director and in a similar capacity for Eastern Mass.  Greater Lynn is a regional mental health agency; Eastern Mass. was, prior to its merger into Greater Lynn on July 1, 2003, an affiliate of Greater Lynn.  Greater Lynn, a nonprofit corporation, provides mental health services to residents of Essex and Middlesex Counties.

In October 2000, following the termination of his employment by both Greater Lynn and Eastern Mass., Mr. Bleau filed a complaint against Greater Lynn with the EEOC (the first EEOC proceeding).  Complaint ¶ 11, at 9.  The parties reached an agreement, and the first EEOC proceeding settled on November 13, 2000.  Complaint, Attachments 16, 30.  On October 28, 2003, Mr. Bleau filed another complaint against Greater Lynn with the EEOC (the second EEOC proceeding).  Complaint ¶ 11, at 9.  The Commission found no basis for Mr. Bleau's complaint and terminated the second EEOC proceeding on December 5, 2003.  Complaint, Attachments 1, 2.

Mr. Bleau commenced this action on March 8, 2004, against five defendants, including Greater Lynn, Eastern Mass., and Robert Griffin (collectively, the Greater Lynn defendants), alleging violations of the Rehabilitation Act and the ADA. Complaint, ¶ 3.  The gravamen of the plaintiff's several claims appears to be that the Greater Lynn defendants discriminated against him on the basis of his asserted disabilities when they terminated his employment on April 20, 2000; when they did not hire him as a consultant in January, 2001; and when they refused to re-hire him between August and November 2003.  Complaint, ¶ 4. The Court should dismiss all of these claims for the reasons set forth in the following sections.

## Legal Standards

Proceeding under Fed. R. Civ. P. 12(b)(6), the Court should dismiss the complaint against Greater Lynn for failure to state a claim upon which relief can be granted.  Although the Court must take the allegations of the complaint as true and construe them in the light most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), and "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief[,]" Conley v. Gibson, 355 U.S. 41, 45-46 (1957), the Court need not credit plaintiff's "bald assertions, unsupportable conclusions, [or] periphrastic circumlocutions." Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999) (citations and internal quotations omitted).

Alternatively, proceeding under Fed. R. Civ. P. 56, the Court should grant summary judgment since the "pleadings . . . , together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [Greater Lynn] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is designed "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (citations and internal quotations omitted). Greater Lynn's burden as the moving party is to provide sufficient factual support for its motion, see Celotex v. Catrett, 477 U.S. 317, 325 (1986); DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997); in response, Mr. Bleau must establish the existence of a genuine dispute of material fact that requires a trial to resolve. See Celotex, 477 U.S. at 324. Under either Rule 12(b)(6) or Rule 56, Mr. Bleau's claims against Greater Lynn are ripe for the Court's consideration, and, under either rule, the Court should grant judgment for Greater Lynn dismissing the complaint.

## Argument

### I.   Mr. Bleau's ADA And Rehabilitation Act Claims Against Greater Lynn That Are Based Upon Events That Occurred Before March 2001 Are, Ceteris Paribus, Barred By The Statute Of Limitations

Neither the ADA nor Section 504 the Rehabilitation Act includes a statute of limitations. In the absence of a specified limitation period, the Court applies the "most appropriate or

analogous state statute of limitations." <u>Goodman</u> <u>v.</u> <u>Lukens</u> <u>Steel</u> <u>Co.</u>, 482 U.S. 656, 660 (1987).  This Court has held that G. L. c. 260, § 2A, the three-year limitation governing personal injury actions, is the most appropriate state statute.  <u>Downs</u> <u>v.</u> <u>MBTA</u>, 13 F. Supp. 2d 130, 136 (D. Mass. 1998) (Lasker, D.J.); <u>see</u> <u>also</u> <u>Morse</u> <u>v.</u> <u>Univ.</u> <u>of</u> <u>Vermont</u>, 973 F.2d 122, 125-26 (2d Cir. 1992) (§ 504 claim for discrimination in educational services subject to three-year limitation period for personal injuries).

Mr. Bleau filed his complaint on March 8, 2004.  Therefore, his claims under the ADA or the Rehabilitation Act that are based on events that occurred before March 2001, including the claim that Greater Lynn terminated him in 2000 on the basis of a per-ceived disability, are untimely and barred by the three year statute of limitations.

