UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Albert William Bleau, Jr.,          :
                                    :
          Plaintiff                 :
                                    :
                                    :
vs.                                 :      Civil Action
                                    :      No. 04-10469JLT(REK)
                                    :
Greater Lynn Mental Health          :
& Retardation Association, Inc.,    :
 et al.,                            :
                                    :
          Defendants                :

**Local Rule 56.1 Statement Of
Defendant Greater Lynn Mental Health And
Retardation Association, Inc.**

     Pursuant to Local Rule 56.1, defendant Greater Lynn Mental
Health & Retardation Association, Inc., (Greater Lynn or the
agency) submits the following statement of the undisputed
material facts upon which Greater Lynn bases its motion for
summary judgment.

     1.  Greater Lynn is a regional mental health agency.  A
nonprofit corporation, Greater Lynn receives substantial support
from the Commonwealth of Massachusetts, primarily through its
Department of Mental Health and its Department of Mental
Retardation.  Greater Lynn provides residential facilities,
outpatient clinic services, job placement and support, counsel-
ing, and other mental health services to clients in Middlesex and
Essex counties.  Declaration of Robert F. Tucker in Support of
the Motion of Defendant Greater Lynn Mental Health and

Retardation Association, Inc., to Dismiss or in the Alternative

for Summary Judgment (Tucker Dec.) ¶ 3.

2.  The business affairs of Greater Lynn are managed by its

Board of Directors (the Board).  The Board appoints several

officers who are responsible for the day-to-day operations of the

agency.  In 1999, the executive director was the agency's princi-

pal officer.  Tucker Dec. ¶ 4.

3.  For many years, and until 2000, plaintiff Albert W.

Bleau, Jr., was Greater Lynn's executive director.  Tucker

Dec. ¶ 5.

4.  During the fall of 1999, the Board was informed of cer-

tain personnel matters, among which were issues that involved

Mr. Bleau and his (now former) wife, who was also an employee of

the agency.  Some of these issues were resolved when Mr. Bleau's

wife resigned from her position and left the agency's employ;

others remained open.  Tucker Dec. ¶ 8.

5.  The Board thereafter authorized counsel to commence an

investigation.  Greater's Lynn counsel at that time were Roderick

MacLeish, Esq., and Robert Sherman, Esq., both of whom are de-

fendants in this action.  Tucker Dec. ¶¶ 9, 10.

6.  The scope of this investigation included Mr. Bleau's

management of the agency's employee fringe benefit program; cer-

tain expenditures of agency funds that Mr. Bleau made or that

were made under his direction; and Mr. Bleau's management of the

operations of Eastern Massachusetts Housing Corporation (Eastern

Mass.), a defendant in this action and a close affiliate of

Greater Lynn of which Mr. Bleau was also then the executive director.  Tucker Dec. ¶ 9.

7.  Early in February, 2000, the Attorney General informed the Board that his Public Charities Division had initiated an investigation of Greater Lynn and that Mr. Bleau was under investigation by the Attorney General's Criminal Division.  Tucker Dec. ¶ 11.

8.  The Board informed the Attorney General that Greater Lynn would cooperate fully with his office's investigation. Tucker Dec. ¶ 11.

9.  During the winter and spring of 2000, the Board learned that the Attorney General regarded Greater Lynn to be in serious financial and management difficulty.  Tucker Dec. ¶ 12.

10. The Attorney General placed the responsibility for these difficulties in the hands of the Board and identified Mr. Bleau as the individual whose actions had created the difficulties.  Tucker Dec. ¶ 12.

11. In particular, the Attorney General asserted that Mr. Bleau had made improper expenditures of state contract funds; that he had misused agency and employee retirement funds; and that the agency had submitted incorrect financial reports to the Department of Mental Health and the Department of Mental Retardation.  Tucker Dec. ¶ 12.

12. The Attorney General informed the Board that, unless a management agreement were negotiated pursuant to which the Board would retain the services of a management adviser, restructure

4

its membership, and appoint a new executive director, the
Attorney General would commence an action to place Greater Lynn
in receivership.  Tucker Dec. ¶ 12.

13. In early May, 2000, Greater Lynn entered into a manage-
ment agreement with the Attorney General.  Pursuant to this
agreement, Robert Griffin, Esq., a defendant in this action, was
appointed to the position of management adviser.  Tucker Dec.
¶ 18.

14. The Board received information from the Attorney
General sufficient to warrant its terminating Mr. Bleau's employ-
ment.  Tucker Dec. ¶ 13.

15. In the course of conducting its own internal investiga-
tion, the Board had determined to relieve Mr. Bleau of his duties
as Greater Lynn's executive director and to place him on paid
administrative leave.  The Board of Directors of Eastern Mass.
did not take similar action, and Mr. Bleau remained in his posi-
tion as that agency's executive director.  Tucker Dec. ¶ 14.

