UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 OCT -1  P 12: 40

U.S. DISTRICT COURT
DISTRICT OF MASS.

Albert William Bleau Jr.               :

    Plaintiff                                  :

                                   :

vs.                                              :    Civil Action
                                      No. 04 – 10469REK
                                 :

Greater Lynn Mental Health          :
& Retardation Association, et al,

    Defendants

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS GREATER LYNN MENTAL HEALTH & RETARDATION ASSOCIATION, INC, ET AL., MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGEMENT

### INTRODUCTION

The defendants Greater Lynn Mental Health & Retardation Association, Inc. (GLMHRA) and Eastern Massachusetts Housing Corporation (EMHC) claim that no discrimination existed, that the plaintiff was not disabled under the Rehabilitation Act and ADA and that he was terminated for cause and that no retaliation existed and that they did not interfere with his business relationships. They also assert that the plaintiff lacks standing as to whether the Eastern Massachusetts Housing Corporation was dissolved illegally in violation of IRS rules and regulations affecting not for profit companies.

Defendant Robert Griffin asserts that he is not an employer as defined under

ADA or the Rehabilitation Act § 504, that he was not named in the initial complaint, therefore, all administrative remedies were not exhausted before this complaint was filed and he also asserts that plaintiff's claims are barred by the statute of limitations. He also asserts that the plaintiff has not shown that the defendant was engaged in a continuing violation of discrimination or retaliation. Defendants Roderick MacKleish and Robert Sherman assert the same arguments as Robert Griffin except the assertion that they have not been involved in continuing discrimination and retaliation.

The Plaintiff has submitted substantial documentation to support his request for summary judgment. The defendants engaged in an organized attack to remove the plaintiff from his position as Executive Director that he held for over 26 years and to take over the control of two multi million dollar not for profit companies that the plaintiff had personally founded and or developed to over 20 million dollars in assets and operating budgets of over thirty million dollars.

The plaintiffs threatened and intimidated employees and board members of the organization with criminal prosecution, civil liabilities and termination in order to gain their silence and in some instances their support for plaintiff's removal. They also provided employment, promotions and other favors to employees and board members to gain their support an silence. They also used the personal and political connections of defendant Robert Sherman to enlist the support of the state attorney general's office in their scheme.

The defendants engaged in this behavior for their own personal financial gain

and to cover up various unethical business and personal dealings and transactions.

Despite their efforts, in late 1999 and early 2000, they were still unable to gain a majority support from the Board of Directors of GLMHRA to terminate the Plaintiff and in fact in January 200 the board voted eight to one for the plaintiff to return to work. It was then that Defendants Sherman and MacKleish enlisted the support of the attorney general's office to provide further intimidation of the board members and employees. They recruited two senior employees of GLMHRA one of whom was having an affair with Roderick MacKleish and the board president who MacKleish and Sherman had unsuccessfully attempted to be placed in the plaintiff's p[position as Executive Director to provide false reports to the attorney general's office.

The defendants also began their plan to paint the plaintiff to employees, board members and state agency personnel as mentally unstable and incapable of managing the company. Through intimidation and threats they convinced the insurance broker for the agency to turn over all his medical records and they researched payments on behalf of the plaintiff to medical providers including payments to his marital and personal therapists.

Despite the efforts of the defendants, the final vote to terminate the Executive Director barely passed with a four to three vote with one abstention and the Vice-President who was opposed to the plaintiff's termination had resigned Months before the vote in protest over what she determined to be an unethical and illegal process. The defendants were only able to secure this close vote by presenting one of the counseling records of the plaintiff to the board and

complaining that it was too much money spent. The plaintiff believes that this final action swayed one possibly two votes on the board for his termination. The board member who abstained from voting has informed the plaintiff that it affected her vote and that she had been leaning toward a no vote. She and others on the board and among staff perceived that I had a disability and was incapable of performing the duties of Executive Director.

The Eastern Mass Housing Corporation was an independent 501c(3) corporation with five board members three of whom were past presidents of the GLMHRA that was founded by the Plaintiff in 1978.

