UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALBERT WILLIAM BLEAU, JR., <br><br> Plaintiff, <br><br> v. <br><br> GREATER LYNN MENTAL HEALTH & RETARDATION ASSOCIATION, et al., <br><br> Defendants. | Civil Action No.: 04-10469REK |

### DEFENDANTS RODERICK MACLEISH, JR. AND ROBERT A. SHERMAN'S MOTION FOR LEAVE OF COURT TO FILE REPLY TO PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

Pursuant to Local Rule 7.1(B)(3), defendants Roderick MacLeish, Jr. and Robert A. Sherman (the "Defendants"), respectfully request leave of this Court to file a reply to Plaintiff's "Memorandum of Law in Opposition to Defendants Greater Lynn Mental Health & Retardation Association, Inc., Et Al., Motions to Dismiss and Motions for Summary Judgment" (Docket No. 26), in response to certain arguments raised and claims made by the Plaintiff therein. As grounds therefore, the Defendants assert that the reply, which is attached hereto, will assist the Court in making a fair and just determination with respect to the above-entitled matter. <u>The Plaintiff assents to the relief requested in this motion.</u>

WHEREFORE, for all of the foregoing reasons, and in the interests of justice, the Defendants respectfully request that this Court grant leave to file their reply, as attached hereto as **Exhibit A**.

>                               Respectfully submitted,
>
>                               RODERICK MACLEISH, JR. and ROBERT A. SHERMAN,
>
>                               By their attorney:
>
>                               _____
>                               David G. Thomas, BBO # 640854
>                               GREENBERG TRAURIG, LLP
>                               One International Place, 20th Floor
>                               Boston, MA  02110
>                               Tel:  (617) 310-6000
>                               Fax:  (617) 310-6001

Dated: November 19, 2004

### CERTIFICATION PURSUANT TO LOCAL RULE 7.1

I hereby certify that a good faith attempt to resolve or narrow the issues raised in the above motion, pursuant to Local Rule 7.1(A)(2), was made with plaintiff Albert W. Bleau, Jr., (*pro se*) on November 19, 2004, by telephone, and that the Plaintiff assents to the relief requested herein.

>                               _____
>                               David G. Thomas

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on  11/19/04

Case 1:04-cv-10469-WGY   Document 27   Filed 11/19/2004   Page 3 of 12

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ALBERT WILLIAM BLEAU, JR.,

    Plaintiff,

v.

GREATER LYNN MENTAL HEALTH &
RETARDATION ASSOCIATION, et al.,

    Defendants.

**Civil Action No.: 04-10469REK**

## DEFENDANTS RODERICK MACLEISH, JR. AND ROBERT A. SHERMAN'S REPLY TO PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

### INTRODUCTION

In his "Memorandum of Law in Opposition to Defendants Greater Lynn Mental Health & Retardation Association, Inc., Et Al., Motions to Dismiss and Motions for Summary Judgment" ("Opposing Memorandum"), the Plaintiff[1] spins a fanciful web of deceit snaring the Defendants, the EEOC, and even the Office of the Attorney General. Notwithstanding the viscous substance of his fallow protestations of alleged actions taken by GLMHRA, needless recriminations against MacLeish and Sherman, and various unfounded conspiracy theories worthy of an Oliver Stone movie, the Plaintiff's Complaint still fails to state a claim upon which relief may be granted. Simply stated, the Plaintiffs' claims against MacLeish and Sherman not only are time barred, but also have been released and discharged by the Plaintiff pursuant to a written general release. This Court should not be lulled into the sinuous tale spun by the Plaintiff to weave those claims and MacLeish and Sherman into this litigation.

---

[1] Terms defined in Defendants Roderick MacLeish, Jr. and Robert A. Sherman's Memorandum of Law in Support of Motion to Dismiss, dated May 7, 2004 ("Greenberg Memorandum"), shall have the same meaning in this reply without further definition unless otherwise noted.

