UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Albert William Bleau, Jr., | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| | : | |
| vs. | : | Civil Action |
| | : | No. 04-10469(JLT)REK |
| | : | |
| Greater Lynn Mental Health | : | |
| & Retardation Association, Inc., | : | |
| et al., | : | |
| | : | |
| Defendants | : | |

## Memorandum Of Defendant Greater Lynn Mental Health & Retardation Association, Inc., In Support Of Its Motion For Summary Judgment

Defendant Greater Lynn Mental Health & Retardation Association, Inc., (Greater Lynn) submits this memorandum pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1 in support of its motion for summary judgment as to all of the remaining claims that plaintiff Albert William Bleau, Jr., (Mr. Bleau) asserts against Greater Lynn. These claims involve no genuine dispute of material fact, present only issues of law, and are thus appropriate for disposition under Rule 56.

## Introduction

Mr. Bleau alleges in his complaint that Greater Lynn discriminated against him on the basis of a "perceived" disability in violation of Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 (2000) (the ADA), and the Rehabilitation Act of 1973, 29 U.S.C. § 794 (2000) (the

2

Rehabilitation Act).  According to the complaint, Greater Lynn violated Mr. Bleau's rights under federal and state law by terminating his employment as the agency's executive director in the spring of 2000; retaliating against him following his filing of a complaint with the United States Equal Employment Opportunity Commission (EEOC) in October, 2000; and not re-hiring him as the agency's chief executive officer in the fall of 2003.  Mr. Bleau also alleges that Greater Lynn made defamatory remarks about him; breached an agreement that he had reached with Greater Lynn in November, 2000, following Greater Lynn's termination of his employment;[1] intentionally interfered with his advantageous business relationships; and, finally, that Greater Lynn violated the regulations of the Internal Revenue Service by "illegally ma[king] [defendant Eastern Massachusetts Housing Corporation] its subsidiary in February 2000."  Complaint ¶¶ 5-6, at 2-4.

The Court has dismissed all of the claims against Eastern Massachusetts Housing Corporation, the claim against Greater Lynn asserting intentional inference with business relationships, and the IRS-related claims.[2]  The Separation Agreement and General Release, Ex. 1, bars the majority of Mr. Bleau's remaining claims, and he has no reasonable expectation of demonstrating the trial worthiness of at least one essential element of each of the others.

_____

[1]  A copy of this agreement, entitled Separation Agreement and General Release, is attached to the complaint and, for convenience, to this memorandum (Exhibit 1).

[2]  Memorandum and Order, 8 December 2004.

## Summary Of Undisputed Material Facts

Mr. Bleau's claims against Greater Lynn arise out of events that occurred during and after his employment by Greater Lynn and defendant Eastern Massachusetts Housing Corporation (Eastern Mass.). Mr. Bleau served as Greater Lynn's executive director and in a similar capacity for Eastern Mass. Greater Lynn is a regional mental health agency; Eastern Mass. was, prior to its merger into Greater Lynn on 1 July 2003, an affiliate of Greater Lynn. Greater Lynn, a nonprofit corporation, provides mental health services to residents of Essex and Middlesex counties.

In October 2000, following the termination of his employment by Greater Lynn, Mr. Bleau filed a complaint against Greater Lynn with the EEOC (the first EEOC proceeding). Complaint ¶ 11, at 9. The parties reached an agreement, and the first EEOC proceeding settled the following month. See Complaint, Attachments 16, 30. The Separation Agreement and General Release, Ex. 1, provided that Greater Lynn would pay Mr. Bleau over $ 100,000 in the form of cash, insurance coverage for twelve months, an automobile, and up to $ 5,000 a year in education expenses for two years (to a maximum of $ 10,000). Mr. Bleau, in turn, agreed that,

> In consideration for the execution of this Agreement by GLMHRA and EMHC and other considera-tion . . . Albert W. Bleau, Jr., . . . releases and forever discharges Greater Lynn Mental Health and Retardation Association, Inc., . . . of and from any and all debts, actions, causes of action, suits, damages, expenses, claims for attorney's fees, and any and all claims, and liabilities whatsoever, of every name and nature, known or unknown, both in law and in equity, [that Mr. Bleau] has or ever has had against [Greater Lynn] from the beginning of the world to the date of this General Release, including, but not

4

limited to, those arising under the Age Discrimination
in Employment Act, Title VII of the Civil Rights Acts
of 1964, the Massachusetts Law Against Discrimination,
Americans with Disabilities Act[,] G. L. c. 151B, any
other federal, state or local human, civil rights, or
other laws, rules and/or regulations, or any claim
arising under common law, or any other action.

