# EXHIBIT 1

Case 1:04-cv-10469-WGY   Document 48-2   Filed 04/20/2005   Page 1 of 11



Not Reported in F.Supp.2d  
2002 WL 1065618 (C.D.Cal.)  
(Cite as: 2002 WL 1065618 (C.D.Cal.))

Page 1

▷

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, C.D. California.
K. WALKER, Plaintiff,
v.
Daryl F. GATES, et al., Defendants.
No. CV 01-10904GAF(PJWX).

May 28, 2002.

Stephen Yagman, Kathryn S. Bloomfield Marion R. Yagman, Yagman & Yagman & Reichmann & Bloomfield, Venice Beach, CA for plaintiff.

Paul J. Winnemore, Deputy City Attorney, Rodell R. Fick, Deputy City Attorney, Rockard J. Delgadillo, City Attorney, Los Angeles, CA for defendants.

ORDER RE: DEFENDANTS' MOTIONS TO DISMISS
FEESS, J.

I.
INTRODUCTION

*1 This is an action for damages and injunctive relief brought pursuant to 42 U.S.C. § 1983 ("section 1983") and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"). Plaintiff K. Walker alleges that Los Angeles Police Department ("LAPD") officers stopped his vehicle and arrested him without probable cause on August 2, 2001. The officers also allegedly entered and searched Walker's home without justification on the same day.

Currently before the Court are five motions to dismiss filed by: (1) former LAPD Chief Daryl Gates; (2) former LAPD Chief Bernard Parks; (3) former Los Angeles City Council member Zev Yaroslavsky; (4) former Los Angeles Police Commissioner Gerald Chaleff; and (5) LAPD officer John Strasner. Each defendant contends that various portions of plaintiff's complaint must be dismissed for failure to state a claim.

After reviewing the papers submitted by the parties and hearing argument from counsel, the Court concludes that the motions should be GRANTED IN PART AND DENIED IN PART as described below.

II.
FACTUAL BACKGROUND
A. *Allegations in the Complaint*

On or about August 2, 2001, LAPD officers stopped Walker's vehicle, arrested him and transported him to a police station. [FN1] (Complaint at ¶¶ 16- 16(d)). There was no legal basis for the stop or the arrest. (*Id.*). [FN2]

> FN1. For purposes of deciding these motions, the Court accepts all of Walker's factual allegations, and any inferences which can reasonably be drawn from them, as true. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 338 (9th Cir.1996).
>
> FN2. The complaint also alleges that the officers detained plaintiff without legal justification on the same date. (Complaint at ¶ 16(e)-(f)). At the hearing on these motions, plaintiff's counsel indicated that the detention was part of the same encounter that led to plaintiff's arrest.

On the same date, LAPD officers entered and searched Walker's home. (*Id.* at ¶¶ 16(g)-(k)). There was no legal basis for the entry or the search. (*Id.*).

The officers took each of these actions against Walker because he is African-American. (Complaint at ¶ 16(k)). The complaint does not specify which LAPD officers took which actions, but three officers have been sued by name: officers Strasner, Robinson and Bragg. (*Id.* at ¶ 4).

B. *Claims and Parties*

Walker's complaint includes eight claims for relief pled against 37 individual defendants. Walker has also sued the City of Los Angeles by naming multiple defendants in their official capacities. Walker seeks to represent a class of similarly-situated individuals by certifying this case as a class action.

Plaintiff's first six claims are brought pursuant to section

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
2002 WL 1065618 (C.D.Cal.)
**(Cite as: 2002 WL 1065618 (C.D.Cal.))**

Page 2

1983. The first claim alleges the defendants violated his constitutional rights. The second alleges the defendants conspired to do so. The third and fourth claims attack various policies, practices and procedures which allegedly contributed to plaintiff's injuries. The fifth and sixth claims seek declaratory and injunctive relief. The last two claims allege violations of RICO.

The defendants include the three former chiefs of the LAPD, [FN3] current and former members of the Los Angeles City Council, [FN4] current and former members of the Los Angeles Police Commission [FN5] and three LAPD officers. [FN6] Five of the defendants have moved to dismiss.

> FN3. Daryl Gates, Willie Williams and Bernard Parks. At the time this action was filed, Bernard Parks was the chief of police.
>
> FN4. Richard Alarcon, Richard Alatorre, Hal Bernson, Marvin Braude, Laura Chick, Ruth Galanter, Mike Hemandez, Nate Holden, Mark Ridley-Thomas, Joel Wachs, Gloria Molina, Michael Woo and Zev Yaroslavsky.
>
> FN5. Herbert Boeckmann, Gerald Chaleff, Rochelle De La Rocha, Raymond Fisher, Dean Hansell, Deirdre Hill, T. Warren Jackson, Melanie Lomax, Art Mattox, Gary Greenbaum, Enrique Hemandez, Barbara Schlei, Robert Talcott, Reva Tooley, Robert Weil, Stanley Sheinbaum, Michael Yamaki and Stephen Yslas.
>
> FN6. Sergeant Bragg, first name unknown Strasner (badge no. 35664), and first name unknown Robinson (badge no. 30965).

