# EXHIBIT 2

Westlaw.

Not Reported in F.Supp.2d
2002 WL 340772 (N.D.Tex.)
(Cite as: 2002 WL 340772 (N.D.Tex.))

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Texas, Dallas Division.
Reverend Albert L. DUNN, Plaintiff,
v.
THE BOARD OF INCORPORATORS AFRICAN METHODIST EPISCOPAL CHURCH, et al., Defendants.
No. CIV.A.3:00CV2547D.

Feb. 28, 2002.

ORDER

STICKNEY, Magistrate J.

*1 After making an independent review of the pleadings, files, and records in this case, and the February 15, 2002 findings and recommendation of the magistrate judge, the court concludes that the findings and conclusions are correct and are therefore adopted. Accordingly, the January 16, 2002 motion to dismiss of defendants Donald George Kenneth Ming and The Council of Bishops is granted, and plaintiff's action against them is dismissed with prejudice. The court has today filed a Fed.R.Civ.P. 54(b) judgment as to these defendants.

SO ORDERED.

FINDINGS AND RECOMMENDATION

By Order of Reference dated January 28, 2002, the United States District Court referred *Defendants' Donald George Kenneth Ming and the Council of Bishops' Motion to Dismiss,* filed January 16, 2002, to the undersigned Magistrate Judge.

Factual and Procedural Background

Plaintiff Reverend Albert Dunn, an ordained Itinerant Elder of the African Methodist Episcopal Church ("AME Church"), filed this action against The Board of Incorporators of the AME Chruch; Bishop Donald George Kenneth Ming, Chairman; The Council of Bishops and Bishop John Richard Bryant. The plaintiff alleges civil RICO violations, as well as a state law diversity jurisdiction claim for breach of contract.

This lawsuit arises from an alleged scheme to fraudulently collect funds from church members, perpetrated by certain of the bishops of the AME Church, called the "pre-offering." This program was implemented by Defendant Bishop Bryant at AME Churches in the Tenth Episcopal District (the plaintiff's home district) for ten years. The plaintiff alleges that the funds collected by the pre-offering were diverted to maintain a lavish lifestyle for Defendant Bishop Bryant. The plaintiff further alleges that Bishop Ming and the Council of Bishops have knowingly allowed this fraudulent activity to continue in the AME Church.

For RICO purposes, the plaintiff alleges that the AME Church constitutes an enterprise affecting interstate commerce through activities associated with the Defendant's National Publishing House, which circulates books and literary materials for sale throughout the country and abroad. The plaintiff alleges that the enterprise has committed mail fraud, wire fraud, and money laundering.

The plaintiff has not been assigned a Church appointment in the five years since he has filed suit, which he believes is due to his disapproval of and opposition to the pre-offering program.

In stating his state law claim for breach of contract, the plaintiff argues that the failure of the AME Church (with Bishop Ming and the Council of Bishops acting together with Bishop Bryant and the Board of Incorporators to effect such failure) to assign the plaintiff to a church is in retaliation for having filed suit, and that such behavior directly violates Church law and the "Minister's Bill of Rights," which guarantees an Itinerant Minister's salary, a parsonage, notice of chance, privacy, acknowledgment by Bishops of Certificates of Transfer, and a retirement and pension plan.

*2 The District Court previously adopted the United States Magistrate Judge's recommendation that Plaintiff's claims against the Board of Incorporators of the African Methodist Episcopal Church be dismissed for lack of standing as to the



Not Reported in F.Supp.2d
2002 WL 340772 (N.D.Tex.)
**(Cite as: 2002 WL 340772 (N.D.Tex.))**

Page 2

Civil RICO claims alleged, and that Plaintiff's breach of contract claims be dismissed in light of existing First Amendment protections precluding investigation of church policies and practices.

Standard of Review
A motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6) is viewed with disfavor and is rarely granted. _Lowrey v. Texas A & M Univ. Sys._, 117 F.3d 242, 247 (5th Cir.1997). A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. _Conley v. Gibson,_ 355 U.S. 41, 45-46 (1957); _Blackburn v. City of Marshall,_ 42 F.3d 925, 931 (5th Cir.1995). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. _Baker v. Putnal,_ 75 F.3d 190, 196 (5th Cir.1996). In ruling on such a motion, the court cannot look beyond the face of the pleadings. _Baker,_ 75 F.3d at 196; _Spivey v. Robertson,_ 197 F.3d 772, 774 (5th Cir.1999), _cert. denied,_ 530 U.S. 1229 (2000). The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff. _Lowrey,_ 117 F.3d at 247. A plaintiff, however, must plead specific facts, not mere conclusory allegations, to avoid dismissal. _Guidry v. Bank of LaPlace,_ 954 F.2d 278, 281 (5th Cir.1992).

