UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Albert William Bleau Jr.

    Plaintiff

vs.                                                  Civil Action
                                                   No. 04 – 10469REK

Greater Lynn Mental Health
& Retardation Association, et al,

    Defendants

## Amendment Of Plaintiff's Motion

## To Bring Action Under The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-62

Plaintiff, Albert W. Bleau Jr. states as follows:

1. This Amended Complaint alleges, inter alia, violations under the Organized Crime Control Act of 1970, Pub. L. No. 91-452, Section 901(a), 84 Stat. 941, Racketeer Influenced and Corrupt Organizations ("RICO" 18 U.S.C. §§ 1961 and 1962 (a) (b) (c) (d) and is brought by the plaintiff in connection with a scheme devised, conducted, and /or participated in by Defendants Greater Lynn Mental Health & Retardation Association (GLMHRA), Eastern Mass Housing Corporation (EMHC), Roderick MacLeish, Robert Sherman and Robert Griffin with the assistance of board members of GLMHRA including Claire Jackson, past president; Thomas Manning, past treasurer and president; Robert Tucker, past treasurer and president; board member Nancy Rizzo; board member and vice-president of EMHC, Samuel Vitali and employees of GLMHRA: Paul Cote, Executive Director; Janine Brown Smith, past Comptroller and Director of

Contracts; Elaine DeAngelis, Director of Operations; Kelly Johnson, past QA Director and current Retardation Director and James Cowdell, past Fund Developer and current Administrative Assistant. The scheme also involved employees, board members and consultants of the Lynn Water & Sewer Commission including but not limited to the following individuals: Samuel Vitali, Legal Counsel, Robert Tucker, Deputy Director, James Cowdell, former board member and elected and appointed state and local officials including but not limited to James Cowdell, President of the Lynn City Council and Eric Carricker, Assistant State Attorney General as well as the assistance of representatives of Van Kampen American Capital, Atty. Barnett~~Robert~~ Sherman and Atty. Wayne Godlin as well as principal partners of the former auditing firm, Mullins and Company, James Mecone and John Sanella . The aforementioned organizations and individuals in violation of 18 U.S.C. § 1961 &. § 1962 (d) conspired to defraud EMHC, the Commonwealth of Massachusetts, the United States of America and GLMHRA and conspired to remove the plaintiff from his position as Executive Director of GLMHRA and EMHC for the express purpose of wrongfully and unlawfully diverting assets of the GLMHRA and EMHC for their own personal use and benefit, to cover up their mismanagement and unethical conduct and to receive other favors and benefits including promotions, jobs, salary increases, house renovations and favorable legal treatment from the court, the State Inspector General's Office and the State Attorney General's Office as previously detailed in the plaintiff's motion and amendment dated March 21, 2005. Their conspiracy and fraud also contributed to the death of plaintiff's brother. They also engaged in racketeering attempts and actual defrauding of two charitable

2

organizations, mail fraud including the illegal and unauthorized interstate sale of a charitable real estate asset of EMHC at a below market price and the diversion and investment of defrauded federal and state charitable and contractual grant funds for their own personal use in violation of 18 U.S.C. § 1961 &. § 1962 (a) (b) (c).

2. As part of their conspiracy and fraud, the defendants also unlawfully reviewed and shared the plaintiff's medical and counseling records in violation of the Federal Privacy Act for the express purpose of gaining sufficient support and votes to terminate the plaintiff from his position and to prevent him from being rehired by GLMHRA in August 2003 or by any other Health Care or Human Service's provider. They engaged in defamation and retaliation against the plaintiff and interfered with his ability to gain rightful employment in his profession. The plaintiff has attached (Attachment I) a sampling of positions that he has applied for during the past four years. He has not received a follow-up telephone call or a request for an interview from any of these companies indicating a concerted behind the scenes effort by the defendants and their associates to defame the plaintiff and prevent him from his livelihood. Many of these firms have or have had business relationships with the defendants and/or their associates and other business clients. The plaintiff has become bankrupt as a result. See Attachment II.

