# UNITED STATE DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

Albert William Bleau Jr.

    Plaintiff

vs.

                                                    Civil Action
                                                  No. 04 – 10469REK

Greater Lynn Mental Health
& Retardation Association, et al,

    Defendants

## Martena Fallon's Affidavit To Support

## Plaintiff's Motion

## In Opposition To Defendants' Greater Lynn Mental Health & Retardation Association (GLMHRA), Et al, Motions For Summary Judgment, Dismissal And Entry Of Separate And Final Judgment & Memorandum Of Plaintiff Albert W. Bleau Jr. In Support Of His Motion For Summary Judgment Originally Filed On March 9, 2005

## & To Support Plaintiff's
## Amended Motion &
## Motion To Amend Original Complaint Dated March 8, 2004 to Bring Action Under The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-62 (2000) Filed on March 21, 2005
## And
## Plaintiff's Amended Motion Filed April 20, 2005 to Bring Action Under The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-62

1.)     Plaintiff, Albert W. Bleau Jr., now submits an affidavit of Martena Fallon, (attached) past president of GLMHRA and current legal clerk of EMHC to

support his motion for summary judgment, to support his motion to amend his original motion of March 8, 2004 filed on March 21, 2005 to include RICO and to support his amendment of his March 21, 2005 motion filed on April 20, 2005. The Martena Fallon Affidavit supports plaintiff's motion for the Court to deny the defendant GLMHRA's motion for summary judgment, MacLeish and Sherman's motion for dismissal and Griffin's motion for entry of separate and final judgment.

2.) On March 21, 2005 the plaintiff submitted to the Court an unsigned affidavit of Martena Fallon. Martena Fallon has been residing in Florida making it difficult for the plaintiff to receive a notarized final affidavit. Martena Fallon has revised the original unsigned affidavit submitted to this Court and has had it notarized by a Florida Notary.

Respectfully Submitted,

Albert W. Bleau Jr.
505 Paradise Rd. #208
Swampscott, MA 01907
(781) 962-2662

Dated: April 20, 2005

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon all counsel of record by First Class Mail on April 20, 2005.

Albert W. Bleau Jr.

2

# AFFIDAVIT OF MARTENA FALLON

I, Martena C. Fallon, reside at 75 Fox Hill Road, Nahant, Essex County, MA 01908. I am over 18 years of age.

I hereby depose and swear as follows:

I first became a member of the Board of Directors of the Greater Lynn Mental Health & Retardation Association (GLMH&RA) in approximately 1986. From that time until my resignation in 1999 I served at various times as President (January 1, 1996 to December 31, 1998), Vice-President and Clerk (January 1, 1998 until my resignation). In 1999 I felt compelled to resign because, by their own admission, Atty. Roderick McLeish and Atty. Robert Sherman assumed unauthorized legal authority over that agency simultaneously representing the Board of Directors, all employees and all clients in violation of their code of ethics as attorneys of the Commonwealth of Massachusetts. Atty. Robert Sherman specifically directed all Board members not to discuss the actions of these attorneys with anyone failing which they would become defendants in a case which would be brought by them against the offender for "breach of attorney-client privilege." As ludicrous as this sounds, they were successful at instilling fear into all board members so that they were compelled to respond to the demands of these attorneys. I filed a complaint against these attorneys with the Board of Bar Overseers and was advised that I had no standing in filing such a complaint because the complaint was for actions taken against GLMH&RA and since I had resigned, I had no standing with respect to any GLMH&RA business.

Eastern Massachusetts Housing Corporation (EMHC) is an entity completely separate from Greater Lynn Mental Health & Retardation Association, though there is a business affiliation between the two corporations. I was elected Clerk of the Eastern Massachusetts Housing Corporation in 1992 and I have never resigned nor has that lawful board terminated my position. At the current time I am the only remaining board member.

As a direct result of the take over of GLMH&RA by Attys. McLeish and Sherman, the Mr. Paul Cote, acting Executive Director of GLMH&RA, served termination notice to the Eastern Massachusetts Housing Corp. board members advising that GLMH&RA was assuming authority over this latter organization and acquiring its assets. I was thanked for my many years of service and advised not to return and to keep no records of such notification of termination. EMHC is a corporation separately organized and is not part of Greater Lynn Mental Health & Retardation Assn. None of these three attorneys nor the GLMH&RA board, nor Mr. Paul Cote had any lawful right to take over the business of a Corporation organized under separate authority. None of the lawfully elected members of the Board of Directors of the Eastern Massachusetts Housing Corporation at any time approved or voted any actions to merge or render control of EMHC to GLMH&RA, their Board or to their attorneys.

