UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALBERT WILLIAM BLEAU JR., )<br>    Plaintiff )<br>)<br>v. )<br>)<br>GREATER LYNN MENTAL HEALTH & )<br>RETARDATION ASSOCIATION, )<br>EASTERN MASS HOUSING CORPORATION, )<br>RODERICK MacLEISH, )<br>ROBERT SHERMAN, and )<br>ROBERT J. GRIFFIN, )<br>    Defendants )<br>) | CIVIL ACTION<br>NO. 04-10469-REK |

**AMENDED Memorandum and Order**
June 3, 2005

**I. Pending Matters**

Currently pending before this court are matters related to the following filings:

(1) Defendants Roderick MacLeish, Jr. and Robert A. Sherman's Memorandum of Law in Support of Motion to Dismiss (Docket No. 31, filed January 28, 2005);

(2) Defendants Roderick MacLeish, Jr. and Robert A. Sherman's Motion to Dismiss (Docket No. 32, filed January 28, 2005);

(3) Motion of Defendant Robert J. Griffin for Entry of Separate and Final Judgment (Docket No. 33, filed February 1, 2005);

(4) Memorandum of Defendant Robert J. Griffin in Support of His Motion for Entry of Separate and Final Judgment (Docket No. 34, filed February 1, 2005);

(5) Motion for Summary Judgment of Defendant Greater Lynn Mental Health & Retardation Association, Inc. (Docket No. 35, filed February 8, 2005);

(6) Memorandum of Defendant Greater Lynn Mental Health & Retardation Association, Inc., in Support of Its Motion for Summary Judgment (Docket No. 36, filed February 8, 2005);

(7) Motion of Defendant Greater Lynn Mental Health & Retardation Association, Inc., to Extend the Time for Filing a Reply (Docket No. 37, filed March 4, 2005);

(8) Motion Requesting Extension to File Response Brief and Motions on March 9, 2005 (Docket No. 38, filed March 9, 2005);

(9) Motion Requesting Relief to Prevent Continuing Retaliation and Defamation By the Defendants (Docket No. 39, filed March 9, 2005);

(10) Motion for Summary Judgment of Plaintiff Albert W. Bleau, Jr. (Docket No. 40, filed March 9, 2005);

(11) Motion in Opposition to Defendants' Greater Lynn Mental Health & Retardation Association (GLMHRA), Et al, Motions for Summary Judgment, Dismissal and Entry of Separate and Final Judgment & Memorandum of Plaintiff Albert W. Bleau Jr. in Support of His Motion for Summary Judgment (Docket No. 41, filed March 9, 2005);

(12) Amendment of Plaintiff's Motion in Opposition to Defendants' Greater Lynn Mental Health & Retardation Association (GLMHRA), Et al, Motions for Summary Judgment, Dismissal and Entry of Separate and Final Judgment & Memorandum of Plaintiff Albert W. Bleau Jr. in Support of His Motion for Summary Judgment Originally Filed on March 9, 2005 & Motion to Amend Original Complaint Dated March 8, 2004 to Bring Action Under the Racketeering

2

Influenced and Corrupt Organizations Act (RICO), §§ 1961-62 (2000) (Docket No. 42, filed March 22, 2005);

(13) Defendants Roderick MacLeish, Jr. and Robert A. Sherman's Memorandum in Response to Albert W. Bleau, Jr.'s Motion for Summary Judgment (Docket No. 46, filed April 20, 2005);

(14) Defendants Roderick MacLeish, Jr. and Robert A. Sherman's Response to Plaintiff's "Motion Requesting Relief to Prevent Continuing Retaliation and Defamation By the Defendants" (Docket No. 47, filed April 20, 2005);

(15) Defendants Roderick MacLeish, Jr. and Robert A. Sherman's Memorandum in Opposition to Plaintiff's Motion to Amend Complaint (Docket No. 48, filed April 20, 2005);

(16) Amendment of Plaintiff's Motion to Bring Action Under the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-61 (Docket No. 49, filed April 20, 2005);

(17) Opposition of Greater Lynn Mental Health & Retardation Association, Inc., to Plaintiff's Motion Requesting Relief to Prevent Continuing Retaliation and Defamation By the Defendants (Docket No. 50, filed April 27, 2005);

