**UNITED STATE DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

Albert William Bleau Jr.          :

    Plaintiff                 :

                          :

Vs.                                :   Civil Action
                                     No. 04 – 10469REK
                          :

Greater Lynn Mental Health          :
& Retardation Association, et al,

    Defendants

## Motion In Opposition To Defendant Greater Lynn Mental Health & Retardation Association (GLMHRA) Motion of July 5, 2005 for Partial Summary Judgment

    Plaintiff, Albert W. Bleau Jr., respectfully requests that the court deny the defendant GLMHRA's motion for Partial Summary Judgment and grant the plaintiff's request and motions for disclosure.

    1)   The defendants assert that there was no defamation after the severance agreement was signed. This is a false statement. Executive Director Paul Cote participated in a systematic personal attack on the defendant as did the Administrative Assistant James Cowdell and the Director of Operations, Elaine White as did other employees and board members of GLMHRA including their agents Roderick MacKleish, Robert Sherman and Robert Griffin. See Attached Affidavit. The plaintiff, in his motions of March 21 and April 18, 2005 attached correspondence to GLMHRA and their attorney regarding the continuing defamation after November 4, 2000. GLMHRA took no action to prevent continuing defamation.

    2)   At the court hearing on June 8, 2005, GLMHRA's attorney, Garrick Cole was surprised and shocked when the plaintiff presented him with an addendum that completely refuted the numerous unfounded accusations against the plaintiff in the MacKleish Sherman 1999-2000 document. It is hard to believe that the GLMHRA kept this addendum from their attorney for over five years. This addendum was also missing from GLMHRA's original response to plaintiff's March 8, 2004 complaint and from Griffin's "confidential" report to the board and the attorney general's office in the fall and winter of 2000.

3)  The plaintiff and his attorney had mailed this addendum to EMHC and GLMHRA board members, Acting Executive Director, Elaine White, to the defendant's and to Eric Carricker and Jamie Katz of the Attorney General's Office in late April or early May of 2000. The question then arises, "Why haven't the defendants included it in subsequent disseminations of the document?"

4)  The MacKleish Sherman 1999-2000 document and the Griffin Report were defamatory and disparaging toward the plaintiff. Their continued existence and dissemination and dissemination of their contents constituted defamation toward the plaintiff. Neither defendant clarified or disputed the allegations in these reports and documents even knowing that they were false. They deliberately let stand defaming information against the plaintiff knowing that their contents were widely circulated embellished and enlarged to the point that workers and executives in the field of Human Services were stating that the plaintiff was and is under investigation by the Attorney General's Office and that he stole GLMHRA retirement funds.

5)  The plaintiff received negative and defaming references from GLMHRA employees and board members when he applied for other positions and consulting jobs. Art Brady, the Executive Director of a Lawrence base Human Services Agency and President of the Region III Executive Director's and Providers Council told the plaintiff that he could not speak before his group because he did not want to offend Paul Cote and that Paul Cote had told him That the plaintiff was under investigation and had caused serious financial problems at GLMHRA amongst other things and he wouldn't say what Paul had said. This was in 2002 well after the signing of the severance agreement.

6)  The Human Resources Director of Kennebec Valley Mental Health center in Maine stated to the plaintiff in the fall of 2004 after the plaintiff had applied for their Executive Director's position that staff at GLMHRA were making statements about the plaintiff's performance that would make it difficult for anyone to hire the plaintiff.

7)  Deborah Thurber, former supervisor of GLMHRA and presently a supervisor for Mental Retardation Services for DMR told the plaintiff that Elaine White told her and other senior staff that the plaintiff had stolen the retirement money. She also stated recently in 2005 that she could not hire the plaintiff since he was under investigation by the Attorney General's Office and that everyone in DMR also thought this was the case.

8)  Helen Grilley, a former employee of GLMHRA and Program Director at the North Shore Association of Retarded Citizens (ARC) told the plaintiff that on numerous occasions during the past three years she was in meetings at the ARC when staff spoke of the plaintiff and mentioned how he had stolen funds from GLMHRA.

2

9) It is obvious to any one that given the above mentioned defamations since November 8, 2000 that there must be many more. These can not be isolated instances. Couple this with the fact that the plaintiff has applied for hundreds of jobs and has received no requests for an interview until last week. Last week he was called in for an interview for a job for the first time in five years.

10) Robert Tucker and other board members knew that the MacKleish and Sherman document and the Griffin document were false and they did not inform new board members of this fact. As a result, the board never considered the plaintiff for the Executive Director's position in August 2004 even though he was highly qualified for the position.

11) In October 1999 in a meeting with MacKleish with president-elect Thomas Manning, HR Director Anne Perry and Tina Adams present the plaintiff requested that GLMHRA call in the state auditor's office to audit GLMHRA if they thought that the plaintiff had violated any state or federal laws. He also made this request of Robert Tucker, the treasurer of GLMHRA and president, Claire Jackson on numerous occasions during 1999 through 2001. They refused. They refused the plaintiff's request because auditor DeNucci was in conflict at this time with the Attorney General concerning the Inspector General's Office and the vacancy fort Inspector General.. They knew that DeNucci would have exposed MacKleish and Sherman's unethical conduct and the exorbitant legal and consulting fees to the defendant s and their friends and associates. He would have found wrongdoing on behalf of the defendants, board members and other GLMHRA staff.

12) In the winter of 2000, the plaintiff met with a representative of the Department of Labor who informed the plaintiff that the extra benefits provided by GLMHRA in the Employee Fringe Incentive Plan were not subject to ERISA but the Dental, medical, retirement and disability plans were. GLMHRA had made all appropriate filings and had ERISA compliant plan documents in place for these plans. The plaintiff informed James Cowdell, Robert Tucker, Claire Jackson Thomas Manning and other board members of this and yet GLMHRA still did not refute the MacKleish document or seek professional outside consultation and Garrick Cole has persisted in presenting this document to this court quoting from it and telling the court that the plaintiff violated ERISA. This is an example of defamation current and present.

13) The plaintiff is certain that if the Court grants the plaintiff's request for disclosure that many more instances of defamation will surface.

Respectfully submitted,

*[signature]*

Albert W. Bleau Jr.
505 Paradise Rd. #208
Swampscott, MA 01907
(781) 962-2662

Dated: July 20, 2005

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon all counsel of record by First Class Mail on July 20, 2005.

*[signature]*
Albert W. Bleau Jr.

4