UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Albert William Bleau, Jr., : | |
| : | |
| Plaintiff : | |
| : | |
| : | |
| vs. : | Civil Action |
| : | No. 04-10469JLT(REK) |
| : | |
| Greater Lynn Mental Health : | |
| & Retardation Association, Inc., : | |
| et al., : | |
| : | |
| Defendants : | |

**Memorandum Of Defendant Greater Lynn Mental
Health & Retardation Association, Inc., In Support Of
Its Motion To Dismiss Plaintiff's Breach Of Contract Claim
Or For Partial Summary Judgment**

Plaintiff Albert William Bleau, Jr., (Mr. Bleau) seeks once again to avoid the release that he signed in November 2000 waiving his claims against Defendant Greater Lynn Mental Health & Retardation Association, Inc. (Greater Lynn). During the course of recent oral argument on unrelated matters, Mr. Bleau made numerous and mostly unsubstantiated factual allegations regarding the circumstances and terms of the release. On the basis of these in-court representations and Greater Lynn's acknowledgment of one of them, the Court determined that Mr. Bleau had described a <u>prima facie</u> breach of contract claim against Greater Lynn. Greater Lynn submits this memorandum pursuant to Fed. R. Civ.

P. 12(b)(6) and Local Rule 7.1 in support of its motion to dismiss this putative claim or, in the alternative, in support of its motion for partial summary judgment pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1.  Mr. Bleau's pleadings do not state a claim for breach of contract, and his oral representations in open court are also insufficient.  As there are no genuine disputes of material fact, the matter is appropriate for disposition under either Rule 12(b)(6) or Rule 56.

**Introduction**

The parties appeared before the Court on 27 July 2005 for a status conference and oral argument on two pending motions: (1) that of defendants Sherman and MacLeish for the entry of separate and final judgment and (2) that of Greater Lynn for partial summary judgment as to Mr. Bleau's post-November 2000 defamation claims.  Despite the Court's prior ruling that Mr. Bleau had knowingly and voluntarily waived all of his pre-November 2000 claims against Greater Lynn,[1/]  Mr. Bleau renewed

---

[1/]   The Court held that, by entering into a settlement agreement with Greater Lynn and granting Greater Lynn a release, Mr. Bleau had waived all of his claims within the scope of the release, that his doing so was knowing and voluntary, and that Greater Lynn was therefore entitled to judgment as to all of Mr. Bleau's claims that arose before November 2000.  See Docket No. 64, at 12; Order dated 3 June 2005, at 12.  A copy of the settlement agreement and release, although previously filed, is attached to this memorandum for the Court's convenience as an
(continued...)

3

his attack upon the release, asserting specifically that Greater Lynn had failed to issue a letter notifying the public that he had resigned (an act that he claimed that Greater Lynn had agreed to perform under paragraph two of the release) and that Greater Lynn had failed to pay certain of his educational expenses (an act that he claimed that Greater Lynn had agreed to perform under paragraph seven of the release). Neither of these assertions was new[2], and the operative facts[3] of each were a matter of record

---

[1](...continued)
exhibit and marked "1."

[2] Greater Lynn's Rule 56.1 statement of undisputed facts (see attachment to Docket No. 35, ¶ 9) acknowledged that the release provided in paragraph two that Greater Lynn would issue a letter to employees, consumers, and friends of Greater Lynn informing them that Mr. Bleau had resigned to pursue other interests. The Rule 56.1 statement also noted that the release provided that Greater Lynn would pay certain of his educational expenses, not exceeding $5,000 a year for up to two years, and that Greater Lynn had made no such payments. (See attachment to Docket No. 35, ¶¶ 11, 12.) Greater Lynn's memorandum repeated this acknowledgment. (See Docket No. 36, at 6, n.4.) Finally, Mr. Bleau argued in his opposition to Greater Lynn's motion for summary judgment that Greater Lynn had breached the release by failing to pay his educational expenses and by failing to issue the letter concerning his resignation. (See Docket No. 41, at 3.) Greater Lynn did not dispute these assertions.

[3] Greater Lynn distinguishes the material and operationally significant facts, specifically, that Greater Lynn did not issue the letter to which the release refers and did not make certain payments to which it also refers, from both the legal contention that it had a duty to do so and from the legal conclusion that its not doing so constitutes a prima facie breach of its contractual obligations. Only the former are undisputed.

