EXHIBIT I

## SEPARATION AGREEMENT AND GENERAL RELEASE

This Separation Agreement and General Release ("Agreement") is entered into by and between Albert W. Bleau, Jr. of Swampscott, MA ("Mr. Bleau"), on the one hand, and Greater Lynn Mental Health and Retardation Association, Inc., a Massachusetts not-for-profit corporation having its principal place of business in Lynn, MA ("GLMHRA") and Eastern Massachusetts Housing Corporation, Inc., a Massachusetts not-for profit corporation having its principal place of business in Lynn, MA ("EMHC"), on the other hand. For purposes of convenience, GLMHRA and EMHC are sometimes referred to jointly in this Agreement as "the Corporations".

WHEREAS, Mr. Bleau has been employed by the Corporations, most recently as their Executive Director; and

WHEREAS, Mr. Bleau and the Corporations wish to establish the means to mutually terminate the employment relationship, and to resolve any and all disputes between them

THEREFORE, it is agreed as follows:

1. The parties understand and agree that the entering into this Agreement does not constitute an admission by GLMHRA, EMHC, or their respective directors, officers, agents and employees, that they acted wrongfully toward Mr. Bleau or violated his rights in any way, and the Corporations expressly denies any such violation.

2. Mr. Bleau's employment with GLMHRA terminated effective September 8, 2000. His employment with EMHC will terminate effective November 10, 2000. Mr. Bleau shall be permitted to submit a letter of resignation, if he so chooses. The parties further agree that the Corporations shall issue a letter, in the form attached as Exhibit A, informing employees, consumers and friends of the Corporations that Mr. Bleau has resigned his employment with the Corporations to pursue other interests.

3. A. Mr. Bleau acknowledges and agrees that, as a result of his employment with the Corporations, he has obtained knowledge of proprietary and confidential information, including but not limited to information as to the business and operations of the Corporations, as well as information as to the individuals for whom GLMHRA and/or EMHC provide services. Mr. Bleau agrees that he will keep such information confidential, and that he shall promptly return to the Corporations any and all documents in his possession which contain such information, or which otherwise constitute the property of either GLMHRA or EMHC.

B. The Corporations agree to return to Mr. Bleau his personnel records and files, including training files.

4. In consideration for the execution of this Agreement by GLMHRA and EMHC and other consideration, the receipt and sufficiency of which are hereby acknowledged, Albert W. Bleau, Jr. (hereinafter the "Releasor"), does for himself, his agents, attorneys, successors, subrogees, heirs and assigns, release and forever discharge Greater Lynn Mental Health and Retardation Association, Inc., Eastern Massachusetts Housing Corporation, Inc., their divisions, programs, subsidiaries, affiliates, predecessors, successors, assigns, directors, officers, employees, former employees, representatives, attorneys, insurers, reinsurers and administrators ("Releasees"), of and from any and all debts, actions, causes of action, suits, damages, expenses, claims for attorney's fees, and any and all claims, and liabilities whatsoever, of every name and nature, known or unknown, both in law and in equity, which the Releasor now has or ever has had against the said Releasees from the beginning of the world to the date of this General Release, including, but not limited to, those arising under the Age Discrimination in Employment Act, Title VII of the Civil Rights Acts of 1964, the Massachusetts Law Against Discrimination, Americans with Disabilities Act G. L. c. 151B, any other federal, state or local human, civil rights or other laws, rules and/or regulations, or any claim arising under common law, or any other action.

Releasor further promises not to institute any charge, complaint, or lawsuit to challenge the validity of this General Release or the circumstances surrounding its execution.

5. In exchange for Mr. Bleau's execution of this Agreement, GLMHRA and EMHC agree to the following:

    A. In recognition of his years of service to the Corporations, Mr. Bleau shall, within forty eight hours of complete execution of this Agreement, and approval by the Boards of Directors of the Corporations, be paid the amount of Ninety-five Thousand Two Hundred Dollars ($84,300.00), less required withholdings. Mr. Bleau shall be eligible for continued insurance coverage at the rate applicable to GLMHRA Associates for a period of 12 months, totaling $10,900.00.

    B. Mr. Bleau has in his possession an automobile which has been provided to him by the Corporations for the purposes of his providing services to the Corporations. Upon execution of this Agreement, the Corporations agree to transfer title of said automobile, which the parties acknowledge has a fair market value of Twenty One Thousand Six Hundred Dollars ($21,6000), to Mr. Bleau, at no cost. However, Mr. Bleau shall be responsible for any sales tax imposed as a result of such transfer, and upon transfer of title he shall be responsible for all taxes, fees and costs (including, but not limited to insurance) associated with said vehicle.

