# UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

Albert William Bleau Jr.                    :

      Plaintiff                           :

                                           :

Vs.                                         :          Civil Action
                                                      No. 04 – 10469REK
                                           :

Greater Lynn Mental Health                  :
& Retardation Association, et al,

      Defendants

### Memorandum Of Plaintiff Albert W. Bleau Jr. Objecting To Defendant Greater Lynn Mental Health & Retardation Association, Inc  Motion of August 9, 2005 To Dismiss Plaintiff's Breach Of Contract Claim or For Partial Summary Judgment

### And

### In Support of Plaintiff's Motion For Summary Judgment of Plaintiff's Breach Of Contract Claim & To Continue And Expand  Discovery To Include Damages and Rescission

Defendant Greater Lynn Mental Health & Retardation Association, Inc. once again is asking that it be allowed to comply with and require the plaintiff to comply with only those portions of the severance agreement that they choose. They do not want to comply with those segments that are concise, specific and non ambiguous and important to the plaintiff such as the letter specified in the agreement.

They also allege a breach by the plaintiff for alleged disparaging remarks that caused them no harm or damages and are disputable as to whether they were

1

disparaging while they engaged in not only disparaging remarks against the plaintiff but defamed the plaintiff over a six year period before, during and following the signing of the agreement preventing him from gaining employment or consulting work or business.

Additionally, defendant's disparaging remarks and defamation were circulated to the news media, to association employees, other non profit human services agencies, state agencies, prospective employers and clients of the plaintiff, the Attorney General's Office and members of the Lynn business and political community. The plaintiff kept his concerns in house and were addressed to the Executive Director and his Administrative Assistant, GLMHRA lawyers and board members. The plaintiff apologized for the letter sent to the seventeen staff who had been laid off and GLMHRA countered by denying him his $10,000 in training funds.

GLMHRA continues to state that the plaintiff has not agreed to return the $100,000 in salary and benefits received by the plaintiff but the defendant has not offered to return to the plaintiff his job as Executive Director at EMHC or an equivalent position paying $70,000 per year, with an agency vehicle, cell phone, family medical and dental and disability benefits and a retirement policy. They have not agreed to give the plaintiff the almost $500,000 in lost income and benefits that he would have received had he remained as Executive Director from December 1, 2000 to the present. They have not agreed to return the plaintiff's $28,500 in training funds, or the $40,000 owed him in retirement funds.

In fact they have dissolved the EMHC and transferred its assets and have sold over $4 Million dollars of those assets since December 1, 2000. GLMHRA

2

can not offer the plaintiff his job back since the job no longer exists.

They have not offered to return to the status quo prior to November 8, 2005 that in addition to his Executive Director's or equivalent position at EMHC would also allow the plaintiff to pursue his claims under the ADA and for wrongful discharge, for ERISA violations and other financial claims and claims for actions and damages that occurred prior to November 8, 2000.

This defamation and breach has caused considerable emotional strain, mental suffering, embarrassment and pain for the plaintiff as well as financial damages from lost work and opportunity.

### Introduction

The parties appeared before the Court on 27 July 2005 for a status conference and the plaintiff reasserted his claim that GLMHRA had committed a major breach of the severance agreement. GLMHRA admitted to the Court that they had not issued "a letter ... informing employees, parents, board members, and friends of the Corporations that Mr. Bleau has resigned his employment with the Corporations to pursue other interests." They also admitted that they had not paid $10,000 in training funds as required by the severance agreement to whit, "The total amount to be paid pursuant to this paragraph shall not exceed $5,000 in each year a total of up to $10,000."

This admission by GLMHRA was new information previously alleged by the defendant but now proven as a result of the admission by GLMHRA. The language in the agreement, page 1, Section 2. and page 2, Section 5 C, is specific, unambiguous and indisputable and a ruling for summary judgment is appropriate.

3

Section 7 does not define the words "false way or disparaging the professional reputation of". Also the plaintiff interpreted this section to mean that a breach would require publicizing any disparaging remarks. Only GLMHRA has made disparaging remarks public and has gone a step further and defamed the plaintiff causing monetary damages and emotional stress to the plaintiff. Any alleged violation by the plaintiff was minor, did not portray GLMHRA in a false way, did not result in any damages to GLMHRA and therefore, did not constitute a material breach of the agreement.

