# UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

2005 OCT -4  A 8: 36

U.S. DISTRICT COURT
DISTRICT OF MASS.

Albert William Bleau Jr.                    :

      Plaintiff                              :

                            :

Vs.                                         :          Civil Action
                                No. 04 – 10469REK

                            :

Greater Lynn Mental Health                  :
& Retardation Association, et al,

      Defendants

## Additional Local Rule 56.1 Statement 0f Material Facts of Plaintiff Albert W. Bleau Jr. In Support of Plaintiff's Motion For Summary Judgment and For Discovery

## And

## In Support of Plaintiff's Objection to Defendant's Motion of August 9, 2005 To Dismiss Plaintiff's Breach Of Contract Claim or For Partial Summary Judgment

       Pursuant to Local Rule 56.1, Plaintiff Albert W. Bleau Jr., submits the

following additional statement of the undisputed material facts upon which the

Plaintiff bases his objection to GLMHRA's motions for dismissal and partial

summary judgment of the plaintiff's claim for breach of contract and upon which

the plaintiff bases his motion for summary judgment of the plaintiff's claim for

breach of contract and for discovery.

1

1.    The plaintiff submits as Attachment I a chronology with attachments of various relevant correspondence and documentation known to the plaintiff between the plaintiff and the defendants and between the plaintiff and defendant GLMHRA's attorney, Laurence Donoghue, and from the plaintiff and the defendants to DMH, DMR, the Board of Directors and the Massachusetts' Attorney General's Office, local and state elected officials, association employees and the press.

2.    The plaintiff submits as Attachment II relevant sections of the 1998 and 1999 audits of GLMHRA and EMHC showing that EMHC and GLMHRA ended fiscal years 1998 and 1999 when both corporations were managed by the plaintiff with a surplus in funds. Also attached is a GLMHRA statement to the bondholders showing GLMHRA would finish the fiscal year ending June 3, 2000 with a $336,000 deficit while the plaintiff was on leave from GLMHRA and the agency was being mismanaged and directed by MacKleish and Sherman and at the end of the fiscal year by Griffin and intermittently by the board of GLMHRA. It also shows the EMHC that was managed by the plaintiff would end the fiscal year with a surplus.

3.    The plaintiff's letters to DMH, DMR and the Board of GLMHRA sent on April 14, 2001 were in response to the recruitment by GLMHRA for a Chief Financial Officer for the company and were sent by the plaintiff to gain support for his appointment to this position. They contained no new information, allegations or statements that had not already been received by these individuals or agencies and other state agencies, employees and elected officials prior to

2

November 8, 2000 as a result of various correspondences from the plaintiff and the defendant GLMHRA, their counsel and the defendants' MacKleish, Sherman and Griffin.

4.    In support of the aforementioned statement, the Plaintiff has attached the following documents that were sent to all defendants, the boards, DMH, DMR and the Attorney General's Office and most were also sent to various local and state elected officials and many association employees prior to the signing of the severance agreement on November 8, 2000:

a.    Plaintiff's letter with attachments of April 21, 2000 to GLMHRA requesting a meeting with the board and grieving the decision to terminate the plaintiff.

b.    EMHC's president's  letter to Erick Carricker of the Attorney General's Office dated 4/20/2000.

c.    Plaintiff's response to the MacKleish-Sherman report dated 4/21/2000 and letter requesting a full accounting of plaintiff's expenditures and deductions dated 4/21/2000.

d.    Plaintiff's letter with attachments of April 21, 2000 to GLMHRA requesting a meeting with the board and grieving the decision to terminate the plaintiff.

e.    Plaintiff's addendum to the 4/21/2000 response to the MacKleish-Sherman report and 4/26/2000 letter to Warren Bank requesting $300,000 loan for GLMHRA.

f.    Plaintiffs summary of GLMHRA accomplishments dated

3

May 2000.

g.    Plaintiff's letter of May 24, 2000, "Financial and Budget

Issues".

h.    Martena Fallon complaint to bar of overseers dated May

2000.

i.    Plaintiff's Cash Flow Analysis distributed in May, 2000

j.    Plaintiff's letter to EMHC Atty. Paul Keating explaining the

$500,000 loan that EMHC secured for GLMHRA.

k.    Response of Bar of Overseers dated 6/13/2000

l.    EMHC minutes of 6/29/2000 stating concerns with

GLMHRA finances and management

m.    EMHC minutes of 7/6/2000 with vote to borrow funds to

help GLMHRA with its overspending and deficits.

