# ROSENFELD & ASSOCIATES

**A PROFESSIONAL CORPORATION**

SUITE 715
44 SCHOOL STREET
BOSTON, MASSACHUSETTS 02108

FILED
IN CLERKS OFFICE

2005 OCT 11  A 11: 27

U.S. DISTRICT COURT
DISTRICT OF MASS.

S. STEPHEN ROSENFELD
MALA M. RAFIK
JULIE SCHWARTZ WEBER
SUZANNE L. SCHWARTZ

OF COUNSEL
RICHARD AMES

TEL. (617) 723-7470
FAX (617) 227-2843
HTTP://WWW.ROSENFELD.COM

April 21, 2000

**BY FAX (617-310-6001) AND MAIL**
Roderick MacLeish Jr., Esq.
Greenberg, Traurig
One International Place
Third Floor
Boston, MA 02110

> Re:   Albert Bleau/Greater Lynn Mental Health & Retardation Association, Inc.
>       ("Greater Lynn" or "GLMHRA")

Dear Erik:

As I stated to you on the phone, subject to clarification, we have confirmed the justification for the amount of the Note with Mr. Bleau. There are several items to which Mr. Bleau requests further clarification. One involves the validity of the interest charge on the money borrowed from his deferred compensation account. It is now our understanding that Mr. Bleau is entitled to the interest if he has in fact borrowed from himself rather than the agency. Second, Mr. Bleau requests information about the May 16, 1999, ($3,000 -- ck#11430). Finally, as we discussed, Mr. Bleau would like further clarification as to why no funds from EMHC were applied to his Greater Lynn Account during FY '98. I should add, for the sake of completeness, that Mr. Bleau contests the amount of the two vacation rental entries, but views them as essentially offset by the amount of the "spreadsheet error" set forth in the pages you handed me on Thursday.

Mr. Bleau looks forward to resolving this matter as soon as possible. We foresee paying his outstanding obligations with the so-called deferred compensation account, as we have discussed. If you have further questions, please do not hesitate to call.

Sincerely,

S. Stephen Rosenfeld

cc: Albert Bleau

# ALBERT W BLEAU JR

Jack Pizer
Pension Assistance Project
Gerontology Institute
University of Massachusetts Boston
100 Morrissey Boulevard
Boston, Mass. 02125- 3393

October 19, 2000

Dear Mr. Pizer,

Thank you for your assistance with my retirement money. I only have sufficient funds to
meet my mortgage payments through December 2000.

Enclosed are two requests for the plan documents. Also enclosed is a copy of the
severance agreement they sent me and a letter from their attorney.

In January I requested that my funds be transferred from Growth funds to bank CD's. I
also requested this again this past summer. They refused to do this and as a result I have t
have lost about 20% value in my accounts. Is there anything that can be done about this?
Also, they did not deposit $60,000 into the account during the past three years despite a
vote of the board and I have lost possible interest on these funds as well.

Thank you once again for your assistance.

Sincerely,

Albert W. Bleau Jr.

THE COMMONWEALTH OF MASSACHUSETTS
OFFICE OF THE ATTORNEY GENERAL
200 PORTLAND STREET
BOSTON, MASSACHUSETTS 02114

TOM REILLY
ATTORNEY GENERAL

October 27, 2000

(617) 727-2200

Albert Bleau, Jr.
127 Redington Street
Swampscott, MA 01907

RE: Greater Lynn Mental Health & Retardation Assoc.
Inc.

Dear Mr. Bleau:

Thank you for filing a complaint with the Office of the Attorney General, Fair Labor and Business Practices Division.

This letter is to inform you that we have carefully reviewed your complaint and determined that the proper resolution of this matter may be through a private suit in civil court.

Massachusetts General Laws chapter 149, § 150, and chapter 151, §§ 1B and 20 establish a private right of action for employees who believe they are victims of certain violations of the state wage laws. If you elect to sue in civil court, you may obtain treble damages and reasonable attorneys' fees following a ninety-day waiting period after filing a complaint with the Attorney General's Office. Permission to proceed civilly prior to the expiration of the ninety-day period must be granted in writing by the Attorney General's Office.

Without making a judgement on the merits of your complaint, this correspondence hereby grants you the authority to pursue this matter privately in accordance with Massachusetts General Laws chapters 149 and 151. This office will not take further enforcement action.

Thank you for your attention to this matter.