    II.  Mr. Bleau's Claims Against Greater Lynn Based On Events That Occurred Prior To November 2000 Are Barred By The Separation Agreement And General Release

        A.  The Separation Agreement and General Release Bars Mr. Bleau's Claims For Wrongful Termination

Mr. Bleau's claim that Greater Lynn terminated him from his position as its executive director on the basis of a perceived

disability is also barred by the Separation Agreement.[1]

Paragraph four of the Separation Agreement provides that:

> In consideration for the execution of this Agreement by
> GLMHRA and EMHC and other consideration . . . Albert W.
> Bleau, Jr. . . . releases and forever discharges
> Greater Lynn Mental Health and Retardation Association,
> Inc., . . . of and from any and all debts, actions,
> causes of action, suits, damages, expenses, claims for
> attorney's fees, and any and all claims, and liabili-
> ties whatsoever, of every name and nature, known or
> unknown, both in law and in equity, which [Mr. Bleau]
> has or ever has had against [Greater Lynn] from the
> beginning of the world to the date of this General
> Release, including, but not limited to, those arising
> under the Age Discrimination in Employment Act, Title
> VII of the Civil Rights Acts of 1964, the Massachusetts
> Law Against Discrimination, Americans with Disabilities
> Act[,] G. L. c. 151B, any other federal, state or local
> human, civil rights, or other laws, rules and/or regu-
> lations, or any claim arising under common law, or any
> other action.

Mr. Bleau nevertheless complains of his allegedly wrongful

termination.  Complaint ¶ 4.

Specifically, Mr. Bleau alleges that Greater Lynn terminated

his employment in order to, among other things, prevent him from

exposing "unethical business practices, regulatory violations,

[and] unauthorized expenditures" and that Greater Lynn "shared

[his] medical records and 'perceived disability' with various

board members and employees to gain the necessary support to have

[him] terminated."  Complaint ¶ 6, at 7.  All of this allegedly

wrongful conduct occurred prior to the execution of the

---

[1] A copy of the Separation Agreement is attached as an ex-
hibit to the Declaration of Robert F. Tucker in Support of the
Motion of Defendant Greater Lynn Mental Health and Retardation
Association, Inc., to Dismiss or in the Alternative for Summary
Judgment (Tucker Dec.), which accompanies Greater Lynn's disposi-
tive motion.  Mr. Bleau executed the Agreement on
November 6, 2000.

8

Settlement Agreement, however, and that agreement bars all claims arising before it, including Mr. Bleau's claim for wrongful termination.

>    B.    Mr. Bleau Is Bound By Certain Promises That
>          He Made In The Separation Agreement

Mr. Bleau alleges that Greater Lynn violated the Separation Agreement and, by including claims against Greater Lynn that are barred by the Agreement, appears to believe that he is no longer bound by its terms.  The Separation Agreement requires that each of the parties perform, or refrain from performing, certain acts. Greater Lynn's alleged failure to perform one of its duties under the Separation Agreement does not, however, automatically relieve Mr. Bleau of the obligations that he assumed by entering into and benefitting from the Agreement.  Cf. Chicago Title Ins. Co. v. Title Consultants, Inc., 472 So.2d 1380, 1380-81 (Fla. 1985) (exercising power of termination does not terminate rights al-ready accrued under contract).

The Separation Agreement states, in paragraph 5(C), that Greater Lynn will

> [f]or a period ending two years after execution of this
> Agreement . . . pay an amount for Mr. Bleau's enroll-
> ment in a program or course of training at an accredit-
> ed college of Mr. Bleau's choice, or any training
> course leading to licensing or certification.  The
> total amount to be paid pursuant to this paragraph
> shall not exceed $5,000 in each year (a total of up to
> $10,000).  Payments made pursuant to this paragraph
> shall be made directly to the college and not to
> Mr. Bleau.

As Mr. Bleau alleges, Greater Lynn has not made any payment under this paragraph.  Complaint ¶ 5, at 2.