16. At its meeting on the 20th of April, 2000, the Board,
by a divided vote, voted to terminate Mr. Bleau's employment.
Tucker Dec. ¶ 15.

17. Mr. Bleau uniformly contested the criticism of his
management of the agency's retirement funds, finances, and
operations.  Tucker Dec. ¶ 16.

18. Mr. Bleau made no mention to the Board during the
course of its consideration of his continued service of any
disability that affected his job performance.  Tucker Dec. ¶ 16.

19. The Board continued to negotiate with the Attorney General during the period May through December, 2000.  The Attorney General opposed any continued role for Mr. Bleau with either Greater Lynn or Eastern Mass.; required the agency to revise its employee benefits program; and sought the resignations of all of the members of the Board and their replacement by persons with no prior contact with or knowledge of the agency. Tucker Dec. ¶ 20.

20. The Attorney General also urged Greater Lynn to merge with Eastern Mass. as well as to correct certain accounting matters, primarily interagency loans and transfers, and to liquidate certain assets that Eastern Mass. held for the benefit of Greater Lynn or its employee benefits funds.  Tucker Dec. ¶ 21.

21. The Board's efforts to accommodate the Attorney General precipitated conflict with Eastern Mass. and with Mr. Bleau.  The controversy continued through the summer of 2000 until the various disagreements were resolved in the late fall.  Tucker Dec. ¶ 22.

22. As part of this resolution, Greater Lynn entered into an agreement with Mr. Bleau that, among other things, was meant to put an end to Mr. Bleau's association with Greater Lynn and Eastern Mass.  Tucker Dec. ¶ 22 and Exhibit 2.

23. The Attorney General continued to press for the replacement of all of the members of the Board.  Further negotiations resulted in an agreement that, among other things, provided for the resignation of all but two of the members of the Board;

6

the recruitment of new members from among those persons suggested by the Attorney General, as well as others with an interest in mental health agency operations; and the amendment of the Board's bylaws to provide for staggered terms and a limit of six years of continuous service.  Tucker Dec. ¶ 23.

24. While these governance matters were being worked through, the executive director and other members of the agency's staff, with the assistance of counsel, were correcting the financial, management, and retirement benefits administration problems that the Board's internal investigation and the Attorney General's inquiry had identified.  Tucker Dec. ¶ 25.

25. As of January, 2001, at the time that Mr. Tucker became president of the Board, the principal remaining issues that the Attorney General had raised and that Mr. Griffin in his final report recommended that the agency resolve were the restructuring of the administration of the agency's employee benefits program; the merger of Eastern Mass. into Greater Lynn; and the amendment of the Board's bylaws.  Tucker Dec. ¶¶ 24, 25.

26. The Board amended its bylaws in December, 2001; a new administrative structure for the employee benefits program was implemented during 2002; and Eastern Mass. merged into Greater Lynn effective July 1, 2003.  Tucker Dec. ¶ 25.

27. The Board established a search committee in July, 2003, for the purpose of recruiting a new executive director.  Five Board members served as the voting members of the committee. Tucker Dec. ¶ 26.

7

28. The search committee received approximately one hundred-twenty applications in response to its professional advertisements, selected approximately twenty for further evaluation, and chose eleven individuals to interview.  Tucker Dec. ¶ 26.

29. Following these interviews, the search committee recommended that the Board consider three candidates and offer the position to one of them.  Tucker Dec. ¶ 26.

30. Each member of the search committee determined privately those applicants that the member thought qualified for the position and whose applications warranted further review.  Tucker Dec. ¶ 29.

31. Those applicants whom the committee determined after reviewing their résumés not to consider further received a letter thanking them for their interest.  Mr. Bleau was among those applicants.  Tucker Dec. ¶ 27.

32. Although the committee considered Mr. Bleau's application, none of the members voted to pursue it.  Tucker Dec. ¶ 28.

33. At no time did any member of the committee mention a belief that Mr. Bleau was suffering from a disability or that Mr. Bleau was unsuited for the position of permanent executive director because he was suffering from a disability.  Tucker Dec. ¶ 29.

34. The Board ultimately selected and appointed as Greater Lynn's executive director a well-qualified individual who had no

8

involvement in the controversies that have troubled the agency over the last several years.   Tucker Dec. ¶ 30.

by its attorney,

_____
Garrick F. Cole
BBO No. 091340

Smith & Duggan LLP
Two Center Plaza, Suite 620
Boston, Massachusetts 02108-1906
(617) 248-1900

Dated:  24 May 2004