The board refused to terminate the plaintiff and in fact promoted him in August of 2000 after he had been terminated by GLMHRA and voted to have him take over the management contract from GLMHRA. Only board member Attorney Sam Vitale was opposed and he was in serious conflict of interest as the counsel for the Lynn Water and Sewer Commission where GLMHRA's then treasurer president-elect Robert Tucker was the deputy director. The Water and Sewer Commission was under civil suit for fraud and alleged organized crime involvement in a bid award and had been under investigation by the Inspector General's Office.

Defendant's Robert Griffin, MacKleish and Sherman conspired to have bogus Articles of Organizations presented to the attorney general's office showing that EMHC was a totally controlled subsidiary of GLMHRA and recommended that it be taken over by GLMHRA and dissolved. They forced board members to resign. The clerk, Tena Fallon, who is a past president of GLMHRA refused to resign and claims that she is the only legal board member of

the corporation and that all their votes are illegal as is the transfer of their assets to GLMHRA.

This action resulted in the potential loss of consulting and other opportunities for the Plaintiff and was done deliberately to fully isolate the defendant from this company. It also allowed the defendants to take over more than one million dollars in cash assets of EMHS to cover legal and consultant fees that had been paid to the defendants.

The summary judgment and motions to dismiss of the defendants should be denied since the plaintiff has submitted substantial documentation to support his claim and should the court decide that it is insufficient, the court should allow the plaintiff the opportunity to serve subpoenas and complete discovery which he is certain will uncover even further examples of discrimination and retaliation.

## STATEMENT OF RELEVANT FACTS

1. To fully understand what happened to the plaintiff, the court has to accept that RICO applies in this case. The plaintiff has submitted numerous documentation and with subpoena and discovery will be able to prove conclusively that there was an organized criminal conspiracy by the defendants and others to remove the plaintiff and to take over GLMHRA and EMHC for their own personal benefit.

2. The defendants engaged in continuous discrimination from 1999 to the present with the exception of Robert Griffin whose discriminatory and retaliatory practice stated in 2000. The defendants knew then and know now that there is no substantiation to any of the allegations against the plaintiff.

3. A key attachment, submitted in my motion for summary judgment and by Attorney Garrick Cole, a letter from Attorney Stephan Rosenfeld, was a response to a document prepared by MacLeish and Sherman. The defendants presented their document to the Attorney General, EMHS and GLMHRA and to various state agencies. It was used to defame me and to convince agencies not to employ, me or contract for my services and was used to defame me with the board of GLMHRA.

It has been submitted by Counsel Garrick Cole as evidence. The discrimination continues as Mr. Cole has conveniently omitted a key page included in the defendant's attachments that states that the financial records presented to the attorney general and the board by MacKleish and Sherman were in error in that in effect the Association owed the plaintiff funds and not the reverse as stated in the document.

4. The defendants by continuing to rely on the MacKleish and Sherman document by not acknowledging the false statements in this document to all parties to whom its contents were disseminated have engaged in continuous discrimination and retaliation since December 1999 when it was first drafted. As a result the statute of limitations claimed by the defendants does not apply. See Flannery v. Recording Industry Ass'n of America, 354 F. 3d 632 (7th 2004), and Peebles v. Potter, 354 f.3d 761 (8th 2004) and McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Also "Massachusetts Courts have recognized that otherwise untimely claims of discrimination under chapter 151B may be considered timely filed under circumstances giving rise to a

'continuing violation' See, e.g., Carter, 681 N>E> 2d at 1261." See Davis v. Lucent Technologies, NO. 00-1329 (1st 2001) Also in Davis, the court states that "the continuing violation doctrine 'is an equitable exception that allows an employee to seek damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts and there is "some violation within the statute of limitations period that anchors the earlier claims"' O'Rourke v. City of Providence, 235 F.3d 713, 730 (1st Cir. 2001) (quoting) Provencher v. CVS Pharmacy, 145 F.3d 5, 14 (1st Cir. 1998)

Also In Zapata v. L&F Products, No. 00 – 2546 (1st 2002), the court stated "Under Mcdonnell Douglas framework, once the plaintiff has met the low standard of showing prima facie discrimination, the employer must articulate a legitimate nondiscriminatory reason in response." The defendants have not done so, and the conflicts of interest and unethical conduct of all defendants in this case mutes any attempt by the defendants to legitimize their actions.