STATEMENT OF ADDITIONAL RELEVANT FACTS

A.  **The Plaintiff's Complaint and Opposing Memorandum[2]**

In the Complaint, the Plaintiff chronicles the following allegations, in relevant part:

1.  his "perceived—alleged" disability and various alleged discriminatory acts based on that disability during the period from November 1999 through April 20, 2000,[3] as well as alleged discriminatory acts by GLMHRA and EMHC in "August—November 2003." Complaint ¶ 5 (sub-¶ 1).

2.  alleged discriminatory acts by MacLeish concerning a "drug test" and other alleged discriminatory acts related thereto by the "Defendants."[4] Complaint ¶ 5 (sub-¶ 2).

3.  alleged discriminatory acts by the "Defendants" relating to a "severance agreement."[5] Complaint ¶ 5 (sub-¶ 3).

4.  alleged discriminatory acts by MacLeish and Sherman from 1999 to, the very latest, May of 2000. Complaint ¶ 6 (sub-¶¶ 17-21, 24, and 35).[6]

5.  alleged discriminatory acts by the "Defendants" from November of 2000 to the filing of the Complaint. Complaint ¶¶ 5 (sub-¶4) and 6 (sub-¶¶ 23 and 43-45).[7]

---

[2] In the Opposing Memorandum, the Plaintiff (1) asserts that he "has submitted substantial documentation to support his request for summary judgment" and (2) urges this Court to "accept that RICO applies in this case." Opp. Mem. p. 2 and ¶ 1. Those two points deserve comment. First, the Plaintiff has not filed a motion for summary judgment or a cross-motion for summary judgment. To the extent the Plaintiff's court filings somehow are deemed a request for summary judgment, MacLeish and Sherman request discovery under Rule 56(f) of the Federal Rules of Civil Procedure. Second, the Plaintiff's Complaint does not bring any claims under the Racketeer Influenced and Corrupt Organizations (RICO) Act, Title 18, United States Code. See generally, Complaint.

[3] The Complaint is unclear as to which defendants committed the alleged discriminatory acts up through April 20, 2000.

[4] The Complaint is unclear as to the date of MacLeish's alleged discriminatory act and does not identify what defendants committed the other alleged acts. Without question, however, the alleged act attributed to MacLeish had to occur before May of 2000, when MacLeish was replaced as counsel. Complaint ¶ 6 (sub-¶ 18).

[5] The Complaint is unclear as to the date and which defendants committed the alleged discriminatory acts; however, without question, the alleged actors could not have been MacLeish and Sherman because the "severance agreement" was executed after they were replaced as counsel in May of 2000. Complaint ¶ 5 (sub-¶ 3); infra Statement of Additional Relevant Facts, Part B.

[6] Paragraph 6, subparagraph 21 of the Complaint references the date "January 21, 2001." By the context of that paragraph and the remainder of the Plaintiff's chronology, however, it is clear that the Plaintiff meant to write January 21, 2000. See Complaint, ¶ 6 (sub-¶¶ 21-22); see also, Opposing Memorandum p. 3 (although referring to the date as "January 200", making clear by context that the Plaintiff claims that the GLMHRA board allegedly voted for him to return to work in January of 2000). Nonetheless, even if the Plaintiff's alleged discriminatory acts by MacLeish and Sherman occurred on January 21, 2001, such acts would be time barred because the Plaintiff did not file his Complaint until March 8, 2004, over three years after the alleged acts. See Greenberg Memorandum, pp. 6-7.

[7] The Complaint is unclear as to which defendants committed the alleged discriminatory acts; however, without question, the alleged actors could not have been MacLeish and Sherman because they were replaced as counsel in May of 2000. Complaint ¶ 5 (sub-¶¶ 3 and 18); infra Statement of Additional Relevant Facts Part B.