In October, 2003, Mr. Bleau filed another complaint against
Greater Lynn with the EEOC (the second EEOC proceeding).
Complaint ¶ 11, at 9.  The Commission found no basis for
Mr. Bleau's complaint and terminated the second EEOC proceeding
in early December, 2003.  Complaint, Attachments 1, 2.  Mr. Bleau
commenced this action in March, 2004.

## Legal Standards

Proceeding under Fed. R. Civ. P. 56, the Court should grant
Greater Lynn's motion for summary judgment since the
"pleadings . . . , together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
[Greater Lynn] is entitled to a judgment as a matter of law."
Fed. R. Civ. P. 56(c).  Summary judgment is designed "to pierce
the pleadings and to assess the proof in order to see whether
there is a genuine need for trial."  Mesnick v. Gen. Elec. Co.,
950 F.2d 816, 822 (1st Cir. 1991) (citations and internal quota-
tions omitted).  Greater Lynn's burden as the moving party is to
provide sufficient factual support for its motion, see Celotex v.
Catrett, 477 U.S. 317, 325 (1986); DeNovellis v. Shalala,
124 F.3d 298, 306 (1st Cir. 1997); in response, Mr. Bleau must
establish the existence of a genuine dispute of material fact
that requires a trial to resolve.  See Celotex, 477 U.S. at 324.

In other words, he must "demonstrate that '*every essential element* of [his] claim or defense is at least trialworthy'." <u>Bates</u> <u>v.</u> <u>Mackay</u>, 321 F. Supp.2d 173, 178 (2004) (<u>quoting</u> <u>Price</u> <u>v.</u> <u>Gen.</u> <u>Motors</u> <u>Corp</u>. 931 F.2d 162, 164 (1st Cir. 1991) (ital. in original)). As the following argument demonstrates, he is unable to do so.

### Argument

I.   Mr. Bleau's Claims Against Greater Lynn Based On Events That Occurred Prior To November 2000 Are Barred By The Settlement Agreement and General Release

A.   The Release Bars Mr. Bleau's Claims For Wrongful Termination

Paragraph four of the Settlement Agreement and General Release, reprinted above, precludes Mr. Bleau from asserting "any and all claims, and liabilities whatsoever, of every name and nature, known or unknown" that arise from circumstances predating its execution in November, 2000. Mr. Bleau nevertheless complains of his allegedly wrongful termination in April and September of that year.[3/] Complaint ¶ 4.

He may not do so. Under Massachusetts law, a general release is binding and enforceable according to its terms. <u>See</u>,

---

[3/] Specifically, Mr. Bleau alleges that Greater Lynn terminated his employment in order to, among other things, prevent him from exposing "unethical business practices, regulatory violations, [and] unauthorized expenditures" and that Greater Lynn "shared [his] medical records and 'perceived disability' with various board members and employees to gain the necessary support to have [him] terminated." Complaint ¶ 4; ¶ 6, at 7.

6

e.g., Naukeag Inn, Inc. v. Rideout, 351 Mass. 353, 356 (1966) ("a
general release, in terms as broad as those now before us, is to
be given effect, even if the parties did not have in mind all the
wrongs that existed at the time of the release."); cf. Shapiro v.
Am. Home Assurance Co., 616 F. Supp. 906, 920-21 (1985) (enforc-
ing general releases).  The Court should, therefore, determine
that the Settlement Agreement and General Release bars every
claim that Mr. Bleau asserts against Greater Lynn based upon
events that occurred prior to November, 2000, and enter judgment
accordingly for Greater Lynn.