### III.
### ANALYSIS

A. *Standards for Evaluating Motions to Dismiss Under Rule 12(b)(6)*

*2 A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. A claim may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957); *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 338 (9th Cir.1996).

In deciding a Rule 12(b)(6) motion, all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them. *Cahill,* 80 F.3d at 338. "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 923 (9th Cir.2001). Dismissal is proper where there is no cognizable legal theory pled or an absence of sufficient facts alleged to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988).

B. *Section 1983 Claims*

1. First Claim for Relief (Non Conspiracy Claim)

Plaintiff's first claim alleges that all defendants are liable for violating plaintiff's Fourth and Fourteenth Amendment rights. (Complaint at ¶ 18). Defendants Gates, Parks, Chaleff and Yaroslavsky seek to dismiss this claim.

a. Gates

Daryl Gates was chief of police from 1978 until 1992. Walker has sued Gates in his individual capacity. Because he was no longer chief of police at the time of Walker's arrest, Gates contends that he cannot be held personally liable for any misconduct that occurred. Gates also argues that "policy" claims can only be brought against individuals in their official capacities. The Court disagrees with both contentions.

A public official responsible for the creation or implementation of a policy that causes a constitutional violation may be subject to individual liability under section 1983. *Ruvalcaba v. City of Los Angeles,* 167 F.3d 514, 524 (9th Cir.1999) ("We remand for a determination whether the City, and Gates in his official and individual capacities, adopted and maintained a policy of training and using police dogs in an unreasonable manner.... Ruvalcaba is free on remand ... to pursue both nominal and punitive damages

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
2002 WL 1065618 (C.D.Cal.)
**(Cite as: 2002 WL 1065618 (C.D.Cal.))**

Page 3

against Gates in his individual capacity...."); *Redman v. County of San Diego*, 942 F.2d 1435, 1447 (9th Cir.1991) ("Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." (Internal quotations and citation omitted)); *Warner v. City of Terre Haute*, 30 F.Supp.2d 1107, 1124 (S.D.Ind.1998) ("When ... [a public official] is ... the final policymaker and his acts directly caused the alleged constitutional harm, it follows that both the municipality and the individual actor could be held liable."). Supervisors also may be liable under section 1983 if they set in motion a series of acts by others which they knew or reasonably should have known, would cause others to inflict the constitutional injury complained of. *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir.1991) (applying rule to case involving Chief Gates).

*3 In this case, Walker has stated a viable claim against the City of Los Angeles under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018 (1978). *See Lee v. City of Los Angeles*, 250 F.3d 668, 682-83 (9th Cir.2001) ("In this circuit, a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." (internal quotations omitted)). If Gates was responsible for creating, implementing or maintaining these policies and they caused Walker's injuries, Gates could be held individually liable. *Cf. Ruvalcaba*, 167 F.3d at 524. While the significant time gap between the time of Gate's departure from the LAPD and Walker's arrest raises issues of causation, they are not so clear that the Court may dismiss Gates as a matter of law on a motion to dismiss. Gates can be sued in his individual capacity on the allegation that, when he was chief, he was responsible for the creation, maintenance or implementation of polices, practices or customs which contributed to the plaintiff's injuries. Therefore, Gates' motion to dismiss this claim is denied.

b. Chaleff

Gerald Chaleff is a former member of the Board of Police Commissioners. He contends that the first claim should be dismissed because he is not alleged to have personally participated in Walker's arrest and because there is no basis to impose supervisorial liability on him.

Citing the Sixth Circuit's decision in *Doe v. Claiborne County*, 103 F.3d 495 (6th Cir.1996), Chaleff contends that he cannot be held individually liable for failing to act to prevent a constitutional violation unless he was under a duty to so act. He further claims that under the City Charter in effect at the time Walker was arrested, only the Police Commission as a whole was empowered to act to supervise the police department. [FN7] Thus, Chaleff argues he, and the other members of the Commission, should not face individual liability for failing to act, when they were under no duty to act individually and indeed, had no power to act individually.

> FN7. Chaleff has submitted portions of the City Charter which he asks the Court to take judicial notice of. Based on the Court's conclusion that Chaleff's substantive argument is unavailing, the Court need not decide whether taking judicial notice of these documents would be appropriate.