Dismissal is warranted if a plaintiff has (1) been given the opportunity to plead his best case, (2) made specific and detailed allegations constituting his best case, and (3) still fails to state a claim. See _Jacquez v. Procunier,_ 801 F.2d 789, 792-93 (5th Cir.1986)( recognizing that dismissal is required if a plaintiff has had fair opportunity to make her case, but has failed); _Morrison v.. City of Baton Rouge,_ 761 F.2d 242, 246 (5th Cir.1985) (assuming that the specific allegations of the amended complaint constitute the plaintiff's best case).

Analysis
I. The Civil RICO Claim

To state a valid civil RICO claim under 18 U.S.C. § 1962, a plaintiff must allege: (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. _Elliot v. Foufas,_ 867 F.2d 877, 880 (5th Cir.1989). As a preliminary matter, however, a plaintiff must establish that he has standing to sue. "The standing provision of civil RICO provides that '[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor...and shall recover threefold the damages he sustains." ' _In re Taxable Mun. Bond Sec. Litig. v. Kutak,_ 51 F.3d 518, 521 (5th Cir.1995) (quoting 18 U.S.C. § 1964(c)). Thus, a RICO plaintiff must satisfy two elements; (1) injury and (2) causation. _Price v. Pinnacle Brands,_ 138 F.3d 602, 606 (5th Cir.1998). The provisions in the statute limiting standing to a person "injured in his business or property" has a "restrictive significance," _Reiter v. Sonotone Corp.,_ 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931(1979), which helps to assure that RICO is not expanded to provide "a federal cause of action and treble damages to every tort plaintiff." _Steele v. Hospital Corp. of Am.,_ 36 F.3d 69, 70 (9th Cir.1994) (quoting _Oscar v. University Students Co-op Ass'n,_ 965 F.2d 783, 786 (9th Cir.) (_en banc_ ), cert. denied, 506 U.S. 1020, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992)). For RICO standing, plaintiffs must prove a "concrete financial loss," an actual loss "of their own money," and "not mere 'injury to a valuable intangible property interest." ' _In re Taxable Mun. Bond Sec. Litig.,_ 51 F.3d at 523 (quoting _Steele v. Hospital Corp. of Am.,_ 36 F.3d 69, 70 (9th Cir.1994)). Lost opportunity by itself does not constitute an injury that confers standing to bring a RICO cause of action. _In re Taxable Mun. Bond Sec. Litig.,_ 51 F.3d at 523. Moreover, the only compensable injury is that which is proximately caused by the predicate acts committed by the enterprise. _Sedima S.P.R.L. v. Imrex Co., et al.,_ 473 U.S. 479, 496, 105 S.Ct.3275, 87 L.Ed.2d 346 (1985). Therefore, so-called "whistle-blowers," or those who suffer an adverse employment action after reporting alleged RICO violations do not have standing to sue under RICO for the injury caused by their firing or constructive discharge, since the causal nexus between the predicate acts and the employer's decision to take action against the whistle-blowing employee is too tenuous. See _Cullom v. Hibernia National Bank,_ 859 F.2d 1211, 1214-16 (5th Cir.1988) (citing _Pujol v. Shearson/Am. Express, Inc.,_ 829

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d  
2002 WL 340772 (N.D.Tex.)  
**(Cite as: 2002 WL 340772 (N.D.Tex.))**

Page 3

F.2d 1201 (1st Cir.1987); Nodine v. Textron, Inc., 819 F.2d 347 (1st Cir.1987); Morast v. Lance, 807 F.2d 926 (11th Cir.1987)).

*3 It is well-settled law in the Fifth Circuit that individuals who are fired or have suffered a constructive discharge as a result of reporting RICO violations do not have standing to sue their employers under RICO. Cullom v. Hibernia National Bank, 859 F.2d at 1214-15. Therefore, it follows that individuals alleging injuries relevant to their employment situation that are less egregious than a firing or constructive discharge, as is true of the plaintiff in this case, also lack standing to sue under RICO.

In the instant case, the plaintiff alleges *inter alia* that his "pastoral career has been destroyed as a result of Defendant's actions," that he has "lost Pastoral income past, present, and future as a result of Defendant's actions," and that he has suffered mental anguish and damage to his reputation. *Plaintiff's Third Amended Complaint,* p. 10. The plaintiff's allegations that the Defendant Bishop Ming and the Council of Bishops have failed to promote him, appoint him to a specific church, or provide him with housing and other similar employment-related guarantees and privileges listed in the "Minister's Bill of Rights" and/or the "AME Discipline" do not entitle him to RICO standing, as these allegations fall within the scope of the restrictions placed on RICO standing in the context of adverse employment actions as articulated in Cullom, 859 F.2d at 1214-16.