3. The Defendants as part of their conspiracy and fraud breached their fiduciary duties and duties of confidentiality to the plaintiff. The plaintiff had the right to confidentiality of his medical and counseling records. "The Restatement (Second) of Torts in § 874 broadly provides that '(o)ne standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a

3

breach of duty imposed by the relation.' Any breach of this duty gives rise to tort liability for any harm caused by the breach of a duty arising from the relation. The plaintiff may also seek restitutionary relief, as he or she is ordinarily entitled to profits that result to the fiduciary from the breach of duty as the beneficiary of a constructive trust in the profits. Furthermore, there is also liability imposed on anyone who knowingly assists a fiduciary in committing a breach of fiduciary duty." Quoted from Chapter 5, "Breaches of Fiduciary Duties And Duties of Confidentiality, **Book of Torts,** West Group, 11/2002.

4. The relief sought includes actual damages, punitive damages and treble damages arising from the scheme set forth herein and set forth in the plaintiff's motion and amendments dated March 8, 2005 and March 21, 2005, the imposition of constructive trusts with tracing, the imposition and execution of equitable liens, restrictions on future conduct, costs of investigation discovery and suit, moratory interest and attorney's fees.

## RELEVANT TIMES

5. The relevant times to this Amended Complaint are on or before September 3, 1997 until the current time or minimally until January 1, 2004 when Robert Tucker left the board of GLMHRA. The plaintiff believes that the conspiracy is continuing to this day as part of a cover-up of prior illegal activities.

## PARTIES/PARTICIPANTS

6. Greater Lynn Mental Health & Retardation Association, Defendant, a charitable not for profit 501(c) 3 corporation, and affiliated with an associated-in-

4

fact enterprise comprised of various participants and defendants, including the entity, in racketeering activity.

7. Eastern Mass Housing Corporation, Defendant, a charitable not for profit 501(c) 3 corporation subsequently taken over by Robert Tucker, put under the control of GLMHRA and subsequently dissolved and affiliated with an associated-in-fact enterprise comprised of various participants and defendants, including the entity, in racketeering activity.

8. Attorney Roderick MacLeish, Defendant

9. Attorney Robert Sherman, Defendant

10. Attorney Robert Griffin, Defendant

11. Robert Tucker, past treasurer (2000) and president of GLMHRA (2001-03), past sole incorporator and president of EMHC (7/01until unknown date), Deputy Director, Lynn Water & Sewer Commission

12. Claire Jackson, past president of GLMHRA, (1997-1999), Vice president (2000)

13. Thomas Manning, treasurer, (1997-99), president, 2000.

14. Nancy Rizzo, board member, wife of Anthony Rizzo, chairperson of Legal sub-committee, GLMHRA

15. Attorney Samuel Vitali, Vice-President, EMHC legal counsel for the Lynn Water & Sewer Commission

16. James Cowdell, Administrative Assistant, GLMHRA, past member, Lynn Water & Sewer Commission, President Lynn city Council

17. Janine Brown Smith, Comptroller and Director of Contracting, mistress of Roderick MacLeish

18. Paul Cote, past Executive Director of GLMHRA ( on or about 8/2000-

12/2003 and of EMHC 11/2000 to 12/2003.

19. Elaine DeAngelis, Director of Operations

20. Kelly Johnson, Retardation Director, mistress of Paul Cote,

21. James Mecone and John Sanella, GLMHRA auditors

22. Wayne Godlin and ~~Robert~~ *Barnett* Sherman, representatives of bondholders for Van Kampen American Capital

23. Attorney Eric Carricker, Assistant Attorney General, Charitable Division, State Attorney General's Office.

## PARTIES/PARTICPANTS FOR PURPOSES OF RELIEF

24. Commonwealth of Massachusetts and its citizens especially disabled residents who would have benefited from funds defrauded from EMHC and GLMHRA.

25. Estate of Charles Bleau, formally of Saugus, Massachusetts

26. Board members of EMHC, whose right to serve on a non profit board was illegally infringed.

27. Martena Fallon, Clerk of the EMHC

28. Past and present employees of GLMHRA who had EFIP funds diverted from employee benefits to the defendants.

29. Disabled citizens served by GLMHRA who suffered and had their services curtailed or eliminated due to funds being diverted to the defendants.

30. Federal and state taxpayers and private individuals and foundations and private businesses who contributed funds to GLMHRA and EMHC with the expectation that the funds would be used for charitable purposes.

## ALBERT W BLEAU JR/PLAINTIFF: THE REAL PARTY IN INTEREST

31. Albert W. Bleau Jr. was the Executive Director of GLMHRA from April 8, 1974 until September 8, 2000 and the Executive Director of EMHC from January 1978 until November 2, 2000.