As the only remaining board member, I am the only person who could have authorized the sale of the real estate holdings of the Eastern Massachusetts Housing Corporation as well as the only person who can reconstitute a new board of directors. As the Clerk of the EMHC, I have never certified any documents for the sale of certain of the corporation's assets which were sold under the administration of Mr. Paul Cote and Mr. Robert Tucker. I am most particularly concerned because certain real estate holdings were sold at below market value. As a licensed MA real estate broker who was involved in the acquisition of many of EMHC's top quality properties, the unlawful and below market sales of these assets are particularly distressing, especially since neither Mr. Tucker, Mr. Cote nor GLMH&RA had legal ownership rights to sell these properties.

The assets of the Eastern Massachusetts Housing Corporation were apparently transferred to the control of the Board of Directors of Greater Lynn Mental Health & Retardation Assn. They didn't have any approvals of the Board of Directors of the Eastern Massachusetts Housing Corporation to do this. I, as Clerk of the Eastern Massachusetts Housing Corporation, never signed any certifications allowing any transfer or merger of assets. I find it interesting that I did not have any standing to file an actionable complaint against GLMH&RA because my affiliation was with EMHC only and not GLMH&RA, but for the purposes of the local politicians there was enough affiliation between the corporations for GLMH&RA to acquire and sell the assets of EMHC for the benefit for GLMH&RA's balance sheets. This contradiction in authority is cavalier and gives rise to the issue of the vulnerability of any individuals serving on any board of directors when the eyes of the local politicians become "green."

Review of financial records of Greater Lynn Mental Health & Retardation Assn. will demonstrate that GLMH&RA needed the assets from the EMHC because they became bankrupt under the direction of Attys. McLeish, Sherman and Griffin, as well as their Executive Director appointee Mr. Paul Cote and Board President Robert Tucker. The board members were advised that the Attorney General compelled GLMH&RA to remain solvent or to dissolve. The significant value of assets of EMHC served to hide from the Attorney General the extraordinary extent of financial devastation to GLMH&RA caused by the greed and incompetence of individuals, as well as a self-serving board President and Clerk, who did not represent the agency, but took it over for their own personal and financial gains. At one time, Mr. James Cowdell (allegedly under direct instruction of Mr. Robert Tucker) telephoned me advising that the Attorney General had instructed them to order me to sign certain documents and that unless I, as Clerk of EMHC, failed to authorize the sale of certain of EMHC property within the hour that he would put GLMH&RA into receivership that day. I was threatened that there was not enough time for me to verify the information with the Attorney General's Office before the corporation would be put into receivership and I was further informed that the Attorney General's Office did not want to hear from me for any reason whatsoever.

The asset merger and property sales were done to cover up the mismanagement of GLMH&RA. Attorneys MacLeish and Sherman took over the agency and billed over three hundred thousand dollars in legal and consulting fees, putting the organization in a

cash flow crisis. On August 1, 1999 the financial sheets of GLMH&RA showed a positive balance of over $800,000; within a year the agency was in debt for almost $2 million. EMHC, under Mr. Bleau's direction and with the support of the EMHC board, were compelled to sell various properties in order to loan over $1.2 million dollars to GLMHRA to make payroll and other expenses in order to meet the Attorney General's mandates. Mr. Bleau, while on forced leave of absence from GLMHRA, also negotiated three working capital loans totaling $650,000 for EMHC that were also transferred to GLMHRA to cover their cash flow crisis created by the aforementioned attorneys and the GLMHRA board.

As a result of these efforts, GLMHRA avoided insolvency and receivership. As a result of the illegal merger, GLMHRA was able to wipe out their debt to EMHC that totaled almost $2 million dollars and thereby freeing up cash to pay their exorbitant attorney fees and consulting costs. These fees had been ruled excessive by the Department of Retardation and the Department of Mental Health and GLMHRA was informed that they could not use state funds or any proceeds from state contracts to pay these fees.

I have attached a copy of a complaint that I, as board member and Clerk of EMHC, filed with the Board of Bar Overseers against Attys. MacLeish and Sherman. As stated above, my complaint was dismissed because my resignation from the GLMH&RA Board allegedly removed any standing I may have had for such purposes. I was unable to get Treasurer Robert Tucker or GLMHRA to join me in the complaint. At that time, I was unaware of Mr. Tucker's grander objectives.