(18) Motion of Eastern Massachusetts Housing Corporation for Entry of Separate and Final Judgment (Docket No. 51, filed April 27, 2005);

(19) Memorandum of Eastern Massachusetts Housing Corporation in Support of Its Motion for Entry of Separate and Final Judgment (Docket No. 52, filed April 27, 2005);

(20) Opposition of Defendant Greater Lynn Mental Health & Retardation Association, Inc., to Plaintiff's Motion for Leave to Amend His Complaint (Docket No. 53, filed April 29, 2005);

(21) Martena Fallon's Affidavit to Support Plaintiff's Motion in Opposition to Defendants' Greater Lynn Mental Health & Retardation Association (GLMHRA), Et al, Motions for Summary Judgment, Dismissal and Entry of Separate and Final Judgment & Memorandum of Plaintiff Albert W. Bleau Jr. in Support of His Motion for Summary Judgment Originally Filed on March 9, 2005 & Motion to Amend Original Complaint Dated March 8, 2004 to Bring Action Under the Racketeering Influenced and Corrupt Organizations Act (RICO), §§ 1961-62 (2000) Filed on March 9, 2005 & to Support Plaintiff's Amended Motion & Motion to Amend Original Complaint Dated March 8, 2004 to Bring Action Under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-62 (2000) Filed on March 21, 2005 and Plaintiff's Amended Motion Filed April 20, 2005 to Bring Action Under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-62   (Docket No. 54, filed April 21, 2005);

(22) Motion for Leave to File a Reply and Reply of Defendant Greater Lynn Mental Health & Retardation Association, Inc., to Plaintiff's Opposition to Its Motion for Summary Judgment (Docket No. 55, filed May 4, 2005);

(23) Reply and Opposition of Defendant Robert Griffin to Plaintiff's Opposition to Griffin's Motion for Entry of Separate and Final Judgment and Plaintiff's Motion for Leave to Amend Complaint (Docket No. 56 and 58, filed May 4, 2005);

(24) Opposition of Defendant Robert Griffin to Plaintiff's Motion Requesting Relief to Prevent Continuing Retaliation and Defamation By the Defendants (Docket No. 57, filed May 4, 2005);

(25) Defendants Roderick MacLeish, Jr. and Robert A. Sherman's Motion to Strike Affidavit of Martena Fallon (Docket No. 59, filed May 6, 2005); and

(26) Defendants Roderick MacLeish, Jr. and Robert A. Sherman's Response to "Amendment of Plaintiff's Motion," Dated April 20, 2005 (Docket No. 60, filed May 6, 2005).

## II. Factual and Procedural Background

The plaintiff, Albert W. Bleau, Jr. ("Bleau"), filed a complaint before this court on March 8, 2004.  (Docket No. 1)  On December 8, 2004, I issued a Memorandum and Order addressing a series of motions brought by the defendants and dismissing a number of Bleau's claims.  (Docket No. 28)

Following this Memorandum and Order, new motions were filed.  On May 11, 2005, I ruled on those motions and indicated that I would issue a Memorandum and Order delineating my reasons for the findings and their scope.

## III. Analysis

### A. Motions to Extend Time (Docket Nos. 38 and 39); Motion for Leave to File a Reply (Contained in Docket No. 55)

As a preliminary matter, I granted both motions seeking an extension of time to file.  (Docket Nos. 38 and 39).  I also granted the motion for leave to file a reply filed by Greater

Lynn Mental Health & Retardation Association, Inc. ("GLMHRA") and contained in Docket Number 55.

**B. Motion to Amend Bleau's Previous Motion to Amend His Complaint (Docket No. 49):**

During the hearing, I granted Bleau's motion to amend his motion to amend his complaint.  (Docket No. 49)  Because of my firm desire to decide each case on the merits and because I found that no substantial prejudice would occur to the defendants, I allowed the motion to amend the previous motion to amend.  As I stated during the hearing, this decision should not be construed in any way as a decision on the merits of the motion to amend the complaint, (Docket No. 42).

**C. Defendants MacLeish and Sherman's Motion to Dismiss (Docket No. 32)**

Defendants MacLeish and Sherman sought, in this motion, to dismiss the claims against them that remained following the December Memorandum and Order.  At the May 11, 2005, hearing I granted this motion and noted that this did not amount to an entry of separate and final judgment because no motion was then before me.