4

and not in dispute when the Court granted judgment for Greater Lynn holding the release enforceable.[4/]

Following a colloquy, the Court ruled that Mr. Bleau had articulated a prima facie claim for breach of contract and ordered that discovery would proceed as to that newly-asserted claim along with all other remaining claims. Memorandum and Order, 2 August 2005, at 5 (Docket No. 76).[5/] Greater Lynn now moves that the Court dismiss Mr. Bleau's breach of contract claim.

## Legal Standards

If the Court considers Greater Lynn's motion under Fed. R. Civ. P. 12(b)(6), the Court may dismiss Mr. Bleau's claim for breach of contract if it fails to state a claim upon which relief may be granted. For purposes of a motion to dismiss, the allegations describing the claim are taken as true and construed in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). "[A] complaint should not be dismissed

---

[4/] See note 1, supra.

[5/] The Court also denied without prejudice Greater Lynn's motion for partial summary judgment as to Mr. Bleau's defamation claim; denied Greater Lynn's request that discovery proceed in stages; and ruled that Greater Lynn might seek by motion an appropriate order as to Mr. Bleau's breach of contract claim. Memorandum and Order (Docket No. 75) at 5.

5

for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).[6/]  The Court need not, however, credit plaintiff's "bald assertions, unsupportable conclusions, [or] periphrastic circumlocutions." Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999) (citations omitted).

Alternatively, if the Court considers the motion under Fed. R. Civ. P. 56, summary judgment would be appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment is designed "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co.,

---

[6/]  Greater Lynn notes that Mr. Bleau has not amended his complaint to assert his claim for breach of contract.  As Greater Lynn understands the Court's ruling, since it is undisputed that the settlement agreement and release embody an enforceable bilateral contract, that the writing includes a provision to the effect that Greater Lynn would issue a letter in the form attached to the writing as "Exhibit A," that no letter is attached to the writing as "Exhibit A," and that Greater Lynn has not sent the letter to which a provision of the writing refers, Greater Lynn has prima facie breached its contractual obligations.  Mr. Bleau's statement of his claim consists of nothing further, as Greater Lynn understands the Court's ruling.

6

950 F.2d 816, 822 (1st Cir. 1991) (citations and internal quotations omitted).

If, as here, the moving party does not bear the burden of proof at trial, that party nevertheless must offer sufficient evidence to support its motion. See <u>Celotex</u> v. <u>Catrett</u>, 477 U.S. 317, 325 (1986); <u>DeNovellis</u> v. <u>Shalala</u>, 124 F.3d 298, 306 (1st Cir. 1997). Once the moving party has carried its burden, the nonmoving party must set forth specific facts showing that there is a genuine, triable issue. See <u>Celotex</u>, 477 U.S. at 324. Under either rule, Mr. Bleau's breach of contract claim is ripe for dismissal.

**Argument**

I. Mr. Bleau's Breach Of Contract Claim Does Not Affect The Enforcement Of His November 2000 Waiver Of Claims

Mr. Bleau alleges that Greater Lynn has failed to take two actions that it agreed to take when it entered into the contract embodied in the written settlement agreement and release. He relies, first, upon paragraph two of the writing, which provides that

> The parties further agree that the Corporations shall issue a letter, in the form attached as Exhibit A, informing employees, consumers and friends of the Corporations that Mr. Bleau has resigned his employment with the Corporations to pursue other interests.

7

No Exhibit A is attached to the writing, and both parties executed it knowing that they had not agreed upon the content of the letter. It is undisputed that no letter has been sent. Second, he relies upon paragraph 5(C) of the writing, which provides that

> For a period ending two years after execution of this Agreement, the Corporations will pay an amount for Mr. Bleau's enrollment in a program or course of training at an accredited college of Mr. Bleau's choice, or any training course leading to licensing or certification. The total amount to be paid pursuant to this paragraph shall not exceed $5,000 in each year (a total of up to $10,000). Payments made pursuant to this paragraph shall be made directly to the college and not to Mr. Bleau.

It is also undisputed that these payments have not been made.