    C. For a period ending two years after execution of this Agreement, the Corporations will pay an amount for Mr. Bleau's enrollment in a program or course of training at an accredited college of Mr. Bleau's choice, or any training course leading to licensing or certification. The total amount to be paid pursuant to this paragraph shall not exceed $5,000 in each year (a total of up to $10,000). Payments made pursuant to this paragraph shall be made directly to the college and not to Mr. Bleau.

2

D. Mr. Bleau shall retain any right he may have under the by-laws of the Corporations to indemnification, for legal costs or otherwise, for events occurring while he served as an officer and employee of the Corporations. Any such right to indemnity shall be subject to all conditions and limitations of said by-laws, and state law.

6. Mr. Bleau acknowledges that he is indebted to GLMHRA in the amount of $13,918.21, as a result of loans made to him by GLMHRA. Mr. Bleau authorizes and agrees that GLMHRA shall be permitted to deduct this amount from amounts due him pursuant to a deferred compensation agreement originally dated January 1, 1987, and most recently amended as of July 1, 1995. The net amount (i.e., the amount contained in his deferred compensation account less $13,918.21) shall be paid to Mr. Bleau within thirty days of execution of this Agreement.

The parties acknowledge and agree that the deduction of the amount of $13,918.21 is being made for the convenience of both parties, to simplify the means by which the various amounts due Mr. Bleau and GLMHRA respectively may be paid. The parties further agree that such deduction shall not be deemed an assignment or transfer of Mr. Bleau's right to receive payment under the deferred compensation plan, within the meaning of paragraph (9) of the plan (as amended July 1, 1995).

7. Mr. Bleau agrees to keep strictly confidential and not to disclose or discuss the terms and circumstances of this Agreement to anyone except his immediate family, attorney, medical providers and if necessary, accountant or financial advisor with the understanding that those parties shall keep such information confidential. Mr. Bleau further agrees that he shall not portray in a false way or disparage the professional reputation of the Corporations, their directors, managers or employees. The Corporations also agree not to portray in a false way or disparage the professional reputation of Mr. Bleau. This paragraph shall not prohibit either party to this Agreement from providing truthful testimony in response to a subpoena, or other lawful process, or in any judicial or other legal proceeding.

Breach of this paragraph by either party shall cause the other party immediate and irreparable injury and shall entitle such party to any and all remedies available under the law, including but not limited to injunctive relief.

8. Mr. Bleau agrees, within forty eight hours of executing this Agreement, to withdraw any and all charges, complaints or other actions he has filed or brought against the Corporations, including, but not limited to the charge filed against GLMHRA with the Equal Employment Opportunity Commission.

9. The parties agree that this Settlement Agreement, with its attachments, is a fully integrated document and constitutes the entire agreement between them. The parties expressly disclaim reliance on any representations, written or oral, other than those contained in this document.

3

10. Mr. Bleau represents and agrees: (a) that he has thoroughly reviewed all aspects of this Agreement; (b) that he has been advised to and in fact has had the Agreement reviewed by his attorneys; (c) that he has read and fully understands all of the provisions of this Agreement and is voluntarily entering into this Agreement; and (d) that he has been given a reasonable period of time to consider this Agreement.

11. Mr. Bleau represents and warrants that no other person or entity has or had any interest in any claims, actions or causes of action for damages or other relief referred to in this Agreement; that he has the sole and exclusive authority to execute this Agreement and to accept the promises, representations and warranties specified in it; and that he has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, actions or causes of action for damages or other relief referred to in this Agreement or in the actions set forth above.

12. This Agreement shall be governed and interpreted in accordance with the laws of the Commonwealth of Massachusetts. Should any provision of the Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the Release language, such provision shall immediately become null and void, leaving the remainder of this Agreement and the release in full force and effect.

13. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and all of their respective heirs, executors, administrators, representatives, subsidiaries, affiliates, successors and assigns.

14. This Agreement shall be executed in two or more signature counterparts, each of which shall constitute an original, but all of which, taken together, shall constitute but one and the same instrument. This Agreement shall be effective as of the date the last signature is affixed hereon.

15. This Agreement shall take effect as a sealed instrument.

16. This Agreement shall not be binding upon the Corporations unless and until it has been agreed to by the Board of Directors of both GLMHRA and EMHC, and executed by duly-authorized agent(s) of each Corporation. Mr. Bleau acknowledges and understands that this Agreement will not be presented to the Board of Directors until it is executed by him.

4

PLEASE READ CAREFULLY. THIS AGREEMENT CONTAINS A RELEASE OF KNOWN AND UNKNOWN CLAIMS.

SIGNED AND SEALED:

_____
Albert W. Bleau, Jr.

Dated: 11/6/00

GREATER LYNN MENTAL HEALTH AND
RETARDATION ASSOCIATION, INC.

By _____

Dated: 11/13/00

EASTERN MASSACHUSETTS
HOUSING CORPORATION, INC.

By _____

Dated: 11/10/00

5