Section 7 is ambiguous and any violation by either party should be a triable issue and redress according to Section 7 would be " all remedies available under the law, including but not limited to injunctive relief." This section does not say that the offending party can void another part of the agreement in retaliation as did the Defendant who refused to pay the plaintiff's training expenses in retaliation for a letter he sent to seventeen employees, thirteen of whom were single parent moms, who had been laid off with no notice.

Plaintiff, Albert W. Bleau Jr., now respectfully requests that the court deny the defendant GLMHRA's motion for dismissal or Partial Summary Judgment and in the alternative grant the plaintiff's motion for summary judgment on the breach of contract claim or rescission and for discovery for damages for breach of contract and for rescission and to direct the Defendant GLMHRA to cooperate with the plaintiff with discovery on other remaining claims including defamation and ADA.

4

## Legal Standards

1.    It is well established under Massachusetts' law where a contract has

terms that are ambiguous, uncertain, or equivocal in meaning, the intent of the

parties is a question of fact to be determined at trial, and summary judgment is

appropriate only if the extrinsic evidence presented about the parties' intended

meaning is so one-sided that no reasonable person could decide to the contrary.

The intent of the severance agreement is "so one-sided" that no reasonable

person could ascertain any other meaning than that the defendant had to pay for

$10,000 in training expenses and had to send out a letter to board members,

parents, employees and friends of the association "that he (the plaintiff) had

resigned to pursue other interests." Plaintiff's motion for summary judgment for

breach of contract, therefore, should be granted. It meets the criteria for summary

judgment while the defendant's allegation of breach of contract is ambiguous and

does not meet the requirements for summary judgment and the defendant has

not alleged any damages as a result of the alleged breach.

2.    To establish a breach of contract, a plaintiff must show: 1. that an

agreement was made between the parties which was supported by valuable

consideration; 2. that the plaintiff was ready, willing, and able to perform; 3. that

the defendant breached the agreement; and 4. that, as a result of the breach, the

plaintiff was damaged. Singarella v. Boston, 342 Mass. 385, 387, 173 N.E.2d 290

(1961). Interpretation of an unambiguous contract is a question of law which can

be decided  by the court. Lawrence-Lynch Corp v. Dep't of Envt'l. Management,

392 Mass. 681,682, 467 N.E.2d 838 (1984); Auclair v. Thomas, 39 Mass. App. Ct.

344, 347, 656 N.E.2d 321 (1995), citing Freelander v. G & K Realty Corp., 357 Mass. 512, 516, 258 N.E.2d 786 (1970); however, where the terms of a contract are ambiguous, those terms present a question of fact for determination at trial.

3.      When a party to an agreement commits an immaterial breach of that agreement, the injured party is entitled to bring an immediate action for damages; it may not stop performing its obligations under the agreement. Only a material breach of a contract justifies a party thereto in rescinding it.

GLMHRA alleged that the plaintiff breached the contract when it sent a letter to seventeen employees who had been laid off. It did not seek action for damages because there were none. It did not seek injunctive relief as prescribed in the agreement. Instead the defendant retaliated and denied the plaintiff the $10,000 in training funds specified in the agreement and continued to refuse to send out the letter specified in the agreement.

In a two-party contract situation, when a promisor's duty to perform is absolute, the promisee's breaches will not excuse performance of that duty; See Lewis et al., Trustees v. Bendict Coal Corp. Supreme Court Of The United States 361 U.S. 459; 80 S. Ct. 489; 4 L. Ed. 2d 442; 1960 U.S. Lexis 1951; 39 Lab. Cas. (CCH) P66,240; 45 L.R.R.M. 2719.

Defendants' duty was absolute and indisputable whereas plaintiff's breach was ambiguous, immaterial and was cured.

The representation at issue needs to be one of fact and not merely opinion. See McEneaney v. Chestnut Hill Realty Corp., 38 Mass. App. Ct. 573, 575, 650 N.E. 2d 93 (1995)

4.  A material breach of contract occurs when "there is a breach of an

6

essential and inducing feature of the contract." <u>Lease-It, Inc., v.</u>
<u>Massachusetts Port Authority, 33 Mass. App. Ct. 391, 396, 600 N.E.2d 599</u>
<u>(1992).</u>

 An inducing and essential feature of the contract for the plaintiff was the
letter to employees, parents, board members and friends of the association
which defendant GLMHRA refused to do. The defendant however has
received the complete fruits of the contract including the essential and
inducing features, namely the resignation of the plaintiff from EMHC, the end
of the plaintiff's EEOC ADA complaint, the end of any claims for training
funds ($28,500) and retirement benefits ($40,000), and a commitment not to
file a claim for wrongful discharge or hold GLMHRA and its agents liable for
actions that occurred prior to November 8, 2000.