n.    Letter from Van Kampen of 7/14/2000 disagreeing with

GLMHRA's statement that they had requested the termination

of the plaintiff and critiquing GLMHRA's actions regarding the

bond.

o.    Plaintiff's analysis and recommendation distributed on July

18, 2000 stating that the bond was more expensive than

alternative financing.

p.    EMHC board minutes of 8/2/2000 authorizing a separate

office for EMHC and terminating the management contract with

GLMHRA.

q.    EMHC board minutes of 8/9/2000 addressing financial

4

problems and mismanagement at GLMHRA.

r.    Laconia Citizen news article describing the conversion of EMHC's Marquis Resort to condominiums.

s.    Plaintiff's letter of 8/15/2000 to Atty. Donoghue outlining improprieties at GLMHRA

t.    Agenda and Vote by EMHC of 9/13/2000 to remove GLMHRA as signature from EMHC's checking account.

u.    Plaintiff's letters of September 14, 2000 with attachments sent to Mary Lou Sudder, DMH, and Gerry Morrissey, DMR, and to Senator Fred Berry, Governor Cellucci, and Congressman John Tierney describing problems at GLMHRA and with Senior Managers and with the Defendants. Notice the reference to the attachments that were included with the correspondence. This letter was also sent to Representative Tom McGee, and other area State representatives, the Mayor and to Lynn City Councilors.

v.    Plaintiff's letter of September 21 to Erik Carricker of the Attorney General's Office. Notice the list of attachments sent with this correspondence.

w.    Plaintiff's letter of September 21, 2000 to Tom Manning, President of GLMHRA, appealing and grieving plaintiff's termination from GLMHRA because plaintiff refused to sign the severance agreement (Letter of September 15, 2000 from Atty.

Donohue informing plaintiff of his termination is also attached)

x.   Plaintiff's letter of September 27, 2000, at the request of
the EMHC board, to GLMHRA requesting various documents,
payment of bills and the vacating of space for an EMHC
corporate office.

y.   Plaintiff's claim of discrimination filed with the EEOC on
10/6/2000.

z.   Martena Fallon's analysis of EFIP program and EFIP
spending and ERISA dated 10/9/2000.

aa.  Plaintiff's letter of October 12, 2000 requesting
reinstatement and presenting a detailed description of
GLMHRA's violation of the personnel practices, and unethical
and possibly illegal conduct of defendants' MacKleish,
Sherman and GLMHRA's senior Management.

bb.  EEOC request to GLMHRA for mediation

cc.  The Griffin report and the MacKleish-Sherman reports
were not only critical of the plaintiff, they were very critical of
the defendant, GLMHRA and its Board of Directors. They were
widely circulated by the defendants to board members,
employees of GLMHRA, state agencies, the press, politicians
and the Attorney General's Office. In effect their contents had
become common knowledge. Unfortunately, so had their false
accusations and defamation of the plaintiff.

6

4.    From March 2000 to October 2000 the defendant's

MacKleish, Sherman and Griffin submitted various reports, financials and

documents to the board, DMH, DMR and to the Attorney General's Office. Those

in the possession of the plaintiff have been submitted to this court in his original

claim of March 8, 2004 and with his RICO complaint. (See the previously

attached Griffin report to the board dated October 2000 and the MacKleish

Sherman report submitted by the plaintiff and by the defendant GLMHRA.)

5.    The plaintiff made numerous attempts to gain GLMHRA's compliance

with the severance agreement from November 8, 2000 to the present. Examples

of plaintiff's attempts to gain defendant's compliance with the severance

agreement include the following:

>       a.    Letters sent to GLMHRA Board members, Executives and their
>       Attorney, Laurence Donoghue, are attached and include
>       correspondence dated: 12/12/2000, 4/5/2001, 4/13/2001, 5/8/2001,
>       5/22/2001, 6/20/2001, 12/7/2001, 4/2/2002.
>
>       b.    Letters to EEOC requesting assistance to have the severance
>       agreement adhered to by GLMHRA and to end defamation and
>       retaliation dated: 11/22/2000, 11/22/2000 and 12/12/2000.