Sincerely,

Mary Dullinger, Inspector
Fair Labor and Business Practices Division
(617) 727-2200, extension 3258

MD/md

# MORGAN, BROWN & JOY, LLP

ATTORNEYS AT LAW
ONE BOSTON PLACE
BOSTON, MASSACHUSETTS 02108-4472

LAURENCE J. DONOGHUE
ldonoghue@morganbrown.com

TELEPHONE
(617) 523-6666
FACSIMILE
(617) 367-3125

August 14, 2000

**VIA FEDERAL EXPRESS**

Mr. Albert Bleau, Jr.
127 Redington Street
Swampscott, MA 01907

Dear Al:

I have brought your proposal you communicated to me to the attention of the Board of Directors. The Board's position is that there is no change of their original offer to you. Please let me know if you are accepting or rejecting this proposal.

Very truly yours,

Laurence J. Donoghue

LJD/kmc

cc:  Mr. Thomas Manning (by mail)
     Mr. Robert Tucker (by mail)
     Ms. Claire Jackson (by mail)

# MORGAN, BROWN & JOY, LLP

### ATTORNEYS AT LAW
### ONE BOSTON PLACE
### BOSTON, MASSACHUSETTS 02108-4472

LAURENCE J. DONOGHUE
ldonoghue@morganbrown.com

TELEPHONE
(617) 523-6666
FACSIMILE
(617) 367-3125

August 25, 2000

Mr. Albert Bleau, Jr.
127 Redington Street
Swampscott, MA 01907

Dear Al:

To confirm the e-mail I sent you this date, the Board's last proposal, which accompanied the letter to you dated August 16, 2000, stands. We will make provisions for you to receive copies of the training files you identified in your e-mail to me dated August 17.

Very truly yours,

Laurence J. Donoghue

LJD

cc:   Mr. Thomas Manning
      Mr. Robert Tucker
      Ms. Claire Jackson

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Boston Area Office**

John F. Kennedy Federal Building
Government Center
Fourth Floor, Room 475
Boston, MA 02203
(617) 565-3200
TTY (617) 565-3204
FAX (617) 565-3196



October 24, 2000

Re: Charge No.:161A10004
Bleau v. Greater Lynn Health/Retardation
Association

Albert W. Bleau, Jr.
127 Redington St.
Swampscott, MA 01907

Dear Mr. Swampscott:

On 6 October 2000, you filed the above referenced charge in which you alleged you were discriminated against because of your disability. The Americans with Disabilities Act (ADA) of 1990 only prohibits employment discrimination against **"qualified individuals with disabilities".** A qualified individual with a disability is an individual with a disability who meets the skill, experience, education, and other job related requirements of a position he or desired, and who with or without reasonable accommodations, can perform the esser functions of a job.

The ADA defines a person with a disability as <u>an individual who has:</u>

<u>a physical or mental impairment that substantially limits one or her/his major life activities;</u>

<u>has a record of an impairment that substantially limits one of life activities;</u>

<u>is regarded as having an impairment that substantially major life activities.</u>

It is important that you provide this office with medical documentar manner in which it substantially limits one or more of your major you have a record of such an impairment, or evidence that the em such an impairment.





**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Boston Area Office**

John F. Kennedy Federal Building
Government Center
Fourth Floor, Room 475
Boston, MA 02203
(617) 565-3200
TTY (617) 565-3204
FAX (617) 565-3196

October 24, 2000

Re: Charge No.:161A10004
Bleau v. Greater Lynn Health/Retardation
Association

Albert W. Bleau, Jr.
127 Redington St.
Swampscott, MA  01907

Dear Mr. Swampscott:

On 6 October 2000, you filed the above referenced charge in which you alleged you were discriminated against because of your disability. The Americans with Disabilities Act (ADA) of 1990 only prohibits employment discrimination against **"qualified individuals with disabilities". A qualified individual with a disability is an individual with a disability who meets the skill, experience, education, and other job related requirements of a position held or desired, and who with or without reasonable accommodations, can perform the essential functions of a job.**

**The ADA defines a person with a disability as <u>an individual who has:</u>**

- **<u>a physical or mental impairment that substantially limits  one or more of her/his major life activities;</u>**

- **<u>has a record of an impairment that substantially limits one or more major life activities:</u>**

- **<u>is regarded as having an impairment that substantially limits one or more major life activities.</u>**

It is important that you provide this office with medical documentation of your disability and the manner in which it substantially limits one or more of your major life activities, or evidence that you have a record of such an impairment, or evidence that the employer treated you as having such an impairment.

If you need to add documents to your file or otherwise communicate with us while waiting for your case to be reviewed, we ask that you do so in writing. Include your charge number on the correspondence.