Although the termination of a contract, whether under a
right or as a consequence of material breach, may operate to re-
lieve a party of a contractual duty to perform "wholly executory"
promises, termination does not necessarily extinguish rights and
duties that are based in past performance.  Cf. id. (exercising
contractual power of termination does not relieve non-terminating
party from liability for breach that occurred prior to termina-
tion); Hoffman v. McLaughlin Corp., 703 A.2d 1107, 1112
(R.I. 1997) (same); Factory Realty Corp. v. Corbin-Homes Shoe
Co., 312 Mass. 325, 329 (1942) (same and holding that trial judge
erred in granting requests for rulings that cancellation of
agreement "put an end to all covenants and liabilities . . . as
though the covenants never had existed [because w]e think that
there is no such inflexible rule of law in this Commonwealth.").
Here, Greater Lynn fully performed its duty to pay Mr. Bleau over
$ 100,000 in cash, personal property, and certain continued bene-
fits.  The principal covenants that Greater Lynn obtained in re-
turn are set forth in paragraph four of the Separation Agreement
and include a general release of all claims that Mr. Bleau had
against Greater Lynn at the time that he entered into the
Agreement.  This release was effective as of its making, and
Mr. Bleau may not unilaterally rescind or ignore it.  All of
Mr. Bleau's claims against Greater Lynn that accrued prior to
November, 2000, are therefore barred.

III. Mr. Bleau Is Not An Individual With A Disability
     Within The Meaning Of The Americans With
     Disabilities Act And Therefore Has No Basis For
     A Claim Under It

The ADA prohibits, generally, discrimination in employment against qualified individuals with disabilities.  42 U.S.C. § 12112(a) (2000).  To establish a claim of employment discrimination under the statute, an individual must show not only that he is disabled within the meaning of the ADA, but also that he is qualified to perform the essential functions of the job in question and that his employer took adverse employment action against him on the basis of his disability.  E.g., Bailey v. Georgia-Pacific Corp., 306 F.3d 1162, 1166 (1st Cir. 2002).  An individual is disabled within the meaning of the ADA if he has

> (1)  a physical or mental impairment that sub-
>      stantially limits one or more of the major
>      life activities;
>
> (2)  a record of such an impairment; or
>
> (3)  been regarded as having such an
>      impairment.

42 U.S.C. § 12102(2).  Mr. Bleau does not allege that he has, or has a record of, a physical or mental impairment that substantially limits a major life activity.  He alleges only that Greater Lynn "perceived," or regarded, him as disabled.

To prove, in turn, that Greater Lynn regarded him as disabled, Mr. Bleau must show that Greater Lynn

> (1)  mistakenly believed that he had a
>      physical impairment that substantially
>      limits a major life activity; or

> (2)  mistakenly believed that an actual,
>       nonlimiting impairment substantially
>       limits a major life activity.

Sullivan v. The Neiman Marcus Group, Inc., 358 F.3d 110, 117

(1st Cir. 2004) (citing Sutton v. United Air Lines, Inc.,

527 U.S. 471, 489 (1999).  Nowhere in his complaint does

Mr. Bleau allege the disability that Greater Lynn regarded him as

having or the major life activity that the disability limits.  He

makes general statements about an "alleged drug addiction and

alcoholism," Complaint ¶ 4, and that Greater Lynn shared informa-

tion about his "perceived disability" with board members and em-

ployees, Complaint ¶ 6, at 7, but the exact nature of the "per-

ceived disability" remains unclear.

Taken most favorably to him, Mr. Bleau's allegations appear

to amount to the claim that Greater Lynn terminated his employ-

ment in the spring of 2000 or did not re-hire him in the fall of

2003 because the agency regarded him as an alcoholic or drug

addict and believed that any such addiction substantially limits

the major life activity of working.  See Bailey, 306 F. 3d

at 1169; Sullivan, 358 F.3d at 117-18.  To prove this claim,

Mr. Bleau would have to show that Greater Lynn perceived him as

unable "to perform either a class of jobs or a broad range of

jobs in various classes as compared with the average person

having comparable training, skills, and abilities."  29 C.F.R.

§ 1630.2(j)(3)(I); Bailey, 306 F. 3d at 1169; Sullivan, 358 F.3d

at 117-18.