5. Defendant GLMHRA & EMHC have violated the severance agreement and by violating even one section of the agreement any commitments binding on the plaintiff become null and void. See United Rental v. Keizer, 355 f.3d 399 (6th 2004) They have refused to draft a letter outlining the contributions of the plaintiff and mailing it to the newsletter list that includes a mailing of over one thousand individuals, politicians and agencies. In reverse they have granted interviews to the press and have issued press releases that refer to problems and irregularities under my leadership and have had senior managers and their executive director, director of operations, administrative

7

assistant and others inform other providers state agencies that I stole the retirement money and that I mismanaged GLMHRA and took money from the corporation and state.

This is an example of continuous discrimination and retaliation by the Defendants and as a result the statute of limitations claimed by the defendants does not apply.

6. Attorney Robert Griffin was the plaintiff's attorney from 1988 to 1992. The plaintiff was a court appointed receiver for Associate Group Homes. The plaintiff was the receiver, president, clerk and treasurer off the corporation and paid Mr. Griffin for his services. Griffin accepted appointment as a monitor of GLMHRA in April, 2000 at the request of the attorney general's office even though it was unethical for him to do so and he received thousands of dollars in legal fees from GLMHRA and EMHC. He then proceeded to issue a critical report of my leadership using MacKleish and Sherman's document referred to in a foregoing section also conveniently leaving out the corrected page. He also submitted bogus articles of organization to the Attorney General and others. He had been the attorney in a bond closing in 1990 for EMHC where a correct version of the articles were given to him by the plaintiff.

Griffin has received thousands of dollars in referrals and work from the attorney generals office including numerous receivership appointments of nursing homes. He was first introduced to the plaintiff by James Mecone, who is also the GLMHRA auditor. The two work closely together, and Mecone tends to audit many agencies where Griffin is also the general counsel.

Griffin is the general counsel of the May Institute, Work Inc and many other not

for profit companies where the plaintiff has been unsuccessful in gaining employment or contractual work. In 2003, one executive director of one of Griffin's companies informed me of false and derogatory comments made by Griffin about my employment at GLMHRA. Griffin has continued to defame the plaintiff and remain silent concerning false documents. See section 3 for arguments and case citings.

7. MacKleish and Sherman work together in a law practice and MacKleish was the plaintiff's counsel for liability issues from 1985-1999. The plaintiff asked the board if they would pay MacLeish's legal fees since the plaintiff was not covered under the agencies liability policy and we needed advice during wrongful death or injury suits. They agreed. He also represented my son and I in a sports injury in 1992.

Without my knowledge, he was having an affair with my Chief Officer and contract manager, Janine Brown Smith. In April and then again in September 1999 he asked her to lobby me have me appoint him and Sherman general counsel of GLMJRA for $50,000 a year. When I refused, he arranged through Janine and Elaine White, another senior manager, to get the president Tom Manning to hire him and Sherman secretly without my knowledge, in violation of the personnel practices. He then began to investigate my ex-wife and I.

8. MacLeish and Sherman billed GLMHRA over $225,000 in legal and consultant fees from September 1999 through April 2000 and forced GLMHRA to hire numerous consultants who billed thousands more. MacLeish was in the meeting with Terry K.asper, GLMHRA's fiscal manager and I when she disclosed

that they had made mistakes on the financials and I did not owe all the money as was stated.

MacLeish and Sherman knew that the document they prepared was false and they did not inform anyone to its falsehood. They therefore engaged in continuous discrimination and retaliation and the statute of limitations does not apply to either defendant. See section 3 for arguments and case citings.

9. The plaintiff did not include MacLeish, Sherman and Griffin in his original complaint because he was not aware of the full extent of their activities of discrimination and retaliation until after he had filed with the EEOC.
The plaintiff was also not aware of the extent that they controlled and operated GLMHRA and in effect were defacto employers. Employees and board members were forced to be silent and only after employees left GLMHRA and board members resigned have they come to me and informed me of MacLeish's affair, the retaliation and the discriminatory behavior of these defendants.
They were not included in the second complaint of 2003 because the second complaint was a continuation of the first complaint and the parties to the action could not be changed. For the second complaint to be successful, I needed to prove that I had a perceived disability when I filed the first complaint which is a very difficult thing to prove and that there was continued retaliation by EMHC and GLMHRA also difficult to prove.
My only recourse is to the U S District Court since the State Court can not grant relief under the Rehabilitation Act § 504 that has strong legal precedents prohibiting retaliation. See discussion in section 3 <u>Davis</u> v. <u>Lucent Technologies</u> and others.