2

Those claims are repeated, either verbatim or in substance, in the Opposing Memorandum. See generally, Opp. Mem. Also, in the Opposing Memorandum, the Plaintiff ostensibly claims that MacLeish and Sherman continued to discriminate against him because a document they prepared (which allegedly contained false information) allegedly was distributed by *others* after they were replaced as counsel for GLMHRA. See Opp. Mem. "Statement of Relevant Facts" ¶¶ 4, 6, 8, and 11.[8]

### B. The Separation Agreement and General Release

On November 13, 2000, the Plaintiff, GLMHRA and EMHC entered into a Separation Agreement and General Release. See Complaint, Attachment No. 30 ("Settlement Agreement and General Release"). Paragraph 4 of the Settlement Agreement and General Release provided as follows:

> In consideration for the execution of this Agreement by GLMHRA and EMHC and other consideration, the receipt and sufficiency of which are hereby acknowledged, Albert W. Bleau, Jr. (hereinafter the "Releasor"), does for himself, his agents, attorneys, successors, subrogees, heirs and assigns, *release and forever discharge Greater Lynn Mental Health and Retardation Association, Inc., Eastern Massachusetts Housing Corporation, Inc., their* divisions, programs, subsidiaries, affiliates, predecessors, successors, assigns, directors, officers, employees, former employees, representatives, *attorneys*, insurers, reinsurers and administrators ("Releasees"), *of and from any and all debts, actions, causes of action, suits, damages, expenses, claims for attorney's fees, and any and all claims, and liabilities whatsoever, of every name and nature, known or unknown, both in law and in equity, which the Releasor now has or ever has had against the said Releasees from the beginning of the world to the date of this General Release, including, but not limited to, those arising under the Age Discrimination in Employment Act, Title VII of the Civil Rights Acts of 1964, the Massachusetts Law Against Discrimination, Americans with Disabilities Act G.L. c. 151B, and other federal, state or local human, civil rights or other laws, rules and/or regulations, or any claim arising under common law, or any other action.*

---

[8] The Plaintiff also alleges that the Defendants "had the assistance" of various employees of the "State Attorney General's Office" and "others to be named to cover-up substantial conflicts of interest and to cover-up unethical and illegal activities." Complaint ¶ 6 (sub-¶45). Indeed, the Plaintiff goes so far as to infer impropriety against Attorney General Thomas Reilly and the EEOC, as well as infer that GLMHRA, EMHC, and Griffin somehow hastened the death of the Plaintiff's mentally retarded brother. Complaint ¶¶ 6 (sub-¶¶ 15 and 29-31) and 11 (sub-¶5).

3

> *Releasor further promises not to institute any charge, complaint, or lawsuit to challenge the validity of this General Release or the circumstances surrounding its execution.*

See Settlement Agreement and General Release, p. 2 (emphasis supplied).

## DISCUSSION

### I. THE PLAINTIFF CANNOT RESURRECT CLAIMS ALREADY DISCHARGED AGAINST MACLEISH AND SHERMAN BY A GENERAL RELEASE

The Plaintiff affirmatively released MacLeish and Sherman from any liability for the claims now brought before this Court. Under Massachusetts law, a party may enter into a contract releasing another party from any and all liability. See Sharon v. City of Newton, 437 Mass. 99, 105, 769 N.E.2d 738, 744 (2002). Massachusetts law strongly favors enforcing such contractual releases in the absence of fraud. See id.; Lee v. Allied Sports Assocs., Inc., 349 Mass. 544, 550-51, 209 N.E.2d 329, 333 (1965) (a party's mere signature on a release effectively releases the subject party from liability as a matter of law absent evidence of fraud); McGuire v. Lawrence Mfg. Co., 156 Mass. 324, 328, 31 N.E. 3, 4 (1892). As aptly stated over one hundred years ago by the Massachusetts Supreme Judicial Court:

> So far as we can see, it was an uncontroverted fact in the case that he was a man capable of acting for himself, and who understood the ordinary transactions of life. When such a man understandingly, and for a consideration, executes a written release, *it is a principle of law that his act discharges his cause of action; and not only is it a principle of law, but an important and wholesome one, which it is the right and duty of courts to state and enforce when the proper occasion arises.*

McGuire, 156 Mass. at 328, 31 N.E. at 4 (emphasis supplied). That principle is as venerable today as it was back in 1892[9] and unquestionably disposes of all of the Plaintiff's claims[10] against MacLeish and Sherman as a matter of law.