> B.    Mr. Bleau Is Bound By Certain Promises That
>       He Made In The Settlement Agreement And
>       General Release

Mr. Bleau alleges that Greater Lynn has breached the
Settlement Agreement and General Release[4/] and appears to seek
rescission of the agreement so that he might pursue those claims
against Greater Lynn that, as just mentioned, are comprehensively
barred.  The equitable remedy of rescission is not, however,

-------------------------------------------------------------

[4/]    Paragraph 5(C) provides that Greater Lynn will

> [f]or a period ending two years after execution of this
> Agreement . . . pay an amount for Mr. Bleau's enroll-
> ment in a program or course of training at an accredit-
> ed college of Mr. Bleau's choice, or any training
> course leading to licensing or certification.  The
> total amount to be paid pursuant to this paragraph
> shall not exceed $ 5,000 in each year (a total of up to
> $ 10,000).  Payments made pursuant to this paragraph
> shall be made directly to the college and not to
> Mr. Bleau.

As Mr. Bleau alleges, Greater Lynn has not made any payment under
this paragraph.  Greater Lynn assumes for the purposes of its
motion only that its non-payment of this benefit might constitute
breach.

7

available for breach of contract where the remedy at law,
damages, would be adequate and complete.  See Barry v. Frankini,
287 Mass. 196, 199 (1934) ("Ordinarily equity will not set aside
a contract at the suit of a party thereto on the sole ground of
non-performance by the other party of one of his agreements
therein contained"); Runkle v. Burrage, 202 Mass. 89, 99 (1909)
("nothing less than conduct that amounts to an abrogation of the
contract, or that goes to the essence of it, or takes away its
foundation, can be made a ground for rescission of it by the
other party").  "Restitution as a remedy for breach is therefore
limited to cases in which the injured party has a claim for
damages for total breach . . . . If the claim is only one for
damages for partial breach, the injured party's remaining duties
are not discharged, and restitution is not available as an
alternative."  E. Allan Farnsworth, Contracts § 12.19, at 947
(2d ed. 1990).[5/]  Mr. Bleau's sole remedy for Greater Lynn's
breach, if proved, would be at law for the usual "benefit of the
bargain" contract damages, i.e., the $ 10,000 sum that he claims
that Greater Lynn has failed to pay.  See, e.g., VMark Software
v. EMC Corp., 37 Mass. App. Ct. 610, 611 n.2 (1994) ("The long-
established general rule for breach of contract recovery in
Massachusetts is that the wronged party should receive the

---

[5/]  While rescission may be an appropriate remedy on grounds
of mistake, see Long v. Athol, 196 Mass. 497, 503-08 (1907),
fraud, see Ginn v. Almy, 212 Mass. 486, 493 (1912), misrepresent-
ation, see Enterprises, Inc., v. Cardinale, 331 Mass. 244, 246
(1954), or total failure of consideration, see Vincent v. Torrey,
11 Mass. App. Ct. 463, 467 (1981), none of those special circum-
stances is alleged here.

benefit of his bargain, i.e., be placed in the same position as if the contract had been performed.").

Even were rescission available, Mr. Bleau has not met its prerequisites. "The primary purpose of an action for rescission is to place the plaintiff in status quo. Consequently, the plaintiff, as a condition precedent to equitable relief, must offer to return any consideration received by him under the transaction sought to be rescinded." J. Nolan & L. Sartorio, 31 Mass. Practice Series, Equitable Remedies § 403, at 545; see also Ginn v. Almy, 212 Mass. 486, 493 (1912); Farnsworth, supra, § 12.19, at 948. Mr. Bleau has neither tendered nor offered in his complaint to return the $ 100,000 in cash and other benefits that he received in consideration for releasing his claims. Indeed, quite inconsistently with an action seeking rescission, he continues to seek to enforce the Settlement Agreement and General Release. See Complaint ¶ 13, at 11.

He who seeks equity must do equity. E.g., Pitts v. Halifax Country Club, Inc., 19 Mass. App. Ct. 525, 534 (1985). Mr. Bleau may not rescind the Settlement Agreement and General Release: his legal remedies are adequate, and, in any event, he has not acted equitably. Therefore, all of his claims against Greater Lynn that accrued prior to November, 2000, are barred.