*Claiborne* supports this position. However, as it conflicts with the Ninth Circuit's holdings in *Trevino v. Gates*, 99 F.3d 911 (9th Cir.1996); *Cunningham v. Gates*, 229 F.3d 1271 (9th Cir.2000) and *Navarro v. Block*, 250 F.3d 729 (9th Cir.2001), all of which permitted plaintiffs to sue members of the Los Angeles City Council and Los Angeles Board of Supervisors for individual liability, this Court must reject it. [FN8] At least one other Central District Judge has so held. *Figueroa v. Gates*, 2001 WL 1182889 *2 (C.D.Cal.2001) (Collins, J.). For this reason, this portion of Chaleff's motion is denied.

> FN8. None of these decisions discussed the issue of individual authority to act, but the clear import of their holdings is that individual members of boards can face personal liability under section 1983-otherwise the defendants' entitlement to qualified immunity would not be an issue.

c. Yaroslavsky

Westlaw

Not Reported in F.Supp.2d
2002 WL 1065618 (C.D.Cal.)
(Cite as: 2002 WL 1065618 (C.D.Cal.))

Page 4

Zev Yaroslavsky is a former member of the Los Angeles City Council. During his tenure, the Council allegedly voted on several occasions to indemnify LAPD officers who were assessed punitive damages in civil rights cases.

*4 The Ninth Circuit has concluded that allegations that a board member voted "in bad faith" to indemnify a public official are sufficient to state a claim under section 1983. *Navarro v. Block*, 250 F.3d 729 (9th Cir.2001). Nonetheless, Yaroslavsky contends that *Navarro* only established that a municipality can be sued under this theory, not individuals. (Mot. at 12 n. 1). *Navarro* cannot be read so narrowly.

*Navarro* upheld the district court's denial of qualified immunity to members of the Los Angeles County Board of Supervisors at the pleading stage. *Navarro*, 250 F.3d at 734 ("This much is clear after *Trevino II* and *Cunningham*: local legislators are not entitled to qualified immunity if they implement their state-created power to indemnify police officers from punitive damage awards in bad faith."). Qualified immunity is a defense available only to individuals sued for damages under section 1983. *Huskey v. City of San Jose*, 204 F.3d 893, 902 (9th Cir.2000) ("A municipality is not entitled to assert the defense of qualified immunity"). Given the Ninth Circuit's conclusions that qualified immunity was available to the defendants in *Trevino* and not necessarily available to the defendants in *Navarro*, it would be illogical to say that indemnification claims can only be brought against municipalities. Therefore, this portion of defendant Yaroslavsky's motion is denied.

2. Second Claim for Relief (Conspiracy Claim)

Walker's second claim for relief incorporates all of the allegations that are pled in the opening paragraphs of the complaint and then states:

> all defendants are liable to plaintiff for conspiracy to violate plaintiff's Fourth Amendment rights and Fourteenth Amendment rights, pursuant to Sec.1983. The conspiracy consisted of the LAPD defendants agreeing to do, understanding that they would do, and doing the underlying bad acts specifically alleged in this action to plaintiff, and of all defendants understanding and agreeing to do all the things alleged against them in this complaint, or some such things, in this case and in the other cases so far identified, and in other cases not yet identified.

(Complaint at ¶ 19).

"To state a claim under section 1983, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250 (1988). Absent an allegation of supervisorial liability, individual liability under section 1983 must be based on the personal involvement of the defendant in the alleged constitutional violation. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir.1998); *Ortez v. Washington County*, 88 F.3d 804, 809 (9th Cir.1996) (affirming dismissal of section 1983 claims against individual defendants based on plaintiff's failure to allege defendants knew of or participated in alleged violation); *see also Confederated Tribes & Bands of Yakama Indian Nation v. Locke*, 176 F.3d 467, 470 n. 7 (9th Cir.1999) ( "Section 1983 ... imposes liability only upon a defendant who participates individually in the activity that allegedly violates federal law."). Personal participation may be established by proving a defendant conspired with others to deprive the plaintiff of his or her constitutional rights. *See, e.g., Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183 (1980); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598 (1970); *Barren*, 152 F.3d at 1194.

*5 Proof of a conspiracy in violation of section 1983 requires proof of the following elements: (1) an agreement between the defendants to deprive the plaintiff of a constitutional right; (2) an overt act in furtherance of the conspiracy and; (3) a constitutional violation. *See Gilbrook v. City of Westminster*, 177 F.3d 839, 856-57 (9th Cir.1999)(en banc); *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir.1998); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539 (9th Cir.), *cert. denied*, 493 U.S. 809, 110 S.Ct. 51 (1989); *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.1999); *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir.1999); *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir.1996); *Villanueva v. McInnis*, 723 F.2d 414, 416 (5th Cir.1984). Because conspiracies are, by their very nature, secret agreements, "[a] defendant's knowledge of and participation in a conspiracy may be inferred from

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 1065618 (C.D.Cal.)
(Cite as: 2002 WL 1065618 (C.D.Cal.))