In *Cullom,* the Fifth Circuit Court of Appeals cited with approval several cases arising out of other circuits that are closely analogous to the facts present here. One analogous case is Pujol v. Shearson/Am. Express, Inc., 829 F.2d 1201 (1st Cir.1987). In that case, the plaintiff-appellant, Mr. Pujol, alleged that his employer had committed several illegal predicate acts in violation of the RICO statute. However, the First Circuit concluded that the plaintiff's allegations that he was fired, slandered, and otherwise injured because of the actions he took to report and stop the illegal schemes were not proximately caused by the predicate acts allegedly committed by his employer, which included securities fraud, mail fraud, and wire fraud. *Id.* at 1205.

Similarly, in Nodine v. Textron, Inc., 819 F.2d 347, the First Circuit concluded that the plaintiff did not have standing to sue under RICO. In that case, the plaintiff reported and voiced his disapproval of alleged illegal predicate acts that were being committed by his employer. The Court opined that Nodine's "injury resulted from Textron's decision to fire him after he reported the customs scheme to his superiors," and was not proximately caused by the alleged predicate acts. *Id.* at 349.

Thus, the focus of the inquiry as to whether the plaintiff has standing to sue under RICO centers around whether the predicate acts allegedly committed by the defendant are the proximate cause of the plaintiff's tangible loss, which does not appear to include employers' decisionmaking processes.

*4 As to the instant case, the plaintiff is alleging that the adverse employment actions he suffered were a direct result of his whistle-blowing activities, just as the plaintiffs in *Nodine* and *Pujol.* The plaintiff's RICO claims based on his employment status simply cannot stand. The causal nexus between the alleged predicate acts and an employer's decisionmaking process is too tenuous to warrant standing in instances such as this. Cullom v. Hibernia National Bank, 859 F.2d at 1214-16; Pujol v. Shearson/Am. Express, Inc., 829 F.2d 1201; Nodine v. Textron, Inc., 819 F.2d 347; Morast v. Lance, 807 F.2d 926; see also Sedima S.P.R.L. v. Imrex Co., et al., 473 U.S. at 496. It may in fact be true, as alleged, that Reverend Dunn has suffered in his career due to the improper motivations of the defendants. He does not, however, have standing to sue for losses related to his employment under RICO, and any such claims must be brought in accordance with other relevant state or federal laws.

Next, the plaintiff alleges that as an individual member of the AME Church, he has suffered damages to the extent that the alleged diverted funds acquired as a result of the "pre-offering" program could have been used to fund the various ministries, programs, colleges, or other goals and functions of the AME Church.

As mentioned *supra,* in order to qualify for RICO standing, the plaintiff is required to demonstrate that he has suffered a "loss to his business or property." In re Taxable Mun. Bond

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
2002 WL 340772 (N.D.Tex.)
(Cite as: 2002 WL 340772 (N.D.Tex.))

Page 4

*Sec. Litig.*, 51 F.3d at 521. That loss must be an actual "concrete financial loss of the plaintiff's own money." *Id.* at 523. The loss cited cannot be a mere "injury to a valuable intangible property interest," such as the one cited here. *Id.*

The plaintiff has not alleged that he has suffered concrete, tangible financial losses, such as those in the form of donations that he personally made to pre-offering program instituted by the AME Church. Instead, he merely alleges indirect, intangible injury in his abstract suggestion that the diverted funds could have been used in a more beneficial manner. Reverend Dunn has had ample opportunity to illustrate any concrete personal financial losses in the submissions of his First, Second, and Third Amended Complaints. With the exception of the above-mentioned allegations regarding adverse employment decisions made by the AME Church and its officials, which is a matter that must be pursued in other areas of the law, Mr. Dunn has failed to provide this Court with any valid indication of tangible financial loss.

II. The Breach of Contract Claim

The Free Exercise Clause of the First Amendment prohibits civil court inquiries into decisions made by religious organizations concerning the employment status of ministers. *See McClure v. Salvation Army*, 460 F.2d 553, 560-561 (5th Cir.1972). The "ministerial exception" to Title VII applies to all employees of a religious institution, whether ordained or not, whose primary functions serve its spiritual and pastoral mission. *Starkman v. Evans*, 198 F.3d 173, 175 (5th Cir.1999). In determining who qualifies as a minister, the Court considers several factors. *Id.* First, the Court must consider whether employment decisions regarding the position at issue are made "largely on religious criteria." *Id.* The second consideration is whether the plaintiff was qualified and authorized to perform the ceremonies of the Church. *Id.* Third, and probably most important, is whether the individual "engaged in activities traditionally considered ecclesiastical or religious." *Id.* A similar analysis has been employed in cases in which the individual asserts breach of contract claims against the church. *United States Methodist Church v. White*, 571 A.2d 790, 796 (D.C.Cir.1990). A civil court's inquiry into a breach of contract claim is forbidden if that claim would require "more than simply the secular questions of whether such promises were made by [the church]." *Id.*

*5 Here, the plaintiff qualifies as a "minister" in accordance with the definition cited in *Starkman*, 198 F.3d at 175. By his own admission, he has been an ordained Itinerant Elder since 1958, and has cited damage to his "pastoral career" as one of the grounds for suit. *Plaintiff's Third Amended Complaint*, p. 5. Moreover, the plaintiff references the Minister's Bill of Rights, the alleged guarantees of which include an Itinerant Minister's salary and a parsonage, two benefits that are generally conferred upon those whose activities are considered ecclesiastical or religious. *Id.* at 6. Therefore, Reverend Dunn can be considered a "minister" for purposes of this lawsuit.