## THE PATTERN OF UNLAWFUL RACKETEERING ACTIVITY

32. The plaintiff was barred from the buildings of GLMHRA and EMHC although he was the Executive Director of EMHC by MacLeish and Sherman beginning in November 1999 and this directive has not been rescinded by GLMHRA. At the time, MacLeish and Sherman and later Tom Manning and Robert Tucker stated that it was by order of the Attorney General. This statement was repeated by other board members as well who had been so informed by the aforementioned individuals. The plaintiff and anyone who assisted him were threatened with civil and criminal prosecution if they violated this directive. No one on the Attorney General's staff would confirm this fact when asked by the president of the board of EMHC, Stephen Speropolous. In May 2000, Tom Manning, president of GLMHRA, was also asked by Mr. Speropolous to supply proof of this directive and failed to do so as well. The alarm code of the main offices of GLMHRA and EMHC were changed to prevent the plaintiff from entering. This directive resulted in the plaintiff being unable to secure documents that would have been used to defend himself against false accusations. Additionally, plaintiff's attorney from February to May 2000, Stephen Rosenfeld requested various documentation to assist the plaintiff in his defense and was

7

denied access by Sherman and MacLeish. See Attachment III.

33. Should the court determine that the plaintiff has not shown sufficient proof of a "pattern" of racketeering activity or fraud the plaintiff has demonstrated sufficient proof that through discovery he will be able to ascertain exact dates and additional facts supporting a "pattern" as defined by the law and the courts and to support his allegations of fraud. Discovery will allow access to the files of the Inspector General's investigation of the LWSC, files of the defendants including minutes, dates and content of private and secret meetings between the defendants and their associates as well as directives and meetings with GLMHRA employees and board members. Individuals who have until now remained silent due to fear and retaliation will come forward to offer testimony. The past president of EMHC, Stephen Speropolous, expressed this fear only last week stating that he had only a few years to go until retirement from his teaching position and didn't want to lose his job. We can only imagine the fear that other former and present employees of the defendants and board members with less savvy or security as Mr. Speropolous have for themselves and their families.

34. The plaintiff states that provisions of Fed. R. Civ. P. 11(b)3 expressly permit pleading of allegations that are "likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Additionally, the Supreme Court in Leatherman v. Tarrant County, 507 U.S. 163, 113 S.Ct. 1160, 122 L. Ed. 2d 517 (1993) ruled that Rule 8 governs for all claims that are not specifically listed in Rule 9(b). Also, Swierkiewicz v. Soreman, 534 U.S. 506, 122 S.Ct. 992, 152 L. Ed. 2d 1 (2002), supports a simplified notice pleading standard.

35. Plaintiff further states that mail fraud and the defrauding of GLMHRA,

8

EMHC, the Commonwealth of Massachusetts, the United States of America, bribery, extortion, blackmail and conspiracy can be inferred or are proven from the facts and circumstantial evidence already submitted by the plaintiff. The intent to defraud can be inferred by the misrepresentations made by the defendants and their failure to disclose material facts that would have absolved the plaintiff from any appearance of wrongdoing.

36. In September 1997, James Cowdell and Samuel Vitali recruited Robert Tucker for the board of GLMHRA and then lobbied Tom Manning and other board members to appoint him to the board of GLMHRA on or about December 3, 1997. On or about this same time, Lynn City Councilor Richard Ellis, a member of the Lynn Water & Sewer Commission, (LWSC) suspected corruption and a cover up in the awarding of a multi million dollar sewer contract by the LWSC that was related to an earlier contract award approved by the mayor and the Commission prior to his membership on the LWSC. He secretly filed a compliant with the State Inspector General's Office. See Attachment IV, letter to plaintiff from the Law Firm of Capuano outlining list of news articles relating to the LWSC that has been submitted to the Court as attachments in the March 4, 2004 original complaint to the Court.

37. Also during the winter and summer of 1997 Anthony Rizzo, husband of board member Nancy Rizzo was arrested on two occasions for drug trafficking. See attached press release, Attachment V.