The agency's personnel practices authorize only the Executive Director to hire outside consultants and attorneys. Attys. MacLeish and Sherman were brought into the agency by the comptroller, Ms. Janine Brown Smith (paramour of Robert MacLeish). Ms. Brown Smith failed to monitor or control the expenditures of these attorneys with whom she had/has a ongoing personal relationship and authorized payment for their legal fees for services which were self-serving and aimed at ousting Mr. Bleau for the professional benefit of Ms. Brown Smith and Mr. Thomas Manning. Payment of these fees to them was authorized by Ms. Brown Smith who did not have the authority to authorize payment of any expenditures whatsoever. By doing so she was in violation of agency regulations and those laws which govern white-collar crime.

The Board of Directors under President Clair Jackson and incumbent President Thomas Manning along with aspiring President and Executive Director, Thomas Tucker and aspiring Executive, James Cowdell (Lynn City Councilor), allowed Attys. MacLeish and Sherman to take over all aspects of the administration of the corporation. They allowed this to happen for their own personal gain, using their positions on the Board of Directors towards these objectives. Additionally:

    1)       They caused changes in the personnel practices and threatened staff members with loss of their jobs if they communicated with Mr. Bleau.

3) Employees who spoke against the take-over were threatened with loss of job and legal and criminal action.

4) They threatened board members with criminal action by alleging "violation of attorney-client privilege" if they spoke with Mr. Bleau, or staff, or even me.

5) They cancelled the insurance plan and threatened the insurance broker who handled the health insurance policies with arrest and criminal proceedings if he did not turn over all his confidential records and files

6) Confidential and highly personal health information of many staff members was disseminated throughout the administrative offices and became subject of many informal conversations.

7) They unilaterally terminated a strategic plan, approved by the GLMH&RA staff and Board of Directors which provided for the expansion of new programs by over $1.2 million dollars, which programs had funding sources.

8) Attys. Sherman and MacLeish took unilateral action to have the EMHC board dissolved and combined with GLMH&RA which would increase their funding source by at least $30 million from which they would be able to bill for their services.

9) This takeover of GLMH&RA, which was the management company for the properties owned by EMHC, allowed these individuals to take EMHC administrative and corporate documents hostage. These individuals failed and otherwise refused to allow EMHC access to their documents as well as their financial records despite numerous demands from the EMHC Board of Directors form them to do so, simultaneously they billed and acquired management funds from the EMHC bank accounts. They falsely alleged that documents (such as minutes of board meetings) were missing and they re-wrote and otherwise tailored certain other documents to support certain of their actions.

These attorneys continuously billed for their services and provided services without any votes of authorization of the board and without approvals from the Executive Director or from the Board of Directors.

Also attached is a copy of the response and analysis of a complaint filed against Mr. Bleau by Attys. MacLeish and Sherman which falsely alleged that Mr. Bleau had violated ERISA laws by providing vacations for mentally ill and retarded clients. Such false allegations filed against Mr. Bleau by these attorneys were for the sole purpose of compelling the Board to terminate Mr. Bleau's employment in favor of Ms. Brown Smith

and Mr. Manning. Ultimately chaos ensued and Mr. Tucker and Mr. Cowdell, seized the opportunity (with the help of other City of Lynn politicians and an attorney, Robert Griffin, appointed by the Attorney General) taking over administration of GLMH&RA and unlawfully acquiring and selling the real estate assets of EMHC. They threatened board members of both corporations that the Attorney General's office informed them that he would put the agency into receivership unless Mr. Tucker' instructions were followed. Atty. Griffin could not be reached for verification and was clearly not interested in communicating with board members other than Mr. Tucker.

Mr. Tucker's gained control over the GLMH&RA Board by promising to right the wrongs that were done to the agency. However, he failed to present significant written evidence that demonstrated that allegations made against Mr. Bleau by Attys. MacLeish and Sherman and Atty. Griffin were not true and instead, he relayed incorrect information about the conduct of the agency under Mr. Bleau's direction to the Attorney General's Office and the commissioners of the Department of Mental Health (DMH) and the Department of Mental Retardation (DMR). Mr. Tucker's actions maligned this man so that no one would return any of his phone calls or responded to his correspondence. I provided written documentation to Mr. Tucker from an ERISA attorney demonstrating that the allegations made by Attys. MacLeish and Sherman against the agency's fringe benefit plan were bogus, yet Mr. Tucker failed to disseminate this information.

Mr. Tucker was presented with two documents which demonstrate that Mr. Bleau was not terminated for cause, that the charges were fabricated against him for the personal and financial gain of Attys. MacLeish, Sherman and Giffin and various board members of GLMHRA, yet he withheld them from the authorities apparently because they would mitigate his personal objectives of ultimately assuming the position of Executive Director of both agencies. These aforementioned allegations were widely disseminated in and around Lynn, Massachusetts and throughout DMH and DMR and served to discredit a man who had dedicated his life to the handicapped. He has been slandered, his reputation has been severely damaged by the people who took over GLMHRA and their attorneys solely for selfish purposes of certain individuals with a result in Mr. Bleau's inability to obtain any interviews for employment despite having submitted hundreds of resumes for openings.