The motion to dismiss first addressed a dispute about the scope of the December 8, 2004, Memorandum and Order as it applied to Bleau's American's With Disabilities Act ("ADA") and Rehabilitation Act claims against MacLeish and Sherman.  The December Order states that MacLeish and Sherman's previous motion to dismiss "is ALLOWED as to the plaintiff's claims under the ADA and the Rehabilitation Act. The plaintiff's claims are DISMISSED WITH PREJUDICE."  (Docket No. 28 at 18)  Part IV of the Memorandum states, however, that "[t]he plaintiff alleges facts sufficient to state a claim for employment discrimination and retaliation under the ADA and the Rehabilitation Act against defendants MacLeish and

Sherman in their official capacities as employers, though the plaintiff's claims against the defendants in their personal capacities as agents of GLMHRA are dismissed." The issue is whether this statement in Part IV, as it concerns Bleau's claims against MacLeish and Sherman in their official capacities as employers is correct or that the part of the Order stating that all of the ADA and Rehabilitation Act claims were dismissed is correct.

Part III.B.5 of the December Memorandum, which deals with the ADA and Rehabilitation Act claims, makes clear that the statute of limitation bars *all* Bleau's ADA and Rehabilitation Act claims against MacLeish and Sherman. In addition, Part III.E.3 deals with similar claims against defendant Griffin and reaches the same conclusion as applied to defendant Griffin.

I conclude that the assertion that Bleau's claim that his ADA and Rehabilitation Act claims against MacLeish and Sherman in their capacity as employers still remains is plainly incorrect. The part of the Memorandum stating that Bleau had stated a claim did not refer to the statute of limitation issue.

MacLeish and Sherman's motion also sought dismissal of an apparent defamation claim made against them by Bleau. Massachusetts has a three-year statute of limitation that applies in defamation cases. Collins v. Nuzzo, 244 F.3d 246, 252-53 (1st Cir. 2001). Bleau does not allege that any defamatory remark was made within the limitation period. Bleau does not allege that the defamatory statements were unknown to him and inherently unknowable. Id. Accordingly, these claims are barred by the statute of limitation.

MacLeish and Sherman's motion also contended that, even if the defamation claim was not dismissed, since the ADA and Rehabilitation Act claims have been dismissed, this court

has no subject matter jurisdiction. Because no claims are remaining against MacLeish and

Sherman, it is not necessary to rule on this aspect of the motion at this time, although I note that

the exercise of this court's supplemental jurisdiction in a case involving federal claims is

discretionary.

**D. Motion of Defendant Robert J. Griffin for Entry of Separate and Final Judgment (Docket No. 33)**

Defendant Griffin's motion sought entry of a separate and final judgment following

this court's dismissal of all ADA and Rehabilitation Act claims made against him. No claims are

currently pending against Griffin. The motion is correct in stating that all of the explicit claims

against Griffin were dismissed in the December 2004 Memorandum and Order. In addition,

although the original complaint can be interpreted as claiming that Griffin may have defamed

Bleau, it is apparent on the face of the complaint that the inferences are not sufficient to state a

claim.

Federal Rule of Civil Procedure 54 provides that:

> When more than one claim for relief is presented in an action . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

"[E]ntry of judgment under [Rule 54(b)] should not be indulged as a matter of routine or as a

magnanimous accommodation to lawyers or litigants." Spiegel v. Trustees of Tufts College, 843

F.2d 38, 42 (1st Cir. 1988). A ruling must have finality as to a claim in order to enter judgment.

Id. If the requisite finality exists, "the court must determine whether, in the idiom of the rule,

there is no just reason for delay." Id. (citation and quotation omitted). The decision is "tilted

from the start against fragmentation of appeals" and is "case-specific." Id. A judge, when granting a judgment pursuant to Rule 54(b), "should ordinarily make specific findings setting forth the reasons for its order." Id.

The First Circuit has recommended looking to the Third Circuit for factors that can act as a guide in the calculus of granting a Rule 54(b) judgment. Id. Those factors include:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

Allis-Chalmers Corp. v. Philadelphia Elec. Co., 521 F.2d 360, 364 (3rd Cir. 1975).