Greater Lynn contends that its non-performance of these alleged obligations does not, for the reasons set forth in Section II, below, amount to breach of its agreement with Mr. Bleau. The point here, however, is that the merit of Mr. Bleau's newly-asserted contract claim should not affect the Court's prior ruling that the release bars all of his claims that arose before November 2000. First, no new facts or allegations have come to light. The record shows now, as it did at the time the Court granted Greater Lynn's motion for partial summary judgment as to all claims arising before November 2000, that Mr. Bleau was capable of making, and did in fact make, a knowing

8

and voluntary waiver of all of the claims that he had against Greater Lynn when he entered into the settlement agreement and granted Greater Lynn a release.  The subsequent non-performance of which Mr. Bleau complains, also apparent on the record at the time that the Court granted Greater Lynn's motion for partial summary judgment, bears no causal relationship to Mr. Bleau's capacity to make an enforceable, i.e., knowing and voluntary, waiver.

Second, as a matter of the common law of the Commonwealth and other jurisdictions,[7] Greater Lynn's alleged failure to perform one or more of its contractual obligations does not automatically relieve Mr. Bleau of the obligations that he assumed by entering into and benefitting from the agreement.  Cf. Chicago Title Ins. Co. v. Title Consultants, Inc., 472 So.2d 1380, 1380-81 (Fla. 1985) (exercising power of termination does not terminate rights already accrued under contract).  Although the termination of a contract, whether as of right or as a consequence of material breach, may operate to relieve a party of a contractual duty to perform "wholly executory" promises, termination does not necessarily extinguish rights and duties that are based in past performance.  Cf. id. (exercising contractual power

---

[7] Mr. Bleau's breach of contract claim is, Greater Lynn infers, before the Court under 28 U.S.C. § 1367.

9

of termination does not relieve non-terminating party from liability for breach that occurred prior to termination); Hoffman v. McLaughlin Corp., 703 A.2d 1107, 1112 (R.I. 1997) (same); Factory Realty Corp. v. Corbin-Homes Shoe Co., 312 Mass. 325, 329 (1942) (same and holding that trial judge erred in granting requests for rulings that cancellation of agreement "put an end to all covenants and liabilities . . . as though the covenants never had existed [because w]e think that there is no such inflexible rule of law in this Commonwealth.").

It is undisputed that Greater Lynn fully performed its duty to pay Mr. Bleau over $ 100,000 in cash, personal property, and certain continued benefits.  The principal covenants that Greater Lynn obtained in return are set forth in paragraph four of the settlement agreement and include a release of all claims that Mr. Bleau had against Greater Lynn at the time that he entered into the contract.  This release was effective as of its making, and Mr. Bleau may not unilaterally rescind or ignore it.

Third, Mr. Bleau appears to be seeking nothing less than rescission of the settlement agreement and release.  The equitable remedy of rescission, however, is not available under Massachusetts law for breach of contract in circumstances in which the standard legal remedy – damages –  would be adequate and complete.  See Barry v. Frankini, 287 Mass. 196, 199 (1934)

10

("Ordinarily equity will not set aside a contract at the suit of a party thereto on the sole ground of non-performance by the other party of one of his agreements therein contained"); <u>Runkle v. Burrage</u>, 202 Mass. 89, 99 (1909) ("nothing less than conduct that amounts to an abrogation of the contract, or that goes to the essence of it, or takes away its foundation, can be made a ground for rescission of it by the other party").  "Restitution as a remedy for breach is therefore limited to cases in which the injured party has a claim for damages for total breach . . . . If the claim is only one for damages for partial breach, the injured party's remaining duties are not discharged, and restitution is not available as an alternative."  E. Allan Farnsworth, Contracts, § 12.19 (2d ed. 1990).[8]

Finally, even if rescission were available, Mr. Bleau has not met the prerequisites for obtaining this form of equitable relief.  "The primary purpose of an action for rescission is to place the plaintiff in status quo.  Consequently, the plaintiff, as a condition precedent to equitable relief, must offer to re-

---

[8]  Massachusetts law, controlling on this point, accords Mr. Bleau the usual "benefit of the bargain" contract damages. <u>See, e.g.</u>, <u>VMark Software v. EMC Corp.</u>, 37 Mass. App. Ct. 610, 611 n.2 (1994) ("The long-established general rule for breach of contract recovery in Massachusetts is that the wronged party should receive the benefit of his bargain, i.e., be placed in the same position as if the contract had been performed.").