 5. An uncured, material breach by one party excuses the other
party from further performance under the contract.

 "It is well-settled that an uncured, material breach by one party excuses
the other party from further performance under the contract." <u>O'Connell</u>
<u>Mgmt. Co. Inc., v. Carlyle-Xiii Managers, Inc.,765 F. Supp. 779, 783 (D.</u>
<u>Mass. 1991).</u>

 Defendant's material breach of the contract excused the defendant
from further performance including the requirement not to disparage the
plaintiff. Additionally, the plaintiff cured the alleged breach through his
apology. See attached letter to James Cowdell dated December 2001.
GLMHRA suffered no damages as a result of the alleged breach so it cannot
be considered a material breach.

On the other hand, GLMHRA did not cure their material breach of the contract and as a result the plaintiff has suffered financial damages and emotional stress and mental suffering.

6.    Mass. Gen. Laws ch. 260, § 3A (1992), provides that actions brought under the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258, must be commenced within three years after the cause of action accrues. Where a complaint makes clear that the action is not brought under Mass. Gen. Laws ch. 258 but instead is filed as a contract claim the cause of action is subject to a six-year period under Mass. Gen. Laws ch. 260, § 2 (1992). Where a breach of contract action is commenced within the six-year period the action is not time barred.

7.    It is well established under contract law that if one of the parties to the contract commit fraud, misrepresentation, deceit or engages in illegal activity in the negotiation and signing of the contract that it constitutes a material breach and the offended party can return to the status quo before the contract were signed and be allowed damages. It is well established that if it can be proven that one party to the contract had no intention of fulfilling one of the inducing and essential features of the contract that resulted in the contract being signed by the other party that the contract could be rescinded.

In Telegram Corporation v. Marketwatch. Com, Inc., Civil Action No. 02-11138-DPW United States District Court For The District Of Massachusetts, December 29, 2004, Lexis 26410 it was stated, " In this Commonwealth it has been held in a long line of cases that the charge of fraudulent intent, in an action for deceit, may be maintained by proof of a statement made, as of the party's own

8

knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge; and in such case it is not necessary to make any further proof of an actual intent to deceive.

James Cowdell, Paul Cote, treasurer, Robert Tucker, president Tom Manning and all other board members of GLMHRA new that a consultant had been hired and had prepared a report that was damaging and defaming to the plaintiff. They withheld this document from the plaintiff and from the board of EMHC. They did not give the plaintiff or the board of EMHC the opportunity to refute its contents and provide contrary evidence prior to the agreement being signed and before they distributed it to state agencies and the State Attorney Generals' Office and shared its contacts with employees and other individuals. The plaintiff did not receive this document until two years later following a call from a local newspaper editor. EMHC board members, with the possible exception of Norman Thibodeau, who also served on the GLMHRA board did not receive the document.

8.      To establish liability for misrepresentation, a plaintiff must prove all five elements of common law fraud: "(1) that the statement was knowingly false; (2) that the defendants made the false statement with the intent to deceive; (3) that the statement was material to the plaintiff's decision to sign the contract; (4) that the plaintiff reasonably relied on the statement; and (5) that the plaintiff was injured as a result of their reliance." See Kenda Corp., Inc. v. Pot O' Gold Money Leagues, Inc., 329 F.3d 216, 225 (1st Cir. 2003) (quoting Turner v. Johnson & Johnson, 809 F.2d 90, 95 (1st Cir. 19860); see also Roadmaster Indus., Inc. v.

9

Columbia Mfg. Co. Inc., 893 F. Supp. 1162, 1176 (D. Mass. 1995); Int'l totalizing

Sys., Inc. v. Pepsico, Inc., 29 Mass. App. Ct. 424, 431, 560 N.E. 2d 749 (1990)

(concerning plaintiff's decision to sign the agreement.)