6.    GLMHRA refused to comply with the severance agreement and

ignored the plaintiff's complaints and attempts to force their compliance

with key provisions of the agreement: training funds, defamation and the

letter. This statement is supported by the following correspondence from

7

GLMHRA to the plaintiff: 11/16/2000 from James Cowdell, telling plaintiff

not to call or contact GLMHRA with any concerns regarding the agreement,

retaliation or defamation; 4/19/2001 and 5/14/2001 correspondence from

\Atty. Donoghue reinforcing the Cowdell directive and voiding all GLMHRA

provisions under the severance agreement and refusing plaintiff's apology;

Donoghue letter of 12/27/2001 where he refuses to address plaintiff's

concerns with GLMHRA's violation of the severance agreement detailed in

plaintiff's letter of 12/7/2001. (defamation, the letter and training funds)

7.    EEOC chose to ignore the plaintiff's requests for assistance outlined

in his letters of 11/22/2000 in an "Acknowledgement of Settlement" dated

11/28/2000. (attached) They responded to plaintiff's 12/12/2000 request

stating that it was not their responsibility to enforce the severance

agreement and that since an agreement were signed before discrimination

was actually proven they could not address the issues of retaliation.

8.    GLMHRA terminated all negotiations with the plaintiff after submitting

three different severance agreements to the plaintiff that had minor alterations

unsatisfactory to the plaintiff.  GLMHRA then cut the defendant and his

family off of benefits and removed the plaintiff from payroll.

9.    GLMHRA therefore, was willing to forgo the protection available in

the severance agreement from disparaging remarks from the plaintiff or

from a potential lawsuit for discrimination or wrongful discharge. GLMHRA

also made no mention of the need for the plaintiff to resign from

EMHC. See attached correspondence from Robert Tucker dated 7/5/2000

and from Atty. Donoghue dated: 8/14/2000, 8/16/2000 and 8/25/2000

and 9/25/2000 and letter of 10/12/2000 denying plaintiff's request for

reinstatement. Also attached is a letter from acting Executive Director, Paul

Cote. Also see the attached draft severance agreements dated: 8/7/2000

and 8/14/2000 and 8/16/2000.

10.    After GLMHRA received the Griffin Report in October 2000 stating

that GLMHRA could loose one Million dollars during the current fiscal year

and recommending that GLMHRA take over EMHC, GLMHRA called the

plaintiff to reopen negotiations. GLMHRA submitted a new draft severance

agreement on November 1, 2000 that for the first time included the

requirement that the plaintiff resign from EMHC. See attached severance

agreements of November 1 and November 3, 2000.

11.    The primary motivating factor, therefore, for GLMHRA to execute the

new agreements was the resignation of the plaintiff from EMHC.

12.    Plaintiff had been consistent with his requests during the negotiations

to execute a severance agreement. He had requested just compensation,

a proper accounting of funds owed to the plaintiff and that plaintiff owed to

GLMHRA, the end of defamation, right to counsel, training funds and

indemnification.

13.    When GLMHRA requested that he resign from EMHC,

plaintiff also requested the need for a letter be sent to board members,

parents, friends of the association and employees. He refused to sign two

agreements presented to him on November 1st and November 3, 2000 until

9

these provisions were included in the agreement. See plaintiff's attached

three e-mails to Atty. Donoghue dated: 8/15/2000 and e-mails dated

8/17/2000 and 8/18/2000 as well as correspondence to Tom Manning

dated 9/21/2000 and to Atty. Donoghue dated 10/12/2000. Also attached

are draft severance agreements of November 1 and November 3, 2000.

The final agreement of November 8, 2000 has been submitted to the court

by the defendant and the plaintiff.

14.    The plaintiff  was granted legal counsel by GLMHRA's Board

Liability and Officer's Insurance Company in June 2001 to defend himself

against continuing allegations by GLMHRA and defendant's MacKleish and

Sherman in violation of the severance agreement to the Attorney General's

Office. Their services have not been necessary. See plaintiff's attached

correspondence to Jennifer Hollingsworth of the Attorney General's Office

dated 5/10/2001, letter from Atty. Barry Guryan dated 5/25/2001denying

representation of the defendant, and correspondence from plaintiff's

appointed counsel, Timothy Frawley of Cetrulo and Capone.

Respectfully submitted,

Albert W. Bleau Jr.
505 Paradise Rd. #208
Swampscott, MA 01907
(781) 962-2662

10

Dated:  October 4, 2005

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above
document was served upon all counsel of
record by First Class Mail on October 4-5,
2005.

Albert W. Bleau Jr.

11