If you decide to withdraw the charge while the case is awaiting review, please request the withdrawal in writing and briefly state the reason for your withdrawal. If you withdraw because you have settled the charge privately, you must provide this office with a copy of the settlement agreement, as we will not process your request without it.

**For charges filed under Title VII (race, sex, national origin, religion), or the American with Disabilities Act:**

If you decide to file suit in Federal District Court on your Title VII or Americans with Disabilities Act charge while your charge is awaiting review, you should request a "notice of Right to Sue" from us in writing. Requests for "Notice of Right to Sue" will be acted on as received. (Requests for Notices of Right to Sue" against state or local governments are sent to the US Department of Justice for issuance and take several months to process.) Issuance to you of the Notice of Right to Sue terminates the EEOC's processing of your charge. If you file suit in state court, please also notify us. Processing of your charge may be suspended until the conclusion of the state court litigation.

**For charges filed under the Age Discrimination in Employment Act or Equal Pay Act:** You do not need a Notice of Right to Sue to file suit in Federal District Court under these laws; however, if you request it, we will issue one to you. If you file suit in Federal District Court, please advise the agency of the filing and provide us a copy of the complaint. If you file suit, EEOC will terminate the processing of the charge.

These procedures are designed to assist us in processing your charge as expeditiously as we can given our limited staff resources and large number of pending charges. We appreciate your cooperation.

Sincerely,

Rance O'Quinn (MPH)

Rance O'Quinn
Supervisory Investigator

ROQ:mph

You must submit the information requested within <u>thirty (30) days of the date on which you</u> <u>receive this letter. Failure to comply with this request within the allotted time will result in an</u> <u>administrative dismissal of your charge.</u>

If you have any questions regarding this request, please contact this office at (617) 565-3192 or <u>(New England Area Only) 1-800-669-4000.</u>

Sincerely.

Rance O'Quinn
Supervisory Investigator

ROQ:mph



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Boston Area Office**

John F. Kennedy Federal Building
Government Center
Fourth Floor, Room 475
Boston, MA 02203
(617) 565-3200
TTY (617) 565-3204
FAX (617) 565-3196

# AGREEMENT TO MEDIATE

Charge No. _161A10004_

This is an agreement by the parties to participate in mediation concerning
We understand that mediation is a voluntary process, which we may terminate at any time.

The parties and, if they desire, their representatives, are invited to attend mediation sessions.  No one else may attend without the permission of the parties and the consent of the mediator.

The mediator will not function as the representative of either party.  However, the mediator may assist the parties in understanding their rights and the terms of any proposed settlement agreement. Each party acknowledges having been informed of the right to consult with an attorney of his or her choosing before signing any agreement.

We agree that the mediator has the discretion to terminate mediation at any time if he or she believes that the case is inappropriate for mediation or that an impasse has been reached.

We recognize that the mediation process is a confidential proceeding and agree to abide by the confidentiality agreement which is attached.

Agreed to this _____ day of _____ 2000.


_____                    _____
Charging Party                                 Respondent


_____                    _____
Charging Party's Representative                Respondent's Representative
(if applicable)                                (If applicable)


_____
Mediator

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Boston Area Office**

John F. Kennedy Federal Building
Government Center
Fourth Floor, Room 475
Boston, MA 02203
(617) 565-3200
TTY (617) 565-3204
FAX (617) 565-3196

October 25, 2000

Albert W. Bleau, Jr.
127 Redington Street
Swampscott, MA 01907

Paul Cote - Acting Director
Greater Lynn Health/Retardationn Association
P.O. Box 408 37 Friend Street
Lynn, MA 01903        Re:    Charge No. 161A10004 Bleau v. Greater Lynn Health/Retardation

Dear Mr. Bleau and Mr. Cote:

The Employment Opportunity Commission is pleased to invite you to participate in efforts to resolve the above captioned charge through mediation. Mediation is a form of dispute resolution whereby a neutral party, through joint and individual discussions with the parties to the dispute, assists them in finding a mutually acceptable resolution to their dispute. Mediation is being initially offered to you as an alternative to our regular charge process. Participation in mediation is entirely voluntary, and either party to the mediation may withdraw from the process at any time and re-enter the regular EEOC charge processing system. The mediation process is completely confidential and you may have a representative of your choice with you during mediation sessions. To ensure the confidentiality of the process, both parties to the mediation must sign a mediation agreement that includes an agreement not to attempt to obtain the testimony of the mediator in any other forum. The enclosed *Questions & Answers* sheet addresses other questions about mediation. **If your organization has a Legal Dept please forward this to them.**