Greater Lynn's decision to terminate Mr. Bleau's employment was not based on any "perceived" disability.  Rather, and as Mr. Tucker explains, Greater Lynn decided to terminate Mr. Bleau's employment on the basis of information that the agency received as a result of two investigations:  one by the Greater Lynn's Board of Directors (the Board), and one by the Attorney General's Public Charities Division.  Tucker Dec. ¶¶ 12-17.  Additionally, at the same time that the Attorney General's Public Charities Division was investigating Greater Lynn, his Criminal Division was investigating Mr. Bleau.  <u>Id.</u> ¶ 11.  Greater Lynn learned from the Attorney General during the course of his office's investigation that the Attorney General regarded Greater Lynn to be in serious financial and management difficulty and that the Attorney General had identified Mr. Bleau as the individual who had created the difficulties.  <u>Id.</u> ¶ 12.  The Attorney General also informed Greater Lynn that, unless a management agreement were negotiated pursuant to which the Board would retain the services of a management adviser, restructure its membership, and appoint a new executive director, the Attorney General would commence an action to place Greater Lynn in receivership.  <u>Id.</u>  Greater Lynn met each of these require-ments.  <u>Id.</u> ¶¶ 15-17, 25.

Mr. Bleau was well aware of the basis for his termination and contested the grounds for it.  <u>Id.</u> ¶ 16.  At no point during the course of the Board's consideration of Mr. Bleau's continued

service did he mention a disability or his belief that Greater Lynn regarded him as disabled.  Id.

Similarly, Greater Lynn did not base its decision in the fall of 2003 not to rehire Mr. Bleau on any "perceived" disability.  Greater Lynn began its search for a new executive director in July, 2003.  A search committee, which included five Board members and several non-voting senior staff members, was established for that purpose.  Id. ¶ 26.  In response to professional advertisements, the search committee received approximately one-hundred twenty applications and chose eleven of the applicants to interview.  Id.  The applicants who were not selected for an interview, including Mr. Bleau, were sent a letter thanking them for their interest.  Id. ¶ 17.

The search committee did briefly discuss Mr. Bleau's application.  At no point during that discussion, however, did any member of the committee mention a belief that Mr. Bleau suffered from a disability or that he was unsuited for the executive director position because of a disability.  Id. ¶¶ 28-29.  There is, simply put, no basis for Mr. Bleau's claims to that effect.

IV.  Greater Lynn Did Not Retaliate Against
     Mr. Bleau

Mr. Bleau alleges that Greater Lynn retaliated against him first for filing his first EEOC complaint and then again for his complaining about the initial retaliation.  Complaint ¶ 5, at 2-3.  A claim for retaliation is an independent cause of action, separate from a claim of discrimination, and Mr. Bleau

14

need not succeed on his discrimination claims to assert a claim

for retaliation under the ADA. E.g., Wright v. CompUSA, Inc.,

352 F.3d 472, 477 (1st Cir. 2003).

To establish a claim for retaliation Mr. Bleau must,

however, show

> (1)  that he was engaged in protected
>      conduct;
>
> (2)  that Greater Lynn took adverse em-
>      ployment action; and
>
> (3)  a causal connection between the adverse
>      employment action and Greater Lynn's
>      conduct.

Id. at 478.  The retaliation that Mr. Bleau alleges has been

continuing since he filed his initial EEOC complaint, yet he is

able to make only general averments that certain of Greater

Lynn's actions constitute retaliation.

Mr. Bleau alleges, for example, that Greater Lynn's request

that Mr. Bleau communicate with it through its attorney was "an

extreme form of retaliation since . . . Greater Lynn . . . knew

that [Mr. Bleau] had a mentally retarded brother who had been

residing in one of Greater Lynn's group homes . . . ."  Complaint

¶ 6, at 7.  Mr. Bleau also alleges that the retaliation included

"a comment to a former Greater Lynn employee by the Assistant

Human Resources Director of the North Shore Association for

Retarded Citizens that she had heard that [Mr. Bleau] had stolen

all the retirement money from Greater Lynn's employees."

Complaint ¶ 6, at 6.  These acts do not, however, involve adverse

15

employment action and therefore can not serve as the basis for a claim of retaliation.