10. Defendants MacKleish, Sherman and Griffin should be considered defacto employers. They meet all the standards as a defacto employer. They controlled hiring, they set their own fees and ordered themselves paid, they determined what state contracts or business should be pursued, forced staff to institute a gag order. The board was a puppet and made no decisions affecting the corporation without approval from these defendants including financial transactions, bylaw changes, and changes to the personnel practices. See EEOC v. Illinois, 69 F.3d 167, 171 (7th Cir. 1995) (Posner, C.J.) and Camacho v. Puerto Rico Ports Authority, No. 03-2113, (1st Cir. 2004).

11. Even if the court finds that GLMHRA and EMHC did not discriminate against the plaintiff, the fact that they acted on discriminatory evaluations and reports prepared by MacLeish, Sherman and Griffin is a violation of the Rehabilitation Act and ADA. In Cariglia v. Hertz, No. 02-2199, (1st 2004) the Court states, " The District of Columbia Circuit Court of Appeals ruled that 'an unfavorable employment decision resulting from inaccurate, discriminatorily-motivated evaluations by the employee's supervisors violates Title VII.' Even though the decision maker was completely free of animus. Stroller v. Marsh, 682 F.2d 971, 972 (DC Cir. 1092) ' When a supervisor... deliberately places an inaccurate, discriminatory evaluation into an employee's file, he intends to cause harm to the employee... The employer--that is, the organization as a whole—cannot escape Title VII liability simply because the final decision-maker was not personally motivated by discrimination. MacLeish and Sherman engaged in discriminatory behavior in their comments and reports to the board and by reviewing and sharing the plaintiff's counseling and health records. Griffin

11

continued the deception and preparation of false reports as well. GLMHRA and EMHC have to held accountable.

12.  Both defendants had exhibited discriminatory behavior toward a client in September and told board president, Claire Jackson, that I was endangering her, the board, staff and the agency if I did not expel this female mentally retarded woman with AIDS from GLMHRA residential and day programs. This action would have been a violation of the Fair Housing Act. and state and federal laws and I refused. Defendants asserted that she was having unprotected sex and was not informing her partners. I found these allegations to be untrue. The president came into my office and insisted that I expel this person and yelled and screamed at me. MacLeish also called me and insisted that I expel this person. I was put on paid leave shortly thereafter.

This is certainly a good example of MacLeish, Sherman and the president's propensity to discriminate but more importantly it demonstrates the influence that the defendants could have on a board member. Claire Jackson is an afro American woman and was head of the local chapter of the National Coalition Building Institute that has as its charter to fight discrimination. This action by her was totally out of character.

## CONCLUSION

Based on the foregoing, the plaintiff Albert W. Bleau Jr., respectfully requests that the Court deny defendants' motions for dismissal and summary judgment and in the alternative grant the plaintiff's motion for summary judgment.

Respectfully submitted,

_____
Albert W. Bleau Jr.

## CERTIFICATION OF SERVICE

I, Albert W Bleau Jr., hereby certify that on October 1, 2004, I served the foregoing by first class mail, postage pre-paid, upon the defendants' attorneys:

Garrick Cole
BBO No. 091340
Smith & Duggan LLP
Two Center Plaza
Boston, MA 02108-1906
(617) 248-1900

Donald K. Stern
BBO No. 479420
Bingham McCutchen LLP
101 Federal St.
Boston, MA 02110-1726
(617) 951-8250

David G. Thomas
BBO #640854
Allison K. Jones
BBO #654804
Greenberg Traurig, LLP
One International Place, 20th Floor
Boston, MA 02110
(617) 310-6000

Dated: 1, October 2004

_____
Albert W Bleau Jr
505 Paradise Rd. #208
Swampscott, MA 01907
Tel: (781) 962-2662
Fax: (207) 766-0007