---

[9] See LeBlanc v. Friedman, 438 Mass. 592, 597-98, 781 N.E.2d 1283, 1287 (2003) (explaining that a general release disposes of "all claims and demands arising out of *any* transactions between the parties").

4

Undeniably, on November 13, 2000, the Plaintiff entered into the Separation Agreement and General Release, which affirmatively and expressly released, in particular, GLMHRA and its attorneys, i.e., MacLeish and Sherman, from any and all liability whatsoever "from the beginning of the world to the date of" the General Release. See Settlement Agreement and General Release at p. 2. The General Release even expressly released claims under the ADA and other federal civil rights laws and common law. Id. The Plaintiff actually attached the Settlement Agreement and General Release to the Complaint. Complaint, Attachment No. 30. As a result, the Plaintiff's claims, as they are based on affirmative conduct by MacLeish and Sherman prior to the execution of the Settlement Agreement, are discharged completely.

The Plaintiff has not and cannot rationally claim that he was not capable of acting for himself or did not understand the nature of the General Release when he signed the Settlement Agreement and General Release. Indeed, in addition to spending considerable effort in the Complaint and Opposing Memorandum asserting to this Court just how capable he was as GLMHRA's Executive Director, the Plaintiff also is litigating this case *pro se*, i.e, he is still acting in his "own behalf." See Black's Law Dictionary 1221 (6th ed. 1990) (defining "*pro se*"). Furthermore, nowhere in the Complaint or Opposing Memorandum does the Plaintiff allege or even make a whisper about any fraud incident to the Settlement Agreement and General Release. Consequently, the Plaintiff may not now challenge the nature or scope of the General Release (something which the Plaintiff actually expressly agreed not to do) or resurrect the discharged claims against MacLeish and Sherman.

---

[10] The Complaint does not expressly plead any common-law claims against MacLeish and Sherman, although MacLeish and Sherman note that part of GLMHRA's motion to dismiss or for summary judgment addressed the possible presence of common law claims. To the extent that the Complaint can be read to plead common law claims against MacLeish and Sherman, they incorporate by reference herein the arguments made by GLMHRA with respect to those claims.

The Plaintiff finds no safe harbor by claiming that GLMHRA allegedly breached the Settlement Agreement and General Release in part. A party to a contract may not simply take the spoils of a contract and void the contract thereafter when it is suitable if there exists a subsequent breach of that contract.[11] Rather, a party's remedy for a breach of another party's executory promise sounds in damages or injunctive relief, not treating all past promises as void. See Factory Realty Corp. v. Corbin-Homes Shoe Co., 312 Mass. 325, 329, 44 N.E.2d 671, 673 (1942); see also, Guadette v. Kelly, 7 Mass. App. Ct. 100, 104, 386 N.E.2d 737, 739 (1979) (termination of a contract did not nullify previously executed releases, which barred an employee's subsequent claim for failure to rehire); Cramer v. Metropolitan Sav. and Loan Ass'n, 401 Mich. 252, 261, 258 N.W.2d 20, 23 (1977); Archambo v. Lawyers Title Ins. Corp., 466 Mich. 402, 411-12, 646 N.W.2d 170, 176 (2002). The General Release executed by the Plaintiff is not an inchoate right subject to being unilaterally voided at the Plaintiff's whim and fancy. Therefore, even if GLMHRA breached the Separation Agreement and General Release in part, as the Plaintiff alleges, the General Release does not become "null and void" as the Plaintiff claims.[12]