9

II.  Mr. Bleau Has No Reasonable Expectation Of
     Demonstrating The Trialworthiness Of At Least One
     Essential Element Of Each Of His Remaining Post-
     Release Claims

Mr. Bleau's remaining claims, i.e., those that the Court has not ordered dismissed and those that accrued after the parties executed the Settlement Agreement and General Release, can be grouped into three categories.  First, Mr. Bleau alleges that Greater Lynn retaliated against him following the first EEOC proceeding in October 2000; second, he asserts that agency personnel made defamatory remarks about him; and, third, he complains that Greater Lynn's board of directors did not re-hire him as the agency's chief executive officer in the fall of 2003.[6/]  As to each of these putative claims, Mr. Bleau's complaint does not allege sufficient facts to demonstrate the need for trial.

A.  Failure To Re-hire

The ADA prohibits, generally, discrimination in employment against qualified individuals with disabilities.  42 U.S.C. § 12112(a) (2000).  To establish a claim of employment discrimination, an individual must show not only that he is disabled within the meaning of the ADA, but also that he is qualified to perform the essential functions of the job in question and that his employer took adverse employment action against him on the basis of his disability.  E.g., Bailey v. Georgia-Pacific Corp.,

---

[6/]  While Mr. Bleau does not explicitly state claims for defamation or retaliation in his compliant, the Court might construe his allegations as an effort to do so.  Even when viewed in the most favorable light, however, Mr. Bleau's complaint remains mottled.

10

306 F.3d 1162, 1166 (1st Cir. 2002).  The failure to hire (or re-hire) a qualified disabled person is an adverse employment action that can be actionable under the statute.  See 42 U.S.C. § 12112(a).  An individual is disabled within the meaning of the ADA if he has

> (1)  a physical or mental impairment that substantially limits one or more of the major life activities;
>
> (2)  a record of such an impairment; or
>
> (3)  been regarded as having such an impairment.

See 42 U.S.C. § 12102(2).  Mr. Bleau alleges only that Greater Lynn "perceived," or regarded, him as disabled.

    To prove, in turn, that Greater Lynn regarded him as disabled, Mr. Bleau must show that Greater Lynn

> (1)  mistakenly believed that he had a physical impairment that substantially limits a major life activity; or
>
> (2)  mistakenly believed that an actual, nonlimiting impairment substantially limits a major life activity.

See Sullivan v. Neiman Marcus Group, Inc., 358 F.3d 110, 117 (1st Cir. 2004) (citing Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999)).  Nowhere in his complaint does Mr. Bleau allege the disability that Greater Lynn regarded him as having or his major life activity that the disability limits. Although he makes general statements about an "alleged drug addiction and alcoholism," Complaint ¶ 4, and asserts that Greater Lynn shared information about his "perceived disability" with board members and employees, Complaint ¶ 6, at 7, the exact nature of his "perceived disability" remains unclear.

Taken most favorably to him, Mr. Bleau's allegations appear to amount to the claim that Greater Lynn did not re-hire him in the fall of 2003 because the agency regarded him as an alcoholic or drug addict.  Mr. Bleau does not allege, however, that the agency believed that alcoholism or drug addiction substantially limited a major life activity of his, although this belief is an element of the claim.  Specifically, Mr. Bleau must prove that Greater Lynn perceived him as unable "to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities."  29 C.F.R. § 1630.2(j)(3)(i)(2002); see Bailey, 306 F.3d at 1169 (affirming summary judgment for employer where plaintiff failed to adduce any evidence that employer thought plaintiff was unfit to perform either a class or broad range of jobs).  What Mr. Bleau does not allege he may be taken as unable to prove.  The Court should therefore regard his employment discrimination claim as insufficient as a matter of law.[7/]

B.   Retaliation

To succeed on a claim of retaliation, Mr. Bleau would have to prove that he engaged in conduct protected by the ADA, that he suffered an adverse employment action, and that there was a causal connection between his conduct and that adverse action. See Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 177 (1st Cir. 2003)

---

[7/]  While Greater Lynn argues this point in the context of post-release events, it would be equally applicable to discrimination claims based upon pre-release circumstances were those claims not barred.