Page 5

circumstantial evidence and from evidence of the defendant's actions." *Gilbrook,* 177 F.3d at 857-58.

The Ninth Circuit applies a heightened pleading standard to conspiracy claims under section 1983 and has held that mere conclusory allegations of conspiracy (*i.e.* a bare allegation that a defendant "conspired" with another) are insufficient to state a claim. [FN9] *Harris v. Roderick,* 126 F.3d 1189, 1195 (9th Cir.1997); *Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir.1992); *Woodrum v. Woodward County,* 866 F.2d 1121, 1126-27 (9th Cir.1989). Rather, "[t]o state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. County of King,* 883 F.2d 819, 821 (9th Cir.1989); *Lee,* 250 F.3d at 679 n. 6 (plaintiffs must allege facts which are "specific and concrete enough to enable the defendants to prepare a response, and where appropriate, a motion for summary judgment based on qualified immunity."); *Buckey,* 968 F.2d at 794. A plaintiff can meet the heightened pleading standard by alleging "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights even though he does not identify which officer said or did what at which particular time." *Harris,* 126 F.3d at 1196.

> FN9. The heightened pleading standard applies in cases where the plaintiff sues an individual defendant (as opposed to a municipality) and the defendant's knowledge or intent is an element of the plaintiff's claim. *Lee v. City of Los Angeles,* 250 F.3d 668, 679 n. 6 (9th Cir.2001); *Branch v. Tunnell,* 937 F.2d 1382, 1385-86 (9th Cir.1991) ( "*Branch I* "); *Branch v. Tunnell,* 14 F.3d 449, 452 (9th Cir.1994) ( "*Branch II* "). The Ninth Circuit has specifically held that conspiracy claims, since they require the plaintiff to show that the defendant agreed to join the conspiracy, *see Margolis v. Ryan,* 140 F.3d 850, 853 (9th Cir.1998), are subject to this heightened pleading standard. *Harris v. Roderick,* 126 F.3d 1189, 1195 (9th Cir.1997); *Mendocino Envtl. Ctr. v. Mendocino County,* 14 F.3d 457, 459 (9th Cir.1994) (applying identical standard to conspiracy claim in *Bivens* action).

Under this standard, plaintiff's conspiracy claim must be dismissed. Walker's allegations are entirely conclusory, containing no facts explaining how or when any of the defendants conspired to violate his rights. Walker has alleged only that the defendants agreed to do "some such things, in this case and in the other cases so far identified, and in other cases not yet identified." (Complaint at ¶ 19). Such an allegation is far too broad and lacks the specificity required to plead an actionable claim for conspiracy. Accordingly, Walker's conspiracy claim must be dismissed.

3. Third Claim for Relief (General *Monell* Claim)

*6 Walker's third claim for relief alleges that "[a]ll defendants are liable ... because they had and have, and foster, a policy, practice, procedure, and custom of Fourth and Fourteenth Amendment violations...." (Complaint at ¶ 20). These allegations are sufficient to state a claim against the City of Los Angeles. *Lee,* 250 F.3d at 682-83. The moving defendants contend these allegations are insufficient to establish individual liability.

As discussed above, individuals who are responsible for creating, implementing or fostering policies which cause constitutional violations may be held individually liable for such actions. *Cf. Warner,* 30 F.Supp.2d at 1124; *Ruvalcaba,* 167 F.3d at 524. Therefore, defendants Gates, Parks, Chaleff and Yaroslavsky, all of whom potentially had policy-making authority over the LAPD, are not entitled to dismissal of this claim.

Officer Strasner, however, is not alleged to have any responsibility as a supervisor or "policy maker" within the LAPD and thus cannot be responsible for LAPD policies and practices. Therefore, the Court will dismiss this claim as to Strasner.

4. Fourth Claim for Relief Claim (Indemnification Claim)

Walker's fourth claim for relief focuses on the City's alleged policy and practice of bad faith indemnification of police officers assessed punitive damages in civil rights cases. (Complaint at ¶¶ 30-40). Neither Gates, Parks, Chaleff or Strasner is alleged to have participated in this process.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
2002 WL 1065618 (C.D.Cal.)
(Cite as: 2002 WL 1065618 (C.D.Cal.))

Page 6

Accordingly, this claim is dismissed as to each of them. Under *Navarro,* plaintiff is entitled to pursue this claim against former councilman Yaroslavsky. Therefore, his motion to dismiss this claim is denied.