Much like the *White* case, a determination as to breach of a contract affecting Reverend Dunn's employment benefits would involve more than secular questions of whether certain promises were made to Reverend Dunn. *United States Methodist Church v. White*, 571 A.2d at 796. Reverend Dunn's complaint links the circumstances of his contractual rights and alleged breach to the circumstances surrounding his ecclesiastical status and/or endorsement by the Church, as well as the policies and practices of the AME Church. In investigating Reverend Dunn's breach of contract claim, the Court would have to inquire as to the Church's motivations (be they secular or religious) for failing to provide the plaintiff with the benefits conferred by the Minister's Bill of Rights, an instrument of AME Church law. Such an inquiry would involve delving into church policy and perhaps religious doctrine or practices; areas in which courts have traditionally refused to tread. *See Combs v. Central Texas Annual Conference of United Methodist Church*, 173 F.3d 343, 346 (5th Cir.1999); *McClure v. Salvation Army*, 460 F.2d at 558-559 (matters such as a minister's salary, his place of assignment and his duty are matters of church administration and government, and are beyond the purview of civil authorities).

Reverend Dunn's claim inherently involves matters of church governance, and is not a purely secular matter. *See, e.g., Hafner v. Lutheran Church-Missouri Synod*, 616 F.Supp. 735, 739 (N.D.Ind.1985); *McClure v. Salvation army*, 460 F.2d at 559; *Dowd v. Society of St. Columbans*,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
2002 WL 340772 (N.D.Tex.)
**(Cite as: 2002 WL 340772 (N.D.Tex.))**

Page 5

861 F.2d 761, 764 (1st Cir.1988). Therefore, in the absence of church invocation of the civil courts, resolution of such disputes is properly left to church officials. *White,* 571 A.2d at 796.

RECOMMENDATION

Even when viewed in the light most favorable to the plaintiff, Reverend Dunn's complaint does not appear to state a valid cause of action. *Lowrey,* 117 F.3d at 247. As to the civil RICO claim, the plaintiff has failed to plead specific facts, and has instead supplied the Court with mere conclusory allegations as to the injuries he has sustained as a result of the defendant's alleged fraudulent behavior. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992). The First Amendment prevents this Court from conducting an inquiry into the policies and practices of the AME Church based on the facts of this case and issues relating to Reverend Dunn's employment and/or ecclesiastical status with the AME Church. Therefore, this Court recommends that the defendants' Motion to Dismiss be GRANTED.

2002 WL 340772 (N.D.Tex.)

**Motions, Pleadings and Filings (Back to top)**

• 3:00CV02547 (Docket) (Nov. 21, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                                Page 1

2003 WL 21658260 (D.Minn.), RICO Bus.Disp.Guide 10,556

**(Cite as: 2003 WL 21658260 (D.Minn.))**

C

**Motions, Pleadings and Filings**

United States District Court,
D. Minnesota.
David HJERMSTAD, Plaintiff,
v.
CENTRAL LIVESTOCK ASSOCIATION, INC., a Minnesota corporation, and Cooperative
Resources International, a Wisconsin corporation, Defendants.
No. Civ.03-2559(RHK/JSM).

July 14, 2003.

Scott Goldsmith, Goldsmith Law Offices, Long Lake, Minnesota, for Plaintiff.

David J. Lauth and Kevin Hopkins-Finnerty, Dorsey & Whitney, L.L.P., Minneapolis, Minnesota, for Defendants.

MEMORANDUM OPINION AND ORDER

KYLE, J.

Introduction

*1 This lawsuit arises from Plaintiff David Hjermstad's employment with Defendant Central Livestock Association, Inc. ("CLA"), a Minnesota cooperative based in South Saint Paul, Minnesota. [FN1] Hjermstad worked for CLA from February 1999 to June 2000. He alleges that the Defendants wrongfully terminated his employment as a result of his refusal to condone, aid, and perpetuate the Defendants' allegedly illegal and unlawful actions in connection with (1) the operation of CLA's Livestock Feeding Program, (2) the marketing of cattle, (3) the operation of the Defendants' price protection strategies such as futures and options contracts, and (4) the operation of the Elite Vision sheep artificial insemination program.