38. In the winter of 1999 Roderick MacLeish began an affair with Janine Brown Smith and he and Robert Sherman begin to conspire with Janine Brown Smith and subsequently with Elaine DeAngelis, Robert Tucker and Thomas Manning during the summer and fall of 1999 to receive a $50,000 retainer from

9

GLMHRA and EMHC and to secretly be hired by still unknown individuals presumably Tucker, Jackson, Manning, Brown-Smith and De Angelis without the approval of the Executive Director, Plaintiff, and for the express purpose to investigate the plaintiff and his wife and to fabricate charges against them for the express purpose of removing them from the organization and to take control of GLMHRA and EMHC. Their actions are detailed in the March 21 motion and amendment to the Court.

39. At the insistence of Erik Carricker, GLMHRA hired Attorney Robert Griffin on or about May 2000 as de-facto employer/receiver of GLMHRA ostensibly to investigate and draft a report for the Attorney General's Office. In fact his real role was to participate in a cover up of illegal, fraudulent activity on the part of the defendants and their associates and to assure the appointment of an Executive Director, Paul Cote, who would continue the cover up and continue the racketeering scheme. Griffin proceeded to prepare a report that misrepresented the facts and defamed the plaintiff. Griffin's actions are detailed in the March 21 motion and amendment to the Court. He stated in his report that the board knew little of the operation of the self insured plans or of the Employee Fringe Incentive Plan (EFIP) and that the Plaintiff was operating without authority and hiding information from the board. He also asserted that employees knew little of the plan. See Attachment VI depicting documentation of meetings of the EFIP Committee attended by senior managers and board members of GLMHRA past presidents and treasurers including Claire Jackson and Thomas Manning, as well ~~submitted since they contain names of GLMHRA employees).~~ Also included is a as a summary of a general ledger of the EFIP ~~(other ledgers have not been~~

10

memo from the plaintiff dated April 23, 1992 to all 600 plus GLMHRA employees. Also attached is a pay stub of the plaintiff from GLMHRA clearly depicting thousands of dollars of monthly deductions to cover expenditures alleged to have been unauthorized loans to the plaintiff.

40. Paul Cote, the Executive Director of GLMHRA and EMHC, on or about January-February 2001 presented false financial statements to the board of EMHC alleging that EMHC owed GLMHRA over $614,000 when in fact GLMHRA owed EMHC over one million dollars. He also threatened board members with prosecution from the Attorney General's Office if they did not resign from the board.

41. On July 1, 2001, Robert Tucker as president of GLMHRA became the sole incorporator and president of EMHC despite the fact that Clerk, Martena Fallon was still the elected clerk, had not resigned from the board and was the only sitting board member of the EMHC. Tucker's actions were done without Fallon's knowledge or consent. Shortly thereafter, GLMHRA took control of EMHC appointed members to its board and according to Defendant GLMHRA in its response brief, dissolved the corporation and took control of its assets.

42. On or about year 2002 GLMHRA sold property in Tilton New Hampshire owned by EMHC and worth over one million dollars for less than $800,000 without the vote or approval of Martena Fallon.

43. During year 2000 and 2001 the Inspector General's Office ended their investigation of the LWSC following lack of support and pressure from the Attorney General's Office and political pressure from Lynn area state and elected politicians. This was occurring in an atmosphere that included legislation to

11

terminate the Office and an indication that the Attorney General's staff were lobbying to have the Office put under their direct supervision. Robert Tucker and others recruited and financed a candidate to run against Councilor Ellis to silence his objection to LWSC activities. He won re-election by only a few votes.

44. During year 2000 and 2001 the GLMHRA approved additional payments of legal fees of over $125,000 to MacLeish and Sherman and payments of over $20,000 to Griffin.

45. During year 2000 or 2001, Anthony Rizzo charges for major drug dealing were reduced and he was tried in state court with a recommended sentence of less than one year by the State Attorney General's Office versus twenty years to life required for the offense.

46. Wayne Godlin and Barnett Sherman of Van Kampen American Capital conspired with the defendants and their participants and associates to require restrictive bond covenants resulting in the employment of Griffin, above market interest charges and collateral for the type of loan granted. The bond covenants and their actions contributed to the eventual resignation of the plaintiff from EMHC and to the "take over" of EMHC by the Defendants. See Attachment VII, letter from Martena Fallon to the board of Van Kampen dated May 22, 2000.

47. The plaintiff made numerous attempts to end the defamation and to curtail the defrauding of EMHC and the employee's EFIP funds. He filed numerous complaints with Department of Labor without success. An example of his efforts is Attachment VIII, a December 7, 2001 letter to James Cowdell.