This process to disenfranchise Mr. Bleau from his position caused serious impact upon board members as they were compelled to attend meetings several times each week for more than a year. These meetings were called first by Attys. MacLeish and Sherman, then by Mr. Tucker as he and his political liaisons were able to garner control. Board members believed that Mr. Tucker's prime concern was the well-being of GLMH&RA; however, when Mr. Tucker instructed the board to hire Mr. Paul Coty without even the benefit of any resume review and with a salary $40,000 higher than that received by Mr. Bleau, it became suspected that Mr. Tucker's intention was to inflate the salary for that position for the time when he would assume the position himself despite his not having training, experience or more than a minimal level education.

Board members voted to reinstate Mr. Bleau to his former position. Benevolent political action for the benefit of those in opposition threatened Board members unless they rescinded this vote despite their objections. Board members were otherwise intimidated to take actions based on untrue allegations against Mr. Bleau and were threatened from discussing and evaluating data with other reasonable individuals; and in the end Mr. Tucker saw to it that all members of both boards were summarily dismissed so that he could impact the board with personal friends and other local politicians in order to guarantee a high paying position for which he has no professional credentials.

All of these individuals should be required to account for their irresponsible actions and the grand larceny perpetrated against EMHC's assets and the tremendous injustice to Mr. Bleau and board members of both agencies. Board members were required to attend several meetings per week for over one year, a tremendous ordeal in time and energy under the guise that justice was being done. At one of the last meetings held by the EMHC board, the board unanimously voted Mr. Bleau to take over the agency and to protect the remaining assets. At no time did the lawful EMHC board vote to give the position of Executive Director or President to Mr. Tucker nor to allow the GLMH&RA Board to assume authority over that agency.

Many years ago EMHC hired and paid management fees to GLMH&RA to manage their properties. As such GLMH&RA had custody of all of their management documents. Under the direction of Attys. MacLeish and Sherman, Ms. Elaine White and Ms. Janine Brown-Smith, who maintained the EMHC files, refused to provide EMHC with its financial documents, management records or any other documents so that the EMHC board had to function solely on information contained in their minutes, old financial records and memories of the board members, and copies of documents personally maintained by board member, all this despite the numerous demands, both written and oral, that the EMHC records be made available to the EMHC board. Again, EMHC is a corporation instituted separately and apart from any other organization and was not subject to influence other than by its own Board of Directors who did not give custody of that corporation to Greater Lynn Mental Health & Retardation Association, nor was the EMHC board ever in communication with the Attorney General's Office regarding any management issues whatsoever.

Mr. Speropoulos, President of EMHC, advised board members that he had received a telephone call from Atty. Robert Sherman, as attorney for GLMH&RA, advising that he had in his possession a copy of a letter from the State advising the GLMH&RA board of directors that Mr. Bleau was not to be allowed access to the GLMH&RA building on Friend Street, in Lynn. Mr. Speropoulos repeatedly asked Mr. Thomas Manning and Ms. Elaine White, Director of Operations, for a copy of such letter. After a period of time, Mr. Manning finally admitted that this was a lie and that no such letter had been received and that Mr. Bleau was not banned from the building, his office or his records. Despite this confession, both Mr. Bleau and the EMHC board were denied access to their records.

At the time of the last formal meeting of EMHC, Paul Cote advised all EMHC member that Attorney General's office instructed him to advise us that we were ordered to step

down and relinquish control of the corporation to him, failing which the State was prepared to bring legal action against each and every member individually and the EMHC corporation collectively. He further instructed me, as Clerk, not to take any minutes of this meeting particularly because they would not be recorded as any part of corporation records.

He then advised the Board that the GLMH&RA Fringe Incentive plan was a violation of ERISA laws and that all current funds would be confiscated by GLMH&RA to be added to the general fund and be used for current expenses. . To the best of my knowledge the fund contained approximately $800,000 and these funds were contributed by and for the employees for educational, health, vacation and other plans for their benefits. He explained his definition of the Fringe Incentive Plan to the board members and I advised him that his understanding of the plan was faulty. He was clearly not interested, in fact he was defiant.

I certify that the above statement is true to the best of my knowledge.

Date: _____

_____
Signature of Affiant

Typed name and address of affiant:
Martena Fallon
Fox Hill Rd.
Nahant, Massachusetts 01908

Personally appeared the above named Martena Fallon and made oath that the foregoing statements are true.

Date: 4/18/05

_____
Notary/Attorney