During the May 11, 2005, hearing I denied Griffin's motion based on my finding that the record does not support a determination that "no just reason for delay" exists in this case. I found that the relationships among all of the claims in this case are such that it is best to preserve the case in its unitary form as opposed to fragmenting it.

Although I will not order the entry of a separate and final judgment, as I stated during the May 11, 2005, hearing, Griffin and his counsel do not need to attend future conferences without notice by the court, and Griffin is not to be treated as a party for the purposes of discovery.

**E. Eastern Massachusetts Housing Corporation's Motion for Entry of Separate and Final Judgment (Docket No. 51)**

Eastern Massachusetts Housing Corporation's ("EMHC") motion sought entry of a separate and final judgment based on this court's December Memorandum and Order which held that EMHC could not be sued following its merger. I allowed EMHC's motion during the May 11, 2005, hearing. I found no just reason to delay the entry of a separate and final judgment in EMHC's favor. The only issue that is appealable will be the court's ruling that EMHC cannot be sued; thus, little risk exists that the Court of Appeals will be presented with the same question again. In addition, EMHC made no counterclaim against Bleau.

**F. GLMHRA's Motion for Summary Judgment (Docket No. 35)**

GLMHRA sought summary judgment in this motion on two of grounds. First, it contended that a general release agreement entered into by GLMHRA and Bleau in November 2000 precludes any claim that arises from circumstances predating the agreement. Second, GLMHRA contended that Bleau cannot demonstrate the elements necessary to proceed on his remaining ADA, Rehabilitation Act, and defamation claims.

**1. The Separation Agreement**

Bleau entered into a Separation Agreement that states:

In consideration for the execution of this Agreement by GLMHRA and EMHC and other consideration, the receipt and sufficiency of which are hereby acknowledged, Albert W. Bleau Jr. . . . does for himself . . . release and forever discharge Greater Lynn Mental Health and Retardation Association, Inc., Eastern Massachusetts Housing Corporation, Inc., . . . of and from any and all debts, actions, causes of action, suits, damages, expenses, claims for attorney's fees, and any and all claims, and liability whatsoever, of every name and nature, known or unknown, both in law and in equity, which the Releasor now has or ever has had against the said Releasees from the beginning

> of the world to the date of this General Release, including, but not
> limited to, those arising under the . . . Title VII of the Civil Rights
> Acts of 1964, . . . any other federal, state or local human, civil rights
> or other laws, rules and/or regulations, or any claim arising under
> common law, or any other action.

(Docket No. 36, attached Separation Agreement at 2).  The document states that it is an

integrated agreement.  (Docket No. 36, attached Separation Agreement at 3).

Massachusetts has a strong policy in favor of releases of claims.  See LaFleur v.

C.C. Pierce Co., Inc., 496 N.E.2d 827, 833 n.7 (Mass. 1986).  Moreover, federal law does not

preclude a knowing and voluntary release of an employment discrimination claim.  See Rivera-

Flores v. Bristol-Myers Squibb Caribbean, 112 F.3d 9, 10 (1st Cir. 1997).  Waiver and releases

are affirmative defenses, however, and the defendant bears the burden of establishing them.  Id. at

12.  A court should look to the "totality of the circumstances" in determining whether a waiver of

ADA rights was "knowing and voluntary."  Id.  "The operative question is whether there is a

genuine issue as to whether [Bleau] had the capacity to execute the release knowingly and

voluntarily."  Id. at 13.  Factors that have been identified as helpful in this determination are:

> (1) plaintiff's education and business sophistication; (2) the
> respective roles of employer and employee in determining the
> provisions of the waiver; (3) the clarity of the agreement; (4) the
> time plaintiff had to study the agreement; (5) whether plaintiff had
> independent advice, such as that of counsel; and (6) the
> consideration for the waiver.

Id. at 12 n.4.

The essential argument that Bleau makes to contest the validity of the Separation

Agreement is that fraud on the part of GLMHRA may have occurred.  Bleau's argument is

without support in the record.

11

The language of the Separation Agreement is clear.  Bleau has attested in his filings to this court to his high ability level.  No contention has been made by Bleau that he has a disability that would affect his ability to knowingly and voluntarily execute a waiver agreement. Bleau was promised valuable consideration in exchange for executing the Separation Agreement. In these circumstances, I find that the waiver was knowing and voluntary.  Therefore, as I noted in the May 11, 2005, hearing, I granted summary judgment in GLMHRA's favor on all claims covered by this Separation Agreement.