11

turn any consideration received by him under the transaction sought to be rescinded."  Joseph R. Nolan & Laurie J. Sartorio, Equitable Remedies, § 403 (2d ed. 1993).  See also Ginn v. Almy, 212 Mass. 486, 493 (1912); Farnsworth, supra, § 12.19.  Mr. Bleau has neither tendered nor offered to return the $ 100,000 in cash and other benefits that he received from Greater Lynn in consideration for releasing his claims and, indeed, continues to rely on the settlement agreement by seeking to enforce it against Greater Lynn.  See, e.g., Complaint, ¶ 13, at 11.

Whether Greater Lynn has failed to perform in part its contractual obligations has no bearing upon Mr. Bleau's capacity and determination to waive, knowingly and voluntarily, all of his claims against Greater Lynn that arose before November, 2000.  Mr. Bleau has an adequate legal remedy should the Court determine that Greater Lynn breached its agreement with him, and equitable relief is therefore unavailable.  Finally, Mr. Bleau has not offered to return the benefits of his agreement with Greater Lynn and, inconsistently with the remedy of rescission, continues to seek to enforce that agreement against Greater Lynn.  For these reasons, the Court's ruling enforcing the settlement agreement and release against Mr. Bleau remains unaffected by his new-found claim of breach of contract, and all of Mr. Bleau's claims

12

against Greater Lynn that arose prior to November 2000 remain barred.

> II. Mr. Bleau's Allegations Do Not State A Claim For Breach Of Contract

Mr. Bleau's prima facie breach of contract claim is deficient under the law of the Commonwealth: his in-court representations and allegations, liberally construed, do not include, and, for the reasons argued subsequently, could not include, the necessary assertion that he himself has fully performed his contractual obligations. See, e.g., Service Publ'ns, Inc. v. Goverman, 396 Mass. 567, 573 (1986) ("The law of this Commonwealth precludes recovery by one who willfully commits a breach of a contract regardless of whether the breach goes to the essence of the contract."); Lease-It, Inc. v. Massachusetts Port Auth., 33 Mass. App. Ct. 391, 396-97 (1992) (party may not recover damages for other party's breach after it commits material breach itself). As an initial matter, then, and for this reason alone, the Court should vacate its ruling that Mr. Bleau has alleged a viable breach of contract claim against Greater Lynn. Greater Lynn offers the following argument in the alternative and in support of its motion seeking an order of dismissal.

13

A.  Greater Lynn's Subsidiary Promise To Issue A Letter Stating That Mr. Bleau Had Resigned Is Too Indefinite To Be Enforced

Paragraph two of the settlement agreement and release provides that Greater Lynn issue a letter informing "employees, consumers and friends" that Mr. Bleau had resigned to pursue other interests.  The letter is to be "in the form attached as Exhibit A."  No Exhibit A is attached to the written agreement, however.  These circumstances amount to the familiar situation in which parties to a written contract fail to reach an enforceable agreement with respect to one of its provisions.

It is evident that the parties did not agree that a one-sentence letter would be sufficient, although the text of paragraph two (were there no reference to Exhibit A) requires no more.  Greater Lynn's <u>prima</u> <u>facie</u> obligation therefore is not to issue a letter, but rather to "issue a letter, in the form attached as Exhibit A."  It is also evident that lack of agreement, and not mere oversight, is the reason that Exhibit A does not exist.

"A court cannot enforce a [term of a] contract unless it can determine what it is."  Arthur L. Corbin, Corbin on Contracts, § 4.1 (Rev. ed. 1993).  This fundamental limitation is conclusive

in this instance because there is no agreement to ascertain.[9/]  Since the Court should not create an agreement for the parties, Read v. McKeague, 252 Mass. 162, 164 (1925), Greater Lynn has not breached an enforceable obligation; put another way, Mr. Bleau does not have a claim for breach of contract upon which the Court might grant relief.[10/]  On either view, the Court should grant Greater Lynn's motion to dismiss.