   The plaintiff relied on representations by Paul Cote and James Cowdell that

defamation would cease and offending individuals would be punished. They

assured the plaintiff that the letter would be drafted and mailed out as prescribed

by the agreement. The boards of GLMHRA and EMHC approved the agreement

and  the aforementioned sections of the agreement.

   GLMHRA, its board, Executive Director, agents, employees especially certain

senior managers were defaming and disparaging the plaintiff prior to, during and

after the signing of the severance agreement. Additionally, they were circulating a

thirty plus page report prepared by their consultant that was defaming the plaintiff

and blaming the plaintiff for the agency's financial problems. They withheld the

document and its contents from the plaintiff and the EMHC board.

   GLMHRA and its agents intended to take over EMHC and control of its assets

to cover up their misappropriation and mismanagement of over $900,000 of

charitable assets.

   Their plan must have also called for the defamation of the plaintiff to divert

blame for the financial mess that they had created from themselves to the plaintiff.

In any case, the withholding of the report from the plaintiff and the EMHC board

had this effect. It is obvious that they had no intention of writing the letter required

by the agreement or taking responsibility for the financial deficit incurred during

1999-2001.

   8.  An allegation of fraud or deceit does not have to be pled with specificity.

Massachusetts' courts do not impose this requirement on c. 93A claimants and certainly it should not be applied to a breach of contract claim. See <u>U.S. Funding, Inc., of America v. Bank of Boston, 28 Mass. App. Ct. 404, 407, 551 N.E.2d 922 (1990, and Li'l Peach of Massachusetts, Inc., v. Frances Prendergast 6 Mass. L. Rep. 43; 1996 Mass. Super. LEXIS 356.</u>

However, the thirty plus page Griffin document with its attached MacKleish and Sherman document is very specific and real and not subject to interpretation as to its existence and relevance to the severance agreement.

We should ask the question: if a similar document had been prepared by the plaintiff defaming individual board members and its agents and lawyers and employees and secretly mailed out and distributed, would GLMHRA have signed the severance agreement? Any reasonable person would say no.

Unconscionability is appropriately argued as grounds for the rescission of a contract. See, e.g., <u>*Waters v. Min Ltd.*, 412 Mass. 64, 587 N.E.2d 231 (1992). Logan Equip. Corp. v. Simon Aerials, Inc., 736 F. Supp. 1188, 1199 (D. Mass. (1990) (quoting Nickerson v. Matco Tools Corp., 813 F.2d 529,530 (1st Cir. 1987)); see also Roadmaster Indus., 893 F. Supp. At 1176.</u>

9.  In a breach of contract case, the plaintiff normally obtains "benefit-of-the-bargain" damages, measured by what the plaintiff would have received had the not been breached. E.g., 3 <u>Farnsworth, Farnsworth on Contracts</u>, § 12.1, at 147-48 (1990); 12 <u>Williston & Jaeger</u>, supra, § 1454, at 2-3. In appropriate circumstances, a plaintiff may choose the alternative remedy of rescission and restitution. E.g., 3 <u>Farnsworth</u>, supra, 12.1, at 150-51; 12 <u>Williston & Jaeger</u>, supra, § 1454, at 3-4.

The plaintiff could receive larger damages through rescission versus breach of contract since his salary and benefits while Executive Director of GLMHRA and EMHC pre November 2000 were $200,000 per year. His expected salary and benefits as the full time Executive Director of EMHC would have been no more than $100,000 per year.

### Argument

1.     The defendant asserts that the plaintiff "had the capacity and determination to waive, knowingly and voluntarily, all of his claims against Greater Lynn that arose before November, 2000.

The plaintiff did not 'knowingly sign the agreement and he would never have signed the agreement if he had known that GLMHRA was misrepresenting their intent to abide by the agreement and that at the time of the negotiations and the signing of the agreement that GLMHRA, had paid for a consultant, Robert Griffin, to write an analysis of problems at GLMHRA and that the document incorrectly blamed the plaintiff for the financial problems and the deficit at GLMHRA and made allegations that there were violations of ERISA. The Griffin report was distributed by GLMHRA and by the two individuals who were negotiating the severance agreement, James Cowdell and Paul Cote, to all board members, the Attorney General's Office, various state agencies. Its contents were shared with employees and other individuals inside and outside the organization.

It was released to the press in 2002.