Please review the enclosed materials and let us know by signing and returning the enclosed *Agreement to Mediate,* postmarked no later than **Nov 3, 2000**. If both parties accept, we will contact you for scheduling. If both parties do not accept, the file will be assigned to an Enforcement Unit which will advise you of the next charge processing steps. After you have read the materials, if you have any questions, please feel free to contact John Ghiringhelli at (617) 565-3190. **If your response is a No for Mediation, please call John Gheringhelli, at 617 565-3190 with your response. Leave a message on voice mail with charge number if I am not available by deadline. If there has been a previous request for Position Statement please submit accordingly.**

Sincerely,

Kathleen M. Clarke
Mediator

Enclosures
Agreement to Mediate/Questions and Answers
Confidentialty Agreement

Albert W. Bleau Jr.
505 Paradise Rd. #208
Swampscott, MA 01907
781 962-2662

April 11, 2005

Greater Lynn Mental Health & Retardation Association, Inc.
37 Friend St.
P.O. Box 408
Lynn, MA 01903

To Whom It May Concern:

I am applying for the position of Chief Financial Officer.

As Executive Director of GLMHRA, we finished each year with surpluses and expanded at a rate of 10 to 16% each year.

During my first twenty - three years as Executive Director of GLMHRA, I was also the Chief Financial Officer. We were audited by the IRS, the Mass Rate Setting Commission, the Department of Human Services and by the State Auditor's Office. All audits were without findings. We were the only business in the state, private or public, to receive a "no findings" audit from the state auditor's office.

I was also the founder and Executive Director of the Eastern Mass Housing Corporation. At Eastern, I directed the construction, renovation, financing and lease up of over seventy residential and commercial properties including the construction of a four million dollar five story office building.

I have attached an expanded resume as well as summaries of my property – program management and managerial experience.

I look forward to hearing from you. Thank you for your consideration.

Yours Truly

Albert Bleau

## MORGAN, BROWN & JOY, LLP

ATTORNEYS AT LAW
ONE BOSTON PLACE
BOSTON, MASSACHUSETTS 02108-4472

LAURENCE J. DONOGHUE
ldonoghue@morganbrown.com

TELEPHONE
(617) 523-6666
FACSIMILE
(617) 367-3125

April 27, 2001

**VIA FIRST CLASS MAIL
AND CERTIFIED MAIL**

Mr. Albert Bleau, Jr.
127 Redington Street
Swampscott, MA 01907

Re:     ***Greater Lynn Mental Health and Retardation Association, Inc.***

Dear Mr. Bleau:

I trust by now you have received my letter dated April 19, 2001. Since that letter was sent, the Association has become aware that you have continued to make serious allegations as to the conduct and performance of various officers, managers and directors of the Association, as well as the Association and Eastern Mass. Housing Corporation. This correspondence is in further violation of paragraph 7 of the parties Separation Agreement and General Release ("Agreement"), in which you agreed not to portray in a false way or disparage the professional reputations of the corporations or their directors, managers and employees

In light of this conduct, the Association has concluded that you do not intend to honor the Agreement. Since this constitutes a material breach of the Agreement, the Association no longer considers itself bound to comply with any further obligations it may have under the Agreement. Therefore, effective immediately, no funds will be paid to you for education/training reimbursement, pursuant to paragraph 5C of the Agreement.

The above action has been taken in response to your violations of paragraph 7 of the Agreement to date. You are further advised that, should you send any additional false or disparaging correspondence or communication in violation of paragraph 7 to any person or entity, the Association will refuse to perform any and all remaining obligations it may have under the Agreement.

MORGAN, BROWN & JOY, LLP

Mr. Albert Bleau, Jr.
April 27, 2001
Page 2

If this occurs, the Association will no longer pay the employer's share of your health insurance premium, as set forth in paragraph 5A of the Agreement. You will be solely responsible for any future medical insurance premium costs under the provisions of COBRA. We sincerely hope that you do not engage in any further conduct that requires us to take this action.

Since the above actions on the part of the Association are the result of your own breach of the Agreement, you remain bound by those terms of the Agreement applicable to you. These include paragraphs 3A, 4 and 7 of the Agreement.

Very truly yours,

Laurence J. Donoghue

LJD/cme

# ALBERT W BLEAU JR

Atty. Larry Donogue
Morgan & Joy
Suite 1616
One Boston Place
Boston, Mass. 02108-4472

May 8, 2001

Dear Atty. Donogue,

I hope you will reconsider your decision regarding my training. I operated GLMHRA for over 30 years and EMHC for over 23 years. Retraining is essential for me to gain employment.