To the extent that Mr. Bleau asserts that Greater Lynn's decision not to rehire him in the fall of 2003 was retaliatory, the Court need not credit this "bald assertion." As Mr. Tucker testifies, he believed that other candidates were more qualified and that the successful candidate should be someone who was new to the City of Lynn. Tucker Dec. ¶ 28. Judgments like these are not the stuff from which a claim for retaliation can be made.

> V.    Mr. Bleau's State Law Claims For Defamation
>        And Intentional Interference With Advantageous
>        Business Relations Are Equally Insubstantial

> A.    Greater Lynn Did Not
>        Defame Mr. Bleau

Mr. Bleau alleges that Greater Lynn disparaged his reputa-tion, although he does not state, even generally, how it did so. Complaint ¶ 5, at 2. To succeed on a claim for defamation under Massachusetts law, however, Mr. Bleau would have to prove

> (1)  publication with the requisite degree of fault;

> (2)  of a defamatory statement;

> (3)  concerning himself;

> (4)  that is false; and

> (5)  that caused him damage.

S. C. Moriearty et al., Employment Law (2d ed. 2003); Orell v. UMass. Mem'l Med. Ctr., Inc., 203 F. Supp. 2d 52, 69 (D. Mass. 2002) (citing Correllas v. Viveiros, 410 Mass. 314, 319 (1991)) ("Defamation is the publication, without privilege, of a false

statement of fact which causes damages to the plaintiff's reputation.").  Mr. Bleau does not allege that the statements that Greater Lynn made about him were false or the manner in which the statements were published.  The Court should therefore dismiss Mr. Bleau's defamation claim.  See Orell, 203 F. Supp. 2d at 69 (plaintiff's claim for defamation dismissed because plaintiff failed to allege that letter containing allegedly defamatory remarks seen by anyone other than plaintiff).

> B.    Greater Lynn Did Not Intentionally
>        Interfere With Any Advantageous
>        Business Relationship

Mr. Bleau's claim that Greater Lynn interfered with his ability to secure employment is also a "bald allegation" without substance.  To establish that Greater Lynn intentionally interfered with an advantageous relationship, Mr. Bleau must prove

> (1)    that he had a business relationship or
>        contemplated contract of economic
>        benefit;
>
> (2)    that Greater Lynn knew that he had such
>        a relationship or contract;
>
> (3)    Greater Lynn's intentional and improper
>        interference with that relationship;
>        and,
>
> (4)    the loss of advantage directly resulting
>        from Greater Lynn's conduct.

E.g., Lemire v. Silva, 104 F. Supp. 2d 80, 95 (D. Mass. 2000). Mr. Bleau makes general allegations that Greater Lynn interfered with his applications for employment with other companies and his attempts to expand his consulting practice.  Complaint ¶ 5, at 3.

These allegations are insufficient as a matter of state common law, and the Court should therefore dismiss this claim as well.

### VII. Mr. Bleau Has No Claim Against Greater Lynn Under The Internal Revenue Code

Finally, Mr. Bleau alleges that Greater Lynn violated certain regulations of the Internal Revenue Service by "illegally ma[king] [Eastern Massachusetts Housing Corporation] its subsidiary in February 2000." Complaint ¶ 6, at 3-4. To the extent that the complaint might be read to allege actionable income tax non-compliance, Mr. Bleau lacks standing. Mr. Bleau, an individual, is not within the zone of interests protected by the Internal Revenue Code, and he does not allege any personal injury traceable to the tax consequences of the merger. See Allen v. Wright, 468 U.S. 737, 751 (1984) (standing doctrine requires that plaintiff's claims fall within protected zone of interests). Put another way, whether the Court were to analyze this claim in terms of standing, or under Fed. R. Civ. P. 17, or using private right of action principles, see Cort v. Ash, 422 U.S. 66 (1975), the result should be the same: dismissal.

## Conclusion

For the reasons set forth above, the Court should allow Greater Lynn's motion to dismiss or, in the alternative, for summary judgment.

by its attorney,

_____
Garrick F. Cole
BBO No. 091340

Smith & Duggan LLP
Two Center Plaza, Suite 620
Boston, Massachusetts 02108-1906
(617) 248-1900

Dated:  24 May 2004