## II.  THE PLAINTIFF'S ATTEMPT TO IMPOSE INDIVIDUAL LIABILITY ON MACLEISH AND SHERMAN AS *"DE FACTO"* EMPLOYERS FAILS AS A MATTER OF LAW

The Plaintiff may not whimsically turn MacLeish and Sherman, who were hired by GLMHRA as outside counsel, into his employer. The ADA defines employer, in relevant part, as "a person engaged in an industry affecting commerce who has 15 or more employees *for each*

---

[11] It is undisputed that GLMHRA paid the Plaintiff over $100,000 pursuant to the Settlement Agreement and General Release. The Plaintiff alleges that the entire agreement is void because GLMHRA later allegedly failed to make another payment of approximately $10,000.

[12] The Plaintiff's citation to United Rentals (North America), Inc. v. Keizer, 355 F.3d 399 (6th Cir. 2004) is misplaced. In United Rentals (North America), Inc, the Sixth Circuit, considering Michigan law and not Massachusetts law, addressed a dispute arising from an alleged breach of a non-competition agreement. See id. at 405-10. In that case, the Sixth Circuit did not find the agreement void or even discuss the subject. See generally, id.

6

***working day in each of 20 or more calendar weeks in the current or preceding calendar year***, and any agent of such person[.]" 42 U.S.C. § 12111(5)(A) (emphasis supplied). The Plaintiff baldly proclaims in his Complaint that MacLeish and Sherman "qualify under the definition of employers employing over fifteen individuals" and should be considered employers under the ADA and Rehabilitation Act because they allegedly "made all major decisions" for GLMHRA during the period from September 15, 1999 through January 1, 2000. Complaint ¶ 6 (sub-¶¶ 15 and 17). The Plaintiff does not and cannot allege that MacLeish and Sherman employed 15 or more employees for each working day during any calendar year. Id. That deficiency is fatal to the Plaintiff's claims against MacLeish and Sherman.[13]

Even so, allowing the Plaintiff to create individual liability by painting MacLeish and Sherman as "de facto" employers contradicts years of federal anti-discrimination jurisprudence. As introduced in the Greenberg Memorandum, it is clear that Congress did not intend to create individual liability for violating the ADA and the Rehabilitation Act. See Greenberg Memorandum, pp. 5-6. Liability under those statutes is vicarious, nothing more, nothing less. See id.; see also, Anonymous v. Legal Srvs. Corp., 932 F. Supp. 49, 50-51 (D.P.R. 1996) (dismissing claims in complaint seeking to impose individual liability on agents of an employer). MacLeish and Sherman were outside counsel to GLMHRA. Complaint ¶ 6 (sub-¶¶15-18). The Plaintiff does not cite to a single case imposing liability under the ADA and the Rehabilitation Act on outside counsel under the circumstances described in the Complaint.[14] As recognized by

---

[13] Similarly, the Plaintiff does not and cannot allege that either of MacLeish and Sherman were a "program or activity receiving Federal financial assistance[,]" which is the *sine qua non* to coverage under the Rehabilitation Act. 29 U.S.C. § 794(a); Leslie v. Hee Man Chie, 250 F.3d 47, 52 (1st Cir. 2001); Mitchell v. Massachusetts Dept. of Correction, 190 F. Supp. 2d 204, 213 (D. Mass. 2002).