(limning elements of retaliation claim).[8]  An adverse employment action affects the terms, conditions, or privileges of one's employment.  29 C.F.R. § 1630.4; <u>Davis</u> <u>v.</u> <u>Emery</u> <u>Worldwide</u> <u>Corp.</u>, 267 F. Supp.2d 109, 124-26 (D. Me. 2003).

Mr. Bleau alleges three specific acts that might be considered retaliatory:  (1) Greater Lynn's failure to issue a letter, Complaint ¶ 5, at 2;[9] (2) a comment made to a former Greater Lynn employee by a third party that she had heard (from a fourth party) that Mr. Bleau had stolen retirement money, Complaint ¶ 6, at 6; and (3) Greater Lynn's requirement that Mr. Bleau communicate with the agency through its attorney, Complaint ¶ 6, at 7.  None of these alleged acts rises to the level of an adverse employment action.  <u>See</u>, <u>e.g.</u>, <u>Davis</u>, 267 F. Supp.2d at 124-26 (various acts of employer, such as rescinding use of company car and not posting internal job opening, were not adverse employment actions); <u>Steffes</u> <u>v.</u> <u>Stepan</u> <u>Co.</u>, 144 F.3d 1070, 1077 (7th Cir. 1998) (former employer's call to new employer disclosing lawsuit and medical restrictions was not adverse employment action because it was taken on advice of attorney during course of litigation).  Indeed, they are not employment actions at all, <u>see</u> <u>EEOC</u> <u>v.</u> <u>R.J.</u> <u>Gallagher</u> <u>Co.</u>,

---

[8]  The only protected conduct that Mr. Bleau alleges is the filing of his EEOC complaints.  See Complaint ¶ 5, at 3.

[9]  Paragraph two of the Settlement Agreement and General Release provides that "[Greater Lynn] shall issue a letter, in a form attached as Exhibit A, informing employees, consumers, and friends of [Greater Lynn] that Mr. Bleau has resigned his employment with [Greater Lynn] to pursue other interests."

181 F.3d 645, 657 (5th Cir. 1999) (filing of lawsuit cannot be adverse employment action because it is not an employment action), but either legitimate business actions or unattributed gossip.  See Steffes, 144 F.3d at 1077 (act served legitimate business purpose); Day v. City of Providence, 338 F. Supp.2d 310, 316 (D.R.I. 2004) (inadmissible hearsay cannot be considered in assessing plaintiff's prima facie case).  In addition, Mr. Bleau has not alleged facts tending to show that the acts of which he complains are causally related to his EEOC proceedings.  Cf. Calero-Cerezo v. United States Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004) (although mere temporal proximity may be prima facie evidence of causality, it must be "very close"; one month between notice of suit and first incident was sufficient).  Because he cannot demonstrate the trialworthiness of essential elements of his retaliation claim, the Court should grant summary judgment in Greater Lynn's favor.

    C.   Defamation

     The elements of a claim for defamation under Massachusetts law are (a) a false and defamatory statement concerning another; (b) its unprivileged publication to a third party; (c) fault amounting to negligence on the part of the publisher; and, in some cases, (d) the existence of special harm caused by the pub-lication.  See McAvoy v. Shufrin, 401 Mass. 593, 597-98 (1988)

(listing elements and citing Restatement (Second) of Torts § 558 (1977)).[10]/

As an initial matter, Mr. Bleau's complaint does not allege that Greater Lynn made a statement that could be considered defamatory after November 2000.  Further, the complaint includes only vague allegations to the effect that Greater Lynn made oral statements to third parties.  Greater Lynn is entitled to know, however, the precise words that Mr. Bleau claims that the agency used to defame him.  As this Court has observed in other circumstances, the complaint "lacks any allegation of sufficiently specific facts that could serve as the foundation for plaintiff's cause[] of action." Chiara v. Dizoglio, 81 F. Supp.2d 242, 248-49 (D. Mass. 2000) (dismissing defamation claims for failure to allege sufficient specific facts), aff'd 248 F.3d 1126 (1st Cir. 2001).