5. Fifth and Sixth Claims for Relief (Declaratory and Injunctive Relief)

In order to seek an injunction, plaintiffs must establish a "real and immediate threat of repeated injury" demonstrated by more than "past exposure to illegal conduct." *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660 (1983) (quoting *O'Shea v. Littleton,* 414 U.S. 488, 495-96, 94 S.Ct. 669 (1974)). "In other words, plaintiffs asserting an injunction claim must allege the probability of a future encounter with the defendant which is likely to lead to a similar violation of some protected right." *Roe v. City of New York,* 151 F.Supp.2d 495, 502 (S.D.N.Y.2001); *see also Armstrong v. Davis,* 275 F.3d 849, 860-61 (9th Cir.2001) ("[W]here ... a plaintiff seeks prospective injunctive relief, he must demonstrate that he is realistically threatened by a repetition of the violation."). [FN10]

> FN10. The fact that Walker seeks to represent a class of plaintiffs does not alter his obligation to establish his own standing. *Hodgers-Durgin v. De La Vina,* 199 F.3d 1037, 1045 (9th Cir.1999) (en banc) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief.").

The Ninth Circuit, sitting en banc, recently addressed the question of standing to seeking injunctive relief in *Hodgers-Durgin v. De La Vina,* 199 F.3d 1037, 1045 (9th Cir.1999). The plaintiffs in *Hodgers* claimed that the United States Border Patrol routinely stopped motorists who looked Mexican or Hispanic without probable cause or reasonable suspicion in violation of the Fourth Amendment. They sought an injunction against the Director of the Border Patrol to prohibit his agency from continuing this practice. The district court granted summary judgment after concluding the plaintiffs lacked standing to seek the injunction. On appeal, the Ninth Circuit affirmed, concluding that because each of the plaintiffs had been stopped only once in ten years they could not demonstrate

"any real or immediate threat that [they] will be wronged again--a likelihood of substantial and immediate irreparable injury." *Id.* at 1042 (internal quotations omitted).

*7 Although this case is not at the summary judgment stage, plaintiff still has the burden to establish his standing to seek an injunction. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130 (1992). Here Walker has alleged only that he was falsely arrested and that his house was wrongfully searched on one occasion. He then states: "Plaintiff credibly alleges that he would be set up again by LAPD officers, because he is an African American male...." (Complaint at ¶ 50). These allegations are insufficient to establish the kind of immediate threat of repeated injury that would entitled Walker to seek an injunction. Nothing in Walker's complaint suggests that he faces an immediate threat of being re-arrested by the LAPD based on his race.

Walker must make the same showing to establish standing to seek a declaratory judgment. *See Lyons,* 461 U.S. at 104, 103 S.Ct. 1660 ("Lyons' assertion that he may again be subject to an illegal chokehold does not create the actual controversy that must exist for a declaratory judgment to be entered."); *Sample v. Johnson,* 771 F.2d 1335, 1340 (9th Cir.1985) ("The Supreme Court has stated that plaintiffs must demonstrate that a 'credible threat' exists that they will again be subject to the specific injury for which they seek injunctive *or declaratory relief.*" (Emphasis added)). As Walker has not pled sufficient facts to establish standing to seek injunctive relief, his claim for declaratory relief also must be dismissed.

C. *RICO Claims*

RICO grants a private right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). Section 1962, in turn, contains four subsections which make it unlawful to: (a) invest income derived from a pattern of racketeering activity in an enterprise; (b) acquire or maintain an interest in an enterprise through a pattern of racketeering activity; (c) conduct the affairs of an enterprise through a pattern of racketeering activity; or (d) conspire to commit any of the above acts. 18 U.S.C. § 1962(a)-(d). Thus, to state a claim for a civil RICO violation, a private

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d  
2002 WL 1065618 (C.D.Cal.)  
**(Cite as: 2002 WL 1065618 (C.D.Cal.))**

Page 7

plaintiff must allege facts showing (1) an injury to business or property and (2) a substantive violation of one or more subsections of section 1962.

1. Injury to Business or Property

RICO does not afford a civil remedy for all injuries caused by unlawful racketeering activity; only injuries to "business or property" are actionable. 18 U.S.C. § 1964(c). This limitation excludes recovery for personal injuries. *Oscar v. University Students Co-op Ass'n*, 965 F.2d 783, 785 (9th Cir.) (en banc), cert. denied, 506 U.S. 1020, 113 S.Ct. 655 (1992) ( "[P]ersonal injuries are not compensable under RICO.") [FN11]; *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir.1990). [FN12] In addition, in the Ninth Circuit, "injuries to property are not actionable under RICO unless they result in tangible financial loss to the plaintiff." *Oscar*, 965 F.2d at 785 (plaintiffs failed to allege any pecuniary injury to their interest in rental property caused by alleged acts of racketeering); *Berg*, 915 F.2d at 464 (plaintiffs who had incurred no actual expenses as a result of cancellation of insurance policies lacked standing to sue under RICO); *Imagineering, Inc. v. Kiewit Pacific Co.*, 976 F.2d 1303, 1311 (9th Cir.1992), cert. denied, 507 U.S. 1004, 113 S.Ct. 1644 (1993) (affirming dismissal of RICO claim where it was impossible to determine from the complaint whether plaintiffs were alleging lost opportunity to realize profits or loss of specific identifiable profits).