FN1. Defendant Cooperative Resources International ("CRI") is the only voting member of CLA.

Presently before the Court is the Defendants' motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Hjermstad's Complaint on the grounds that it fails to state claims upon which relief can be granted. After the Defendants filed and served their Motion to Dismiss, Hjermstad amended his complaint as a matter of right pursuant to Rule 15(a) of the Federal Rules of Civil Procedure (*see* Doc. No. 6), [FN2] and submitted a memorandum opposing the motion to dismiss. The Defendants filed a reply asserting that the defects raised in their original motion apply to the Amended Complaint as well, and the Court should therefore consider their motion as having been made against the amended pleading. [FN3] For the reasons set forth below, the Court will grant the Motion to Dismiss.

FN2. Rule 15(a) provides that a party may amend his or her pleading "once as a matter of course at any time before a responsive pleading is served...." Fed.R.Civ.P. 15(a). A motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6) is not a "responsive pleading" for purposes of Rule 15(a). *Camp v. Gregory,* 67 F.3d 1286, 1289 (7th Cir.1995); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805, 810 (N.D.Iowa, 1997).

FN3. Hjermstad has moved to strike this reply brief on the grounds that it exceeds the scope of a permissible reply by raising new legal arguments that could have been raised in the opening brief. In lieu of striking the reply, the Court granted Hjermstad leave to file a sur-response addressing the challenged arguments from

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 2
2003 WL 21658260 (D.Minn.), RICO Bus.Disp.Guide 10,556
**(Cite as: 2003 WL 21658260 (D.Minn.))**

the reply brief. The Court also granted leave to the Defendants to file a short sur-reply brief. Accordingly, the Court will deny Hjermstad's Motion to Strike.

Analysis

I. Standard of Decision

"Dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and destined to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles, Mo.,* 244 F.3d 623, 627 (8th Cir.2001). A cause of action "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Schaller Tel. Co. v. Golden Sky Sys., Inc.,* 298 F.3d 736, 740 (8th Cir.2002) (internal citations omitted) (citing *Kohl v. Casson,* 5 F.3d 1141, 1148 (8th Cir.1993)). In analyzing the adequacy of a complaint's allegations under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those facts. *See Turner v. Holbrook,* 278 F.3d 754, 757 (8th Cir.2002).

Count I of the Amended Complaint alleges that Defendants wrongfully terminated Hjermstad's employment in violation of (1) the public policy of the state of Minnesota, (2) Minnesota's Whistleblower Statute (Minn.Stat. § 181.932) and (3) the Packers and Stockyards Act ("PSA") (7 U.S.C. §§ 181-231), because he would not condone, aid, participate in, or allow practices that he believed violated the PSA, the Commodity Exchange Act ("CEA") (7 U.S.C. §§ 1-26), and/or certain unspecified Minnesota and Wisconsin cooperative laws. (Am.Compl. ¶¶ 26, 30.) [FN4]

> FN4. The paragraph numbers are taken from the Amended Complaint filed on June 3, 2003.

*2 Count II of the Amended Complaint alleges that Defendants wrongfully terminated Hjermstad's employment in violation of (1) the public policy of the state of Minnesota, (2) Minnesota's Whistleblower Statute (Minn.Stat. § 181.932), (3) the Minnesota Prevention of Consumer Fraud Act ("MPCFA") (Minn.Stat. § 325F.69), (4) the Minnesota statute forbidding the use of false statements to induce an individual into entering an employment relationship (Minn.Stat. §§ 181.64 and 181.65), (5) common law fraud, and (6) covenants of good faith and fair dealing. (Am Compl. ¶ 37.) Hjermstad claims that he was terminated because he refused to condone, aid, participate in, or allow practices that he believed contravened the MPCFA, constituted common law fraud, and/or violated other unspecified state and federal laws. (*Id.* ¶¶ 33, 34.)

Count III of the Amended Complaint alleges that Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("**RICO**") (18 U.S.C. §§ 1961-1964). (Am.Compl.¶¶ 39-53.) Specifically, Hjermstad claims that the Defendants unlawfully employed a pattern of racketeering activity so as to acquire or maintain an interest in or control of an enterprise involved in interstate commerce, in violation of 18 U.S.C. § 1962(b). (*Id.* ¶ 40.) Hjermstad also alleges that the Defendants unlawfully conducted, or participated in, the affairs of an enterprise affecting interstate commerce through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c). (*Id.* ¶ 49.) Finally, Hjermstad also asserts that the Defendants conspired with each other with the specific intent and purpose of accomplishing the objectives set out in the Amended Complaint. (*Id.* ¶ 52.)