48. The Defendants and their associates/ participants aforementioned listed paragraphs 6-23 formed an "ongoing formal and informal organization of individual and legal entity associates." They were an "association-in-fact

12

enterprise" See United States v. Cianci, 378 F.3d 71, 78 (1st Cir. 2004.

## FIRST CLAIM FOR RELIEF

(Violation of 18 U.S.C. § 1962 (c))

49. The plaintiff repeats the allegation of paragraphs 1-48 and allegations previously filed with his motions on March 8 and March 21, 2005.

50. The Defendants, GLMHRA, EMHC and MacLeish, Sherman and Griffin are each a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964 (c).

51. The GLMHRA and EMHC each is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962 (c), and were associated with an enterprise-in-fact which enterprises were engaged in and the activities of which affected interstate commerce during relevant times. GLMHRA and EMHC received federal grant funds and foundation grants from other states and solicited funds from across the country and reported to the federal government, national foundations, companies and private individuals concerning the expenditure of these funds. Both corporations were engaged in granting mortgages for tax exempt bonds that were marketed and sold across the United States. Additionally, EMHC owned real estate in Florida and New Hampshire and jointly operated these facilities with GLMHRA for the benefit of GLMHRA employees and consumers. GLMHRA also leased property in Florida from EMHC and granted loans and mortgage financing for property acquisitions in New Hampshire. GLMHRA also had clinical contracts in Maine, New Hampshire, North Carolina and Oregon.

52. MacLeish, Sherman and Griffin were also involved in interstate Commerce. They were actively involved in consulting work on federal contracts including bond counsel work with tax exempt bonds marketed across the country. MacLeish and Sherman's law firm has offices throughout the United States and there had to have been some sort of profit sharing within the firm.

53. The Defendants GLMHRA, EMHC, MacLeish, Sherman and Griffin with help from their associates and participants were part of an enterprise-in-fact and/or were associated with defendant GLMHRA and did conduct or participate, directly or indirectly, in the conduct of the affairs of GLMHRA and EMHC through a pattern of racketeering activity within the meaning of 18 U.S.C. §. § 1961(A) and 1961(B) and 1962(c), to wit:

    a. Multiple instances of mail fraud in violation of 18 U.S.C. § 1341;

    b. Multiple instances of conspiracy to commit offense or to defraud the United States of America in violation of 18 U.S.C. Chapter 19 § 371;

    c. Multiple instances of receiving proceeds from extortion in violation of 18 U.S.C. Chapter 41 § 880;

    d. Multiple instances of extortion in violation of 18 U.S.C. Chapter 41;

    e. Multiple instances of blackmail in violation of 18 U.S.C. Chapter 41 § 873;

    f. Multiple instances of Health Care Offense in violation of 18 U.S.C. Chapter 1 § 24;

    g. Multiple instances of bribery and conspiracy in violation of 18 U.S.C. Chapter 19.

54. By reason of the violation of 18 U.S.C. § 1962(c) committed by Defendants, GLMHRA, EMHC, MacLeish, Sherman and Griffin, the plaintiff lost

his employment at GLMHRA valued at $136,000/year, plus $10,000/yr in medical benefits, $20,000/year in retirement benefits, $3,000 per year in educational benefits and $34,700 in consultant fees from EMHC. The plaintiff could have expected to receive these benefits until age 70 or until year 2014. Injury to the plaintiff was $203,700 per year for fourteen years or $3,191,800 (three million one hundred and ninety one thousand and eight hundred dollars).

## SECOND CLAIM FOR RELIEF

(Violation of 18 U.S.C. § 1962 (d) by
Conspiracy to Violate 18 U.S.C. § 1962(c))

55. The plaintiff repeats the allegation of paragraphs 1-48 and allegations previously filed with his motions on March 8 and March 21, 2005.

56. The Defendants, GLMHRA, EMHC and MacLeish, Sherman and Griffin are each a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964 (c).

57. The GLMHRA and EMHC each is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962 (c), and were associated with an enterprise-in-fact which enterprises were engaged in and the activities of which affected interstate commerce during relevant times. GLMHRA and EMHC received federal grant funds and foundation grants from other states and solicited funds from across the country and reported to the federal government, national foundations, companies and private individuals concerning the expenditure of these funds. Both corporations were engaged in granting mortgages for tax exempt bonds that were marketed and sold across the United States. Additionally, EMHC owned real estate in Florida and New Hampshire and jointly operated these facilities for the benefit of GLMHRA employees and consumers. GLMHRA also leased property in Florida from EMHC and granted loans and

15

mortgage financing for property acquisitions in New Hampshire. GLMHRA also had clinical contracts in Maine, New Hampshire, North Carolina and Oregon.