### 2. Remaining ADA and Rehabilitation Act Claims

GLMHRA's motion for summary judgment sought dismissal of Bleau's ADA and Rehabilitation Act claims that arose after the execution of the Separation Agreement.  I did not specifically address this issue in my ruling on this motion during the May 11, 2005, hearing.  I will deny the motion for summary judgment as to these subsequent claims.  GLMHRA makes virtually the same arguments in this motion as it made in its motion to dismiss.  No discovery has occurred as of this point to create a sufficient record to rule on this motion.

### 3. Remaining Defamation Claim[1]

This civil action was filed in this court on March 8, 2004.  In a Memorandum and Order issued on December 8, 2004, I held that the plaintiff had cleared the low hurdle necessary

---

[1] I am also issuing the first paragraph of Part III.F.3 of this Memorandum and Order in an Opinion that I have designated for publication.  Although I do not find it necessary to publish the remainder of this Memorandum and Order, I am designating this portion for publication because I find it important to clear up any confusion about whether the holding of Dorn v. Astra USA, 975 F. Supp. 388 (D. Mass. 1997), as cited by Chiara v. Dizoglio, 81 F. Supp. 2d 242 (D. Mass. 2000), that defamation claims are subjected to a heightened pleading standard in federal court is still valid following the First Circuit's decision in Andresen v. Diorio, 349 F.3d 8, 17 (1st Cir. 2003).

to state a claim under the notice pleading requirements of Federal Rule of Civil Procedure 8.  In a later motion, defendant Greater Lynn Mental Health & Retardation Association ("GLMHRA") sought summary judgment based on a heightened pleading requirement for defamation claims in Massachusetts and relied upon a decision of mine in <u>Chiara</u> v. <u>Dizoglio</u>, 81 F. Supp. 2d 242 (D. Mass. 2000).  That decision, in turn, relied upon another decision of this district court in <u>Dorn</u> v. <u>Astra USA</u>, 975 F. Supp. 388 (D. Mass. 1997).  <u>Dorn</u> was later undermined by the holding in an unrelated case, <u>Andresen</u> v. <u>Diorio</u>, 349 F.3d 8, 17 (1st Cir. 2003).  I believe that <u>Dorn</u> and my decision in <u>Chiara</u> has been overturned in effect by <u>Andresen</u>, and subsequent First Circuit case law supports this belief.  Therefore, I am designating for publication a portion of the Memorandum and Order issued in this case on this date:

During the May 11, 2005, hearing I granted GLMHRA's motion for summary judgment.  The primary thrust of my ruling was based on my interpretation of the terms of a Separation Agreement between Bleau and one of the defendants.  GLMHRA's motion also sought judgment on any defamation claim that Bleau alleged against it.  GLMHRA claimed that Bleau's defamation claim is not specific enough in that it does not specify the statements at issue or the time or times they were made.  GLMHRA cited to one of my previous decisions in <u>Chiara</u> v. <u>Dizoglio</u>, 81 F. Supp. 2d 242 (D. Mass. 2000), in support of its motion.  That case held that defamation claims are subject to a heightened pleading standard.  <u>Id.</u> at 248 (citing <u>Phantom Touring, Inc.</u> v. <u>Affiliated Publications</u>, 953 F.2d 724, 728 n.6 (1st Cir. 1992); <u>Dorn</u> v. <u>Astra USA</u>, 975 F. Supp. 388, 396 (D. Mass. 1997)).

The Court of Appeals for the First Circuit addressed <u>Dorn</u> in <u>Andresen</u> v. <u>Diorio</u>, 349 F.3d 8, 17 (1st Cir. 2003).  The court construed <u>Dorn</u> to be applying Massachusetts pleading

requirements as opposed to federal pleading requirements.  Id.  The court then rejected the applicability of state pleading requirements in federal court.  Id.