---

[9/]  The situation is not one in which the Court might properly be asked to infer the missing term on the understanding that the parties had reached an agreement but failed to express all of its provisions with precision.  See, e.g., Meehan v. Shaugnessy, 404 Mass. 419, 445 n.22 (1989) ("[A] contractual term requiring future negotiations as to specific details (a so-called 'agreement to agree') is not unenforceable merely because such negotiations break down.  As long as the contract . . . provides 'some objective method' for determining the missing term 'independent of either party's mere wish or desire, . . . the court will fill the gaps' [citation omitted].").  No such "objective method" is available to fix the content of Exhibit A.

[10/]  At most, one might conclude that, with respect to the content of Exhibit A, Mr. Bleau and Greater Lynn agreed that, although they could not agree, they would continue to attempt to agree; that this agreement would be subject to the implied obligations of good faith and fair dealing; and, thus, that the parties might be taken to have agreed to negotiate the text of a letter that could be added to the written agreement as Exhibit A.  That these negotiations might have been unsuccessful to date would not, without more, be indicative of breach of the undertaking to negotiate.  Compare Bacou Dalloz USA, Inc. v. Continental Polymers, Inc., 344 F.3d 22, 27-28 & n.2 (1st Cir. 2003) (applying Rhode Island law) (written undertaking to enter into subsequent agreement enforceable since adequate, external, objective standards available; evidence of bad faith negotiation improperly excluded) with Armstrong v. Rohm & Haas Co., Inc., 349 F. Supp. 2d 71, 78-80 (D. Mass. 2004)(applying Massachusetts law)(oral understanding too indefinite; claim dismissed).

15

>    B.    Mr. Bleau's Material Breach Of The Settlement
>          Agreement And Release Excused Greater Lynn
>          From Further Performance

Mr. Bleau promised that he would "not portray in a false way or disparage the professional reputation of the corporations, their directors, managers or employees."[11] Disregarding his undertaking, Mr. Bleau, in April, 2001, sent a letter to the members of the boards of directors of Greater Lynn and Eastern Massachusetts Housing Corporation in which he accuses the agencies and their employees of "poor management," "illegal[] transfer[s]," violations of federal law, lacking decency, and so on.[12] Mr. Bleau also communicated in writing with former employees of Greater Lynn and made disparaging allegations.[13]

"'It is well established that a material breach by one party excuses the other party from further performance under the contract.'" Lease-It, Inc. v. Massacusetts Port Auth., 33 Mass. App. Ct. 391, 397 (quoting Ward v. Amer. Mut. Liab. Ins. Co.,

---

[11] See paragraph seven of the settlement agreement and release.

[12] A copy of this letter is attached to this memorandum as an exhibit and marked "2." Mr. Bleau also sent copies of this letter to the Commissioner of the Massachusetts Department of Mental Retardation and to the Commissioner of the Massachusetts Department of Public Health. Copies of these communications are attached to this memorandum as exhibits and collectively marked "3."

[13] A copy of this letter is attached to this memorandum as an exhibit and marked "4."

15 Mass. App. Ct. 98, 100 (1983)).  Mr. Bleau's deliberate acts of disparagement of Greater Lynn constitute material breach of the separation agreement and release because Greater Lynn reasonably expected to be free from this sort of calumny.  See Restatement (Second) of Contracts, § 241(a) (1981).  Having breached his undertaking, Mr. Bleau no longer may recover damages for Greater Lynn's non-performance of its executory obligations.  See Lease-It, 33 Mass. App. Ct. at 397.  The Court should therefore determine that Greater Lynn, as of April, 2001, was excused from further performance and grant judgment for Greater Lynn as to Mr. Bleau's breach of contract claim.

17

## Conclusion

For the reasons set forth above, the Court should either (1) vacate its <u>prima facie</u> breach of contract ruling or (2) allow Greater Lynn's motion to dismiss or, alternatively, for partial summary judgment as to Mr. Bleau's breach of contract claim.

                                      by its attorneys,

                                      s/ Garrick F. Cole
                                      _____
                                      Garrick F. Cole
                                      BBO No. 091340
                                      Christina Schenk-Hargrove
                                      BBO No. 645164

                                      Smith & Duggan LLP
                                      Two Center Plaza, Suite 620
                                      Boston, Massachusetts 02108-1906
                                      (617) 248-1900

Certificate of Service

I certify that a true and accurate copy of the above document was served upon each party of record or the party's counsel by first class mail, postage prepaid, this _____ day of _____, 200_.

                      ___s/ Garrick F. Cole___

Dated: 9 August 2005