The Griffin report relied on a draft document prepared by MacKleish and Sherman from December 1999 that had been rejected by the board of directors.

12

The Griffin document did not include the plaintiff attorney's response of April 2000

to the final MacKleish and Sherman document or the final MacKleish document

that was approved by the board in February or the April 2000 addendum that

completed discredited the remaining allegations of the MacKleish Document. It

also did not include Attorney Laurie Cutler's analysis or the plaintiff and Tena

Fallon's and an ERISA consultant's analysis of the Fringe Incentive

Plan that discredited the MacKleish document. It did not include the recent audit

reports of EMHC that had listed the interagency loans or the board minutes of

both corporations that approved the loans.

   The Griffin report relied on incorrect unaudited financial statements provided

by GLMHRA and Executive Director, Paul Cote that underestimated the deficit at

GLMHRA and  underestimated the surplus at EMHC. It included an unauthorized

transfer of funds from EMHC to GLMHRA. His report left the impression that the

plaintiff loaned money between the corporations without board approval and

without written promissory notes.

   GLMHRA, Paul Cote and its treasurer, Bob tucker, and president Tom

Manning were in the possession of the competed correct audits, financial reports,

board minutes, EMHC and GLMHRA bylaws and apparently did not share them

with the consultant.

2.      The defendants assert that the plaintiff engaged in a material breach of the

severance agreement. The plaintiff's actions are not a material breach of the

agreement for the following reasons:

      a.      DMH and DMR were already aware of all the contents of the letters

from previous correspondence pre November 2000 from the plaintiff, EMHC and

from past president Tena Fallon. The letters only organized previous correspondence into a systematic and chronological order. Additionally all recipients of the plaintiff's letters had in their possession updated audit reports and financials. DMH had already accused GLMHRA of improper billing and DMR had already informed GLMHRA that their legal and consultant costs could not be reimbursed from state contracts since they were excessive and a violation of state Purchase of Service Regulations.

b.    The defendants have no damages as a result of the plaintiff's letters to DMH, DMR, board members and to senior employees. In fact DMH and DMR awarded new contracts to GLMHRA after these letters were mailed out. If there are no damages there can be no material breach by the plaintiff.

c.    The section of the agreement dealing with disparaging statements was not an essential element for GLMHRA to sign the agreement and plaintiff's alleged violation does not constitute a material breach but an immaterial breach of the agreement. Essential elements stated by Paul Cote and James Cowdell when they met with the plaintiff were plaintiff's resignation from EMHC, plaintiff agreeing not to file suit against GLMHRA or its agents, etc. for any actions prior to November 8, 2000 and the cancellation of the EEOC ADA suit.

d.    The plaintiff apologized in writing for any misunderstanding or harm caused by his letter to the seventeen employees. This was an immaterial breach and it was cured.

e.    The defendants have to take full responsibility for the dissemination of the Griffin and MacKleish and Sherman documents and especially their dissemination to the press and for not correcting their falsehoods and for not

14

providing accurate information to Griffin. The plaintiff's letters only partially corrected their falsehoods and were only sent to board members and DMH and DMR versus the widespread circulation of the Griffin and MacKleish documents and contents. The plaintiff was by now so discredited that it is doubtful that his comments were believed and they were certainly never acted on by anyone.

      f.     The defendants' self interest was not to send the letter as required in the agreement, since they would have no one to blame for the deficits and unauthorized and unbudgeted legal and consultant costs. How could they justify these costs and the deficits they created without pointing the finger at themselves and exposing their self serving and possibly illegal actions that the plaintiff has described in detail with his RICO complaint.

### Conclusion

For the reasons set forth above, the plaintiff requests that the Court deny defendant's motions for dismissal or partial summary judgment and in the alternative grant plaintiff's motion for summary judgment on the breach of contract claim and order discovery on damages for breach of contract and rescission and continue to order discovery on all outstanding issues including defamation and the ADA claims and that discovery include pre November 2000 actions by the defendant and its agents.

The plaintiff also requests that discovery be allowed to determine whether there are grounds to rescind the agreement.

15

Respectfully submitted,

Albert W. Bleau Jr.
505 Paradise Rd. #208
Swampscott, MA 01907
(781) 962-2662

Dated:  August 29, 2005

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above
document was served upon all counsel of
record by First Class Mail on <u>August 29</u>
2005.

Albert W. Bleau Jr.

16