Concerning disparaging remarks, please remember that I have know many of these women for years. I watched them mature and grow in their jobs, attended their weddings and christenings for their children, and visited them when they were ill and attended their family funerals. I was generally concerned for their welfare and that of the two companies.

I was sincere in my concerns and my willingness to assist.

I have been defamed constantly by GLMHRA senior Staff (Elaine, Jim, Kelly, their spouses and board members and other officials and consultants). I sent out over one hundred resumes with not one request for an interview or follow up call. Local folks in Swampscott and Lynn confirm this defamation. I can only imagine what GLMHRA officials are telling prospective employers.

Cote and James Cowdell did tell me and gave me their word and shook my hand and said they would do a joint press release. They also agreed to do a recommendation as well.

NEW ISSUES

1) GLMHRA and Elaine White stated that my vehicle was worth $21,500 and included this amount in my W2 for 2000. I believe Elaine got her figure off the Internet. The Mass. Registry and Insurance Industry puts its value at $17,500. I respectively request an amended W2. I believe the discrepancy arises because the vehicle had over 62,000 miles

on it resulting in the lower value. Elaine did not consider this fact when she arrived at the value of the vehicle. I paid sales taxes based on the $17,500 value.

2) GLMHRA has not deposited funds into the 401k retirement plan per the plan documents for the past two years. Therefore, Association employees and I have not received retirement funds that we are owed. This is a violation of ERISA. The plan documents require $17,300 plus a 3% inflation increase compounded annually as the minimum contribution by the company. This was the plan document sent to DOL when the plan was founded over 17 years ago. Ask PAPI if you don't believe me. Also, Elaine, McLeish and Sherman took possession of all the EFIP files and should have the original documents and minutes of the votes.

3) As a condition of my hiring and employment and for over 30 years GLMHRA has paid my full medical and dental benefits and I respectively request the payment of all my prescription drugs and dental bills under COBRA. There has never been a vote of the board to remove these benefits from me prior to my departure.


Thank you for your consideration. I do hope you will reconsider your decisions and act on my recent requests as well.


Sincerely,

Albert W. Bleau Jr.

Cc. Bob Tucker, Tom Costin, Paul Cote

# ALBERT W BLEAU JR

*Ralph*
*lo nillon)c-*

Atty. Laurence Donoghue
Morgan, Brown and Joy
One Boston Place
Boston, Massachusetts 02108

May 22, 2001

Dear Atty. Donoghue,

I am in receipt of your May 14th letter.

The issue here is whether GLMHRA and EMHC are prepared to honor the word and the handshakes of their senior staff, Paul Cote and James Cowdell.

They both requested that I trust them, that they didn't want any conflict and that I should be recognized for my years of contributions to GLMHRA. They stated the following over the course of three meetings in the Lynn City Council offices: 1) They recognized that the value of the car might be too high and that if I could furnish documentation showing a lesser value they would change the price in the agreement. I have furnished you documentation that the value is not 21,500 but 17,400. You have overtaxed me by about $1500 based on the higher valuation. 2) They assured me that correspondence and verbal directives would go out to staff especially Elaine White and her friends and family members employed at GLMHRA and board members that only Paul and Jim would handle all inquiries concerning my employment and all disparaging remarks would cease. 3) They assured me that a letter of recommendation would be written satisfactory to all parties. 4) They assured me that a joint release would be sent to the Item and a statement would be included in the Agency's newsletter announcing my departure and outlining my successes and contributions at EMHC and GLMHRA.

These agreements were not put in the agreement because Paul and Jim were so adamant about doing them and I trusted their word.

What is the record? The disparaging remarks have continued and negative statements have been given to prospective employers. Therefore, I have had to hire a placement firm at a cost of $5200. I have sent out over 200 resumes without any success and have been posted on fifteen Internet sites as well.

At this time I am requesting that GLMHRA and EMHC adhere to their commitments and: pay for my training, draft a letter of recommendation and issue the press release to the Item and to the Agency Newsletter.

GLMHRA and EMHC have damaged my reputation and have interfered with my attempts to gain employment. Therefore, I am also requesting that you continue my medical benefits beyond November 2001 for an additional six months, that you provide me with an additional six months in severance pay, and that you pay for my placement costs of $5200.

I also believe you are mistaken concerning the COBRA laws. GLMHRA had four classes of employees and COBRA requires that they be continued in that class after severance from the company. Past practice and the personnel practices have dictated this action as well. I was a "grandfathered", Class I employee and should be afforded the same benefits that I received while employed at GLMHRA.