[14] The cases cited by the Plaintiff are not persuasive. See E.E.O.C. v. State of Illinois, 69 F.3d 167, 171 (7th Cir. 1995) (discussing "integrated enterprise" doctrine under the ADEA and finding that the State of Illinois was *not* the "employer" of teachers working for local school districts even though the State exerted more control over the teachers than any other state employees or persons employed by local government); Camacho v. Puerto Rico Ports Authority, 369 F.3d 570, 574-78 (1st Cir. 2004) (discussing E.E.O.C. v. State of Illinois and finding that the Ports

7

District Court (Gorton, J.) in <u>Orell v. UMass. Memorial Med. Ctr., Inc.</u>, and based on "pervasive legal precedent," not even an Interim Director of an employer may be individually liable under federal anti-discrimination statutes as a matter of law. <u>See</u> 203 F. Supp. 2d 52, 64 (D. Mass. 2002) (reviewing applicable precedent). This Court should not be swayed by the Plaintiff's unsupported argument to the contrary.

### III.  THE PLAINTIFF CANNOT CURE HIS FAILURE TO EXHAUST HIS ADMINISTRATIVE REMEDIES OR FILE THIS LITIGATION BEFORE THE STATUTE OF LIMITATION PERIOD EXPIRED

In a effort to sanitize the legal consequences of failing to bring any charges against MacLeish and Sherman in either of his two EEOC complaints and filing this litigation approximately ten months after the relevant statute of limitations expired, the Plaintiff argues that (1) MacLeish and Sherman "engaged in continuous discrimination" because *others* allegedly "disseminated" a document authored by MacLeish and Sherman, which allegedly contained false statements and (2) the Plaintiff did bring charges against MacLeish and Sherman in his first EEOC Complaint because he did not know "the full extent of their activities" until after he filed it. <u>See</u> Opp. Mem., ¶¶ 4, 6, 8, 9 and 11. Regardless of the propriety of his bald factual claims, the Plaintiff's effort must fail because the undisputed fact is that the Plaintiff, to date, has not brought any charges against MacLeish and Sherman before the EEOC. In addition, the Plaintiff may not premise a continuing violation or toll the statute of limitations based on actions allegedly taken by persons or entities *other* than MacLeish and Sherman, especially after MacLeish and Sherman were replaced as counsel.[15] Otherwise, this Court would have to

---

Authority was not an "employer" under the ADEA). Even if MacLeish and Sherman were deemed the Plaintiff's "de facto" employers for the period from September 15, 1999 through January 1, 2000, as the Plaintiff alleges, it is undisputed that MacLeish and Sherman took no part in GLMHRA's subsequent decision not to re-hire the Plaintiff as Executive Director. Accordingly, even if the Plaintiff's "de facto" employer argument is correct, the Plaintiff still failed to file the Complaint before the statute of limitations expired on any claims against MacLeish and Sherman.
[15] The cases cited by the Plaintiff simply do not support that proposition.

8

conclude that GLMHRA and/or Griffin somehow were acting as MacLeish and Sherman's agents even though GLMHRA replaced them as counsel, which is something the Plaintiff does not even allege. In addition, a party need not appreciate the "full extent" of a potential defendant's wrongful acts for the statute of limitations to run. See Cigna Ins. Co. v. Oy Saunatec, Ltd., 241 F.3d 1, 11 and n.6 (1st Cir. 2001); Geo. Knight & Co., Inc. v. Watson Wyatt & Co., 170 F.3d 210, 214-15 (1st Cir. 1999). Accordingly, this Court must dismiss the Plaintiff's time-barred claims against MacLeish and Sherman.

### CONCLUSION

For the foregoing reasons, and for the reasons provided in (1) the Greenberg Memorandum, (2) GHMHRA's Memorandum of Law, dated May 24, 2004, and (3) Griffin's Memorandum of Law, dated May 24, 2004, which are incorporated by reference herein, this Court should grant MacLeish and Sherman's Motion to Dismiss in its entirety.

Respectfully submitted,

RODERICK MACLEISH, JR. and ROBERT A. SHERMAN,

By their attorney:

*/s/ David G. Thomas*
David G. Thomas, BBO # 640854
GREENBERG TRAURIG, LLP
One International Place, 20th Floor
Boston, MA 02110
Tel: (617) 310-6000
Fax: (617) 310-6001

Dated: November 19, 2004