For example, Mr. Bleau alleges that unnamed persons at Greater Lynn shared his medical and therapy records with unnamed third parties.  See Complaint 2, 6, 7.  The allegations are non-specific as to time and circumstances; most importantly, Mr. Bleau does not allege, and has no reasonable expectation of proving at trial, that his records contained false information. See Ravnikar v. Bogojavlensky, 438 Mass. 627, 630 (2003) (defamatory statement must, with limited exception not relevant

---

[10]/   No showing of special harm is required where the statement may prejudice the plaintiff's profession or business.  See Ravnikar v. Bogojavlensky, 438 Mass. 627, 630 (2003).

here, be false).  These facts, even taken as true, do not state a claim for defamation.

Mr. Bleau also alleges that Greater Lynn "circulated rumors in the community" that he was a drug addict and an alcoholic and "fabricated statements" that he was mentally unstable, unfit to lead the agency, and had mismanaged Greater Lynn's self-insurance plans.  See Complaint 2, 8.  Again, Mr. Bleau has not alleged who made the alleged statements, to whom they were published, or when they were made.

Mr. Bleau's remaining allegation refers to a comment to an unnamed former Greater Lynn employee by a third party that the third party had heard that Mr. Bleau had stolen retirement money from Greater Lynn employees.  This recounting involves triple hearsay, see Day v. City of Providence, 338 F. Supp.2d at 316 (inadmissible hearsay cannot be considered in assessing plain-tiff's prima facie case), and Mr. Bleau has no reasonable ex-pectation of producing admissible evidence at trial that such a statement was made, much less that Greater Lynn made it.

16

**Conclusion**

For the reasons set forth above, the Court should allow Greater Lynn's motion for summary judgment.

by its attorneys,

s/ Garrick F. Cole

_____
Garrick F. Cole
BBO No. 091340
Christina Schenk-Hargrove
BBO No. 645164

Smith & Duggan LLP
Two Center Plaza, Suite 620
Boston, Massachusetts 02108-1906
(617) 248-1900

Dated:  8 February 2005

CERTIFICATE OF SERVICE
I hereby certify that a true copy of
the above document was served upon the
attorney of record for each other party by
mail on _____

_____

Exhibit 1

# SEPARATION AGREEMENT AND GENERAL RELEASE

This Separation Agreement and General Release ("Agreement") is entered into by and between Albert W. Bleau, Jr. of Swampscott, MA ("Mr. Bleau"), on the one hand, and Greater Lynn Mental Health and Retardation Association, Inc., a Massachusetts not-for-profit corporation having its principal place of business in Lynn, MA ("GLMHRA") and Eastern Massachusetts Housing Corporation, Inc., a Massachusetts not-for profit corporation having its principal place of business in Lynn, MA ("EMHC"), on the other hand. For purposes of convenience, GLMHRA and EMHC are sometimes referred to jointly in this Agreement as "the Corporations".

WHEREAS, Mr. Bleau has been employed by the Corporations, most recently as their Executive Director; and

WHEREAS, Mr. Bleau and the Corporations wish to establish the means to mutually terminate the employment relationship, and to resolve any and all disputes between them

THEREFORE, It is agreed as follows:

1. The parties understand and agree that the entering into this Agreement does not constitute an admission by GLMHRA, EMHC, or their respective directors, officers, agents and employees, that they acted wrongfully toward Mr. Bleau or violated his rights in any way, and the Corporations expressly denies any such violation.

2. Mr. Bleau's employment with GLMHRA terminated effective September 8, 2000. His employment with EMHC will terminate effective November 10, 2000. Mr. Bleau shall be permitted to submit a letter of resignation, if he so chooses. The parties further agree that the Corporations shall issue a letter, in the form attached as Exhibit A, informing employees, consumers and friends of the Corporations that Mr. Bleau has resigned his employment with the Corporations to pursue other interests.

3. A. Mr. Bleau acknowledges and agrees that, as a result of his employment with the Corporations, he has obtained knowledge of proprietary and confidential information, including but not limited to information as to the business and operations of the Corporations, as well as information as to the individuals for whom GLMHRA and/or EMHC provide services. Mr. Bleau agrees that he will keep such information confidential, and that he shall promptly return to the Corporations any and all documents in his possession which contain such information, or which otherwise constitute the property of either GLMHRA or EMHC.