> FN11. Although three judges dissented from the judgment in *Oscar*, they too agreed that personal injuries are not compensable under RICO. See *Oscar*, 965 F.2d at 789 (Kleinfeld, J., dissenting).
>
> FN12. The Ninth Circuit's position is in accord with every other Circuit Court which has confronted this issue, except, perhaps, the Fifth Circuit. Compare *Khurana v. Innovative Health Care Sys., Inc.*, 130 F.3d 143 (5th Cir.1997) (allowing claims based on injury to reputation), vacated by *Teel v. Khurana*, 525 U.S. 979, 119 S.Ct. 442 (1998); with *Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc.*, 187 F.3d 941, 954 (8th Cir.1999) (Plaintiffs who alleged only injury to reputation lacked standing to sue under RICO because damage to reputation is generally considered personal injury, not an injury to "business or property"); *Bast v. Cohen, Dunn & Sinclair, PC*, 59 F.3d 492, 495 (4th Cir.1995) ("An allegation of personal injury and pecuniary losses occurring therefrom are not sufficient to meet the statutory requirement of injury to 'business or property.' "); *Libertad v. Welch*, 53 F.3d 428, 437 (1st Cir.1995) (Women who sought services at blockaded abortion clinics lacked standing to assert RICO claims against anti-abortion groups that blockaded those clinics because neither woman suffered any injury to business or property); *Doe v. Roe*, 958 F.2d 763, 767 (7th Cir.1992) ("The terms 'business or property' are, of course, words of limitation which preclude recovery for personal injuries and the pecuniary losses incurred therefrom."); *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 918-19 (3d Cir.1991) (RICO plaintiffs may not recover damages for physical and emotional injuries due to harmful exposure to toxic waste); *Grogan v. Platt*, 835 F.2d 844, 846 (11th Cir.), cert. denied, 488 U.S. 981, 109 S.Ct. 531 (1988) (Stating "the ordinary meaning of the phrase 'injured in his business or property' excludes personal injuries, including the pecuniary losses therefrom" and holding that RICO does not permit recovery for economic aspects of personal injuries inflicted by predicate act of murder); *Drake v. B.F. Goodrich Co.*, 782 F.2d 638, 644 (6th Cir.1986) (Rejecting argument that injuries to business or property include all pecuniary injuries caused by a substantive RICO violation and upholding dismissal of RICO claim by plaintiffs exposed to toxic chemicals).

The Ninth Circuit's position also finds support in language from two Supreme Court cases. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326 (1979) (Construing similar restriction in Clayton Act and stating "[t]he phrase 'business or property' ... retains restrictive significance. It would, for example, exclude personal injuries...."); *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3292, 3297 (1985) (Marshall, J., dissenting)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 1065618 (C.D.Cal.)
(Cite as: 2002 WL 1065618 (C.D.Cal.))

Page 8

(RICO "permits recovery only for injury to business or property. It, therefore, excludes recovery for personal injuries.").

*8 The Supreme Court has described RICO's injury requirement as an issue of standing. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275 (1985). Whether a plaintiff has alleged an injury to business or property giving rise to standing under RICO is a question of law for the court to determine and may properly be raised on a motion to dismiss. See *Oscar*, 965 F.2d at 785 (upholding dismissal of complaint for failure to allege an injury to property); *Doe v. Roe*, 958 F.2d 763, 767-68 (7th Cir.1992).

Plaintiff claims he has pled a cognizable injury to his business or property by alleging he "lost employment, employment opportunities, and the wages and other compensation associated with said employment and opportunities" inasmuch as he "was unable to pursue gainful employment while defending ... [himself] against unjust charges and/or while unjustly incarcerated." (Complaint at ¶ 61). Citing to *Guerrero v. Gates*, 110 F.Supp.2d 1287 (C.D.Cal.2000) and the cases cited therein, plaintiff argues that even if he suffered only a personal injury at the hands of the defendants, pecuniary losses stemming from personal injuries are compensable under RICO. *Guerrero* recognized that "[a] number of courts ... have accepted or shown a disposition in favor of allowing RICO claims for the pecuniary losses associated with personal injuries caused by racketeering" and on that basis allowed a similar RICO claim to proceed. *Id.* at 1292.

This line of reasoning, however, was implicitly rejected by the Ninth Circuit in *Oscar*. The plaintiff in *Oscar* lacked standing to sue not only because she failed to allege any "out-of-pocket expenditures," but also because "[t]he *injury* [she] alleged ... is like that claimed by the plaintiff in a personal injury action." *Oscar*, 965 F.2d at 787 (emphasis in original). According to the court, "economic losses which derive[ ] from a fundamentally personal injury" are not compensable under RICO. *Id.* at 788.