II. Subject Matter Jurisdiction

Before addressing the Defendants' motion, the Court must first assess its subject matter jurisdiction. The Amended Complaint states that this Court has jurisdiction over this lawsuit "under 28 U.S.C. § 1332 by reason of the fact that this controversy is based, in part, on the Packer's and Stockyards Act, 7 U.S.C. Section 192 and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*" (Am.Compl.¶ 14.) "Under 28 U.S.C. § 1332(a), district courts have original diversity jurisdiction over civil actions

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 3
2003 WL 21658260 (D.Minn.), RICO Bus.Disp.Guide 10,556
**(Cite as: 2003 WL 21658260 (D.Minn.))**

when the matter in controversy exceeds $75,000, without considering interest and costs, *and when the citizenship of each plaintiff is different from the citizenship of each defendant."* Ryan ex rel. Ryan v. Schneider Nat'l Carriers, Inc., 263 F.3d 816, 819 (8th Cir.2001) (citing *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 68 (1996)) (emphasis added). Hjermstad has alleged that (1) he is a citizen of Minnesota who resides in Minnesota (*id.* at 2), [FN5] (2) CLA is a Minnesota corporation having its principal place of business in South Saint Paul, Minnesota (*id.* ¶ 3), and (3) CRI is a Wisconsin corporation having its principal place of business in Shawano, Wisconsin. (*Id.* ¶ 4.) Because the citizenship of the plaintiff is the same as that of one of the defendants, there is not complete diversity of citizenship and subject matter jurisdiction does not exist by virtue of 28 U.S.C. § 1332.

> FN5. The paragraphs found on pages two through four of the Amended Complaint are not numbered.

*3 Reading the jurisdictional paragraph of the Amended Complaint as a whole, it appears that Hjermstad intended to cite *28 U.S.C. § 1331,* which grants the district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Pursuant to § 1331's federal question jurisdiction, the Court has original jurisdiction over Count III of the Amended Complaint, asserting violations of **RICO**, and Count I of the Amended Complaint, to the extent it alleges that the Defendants wrongfully terminated Hjermstad in violation of the Packers and Stockyards Act. The balance of Count I and all of Count II assert state law causes of action, over which the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. The Court therefore begins its analysis of the Defendants' Motion to Dismiss with the federal question claims.

III. **RICO**, 18 U.S.C. § 1961

The Defendants move to dismiss Hjermstad's civil **RICO** claim on the grounds that he lacks standing to pursue it. In a civil **RICO** claim, "[a]ny person injured in his **business** or **property** by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court...." 18 U.S.C. ¶ 1964(c). Section 1962, in pertinent part, makes it unlawful to acquire or maintain--through a pattern of racketeering activity--an interest in any enterprise engaged in interstate commerce, or to participate-- through a pattern of racketeering activity--in the conduct of an enterprise engaged in interstate commerce, or to conspire to do either of the above. Therefore, to establish standing to bring a civil **RICO** claim, a plaintiff must show (1) an injury to "**business** or **property**" (2) caused "by reason of" a **RICO** violation. *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.,* 187 F.3d 941, 951 (8th Cir.1999). The Supreme Court has held that an "injury caused by an overt act that is *not* an act of racketeering or otherwise wrongful under **RICO** ... is *not sufficient* to give rise to a cause of action" under the civil **RICO** provisions. *Beck v. Prupis,* 529 U.S. 494, 505 (2000) (emphasis added).

The Defendants argue that Hjermstad has not been harmed "by reason of" a **predicate act** of racketeering and, therefore, lacks standing. "Mail fraud and wire fraud are within the **predicate acts** that may constitute 'racketeering activity' under **RICO**," *Blue Dane Simmental Corp. v. American Simmental Ass'n,* 178 F.3d 1035, 1041 (8th Cir.1999), and Hjermstad has alleged numerous acts of mail fraud and wire fraud relating to the operation of CLA's Livestock Feeding Program as **predicate acts** of "racketeering activity." (Am.Compl.¶¶ 44-50.) The issue, therefore, is whether the alleged injuries to Hjermstad were caused "by reason of" the alleged mail or wire fraud. The Court concludes that they were not.

This case falls within the scope of *Bowman v. Western Auto Supply Co.,* 985 F.2d 383 (8th Cir.1993). Bowman was an employee who protested his employer's double-billing of customers and was allegedly terminated for criticizing and refusing to participate in the alleged racketeering activity. As in the instant case, Bowman sued his former employer, asserting both substantive **RICO** claims under 18 U.S.C. § 1962(a)-(c) and a **RICO** conspiracy under 18 U.S.C. § 1962(d). The Eighth Circuit held that,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 4
2003 WL 21658260 (D.Minn.), RICO Bus.Disp.Guide 10,556