58. MacLeish, Sherman and Griffin were also involved in interstate Commerce. They were actively involved in consulting work on federal contracts including bond counsel work with tax exempt bonds marketed across the country. MacLeish and Sherman's law firm has offices throughout the United States and there had to have been some sort of profit sharing within the firm.

59. The Defendants GLMHRA, EMHC, MacLeish, Sherman and Griffin with help from their associates and participants were part of an enterprise-in-fact and/or were associated with defendant GLMHRA and did conspire to conduct or participate, directly or indirectly, in the conduct of the affairs of GLMHRA and EMHC through a pattern of racketeering activity within the meaning of 18 U.S.C. §. § 1961(A) and 1961(B) and 1962(c), to wit:

    a. Multiple instances of mail fraud in violation of 18 U.S.C. § 1341;

    b. Multiple instances of conspiracy to commit offense or to defraud the United States of America in violation of 18 U.S.C. Chapter 19 § 371;

    c. Multiple instances of receiving proceeds from extortion in violation of 18 U.S.C. Chapter 41 § 880;

    d. Multiple instances of extortion in violation of 18 U.S.C. Chapter 41;

    e. Multiple instances of blackmail in violation of 18 U.S.C. Chapter 41 § 873;

    f. Multiple instances of Health Care Offense in violation of 18 U.S.C. Chapter 1 § 24;

    g. Multiple instances of bribery and conspiracy in violation of 18 U.S.C. Chapter 19.

60. By reason of the violation of 18 U.S.C. § 1962(d) committed by Defendants, GLMHRA, EMHC, MacLeish, Sherman and Griffin, the plaintiff lost his employment at GLMHRA valued at $136,000/year, plus $10,000/yr in medical benefits, $20,000/year in retirement benefits, $3,000 per year in educational benefits and $34,700 in consultant fees from EMHC. The plaintiff could have expected to receive these benefits until age 70 or until year 2014. Injury to the plaintiff was $203,700 per year for fourteen years or $3,191,800 (three million one hundred and ninety one thousand and eight hundred dollars).

## PRAYER FOR RELIEF

WHEREFORE the plaintiff, Albert W. Bleau Jr. prays:

I. That judgment be entered against GLMHRA, EMHC, Robert Griffin, Roderick MacLeish, and Robert Sherman each of them jointly and severally:

A. In an amount not less than Three Million Dollars ($3,000,000) upon the First Claim of Relief, for violation of 18 U.S.C. § 1962 (c), the sum duly trebled in accordance with 18 U.S.C. § 1964(c).

B. In an amount not less than Three Million Dollars ($3,000,000) upon the Second Claim of Relief, for violation of 18 U.S.C. § 1962 (d) by conspiracy to violate 18 U.S.C. § 1962(c), the sum duly trebled in accordance with 18 U.S.C. § 1964(c).

C. For the costs of suit including reasonable attorney's fees in accordance with 18 U.S.C. § 1964(c).

D. In addition, the plaintiff prays for equitable relief against the Defendants in the form of such injunctive and related relief as might be appropriate in

17

accordance with 18 U.S.C. § 1964(a) including:

(i)     Reasonable restrictions on the future participation of the Defendants as board members, consultants or legal counsel of non profit organizations.

(ii)    An equitable accounting for all benefits, consideration and profits received directly or indirectly or underlying, including but not limited to, the imposition of a constructive trust in tracing.

(iii)   The imposition and execution of equitable liens.

(iv)    Reasonable restrictions preventing the defendants from retaliation, defamation of the plaintiff or interference with his attempts to gain employment and contractual work.

(v)     For such other damages, relief and pre- post-judgment interest as the Court may deem just and proper.

Respectfully Submitted,

*[signature]*

Albert W. Bleau Jr.
505 Paradise Rd. #208
Swampscott, MA 01907
(781) 962-2662

Dated: April 20, 2005

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon all counsel of record by First Class Mail on April 20, 2005.

*[signature]*
Albert W. Bleau Jr.

18