        This ruling did not explicitly state whether some provision of federal law created a heightened pleading standard for defamation claims brought in federal court.  The court noted, however, the primacy of the pleading requirements contained in Rules 8 and 9 of the Federal Rules of Civil Procedure.  Id.  This reference to the primacy of Rules 8 and 9 implies that no such heightened pleading requirement for defamation claims brought in federal court exists.  This reference, in effect, overrules the holdings of Dorn and Chiara that state such a heightened pleading standard exits.  This finding is consistent with the First Circuit's general embrace of the proposition that no special pleading is required unless a specific provision of federal law or a Rule provides for it.  See Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 66 (1st Cir. 2004) (discussing civil rights cases and noting that, except when a statute or specific Rule notes otherwise, courts should apply the notice pleading requirements of Rule 8(a)(2)).  Although some language in a footnote of Phantom Touring can be construed to reflect a heightened pleading standard, given the First Circuit decisions in Educadores and Andresen, I find that, at most, Phantom Touring stands for the proposition that, under notice pleading requirements, if a complaint specifically identifies the scope of comments at issue in a case involving defamation claims, the proper route for adding additional comments is a motion to amend.  Phantom Touring, 953 F.2d at 728 n.6 ("In our view, a defendant is entitled to knowledge of the precise language challenged as defamatory, and the plaintiff therefore is limited to its complaint in defining the scope of the alleged defamation. If plaintiff wished to enlarge its case beyond the six articles originally challenged, it should have sought to amend the complaint.).

14

GLMHRA's failure to inform the court of <u>Andresen</u> is excusable in this instance. Westlaw does not list <u>Chiara</u> or <u>Dorn</u> as having been in effect overruled by <u>Andresen</u>. This confusion may be because <u>Dorn</u>'s discussion of Massachusetts' pleading requirements in defamation cases is still correct; <u>Andresen</u> overruled <u>Dorn</u> explicitly on the ground that it applied state pleading requirements in federal court and that federal courts generally look to the Federal Rules for the proper pleading requirements. In order to clear up any confusion in the future, I explicitly declare that <u>Andresen</u>, particularly when viewed in the context of other First Circuit pleading cases, in effect overrules the holding of <u>Dorn</u>, adopted by <u>Chiara</u>, that a heightened pleading standard applies to defamation claims brought in federal court.

Many of the statements Bleau alleges to be defamatory appear to have occurred before the Settlement Agreement was signed and are therefore barred. It is not clear which, if any, statements alleged by Bleau to have been made by GLMHRA are not barred by the Settlement Agreement. In light of the requirement that a pleading at least put a defendant on notice of the claims against him and in recognition of Bleau's pro se status, I will order Bleau to file a new more definite statement fully stating any defamation claims he still believes he can bring against GLMHRA that are not barred by the Settlement Agreement.

**G. Bleau's Motion Requesting Relief to Prevent Continuing Retaliation and Defamation By the Defendants (Docket No. 39)**

Since Bleau has not attempted to show the elements for seeking what in effect is a preliminary injunction, I denied this motion during the May 11, 2005, hearing. Bleau has not proved that he is entitled to the relief he seeks.

**H. Motion for Summary Judgment of Plaintiff Albert W. Bleau Jr. (Docket No. 40)**

Bleau has filed a motion for summary judgment.  I denied this motion during the May 11, 2005, hearing.  Bleau seeks summary judgment against defendants Sherman, MacLeish, and Griffen for claims that this court has already dismissed.  Bleau also seeks summary judgment based on the failure of GLMHRA to provide a non-discriminatory reason for his firing.  Bleau has not cited any facts on the record to prove that he is either disabled or was perceived to be disabled, a condition precedent to GLMHRA's having a burden to show a non-discriminatory reason.

**I. Bleau's Motion to Amend His Complaint to Include a RICO Claim (Docket Nos. 42, 49)**

**1. Introduction**

Bleau indicated at a hearing held on January 18, 2005, that he would be seeking to raise RICO claims.  Bleau's motion to amend his complaint to include RICO claims comprises two different filings.  His first attempt to amend his complaint is contained in Docket No. 42.  This motion is not only a motion to amend but is also styled as a responsive filing to all of the other defendants' motions.  Bleau attempts to amend this first motion to amend in Docket No. 49.  Docket No. 49 appears to rely on factual allegations made in Docket No. 42.  In addition, the proposed amended complaints appear to be an attempt to supplement the previous existing complaint and its claims and allegations.  I recognize that it might be appropriate to deny this motion based on its failure to provide "a short and plain statement of the claim[s] showing that the pleader is entitled to relief" pursuant to Rule 8 of the Federal Rules of Civil Procedure.  Because I

find that the proposed amendment is futile, however, I base my decision to deny the motion on this ground.