I am also requesting that you act against those employees and board members present and past who have continued to defame my reputation.

Sincerely,

Albert W. Bleau Jr.

# MORGAN, BROWN & JOY, LLP

ATTORNEYS AT LAW
ONE BOSTON PLACE
BOSTON, MASSACHUSETTS 02108-4472

LAURENCE J. DONOGHUE
ldonoghue@morganbrown.com

TELEPHONE
(617) 523-6666
FACSIMILE
(617) 367-3125

May 14, 2001

Mr. Albert Bleau, Jr.
127 Redington Street
Swampscott, MA 01907

Re:   ***Greater Lynn Mental Health and Retardation Association, Inc.***

Dear Mr. Bleau:

I am writing in response to your letter dated May 8. Taking the matters raised in your letter in order:

1.   For the reasons stated in my April 27 letter, the Association will not reconsider its decision concerning education and training expenses. Your stated personal concern for the individuals to whom the letter was addressed does not justify the disparaging remarks directed toward the Association and its directors, managers and employees.

2.   In paragraph 5C of the Separation Agreement and General Release you expressly acknowledged that the fair market value of the vehicle was $21,600. There is no discrepancy that needs to be corrected.

3.   The Association denies any funds are owed to you under the 401k retirement plan.

4.   Under COBRA, you are entitled only to those benefits which are available to other employees of the Company, under the terms of the Association's health plan. Regardless of whatever additional non-plan medical benefits you received while you were employed by the Association you are not entitled to those benefits under COBRA.

Very truly yours,

Laurence J. Donoghue

LJD

# CETRULO & CAPONE LLP

COUNSELLORS AT LAW
TWO SEAPORT LANE
BOSTON, MASSACHUSETTS 02210
TELEPHONE (617) 217-5500
FACSIMILE (617) 217-5200

PROVIDENCE, RHODE ISLAND
TELEPHONE (401) 274-7850

NEW YORK, NEW YORK
TELEPHONE (212) 964-1127

Direct Dial (617) 217-5325

September 25, 2001

## ATTORNEY-CLIENT COMMUNICATION
## PRIVILEGED AND CONFIDENTIAL

Albert Bleau
127 Redington Street
Swampscott, MA 01907

      **Re:**    **Greater Lynn Mental Health and Retardation Association, Inc.**

Dear Mr. Bleau:

      We have been in contact with Attorney Stephen Rosenfeld's office regarding his involvement in the early stages of the above-referenced matter. Specifically, we requested copies of the letter of complaint issued to you by Attorney MacLeish and the response thereto drafted by Attorney Rosenfeld. However, it is required that you authorize our review of the documents that are currently in Attorney Rosenfeld's possession.

      Enclosed please find a letter of authorization to be provided to Attorney Rosenfeld. Please sign and date the letter and return it to me in the envelope provided. We will then forward the letter to Attorney Rosenfeld requesting the documents.

      As always, if you have any questions, do not hesitate to contact Jim or me.

Very truly yours,

Timothy P. Frawley

TPF/lrb
Enclosure
cc:    James E. Carroll, Esquire (w/enc.)/223675

## *ALBERT W BLEAU JR*

James Cowdell
Administrative Assistant
GLMHRA
37 Friend St.
Box 408
Lynn, Mass. 01903

December 7, 2001

Dear Jim,

I received your letter informing me that I owe $1565.72 for my health insurance.

It is my understanding that my insurance was to be paid for one year beginning December 1, 2000. EMHC was responsible for any payments prior to that date per a vote of that board authorizing me to set up a separate office and administrative functions from GLMHRA. These functions included the salary of the Executive Director and his benefits. I continued to receive my consultant pay from EMHC through November 1999.

For you to cancel my insurance therefore would be a violation of ERISA since I was paid up through the end of November 2000. Additionally I am no longer in need of family benefits under COBRA. I require individual benefits only. Please send me a bill for individual benefits for December and I will pay the bill.

I am scheduled for a colonostomy in December. Should you terminate my benefits, it could have serious effects on my health. Blue Cross-Blue Shield has already approved the procedure.

We still have not resolved the termination of various health benefits since I have been on COBRA. Specifically, my- out- of- pocket dental benefit costs and prescription drug and office visit costs have increased at a rate of almost $200 per month during the past year.

I will be writing to the Department of Labor to get clarification concerning the termination of these benefits per COBRA.