     B. The Corporations agree to return to Mr. Bleau his personnel records and files, including training files.

03/12/2004  01:49    7815922586            BOB STEARNS                              PAGE  06

NOV. 3.2000  4:59PM    MORGAN, BROWN&JOY                          NO.789   P.3/3

4.    In consideration for the execution of this Agreement by GLMHRA and EMHC and other consideration, the receipt and sufficiency of which are hereby acknowledged, Albert W. Bleau, Jr. (hereinafter the "Releasor"), does for himself, his agents, attorneys, successors, subrogees, heirs and assigns, release and forever discharge Greater Lynn Mental Health and Retardation Association, Inc., Eastern Massachusetts Housing Corporation, Inc., their divisions, programs, subsidiaries, affiliates, predecessors, successors, assigns, directors, officers, employees, former employees, representatives, attorneys, insurers, reinsurers and administrators ("Releasees"), of and from any and all debts, actions, causes of action, suits, damages, expenses, claims for attorney's fees, and any and all claims, and liabilities whatsoever, of every name and nature, known or unknown, both in law and in equity, which the Releasor now has or ever has had against the said Releasees from the beginning of the world to the date of this General Release, including, but not limited to, those arising under the Age Discrimination in Employment Act, Title VII of the Civil Rights Acts of 1964,  the Massachusetts Law Against Discrimination, Americans with Disabilities Act G. L. c. 151B, any other federal, state or local human, civil rights or other  laws, rules and/or regulations, or any claim arising under common law, or any other action.

Releasor further promises not to institute any charge, complaint, or lawsuit to challenge the validity of this General Release or the circumstances surrounding its execution.

5.    In exchange for Mr. Bleau's execution of this Agreement, GLMHRA and EMHC agree to the following:

A.    In recognition of his years of service to the Corporations, Mr. Bleau shall, within forty eight hours of complete execution of this Agreement, and approval by the Boards of Directors of the Corporations, be paid the amount of Ninety-five Thousand Two Hundred Dollars ($84,300.00), less required withholdings.  Mr. Bleau shall be eligible for continued insurance coverage at the rate applicable to GLMHRA Associates for a period of 12 months, totaling $10,900.00.

B.    Mr. Bleau has in his possession an automobile which has been provided to him by the Corporations for the purposes of his providing services to the Corporations.  Upon execution of this Agreement, the Corporations agree to transfer title of said automobile, which the parties acknowledge has a fair market value of Twenty One Thousand Six Hundred Dollars ($21,6000), to Mr. Bleau, at no cost. However, Mr. Bleau shall be responsible for any sales tax imposed as a result of such transfer, and upon transfer of title he shall be responsible for all taxes, fees and costs (including, but not limited to insurance) associated with said vehicle.

C.    For a period ending  two years after execution of this Agreement, the Corporations will pay an amount  for Mr. Bleau's enrollment in a program or course of training at an accredited college  of Mr. Bleau's choice, or any training course leading to licensing or certification.  The total amount to be paid pursuant to this paragraph shall not exceed $5,000 in each year (a total of up to $10,000). Payments made pursuant to this paragraph shall be made directly to the college and not to Mr. Bleau.

2

03/12/2004  01:49   7815922586      BOB STEARNS                        PAGE  07
NOV. 2.2008  4:56PM    HURGHN. BROWN&JOY                            NO.761    P.2/2

D.    Mr. Bleau shall retain any right he may have under the by-laws of the
Corporations to indemnification, for legal costs or otherwise, for events occurring while he served
as an officer and employee of the Corporations. Any such right to indemnity shall be subject to all
conditions and limitations of said by-laws, and state law.

6.    Mr. Bleau acknowledges that he is indebted to GLMHRA in the amount of
$13,918.21, as a result of loans made to him by GLMHRA. Mr. Bleau authorizes and agrees that
GLMHRA shall be permitted to deduct this amount from amounts due him pursuant to a deferred
compensation agreement originally dated January 1, 1987, and most recently amended as of July 1,
1995. The net amount (i.e., the amount contained in his deferred compensation account less
$13,918.21) shall be paid to Mr. Bleau within thirty days of execution of this Agreement.