Two cases cited with approval by the Ninth Circuit in *Oscar* confirm this approach. In *Grogan v. Platt*, 835 F.2d 844, 846-47 (11th Cir.), cert. denied, 488 U.S. 981, 109 S.Ct. 531 (1988), the Eleventh Circuit held that six FBI agents who were injured in a gun battle with suspects and the estates of two other agents who were killed during the shootout, did not have standing under RICO to sue the estates of the men who shot them. The plaintiffs in *Grogan* maintained that the quantifiable economic consequences of their personal injuries, including lost wages and employment, constituted injuries to business and property within the meaning of RICO, even if they could not recover under RICO for some of the traditional categories of personal injury damages, such as mental anguish. The Eleventh Circuit rejected this argument concluding that "the ordinary meaning of the phrase 'injured in his business or property' excludes personal injuries, *including pecuniary losses therefrom.*" *Id.* at 847 (emphasis added).

*9 *Grogan* is cited with approval by both the majority and dissent in *Oscar*. See *Oscar*, 965 F.2d at 786, 788; *id.* at 791 (Kleinfeld, J., dissenting) ("In *Grogan* ... the victim ... was murdered; murder is personal injury, not injury to property, and pecuniary losses flowing from the wrongful death could not transform personal injury into injury to property."). Similarly, in *Doe v. Roe*, 958 F.2d 763, 770 (7th Cir.1992), the Seventh Circuit rejected the idea that any financial loss, no matter what its source, constitutes a business or property injury within the meaning of RICO. "Most personal injuries ... entail some pecuniary consequences[,]" but where such losses are incurred as a result of purely personal injuries, they do not constitute injuries to business or property within the meaning of RICO. *Roe*, 958 F.2d at 770.

*Oscar* adopts the reasoning and results of *Grogan* and *Roe*, both of which directly confronted, and rejected, the argument raised here by plaintiff. All of the injuries alleged by plaintiff flow directly from his false arrest. False arrest constitutes injury to the person, not to business or property. See *Owens v. Okure*, 488 U.S. 235, 251, 109 S.Ct. 573 (1989) (claims under 42 U.S.C. § 1983, including those based on false arrest, are subject to a state's general or residual statute of limitations for personal injuries); *Wilson v. Garcia*, 471 U.S. 261, 277, 105 S.Ct. 1938 (1985) ("Congress unquestionably would have considered the remedies established in the Civil Rights Act to be more analogous to tort claims for personal injury than, for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
2002 WL 1065618 (C.D.Cal.)
(Cite as: 2002 WL 1065618 (C.D.Cal.))

Page 9

example, to claims for damages to property or breach of contract."); Cal. Civ. Pro. § 340 (setting forth the statute of limitations for "[a]n action for libel, slander, assault, battery, false imprisonment ... or for injury to or for the death of one caused by the wrongful act or neglect of another...."); *Black's Law Dictionary* 790 (7th ed.1999) (defining "personal injury" as, *inter alia*, "[a]ny invasion of a personal right, including mental suffering and false imprisonment."). That plaintiff suffered some secondary financial losses flowing from his personal injuries does not transform his losses into injuries to business or property. [FN13]

> FN13. The Ninth Circuit's decision in *Oscar* also defeats plaintiff's reliance on *Radovich v. Nat'l Football League,* 352 U .S. 445, 77 S.Ct. 390 (1957), which suggests that the loss of employment can constitute an injury to one's "business or property" under section 4 of the Clayton Act, 15 U.S.C. § 15, which was used as a model for 18 U.S.C. § 1964(c). See *Sedima, S.P.R.L. v. Imrex Company, Inc.,* 473 U.S. 479, 489, 105 S.Ct. 3292 (1985). As discussed above, this argument was considered and rejected by *Grogan* and *Roe;* case whose reasoning and results are adopted by the decisions in *Oscar.*

Admittedly, placing recovery for pecuniary losses associated with personal injuries outside the scope of civil RICO claims creates the possibility that victims of predicate acts of racketeering, such as murder and kidnapping, will be unable to use RICO as a vehicle for redress. But in such cases, plaintiffs will rarely be without a remedy, which undoubtedly played a part in Congress's decision to exclude personal injury litigation from the RICO statute. As noted by the Eleventh Circuit,

> had Congress intended to create a federal treble damages remedy for cases involving bodily injury, injury to reputation, mental or emotional anguish, or the like, *all of which cause some financial loss,* it could have enacted a statute referring to injury generally, without any restrictive language.

*10 *Grogan,* 835 F.2d at 847 quoting *Morrison v. Syntex Laboratories,* 101 F.R.D. 743, 744 (D.D.C.1984) (emphasis in *Grogan* ).