**(Cite as: 2003 WL 21658260 (D.Minn.))**

as a matter of law, an employee lacked "standing to bring a 'whistle blower' wrongful discharge suit [against his employer] under 18 U.S.C. § 1964(c) when the underlying **RICO** violation is based on § 1962(a), (b), or (c)." 985 F.2d at 386. "The simple act of discharging an employee as alleged in this case does not constitute racketeering activity as defined in **RICO**, and thus does not fall within the definition of what the Supreme Court has termed '**predicate acts**' under **RICO**." *Id.* at 385-86. As for the conspiracy claim, the Eighth Circuit reasoned that "[i]mposing the **predicate act** requirement on civil claims based on violations of § 1962(d) narrows the focus of those suits to the specific racketeering activity that lies at the heart of the **RICO** statute." *Id.* at 388. The Supreme Court confirmed this reasoning. *See Beck,* 529 U.S. at 507 (holding that "a person may not bring suit under § 1964(c) predicated on a violation of § 1962(d) for injuries caused by an overt act that is not an act of racketeering or otherwise unlawful under the statute.").

*4 Hjermstad replies that he was a "target" of alleged misrepresentations that constitute **predicate acts** of mail fraud and wire fraud, and that he was terminated because he posed "a direct threat" to the Defendants' continued control and maintenance of their interest in the enterprise. Therefore, his injuries were caused by the **predicate acts** of racketeering activity. These arguments are not persuasive and do not distinguish this case from either *Bowman* or *Hamm.* As in *Hamm* and *Bowman,* Hjermstad was not the real "target" of the **predicate acts** of racketeering activity. Hjermstad claims that the Defendants used acts of mail fraud and wire fraud "to induce farmers into [Livestock Feeding Program] contractual arrangements and to 'control' and 'maintain' [the Defendants'] interest in the enterprise to the absolute benefit of [the Defendants] and *the detriment of the farmer participant."* (Am. Compl. ¶ 46 (emphasis added).) Furthermore, Hjermstad's claimed compensatory damages involve "**lost wages**, out of pocket expenses, lost opportunity costs, ... retirement benefits and other employment benefits." (*Id.* at 20, ¶ 1.) These damages are clearly employment-related and arise directly from his alleged retaliatory discharge, not from the alleged misrepresentations.

The Court concludes that Hjermstad lacks standing to proceed with his civil **RICO** claims. Accordingly, Count III of the Amended Complaint will be dismissed with prejudice.

IV. The Packers and Stockyards Act, 7 U.S.C. § 209(a)

The Defendants also move to dismiss Hjermstad's claim for wrongful termination in violation of the PSA on the grounds that the Act does not provide a private cause of action for Hjermstad. In response, Hjermstad relies entirely on the plain language of § 209(a) of the Act, which imposes civil liability under the following circumstances:

> If any person subject to this chapter violates any of the provisions of this chapter, or of any order of the Secretary [of Agriculture] under this chapter, relating to the purchase, sale, or handling of livestock, the purchase or sale of poultry, or relating to any poultry growing arrangement or swine production contract, *he shall be liable to the person or persons injured thereby* for the full amount of damages sustained in consequence of such violation.

7 U.S.C. § 209(a) (emphasis added). Hjermstad appears to allege that Defendants engaged in the following conduct that violated the PSA: [FN6]

> FN6. Hjermstad fails to identify the specific section or sections of the PSA that the Defendants allegedly violated through their conduct, citing only the Act in its entirety as "7 U.S.C. §§ 181-231." The Court notes that, at a minimum, § 213 is a catch-all provision making it
> unlawful for any stockyard owner, market agency, or dealer *to engage in or use any unfair, unjustly discriminatory, or deceptive practice or device in connection with* determining whether persons should be authorized to operate at the stockyards or with *the receiving, marketing, buying, or selling on a commission basis or otherwise, feeding, watering, holding,*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                            Page 5
2003 WL 21658260 (D.Minn.), RICO Bus.Disp.Guide 10,556
**(Cite as: 2003 WL 21658260 (D.Minn.))**

> *delivery, shipment, weighing, or handling of livestock.*
> 7 U.S.C. § 213(a) (emphasis added).

Defendants failed to provide scale tickets or weigh tickets for livestock transactions as required by the Act;
Defendants, in livestock transactions based on weight, manipulated the weight of livestock in violation of the Act;
Defendants failed to keep accurate accounts and records and failed to make accounts and records available to member customers, as required by the Act;
Defendants failed to exercise reasonable care and promptness in transporting, feeding, watering, and handling livestock so as to prevent shrinkage, injury, and death, as required by the Act;
*5 Defendants made false and misleading representations to member customers concerning source and quality of livestock, livestock market conditions, and the price and sale of livestock, in violation of the Act;
* * * * *
Defendants breached their fiduciary duty to member customers by controlling livestock auctions, in violation of the Act;
Defendants breached their fiduciary duty to member customers by self-dealing, in violation of the Act;
Defendants used member customers' livestock to fulfill its own contracts, in violation of the Act;
Defendants breached their fiduciary duty to member customers by furnishing competitors with information for the purpose of restricting or limiting competition, manipulating livestock prices, or controlling the movement of livestock, in violation of the Act....