Rule 15(a) of the Federal Rules of Civil Procedure requires that motions to amend pleadings following service of a responsive pleading may only be allowed "by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." But a court may deny a motion to amend if the amendment would be futile. See Glassman v. Computervision Corp., 90 F.3d 617, 622 (1st Cir. 1996). An amended complaint is futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted." Id. at 623.

The legal standard for determining futility mirrors a court's analysis of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Id. Therefore, this court "must accept as true the factual allegations of the complaint and draw all reasonable inferences in favor of [the plaintiff]." Blackstone Realty LLC v. F.D.I.C., 244 F.3d 193, 197 (1st Cir. 2001). The fact that this case involves a RICO claim, however, requires the court to seek "a greater level of specificity" than is otherwise required by the normal liberal pleading requirements. Bessette v. Avco Financial Services, Inc., 230 F.3d 439, 443 (1st Cir. 2000).

Section 1964(c) of Title 18 of the United States Code "authorizes a private suit by '[a]ny person injured in his business or property by reason of a violation of § 1962.'" Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 495 (1985) (quoting 18 U.S.C. § 1964(c)). The plaintiff alleges both a direct violation of 18 U.S.C. § 1962(c) and a conspiracy to violate § 1962(c), itself a violation of § 1962(d). "To state a claim under § 1962(c), a plaintiff must allege each of the four elements required by the statute: 1) conduct; 2) of an enterprise; 3) through a

17

pattern; 4) of racketeering activity." <u>Libertad</u> v. <u>Welch</u>, 53 F.3d 428, 441 (1st Cir. 1995).  To

demonstrate a pattern, a plaintiff must point to at least two predicate acts.  <u>Sedima</u>, 473 U.S. at

496 n.14.  To state a claim "under § 1962(d), a plaintiff must show that each defendant in the

RICO conspiracy case joined knowingly in the scheme and was involved himself, directly or

indirectly, in the commission of at least two predicate acts."  <u>Libertad</u>, 53 F.3d at 441.  In

addition, a plaintiff, in order to have standing to bring a RICO claim, must show that "he has been

injured in his business or property by the conduct constituting the [RICO] violation."  <u>Sedima</u>,

473 U.S. at 496.

### 2. Allegations Made in Bleau's Amended Complaints

Bleau alleges that defendants, including GLMHRA, Griffin, MacLeish and

Sherman, conspired to defraud and defrauded EMHC, Massachusetts, the United States, and

GLMHRA.  Members of the conspiracy took over GLMHRA and EMHC to divert funds, cover

up their wrongdoing, and derail an Inspector General Office investigation into corruption and

wrongdoing at the Lynn Water & Sewer Commission ("LWSC") and the Lynn City Council.  As

part of the conspiracy, Bleau was terminated from his position as Executive Director.  Bleau

alleges that various board members of GLMHRA were given financial and other inducements to

encourage them to terminate Bleau's employment.  In addition, members of the conspiracy caused

Bleau's brother to receive substandard medical treatment leading to his death.  Also, an EMHC

asset was wrongfully sold for less than market value.

### 3. Analysis

First, to the extent that Bleau's RICO claims are based on GLMHRA's role as a

RICO enterprise, GLMHRA cannot also serve as a defendant.  See Libertad, 53 F.3d at 442;

Miranda v. Ponce Federal Bank, 948 F.2d 41, 44–45 (1st Cir. 1991).  To the extent that Bleau

alleges a broader enterprise of which GLMHRA is alleged to have been a part of, GLMHRA

might be able to serve as a defendant.  This uncertainty would be adequate ground to deny

Bleau's motion to amend.  I do not base my decision to deny the motion completely on this

ground, however, because a more fundamental flaw to Bleau's motion exists.

The motion to amend, as it relates to all of the defendants, is futile because Bleau

lacks standing to bring a RICO claim.  "To have standing under RICO, a plaintiff must show that

a predicate act caused an injury to business or property . . . .  The predicate act must be more than

a 'cause in fact' of a plaintiff's injury; it must be the proximate cause."  In re Lupron Marketing

and Sales Practices Litigation, 295 F. Supp. 2d 148, 164 (D. Mass. 2003) (citations omitted).