There are still other unresolved issues between GLMHRA and myself:

*Training*

The severance agreement stated that GLMHRA and EMHC would reimburse me $10,000 for training expenses. (See page 2, paragraph 5c). To date I have expended over ten thousand dollars for training and have received nothing from GLMHRA. Invoices from

Clark University have previously been sent to your office. I have other invoices for training expenses as well.

Your Attorney notified me that I was ineligible for funds because I made disparaging remarks about GLMHRA. This is untrue. I made no remarks about GLMHRA's functioning to anyone outside the organization. The remarks I made were not disparaging and secondly, the Association had no authority under the severance agreement to unilaterally change the agreement. Your redress should have been in a court of law if you felt the agreement had been violated. (See page 3, paragraph 7).

Actually, as I have come in contact with employees and Greater Lynn residents, I have praised the work of the organization in the community. I am proud of my accomplishments and those of thousands of employees who worked with me and continue to contribute at GLMHRA.

## GLMHRA-EMHC Violation of Severance Agreement

*Disparaging Comments*

Page 3, section 7 of the severance agreement specifically prohibits GLMHRA from engaging in disparaging remarks against me.

However, it has been brought to my attention by business people in the City of Lynn, by state and locally elected and appointed officials, by employees of the DMH and DMR and by employees of other non-profit agencies in the commonwealth that you and other present and former management and supervisory employees of GLMHRA-EMHC and present and past Board members have made disparaging and untrue statements about my employment at GLMHRA-EMHC and about my character.

Parents of youth soccer teams that I have coached or have been affiliated with in Swampscott during the past year and neighbors have reported similar instances of disparaging comments from individuals affiliated with your organizations.

Disparaging comments have negatively affected my ability to start my consultant business and to gain employment in the field. It has also impacted my relationships within the community, with my neighbors, friends, and parents of my children's classmates. GLMHRA and EMHC have done nothing to correct this injustice or compensate me for the harm that has been done or discipline the offenders as promised me by you, Executive Director Cote and the Boards of GLMHRA and EMHC during the negotiations of the severance agreement.

Some of the comments include that I took money from the retirement fund and misappropriated state funds. Just the opposite is true. I donated over forty thousand dollars to GLMHRA and thousands of hours of my time to GLMHRA over my thirty years of employment. GLMHRA was the only state agency to be found with no findings

by the state auditors office after a nine-month intensive audit. The company was financially and programmatically strong when I left on leave in October 1999. I grew this company from forty children in a six-week summer camp to and an annual budget of $30,000 to a company serving over two thousand people annually, 24 –7, with an annual operating budget of over $30 million dollars.

Other comments are that I was a drug addict. No mention of course has been made that in October 1999, Atty. MacLeish, without board approval or knowledge, ordered a surprise drug test. He threatened me with termination if I did not comply. He also lied and stated that the Board had ordered the test. I took the test at 8:30 in the morning at my home and urinated into a cup in the presence of the director of our EAP program, Jeff Zeizel. I was found to be drug free. I informed senior managers, board members, and You, Jim, that this test was negative. Yet, you did nothing to dispel rumors of my supposed drug addiction and actually spread those rumors.

I informed you and Bob Tucker after the test in October and other senior staff and board members in January 2000 when it was brought to my attention that MacLeish and Sherman had lied and had not informed Board members of their actions, of the test or the results of the test.

It is particularly troubling that some of these comments have been attributed to you, James Cowdell, considering your position in the community as the President of the Lynn City Council and your senior position in the Association. Additionally, I supported you when you were fired by the Mayor and the North Shore Employment and Training before Christmas some six years ago.

I hired you as the fund developer at GLMHRA. On numerous occasions the press, politicians, employees and regular citizens commented about the corruption and mismanagement at NSET and about your termination and work performance at NSET. My hiring of you was also questioned. I never engaged in disparaging discussions and only cited the value that I felt you would bring to GLMHRA and its citizens.

The Mayor called me and stated that he would cut all funding for our agency unless I fired you from this new position and I refused to do so. The Mayor then cut the funds for Camp Pinecrest and the Lynn Friendship Club. I still did not back down.

It is only reasonable and just that I receive the same professionalism from you, Jim, and from GLMHRA-EMHC that I have demonstrated regarding you and other Association employees.

*Joint Statement*

GLMHRA-EMHC has not followed through on their promises to issue a positive-joint statement concerning my accomplishments at GLMHRA and the reasons for my departure. (See page 1, paragraph 2 of the severance agreement) This letter was to be sent to all employees, parents and friends of the Association.