The parties acknowledge and agree that the deduction of the amount of $13,918.21 is being
made for the convenience of both parties, to simplify the means by which the various amounts due
Mr. Bleau and GLMHRA respectively may be paid. The parties further agree that such deduction
shall not be deemed an assignment or transfer of Mr. Bleau's right to receive payment under the
deferred compensation plan, within the meaning of paragraph (9) of the plan (as amended July 1,
1995).

7.    Mr. Bleau agrees to keep strictly confidential and not to disclose or discuss the
terms and circumstances of this Agreement to anyone except his immediate family, attorney,
medical providers and if necessary, accountant or financial advisor with the understanding that those
parties shall keep such information confidential. Mr. Bleau further agrees that he shall not portray
in a false way or disparage the professional reputation of the Corporations, their directors, managers
or employees. The Corporations also agree not to portray in a false way or disparage the professional
reputation of Mr. Bleau. This paragraph shall not prohibit either party to this Agreement from
providing truthful testimony in response to a subpoena, or other lawful process, or in any judicial or
other legal proceeding.

Breach of this paragraph by either party shall cause the other party immediate and irreparable
injury and shall entitle such party to any and all remedies available under the law, including but not
limited to injunctive relief.

8.    Mr. Bleau agrees, within forty eight hours of executing this Agreement, to withdraw any
and all charges, complaints or other actions he has filed or brought against the Corporations,
including, but not limited to the charge filed against GLMHRA with the  Equal Employment
Opportunity Commission.

9.    The parties agree that this Settlement Agreement, with its attachments, is a fully
integrated document and constitutes the entire agreement between them. The parties expressly
disclaim reliance on any representations, written or oral, other than those contained in this document.

3

10.     Mr. Bleau represents and agrees: (a) that he has thoroughly reviewed all aspects of this Agreement; (b) that he has been advised to and in fact has had the Agreement reviewed by his attorneys; (c) that he has read and fully understands all of the provisions of this Agreement and is voluntarily entering into this Agreement; and (d) that he has been given a reasonable period of time to consider this Agreement.

11.     Mr. Bleau represents and warrants that no other person or entity has or had any interest in any claims, actions or causes of action for damages or other relief referred to in this Agreement; that he has the sole and exclusive authority to execute this Agreement and to accept the promises, representations and warranties specified in it; and that he has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, actions or causes of action for damages or other relief referred to in this Agreement or in the actions set forth above.

12.     This Agreement shall be governed and interpreted in accordance with the laws of the Commonwealth of Massachusetts. Should any provision of the Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the Release language, such provision shall immediately become null and void, leaving the remainder of this Agreement and the release in full force and effect.

13.     This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and all of their respective heirs, executors, administrators, representatives, subsidiaries, affiliates, successors and assigns.

14.     This Agreement shall be executed in two or more signature counterparts, each of which shall constitute an original, but all of which, taken together, shall constitute but one and the same instrument. This Agreement shall be effective as of the date the last signature is affixed hereon.

15.     This Agreement shall take effect as a sealed instrument.

16.     This Agreement shall not be binding upon the Corporations unless and until it has been agreed to by the Board of Directors of both GLMHRA and EMHC, and executed by duly-authorized agent(s) of each Corporation. Mr. Bleau acknowledges and understands that this Agreement will not be presented to the Board of Directors until it is executed by him.

4

**PLEASE READ CAREFULLY. THIS AGREEMENT CONTAINS A RELEASE OF KNOWN AND UNKNOWN CLAIMS.**

SIGNED AND SEALED:

_(signature)_

Albert W. Bleau, Jr.

Dated: 11/6/00

GREATER LYNN MENTAL HEALTH AND
RETARDATION ASSOCIATION, INC.

By _(signature)_

Dated: 11/13/10

EASTERN MASSACHUSETTS
HOUSING CORPORATION, INC.

By _(signature)_

Dated: 11/10/10

5