Even if the Court were to focus solely on the nature of the damages plaintiff sustained, rather than on the nature of the injury inflicted, plaintiff's losses still would not qualify as compensable injuries. " '[P]roperty' comprehends anything of material value owned or possessed." *Reiter v. Sonotone Corp.,* 442 U.S. 330, 338, 99 S.Ct. 2326 (1979); *cf.* Cal. Civ.Code § 654 ("In this Code, the thing of which there may be ownership is called property."). Under California law, the loss of employment generally is not considered an injury to property. [FN14] *Barton v. New United Motor Mfg. Inc.,* 43 Cal.App. 4th 1200, 1207 (1996) (claim for termination in violation of public policy is in the nature of claim for personal injuries, not claim for violations of property right). [FN15] Nor can plaintiff's claimed "employment opportunity" losses be characterized as the kind of tangible financial loss to a business recoverable under RICO. *Grogan,* 835 F.2d at 848; *Oscar,* 965 F.2d at 785.

> FN14. Courts evaluating RICO damage claims have generally looked to state law to determine whether a particular claim constitutes an injury to property. See, e.g., *DeMauro v. DeMauro,* 115 F.3d 94, 96 (1st Cir.1997); *Doe,* 958 F.2d at 768; *Leach v. F.D.I.C.,* 880 F.2d 1266, 1274 n. 14 (5th Cir.1988); *cf. Oscar,* 965 F.2d at 786 (describing the plaintiff's property interest as a "leasehold," a definition supplied by California law).

> FN15. Examples of compensable injuries include the theft or destruction of personal property. See *Northeast Women's Ctr., Inc. v. McMonagle,* 868 F.2d 1342, 1349 (3d Cir.), *cert. denied,* 493 U.S. 901, 110 S.Ct. 261 (1989) (destruction of plaintiff's medical equipment constituted injury to property); *Gitterman v. Vitoulis,* 564 F.Supp. 46, 48-49 (S.D.N.Y.1982) (allegation that defendants stole jewelry from plaintiff's home sufficient to state claim under RICO).

Finally, because plaintiff has no standing to assert a RICO claim, *see Sedima,* 473 U.S. at 496, 105 S.Ct. 3275, the Court has no jurisdiction to hear such a claim against any defendant, including those who have not filed motions to dismiss. Standing is a critically important limitation on a district court's subject matter jurisdiction--"an essential and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d  
2002 WL 1065618 (C.D.Cal.)  
**(Cite as: 2002 WL 1065618 (C.D.Cal.))**

Page 10

unchanging part of the case-or-controversy requirement of Article III." *Lujan, 504 U.S. at 560, 112 S.Ct. 2130*. If the plaintiff lacks standing to assert a claim, then the Court lacks jurisdiction to consider it and even though a party may not have raised the issue, the lack of standing, and hence the absence of subject matter jurisdiction, may be raised by the Court *sua sponte* at any time. *See, e.g., In re Mooney, 841 F.2d 1003, 1006 (9th Cir.1988)*. Thus, plaintiff's RICO claims are dismissed as to all defendants.

D. *Dismissal is With Prejudice at Plaintiff's Request*

As this is Walker's first complaint and the first round of motions to dismiss, the Court planned to make all of the above dismissals without prejudice and permit Walker an opportunity to amend his complaint. *See Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir.1996)* (Where a motion to dismiss is granted, a district court should grant leave to amend unless it is clear that the complaint cannot be saved by any amendment); *Doe v. United States, 58 F.3d 494, 497 (9th Cir.1995)* (same). However, at the hearing on these motions, plaintiff's counsel requested that the Court make any dismissal with prejudice as he did not plan to amend the complaint. Accordingly, the Court will dismiss the portions of plaintiff's complaint which do not state a viable claim for relief with prejudice.

IV.  
CONCLUSION

For the reasons stated above, defendants' motions to dismiss are GRANTED IN PART AND DENIED IN PART and the Court makes the following order:

*11 • Plaintiff's second claim for relief is DISMISSED WITH PREJUDICE as to defendants Chaleff, Gates, Parks, Strasner and Yaroslavsky;

• Plaintiff's third claim for relief is DISMISSED WITH PREJUDICE as to defendant Strasner;

• Plaintiff's fourth claim for relief is DISMISSED WITH PREJUDICE as to defendants Chaleff, Gates, Parks and Strasner;

• Plaintiff's fifth, sixth, seventh and eighth claims for relief are DISMISSED WITH PREJUDICE as to all defendants;

• Defendants shall file answers to the complaint not later than Friday, June 14, June 2002; and

• the parties shall appear in Courtroom 740 on Monday, July 22, 2002 at 1:30 p.m. for a Rule 26 status conference.

IT IS SO ORDERED.

2002 WL 1065618 (C.D.Cal.)

**Motions, Pleadings and Filings (Back to top)**

• 2:01CV10904 (Docket) (Dec. 18, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.