(Am.Compl.¶ 26(a)-(e), (g)-(j)). Hjermstad claims that he was injured by the above violations because he was terminated after he reported to management that such practices were illegal and indicated that he would not condone, aid, participate in, or allow such practices.

There is not a great wealth of case law under the PSA. Enacted in 1921, the PSA "was designed to secure the free and unburdened flow of livestock across the nation from producers to consumers by regulating the business of stockyards and their participants." *United States v. Haun,* 124 F.3d 745, 748 (6th Cir.1997) (citing *Stafford v. Wallace,* 258 U.S. 495, 514 (1922)). Congress thus enacted a comprehensive set of laws and regulations to govern interstate commerce in livestock in order "to assure fair competition and fair trade practices in livestock marketing and in the meatpacking industry." H.R.Rep. No. 1048 (1957), *reprinted in* 1958 U.S.C.C.A.N. 5212, 5213. As the Eighth Circuit has acknowledged, "the PSA has its origins in antecedent antitrust legislation and primarily prevents conduct which injures competition ." *Jackson v. Swift Eckrich, Inc.,* 53 F.3d 1452, 1460 (8th Cir.1995); *see also Farrow v. United States Dep't of Agric.,* 760 F.2d 211, 214 (8th Cir.1985) (observing that 7 U.S.C. § 213(a) "authorize[s] the Secretary of Agriculture to regulate anticompetitive trade practices in the livestock and meat industry in accord with 'the basic antitrust blueprint of the Sherman Act and other pre-existing antitrust legislation such as the Clayton Act and the Fair Trade Commission Act") (quoting *De Jong Packing Co. v. United States Dep't of Agric.,* 618 F.2d 1329, 1335 n. 7 (9th Cir.1980)).

Hjermstad's argument that a remedial statute must be broadly construed misstates the applicable canon of statutory construction--a remedial statute must be construed broadly *to effectuate its purposes. Tcherepnin v. Knight,* 389 U.S. 332, 336 (1967). Hjermstad has come forward with no authority establishing that a purpose of the PSA is to protect whistleblowing employees in the livestock industry from retaliatory discharge. Hjermstad has not cited, nor has the Court found, a single case in which a former employee of a "person subject to the [Act]" has sued his former employer under the PSA. Hjermstad has furthermore cited no authority suggesting that Congress ever intended to regulate employment relationships in the meatpacking industry through the Act. In short, there is no precedent for construing § 209(a) so broadly as to encompass a cause of action under the Act for what is, at root, a retaliatory discharge claim under an employment contract. That portion of Count I that is based on violations of the PSA will be dismissed

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 6
2003 WL 21658260 (D.Minn.), RICO Bus.Disp.Guide 10,556
**(Cite as: 2003 WL 21658260 (D.Minn.))**

with prejudice.

V. Continued Exercise of Supplemental Jurisdiction

*6 The Court has concluded that all federal claims over which it purportedly had original jurisdiction must be dismissed. When a district court dismisses the claims over which it has original jurisdiction, it may decline to continue to exercise what is called "supplemental jurisdiction" over the state law claims that are related to those federal claims. *See* 28 U.S.C. § 1367(c)(3); *American Civil Liberties Union v. City of Florissant,* 186 F.3d 1095, 1098-99 (8th Cir.1999) ("[W]hen state and federal claims are joined and all federal claims are dismissed ... the state claims are ordinarily dismissed without prejudice to avoid needless decisions of state law ... as a matter of comity."). Accordingly, the Court will dismiss the state law claims of wrongful termination in violation of various state laws without prejudice.

Conclusion
Based on the foregoing, and all of the files, records, and proceedings herein, IT IS ORDERED that Plaintiff David Hjermstad's Motion to Strike Defendants' "Reply Memorandum" (Doc. No. 11) is DENIED;

IT IS FURTHERMORE ORDERED that Defendants' Motion to Dismiss (Doc. No. 3) is GRANTED IN PART. Count III, alleging violations of the Racketeer Influenced and Corrupt Organizations Act, and that portion of Count I alleging wrongful termination in violation of the Packers and Stockyards Act, are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED, that pursuant to 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction over the remaining state law claims. Plaintiff's state law claims are hereby DISMISSED WITHOUT PREJUDICE. [FN7]

FN7. *See generally* 28 U.S.C. § 1367(d).

LET JUDGMENT BE ENTERED ACCORDINGLY.

2003 WL 21658260 (D.Minn.), RICO Bus.Disp.Guide 10,556

**Motions, Pleadings and Filings (Back to top)**

• 0:03CV02559 (Docket)
(Mar. 27, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.