Predicate acts are listed in § 1961(1).  Beck v. Prupis, 529 U.S. 494, 497 n.2 (2000).  The

Supreme Court has held that the termination of the president of a company in furtherance of a

RICO conspiracy was not sufficient to create standing for the terminated president because the

firing was not caused by a predicate act.  Id., 529 U.S. at 507 (2000).  The defendants in Beck

hired a consultant "to write a false report suggesting that petitioner had failed to perform his

material duties."  Id. at 498.  Although Beck is a conspiracy case, the standing issue is the same

under § 1962(c) and (d) because the injury must be proximately caused by a predicate act.

Insofar as Bleau attempts to raise the wrongful death of his brother as an injury,

this is not an injury to business or property, so it is not the proper focus of a civil RICO claim.

**J. Motion to Strike (Docket No. 59)**

I denied this motion during the May 11, 2005, hearing because I denied both Bleau's motion to amend and his motion for summary judgment.

**K. Summary**

In summary, the only claims that remain following this Memorandum and Order are Bleau's ADA and Rehabilitation Act claims against GLMHRA that arose after the execution of the Separation Agreement.

**ORDER**

For the foregoing reasons, it is ORDERED:

(1) Defendants Roderick MacLeish, Jr. and Robert A. Sherman's Motion to Dismiss (Docket No. 32) is ALLOWED as explained in Part III.C of the above Memorandum;

(2) Motion of Defendant Robert J. Griffin for Entry of Separate and Final Judgment (Docket No. 33) is DENIED WITHOUT PREJUDICE as explained in Part III.D of the above Memorandum;

(3) Motion for Summary Judgment of Defendant Greater Lynn Mental Health & Retardation Association, Inc. (Docket No. 35) is ALLOWED IN PART and DENIED IN PART as explained in Part III.F of the above Memorandum;

(4) Motion of Defendant Greater Lynn Mental Health & Retardation Association, Inc., to Extend the Time for Filing a Reply (Docket No. 37) is ALLOWED;

(5) Motion Requesting Extension to File Response Brief and Motions on March 9, 2005 (Docket No. 38) is ALLOWED;

(6) Motion Requesting Relief to Prevent Continuing Retaliation and Defamation By the Defendants (Docket No. 39) is DENIED as explained in Part III.G of the above Memorandum;

(7) Motion for Summary Judgment of Plaintiff Albert W. Bleau, Jr. (Docket No. 40) is DENIED as explained in Part III.H of the above Memorandum;

(8) Amendment of Plaintiff's Motion in Opposition to Defendants' Greater Lynn Mental Health & Retardation Association (GLMHRA), Et al, Motions for Summary Judgment, Dismissal and Entry of Separate and Final Judgment & Memorandum of Plaintiff Albert W. Bleau Jr. in Support of His Motion for Summary Judgment Originally Filed on March 9, 2005 & Motion to Amend Original Complaint Dated March 8, 2004 to Bring Action Under the Racketeering Influenced and Corrupt Organizations Act (RICO) , §§ 1961-62 (2000) (Docket No. 42) is DENIED as explained in Part III.I of the above Memorandum;

(9) Motion of Eastern Massachusetts Housing Corporation for Entry of Separate and Final Judgment (Docket No. 51) is ALLOWED as explained in Part III.E of the above Memorandum.  The Clerk is instructed to enter a Separate and Final Judgment as to Eastern Massachusetts Housing Corporation stating:

> For the reasons stated in the Memorandum and Order of this date, it is ORDERED:
>
> Judgment for the defendant, Eastern Massachusetts Housing Corporation, and against the plaintiff, Albert William Bleau Jr., each party to bear its own costs.

(10) Motion for Leave to File a Reply and Reply of Defendant Greater Lynn Mental Health & Retardation Association, Inc., to Plaintiff's Opposition to Its Motion for Summary Judgment (Docket No. 55) is ALLOWED;

(11) Defendants Roderick MacLeish, Jr. and Robert A. Sherman's Motion to Strike Affidavit of Martena Fallon (Docket No. 59) is DENIED as moot; and

(12) As explained in Part III.F, Bleau may file by June 13, 2005, a more definite statement of any defamation claims he believes he can bring against GLMHRA.

        /s/Robert E. Keeton
        Robert E. Keeton
        Senior United States District Judge