Exhibit A was never attached to my agreement for my review. It was promised by James Cowdell and Cote that we would meet to draft a joint letter. This was never done. Board members that I talked to, including Bob Tucker, assured me as well. Everyone told me to sign the agreement and that the Exhibit A would be resolved soon after. I unfortunately trusted Bob Tucker, you, and Paul Cote.

## Misrepresentation

During the negotiation of the severance agreement, I was repeatedly told by Claire Jackson, Vice-President and past President; Bob Tucker, the Treasurer and President-Elect; Nancy Rizzo, board member, and you, Jim, that Paul Cote was a temporary appointment. You all stated as well that I would be reconsidered for reappointment and minimally would be hired after January 1, 2000 as a consultant for GLMHRA and EMHC.

Shortly after I negotiated the agreement, Paul was hired full time at $200,000 plus per year; a gag order was put into effect prohibiting me from talking to or communicating in writing to the Corporations except through your attorney at Morgan and Joy. This gag order included any contacts from prospective employers or clients seeking recommendations, seriously jeopardizing my ability to gain employment or consultant contracts.

After January I 2001, the EMHC was combined with GLMHRA and three board members who had supported me and who were opposed to the take over of EMHC by GLMHRA were threatened and forced out of office in violation of state charitable laws and IRS regulations.

Over thirty line staff and senior managers, many with over ten years of service, and many of whom were opposed to GLMHRA's action to remove me and cut services to consumers were given two weeks or less notice and terminated from service.

Many had also voiced opposition to the million dollar deficits that had been incurred by the Board and Acting Executive Directors Elaine White and Paul Cote. All of the deficit spending went to politically connected consultants, attorneys and to politically connected employees. These expenditures were incurred while spending for employee benefits, consumer recreation services, and nursing and psychological services were curtailed or eliminated. Building maintenance was neglected and plans to provide new and expanded services to needy individuals were scrapped.

It is obvious that the board, the Executive Director and senior staff deliberately mislead me to gain my signature on the severance agreement and to prevent me from continuing legal and public action against the GLMHRA-EMHC and their agents and employees.

recommendation of Attys. MacLeish and Sherman, and without my knowledge or consent, the board froze the plan assets and began the process to terminate the plan.

The personnel practices of the agency gave me and only me exclusive rights to enter into and sign and terminate all contracts with outside parties. The contact with Papathanasiou Insurance was cancelled in December 1999 without my knowledge and his records confiscated.

In summary: unresolved issues include:

1) The proposed cancellation of my insurance coverage and funds owed to GLMHRA under COBRA

2) The defamation of my character and steps to be followed by GLMHRA to correct this injustice, discipline the offenders and to compensate me for lost employment, consultant contracts and income.

3) Contribution to my retirement plan per ERISA and GLMHRA plan documents

4) Joint letter to past and present board members, parents, employees and friends of the Association

5) Increased out-of-pocket benefit costs

I hope we can meet shortly to resolve these outstanding issues and prevent unnecessary litigation.

Sincerely,

Albert W. Bleau Jr.
Cc James Carroll, Esq.
Morgan & Joy, Paul Cote, Bob Tucker, Tom Costin

## MORGAN, BROWN & JOY, LLP

ATTORNEYS AT LAW
ONE BOSTON PLACE
BOSTON, MASSACHUSETTS 02108-4472

LAURENCE J. DONOGHUE
ldonoghue@morganbrown.com

TELEPHONE
(617) 523-6666
FACSIMILE
(617) 367-3125

December 27, 2001

Mr. Albert Bleau, Jr.
127 Redington Street
Swampscott, MA 01907

Re:    ***Health Insurance***

Dear Al:

I am writing in response to your letter of December 7 to Jim Cowdell. While your letter addresses a number of issues, I will confine this response to the issue of your continued health insurance coverage.

The Association's agreement was to pay for your continued insurance coverage for a period of twelve months, totaling $10,900. My understanding is that the Association began paying your insurance in October, 2000. Therefore, the twelve month period expired at the end of September, 2001.

The Association is not making efforts to "cancel" your insurance. Rather, as stated in Jim Cowdell's December 4 letter, you were simply informed that the Association would no longer be paying your insurance, and that any continuation would be under COBRA, at your expense. If you need continued insurance you should pay the COBRA premium beginning in October, 2001. The premium for individual coverage is a total of $294.88 ($266.35 medical and $28.53 dental) per month. As mentioned above, this should be paid for the period beginning October 1, 2001.

I am enclosing a copy of the COBRA form. If you wish to elect COBRA coverage this should be filled out and returned to the Association's Human Resources office.

Very truly yours,

Laurence J. Donoghue