UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                )
                                                )
ALBERT WILLIAM BLEAU JR.,                       )
        Plaintiff                               )
                                                )        CIVIL ACTION
        v.                                      )        NO. 04-10469-REK
                                                )
GREATER LYNN MENTAL HEALTH &                    )
RETARDATION ASSOCIATION, INC.,                  )
RODERICK MacKLEISH,                             )
ROBERT SHERMAN, and                             )
ROBERT J. GRIFFIN,                              )
        Defendants                              )
                                                )
_____         )

**Memorandum and Order**
October 25, 2005

## I.  Pending Matters

Pending for decision are matters related to the following filings:

(1) Motion of Defendant Greater Lynn Mental Health & Retardation Association,

Inc., to Dismiss Plaintiff's Breach of Contract Claim or For Partial Summary Judgment (Docket

No. 77, filed August 9, 2005); and

(2) Plaintiff Albert W. Bleau Jr.'s Motion for Summary Judgment of Breach of

Contract Claim & to Continue and Expand Discovery to Include Damages and Rescission

(Docket No. 80, filed August 29, 2005).

## II. Factual and Procedural Background

Plaintiff Albert William Bleau Jr. commenced this action in the District of Massachusetts on March 8, 2004.  In his initial complaint, plaintiff charged defendants Greater Lynn Mental Health & Retardation Association, Inc. ("GLMHRA"), Eastern Mass Housing Corporation ("EMHC"), and attorneys Roderick MacKleish, Robert Sherman, and Robert J. Griffin with discrimination and retaliation on the basis of his perceived disability and alleged drug addiction and alcoholism, in violation of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 701 et seq., and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq.  Plaintiff was hired as the Executive Director of GLMHRA in 1974 and was the founder of EMHC, where he was the Executive Director from 1978 through November 2000.  Plaintiff alleges that defendants perceived him to have a disability and that it was this perception, along with the publication of his confidential medical and psychological records to employees, board members, and others, that led to his involuntary leave of absence in November 1999, his termination in April 2000, and defendants' refusal to rehire him in 2003.  (Docket No. 1.)  In November 2000, plaintiff entered into an agreement with GLMHRA releasing the latter from all claims and liability (the "Separation Agreement").  (Separation Agreement attached to Docket No. 78 as Exhibit 1.)

Defendants MacKleish and Sherman filed a motion to dismiss on May 7, 2004.  (Docket No. 12.)  Defendant GLMHRA filed a motion to dismiss or, in the alternative, a motion for summary judgment on May 24, 2004.  (Docket No. 14.)  Defendant Griffin also filed a motion to dismiss on that date.  (Docket No. 16.)  Defendant EMHC then filed its own motion to dismiss on May 25, 2004.  (Docket No. 20.)  I issued a Memorandum and Order on December 8, 2004, in

2

which I allowed defendants MacKleish, Sherman, Griffin, and EMHC's motions to dismiss to

various extents and allowed defendant GLMHRA's motion to dismiss only to the extent of

dismissing plaintiff's claims of intentional interference with an advantageous business relationship

and all of plaintiff's claims stemming from defendant GLMHRA's alleged violations of Internal

Revenue Service regulations.  The end result of this Memorandum and Order was that the

following claims survived: (i) plaintiff's claims for employment discrimination and retaliation

under the ADA and the Rehabilitation Act against defendants MacKleish and Sherman only in

their official capacities as employers, (ii) plaintiff's claims for employment discrimination and

retaliation under the ADA and the Rehabilitation Act against defendant GLMHRA, as well as (iii)

plaintiff's claims for defamation against defendant GLMHRA.   Plaintiff's claims against

defendants EMHC and Griffin were dismissed in their entirety.  (Docket No. 28.)

        Defendants MacKleish and Sherman filed a new motion to dismiss on January 28,

2005.  (Docket No. 32.)  On February 8, 2005, defendant GLMHRA filed a motion for summary

judgment.  (Docket No. 35.)  Plaintiff then filed his own motion for summary judgment on March

9, 2005.  (Docket No. 40.)   On June 3, 2005, I issued an amended Memorandum and Order in

which I addressed all of these motions, as well as several other procedural motions.  The end

result of this Memorandum and Order was that the only claim to survive was plaintiff's ADA and

Rehabilitation Act claims against GLMHRA that arose after the execution of the Separation

Agreement.  (Docket No. 64.)  Defendant GLMHRA then filed a motion for partial summary

judgment on July 5, 2005.  (Docket No. 69.)  At a hearing held on July 27, 2005, I denied

GLMHRA's motion and found that plaintiff raised colorable claims for defamation against

GLMHRA and that plaintiff had established a prima facie claim of breach of contract.  (Docket

3

No. 76.)  I also refused to enter a final judgment for defendants Griffin, MacKleish, and Sherman

because "the relationships among all of the claims in this case are such that it is best to preserve

the case in its unitary form."  (Id. at 3.)

GLMHRA filed the pending motion to dismiss or for partial summary judgment on

August 9, 2005.  (Docket No. 77.)  Plaintiff responded on August 29, 2005, with a document that

served as his objection to GLMHRA's motion, a motion for partial summary judgment, and a

motion to expand discovery to include damages and rescission.  (Docket No. 80.)  Plaintiff then

filed an amendment to this document on October 4, 2005, and supplemented this amendment with

an affidavit, a memorandum of law, and a statement of facts.  (Docket Nos. 86-89.)  On October

11, plaintiff submitted an additional statement of facts and amended his opposition to GLMHRA's

motion to dismiss for partial summary judgment.  (Docket Nos. 90-92.)

## III. Analysis

### A. Defendant's Motion to Dismiss the Breach of Contract Claim or for Partial Summary Judgment

Plaintiff's claim for breach of contract alleges that GLMHRA failed to take two

actions that it agreed to take when it entered into the Settlement Agreement.  These two actions

are: (i) the issuance of a letter to GLMHRA and EMHC's employees, consumers, and friends

notifying them that plaintiff had resigned his employment to pursue other interests, and (ii) the

payment of up to $5,000 each year for two years to pay for plaintiff's enrollment in a college or

training course.  In my Memorandum and Order dated August 2, 2005, I found that plaintiff had

stated a prima facie case for breach of contract and ordered that discovery begin on this claim and all remaining claims. GLMHRA moves to dismiss this breach of contract claim and raises two major arguments: first, that this newly asserted contract claim should not affect my prior ruling that the release in the Settlement Agreement bars all of plaintiff's claims that arose before November 2000 and, second, that plaintiff's allegations do not state a claim for breach of contract. As part of the second argument, GLMHRA argues that its promise to issue the letter was too indefinite to be enforced and that plaintiff's April 11, 2001, letter to the boards of directors of GLMHRA and EMHC constituted a material breach that excused GLMHRA from further performance under the contract.

A district court may dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." Berezin v. Regency Savings Bank, 234 F.3d 68, 70 (1st Cir. 2000) (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)). A court "must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." LaChapelle v. Berkshire Life Insurance Co., 142 F.3d 507, 508 (1st Cir. 1998). In addition, in applying the requirement of Rule 8(a)(2) of the Federal Rules of Civil Procedure of a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a court "should continue to eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets." Educadores Puertorriquenos en Accioin v. Hernandez, 367 F.3d 61, 66-68 (1st Cir. 2004) (quoting Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir. 1987)) (internal quotation marks omitted).

Paragraph 7 of the Separation Agreement provides in full:

> Mr. Bleau agrees to keep strictly confidential and not to disclose or
> discuss the terms and circumstances of this Agreement to anyone
> except his immediate family, attorney, medical providers and if
> necessary, accountant or financial advisor with the understanding
> that those parties shall keep such information confidential.  Mr.
> Bleau further agrees that he shall not portray in a false way or
> disparage the professional reputation of the Corporations
> [GLMHRA and EMHC], their directors, managers or employees.
> The Corporations also agree not to portray in a false way or
> disparage the professional reputation of Mr. Bleau.  This
> paragraph shall not prohibit either party in this Agreement
> from providing truthful testimony in response to a subpoena, or
> other lawful process, or in any judicial or other legal proceeding.
>
> Breach of this paragraph by either party shall cause the other
> party immediate and irreparable injury and shall entitle such party
> to any and all remedies available under the law, including but not
> limited to injunctive relief.

(Docket No. 78, Exh. 1, at ¶ 7.)  GLMHRA contends that plaintiff violated this provision by

sending a letter to the members of the boards of directors of GLMHRA and EMHC.  In this

letter, plaintiff accused GLMHRA of, among other contentions, "illegally transferr[ing] over

$600,000 from EMHC to pay GLMHRA fringe costs," not "hav[ing] the decency to talk to these

employees [it fired]," and acting in such a way that "John F. [Kennedy] is 'rolling in his grave.'"

(Docket No. 78, Exh. 2.)  Plaintiff also sent letters to seventeen terminated employees referring to

GLMHRA's "incompetence and lack of sensitivity and greed."  (Docket No. 78, Exh. 4.)

"It is well established that a material breach by one party excuses the other party

from further performance under the contract."  Ward v. American Mutual Liability Insurance Co.,

443 N.E. 2d 1342, 1343 (Mass. App. 1983) (citing Quintin Vespa Co. v. Construction Services

Co., 343 Mass. 547, 554 (1962)).  Section 241 of the Restatement (Second) of Contracts lists the

following circumstances to be considered in determining whether a breach is material:

6

(a) the extent to which the injured party will be deprived of the benefit
which he reasonably expected;
(b) the extent to which the injured party can be adequately compensated
for the part of that benefit of which he will be deprived;
(c) the extent to which the party failing to perform or to offer to perform
will suffer forfeiture;
(d) the likelihood that the party failing to perform or to offer to perform
will cure his failure, taking account of all the circumstances including
any reasonable assurances;
(e) the extent to which the behavior of the party failing to perform or
to offer to perform comports with standards of good faith and fair
dealing.

Restatement (Second) of Contracts § 241 (1981).  This standard of materiality is "necessarily

imprecise and flexible," id. at cmt. a, but it provides some guidance as to whether Bleau's actions

constituted a material breach that excused GLMHRA's later breaches.  Under Massachusetts law,

a material breach requires "a breach of an essential and inducing feature of the contract."  Lease-

It, Inc. v. Massachusetts Port Authority, 600 N.E. 2d 599, 602 (Mass. App. 1992) (citing

Bucholz v. Green Brothers Co., 172 N.E. 101, 102 (1930)) (finding that plaintiff's failure to

perform its sole obligation under the contract of paying concession and rental fees to defendant

constituted a material breach).

The Separation Agreement imposed obligations on both Bleau and GLMHRA.

Along with the Paragraph 7 requirement that it not disparage Bleau's professional reputation,

GLMHRA was required to issue the letter explaining Bleau's departure (Docket No. 78, Exh. 1,

at ¶ 2), to return Bleau's personnel records and files to him (id. at ¶ 3B), and to pay Bleau over

$100,000 in cash, personal property, and continued benefits, including the training in question (id.

at ¶¶ 5-6).  Along with the Paragraph 7 requirement that Bleau not disparage the professional

reputation of GLMHRA or EMHC, Bleau was required not to share confidential information and

to return any documents containing such information (id. at ¶ 3A), to release GLMHRA and

EMHC from all claims and liabilities (id. at ¶ 4), and to withdraw any charges or actions against

GLMHRA and EMHC (id. at ¶ 8).  Taking together the wording of Paragraph 7, which provides

that a breach of that specific paragraph would meet the requirements for a material breach under

Massachusetts law, and the fact that the requirements contained in this paragraph constituted a

significant proportion of the obligations imposed on Bleau by the Separation Agreement, I find

that Bleau's letters of April 11, 2001, constituted a material breach that excused GLMHRA from

the performance of its future obligations under the Separation Agreement.

    Plaintiff is incorrect that these letters were insufficient to constitute a material

breach because GLMHRA suffered no damages, plaintiff apologized for mailing the letters to the

seventeen employees, and plaintiff understood Paragraph 7 to apply only to disparaging remarks

that were made public.  Paragraph 7 refers only to the broad requirement that plaintiff not

"portray in a false way or disparage" the professional reputation of GLMHRA and EMCH,

without reference to any requirement that these portrayals be publicized or lead to damages.

Moreover, plaintiff cannot show that GLMHRA has not suffered reputational damages or that an

after-the-fact apology in any way cured the reputational harm that Paragraph 7 was meant to

offset.  Furthermore, excusing future performance after the occurrence of a material breach is

well-settled law, see Ward, 443 N.E. 2d at 1343, and thus excusing future performance falls under

"all remedies available under the law" as contemplated by the Separation Agreement.  I therefore

allow GLMHRA's motion to dismiss plaintiff's breach of contract claims arising out of any failure

to perform after April 11, 2001.

    Plaintiff's material breach does not, however, excuse GLMHRA's failure to

perform between November 2000 and April 11, 2001, the period before plaintiff's breach.  I must

therefore determine whether plaintiff has failed to state a claim upon which relief can be granted

for the period between the signing of the Separation Agreement in November 2000 and plaintiff's

mailing of the letters in violation of this Separation Agreement on April 11, 2001.  GLMHRA has

conceded in its memorandum in support of its motion to dimiss that it neither mailed the letter

required in Paragraph 2 of the Separation Agreement nor paid the training fees required in

Paragraph 5C of the Separation Agreement.  GLMHRA does not provide any argument for

dismissal of plaintiff's claims for training fees between November 2000, and April 11, 2001, so I

hereby deny GLMHRA's motion to dismiss that portion of the claim.

GLMHRA argues that plaintiff fails to state a claim when plaintiff asserts that

GLMHRA breached the Separation Agreement by not sending out the letter required in Paragraph

2 of the Separation Agreement.  Paragraph 2 provides in full:

> Mr. Bleau's employment with GLMHRA terminated effective
> September 8, 2000.  His employment with EMHC will terminate
> effective November 10, 2000.  Mr. Bleau shall be permitted to
> submit a letter of resignation, if he so chooses.  The parties
> further agree that the Corporations shall issue a letter, in the
> form attached as Exhibit A, informing employees, consumers
> and friends of the Corporations that Mr. Bleau has resigned
> his employment with the Corporations to pursue other interests.

(Docket No. 78, Exh. 1, at ¶ 2.)  Both parties agree that Exhibit A was never attached to the

Separation Agreement because they could not reach agreement on the contents of such a letter.

GLMHRA claims that this means that it was not under an obligation to issue a letter, but rather to

"issue a letter, in the form attached as Exhibit A."  (Docket No. 78 at 13.)  Since there was no

Exhibit A, GLMHRA thus asserts that it was under no obligation to issue any letter at all.

Plaintiff, in contrast, claims that the absence of an Exhibit A was due to board members telling

him at the signing of the Separation Agreement not to worry and promising that a draft letter

would be forthcoming.  (Docket No. 82 at 14.)

   Although GLMHRA is correct that a "court cannot enforce a [term of a] contract

unless it can determine what it is,"  Arthur L. Corbin, <u>Corbin on Contracts</u> § 4.1 (rev. ed. 1993),

this term is not nearly as ambiguous as GLMHRA would like this court to believe.  Indeed, this

contractual term suggests future negotiations between the parties to reach agreement on the

contents of Exhibit A, but the plain language of the term itself provides enough information for a

court to fill in the gaps and interpret Paragraph 2 as requiring the issuance of a letter that states

that plaintiff has resigned his employment to pursue other interests.  <u>See</u> <u>Meehan</u> v. <u>Shaugnessy</u>,

404 Mass. 419, 445 n.22 (1989) (stating that "a contractual term requiring future negotiations as

to specific details...is not unenforceable merely because such negotiations break down.  As long as

the contract...provides some objective method for determining the missing term independent of

either party's mere wish or desire, the court will fill the gaps.") (internal quotations and ellipses

omitted).  I will not make the determination of whether this court needs to fill that gap at this

stage in the case without more evidence regarding parties' attempts at negotiations, but I do

believe that plaintiff has provided sufficient evidence that there was a potentially enforceable term

that GLMHRA failed to satisfy.

   I conclude that plaintiff has not failed to state claim upon which relief can be

granted, and I therefore deny GLMHRA's motion to dismiss plaintiff's breach of contract claims

arising out of any failure to perform between the signing of the Separation Agreement in

November 2000 and April 11, 2001.

GLMHRA's final contention as part of its motion to dismiss or for summary judgment is that plaintiff's claim for breach of contract should not affect my earlier determination that dismissed all of plaintiff's claims prior to his signing of the Separation Agreement.  In effect, GLMHRA argues that its admitted failure to perform the obligations set out in Paragraphs 2 and 5C of the Separation Agreement does not constitute a material breach sufficient to invalidate the entire agreement and thus liberate plaintiff from his release of claims in Paragraph 4.  As explained above, a material breach by one party excuses the other party from subsequent performance, see Ward, 443 N.E. 2d at 1343, but a breach is only material when it affects "an essential and inducing feature of the contract."  Lease-It, 600 N.E. 2d at 602.  GLMHRA had a substantial number of obligations under this contract, including the payment of over $100,000 in cash, personal property, and benefits, see supra, which neither party contests it provided.  Although the issuance of the letter and the payment of up to $10,000 in tuition or training fees may have been important to plaintiff, plaintiff has not provided sufficient evidence that these two obligations on GLMHRA were significant enough to induce him to sign the Separation Agreement.  I therefore find that these were not material breaches and that they do not excuse plaintiff from the restrictions imposed by the release of claims and liability in Paragraph 2.

**B. Plaintiff's Motion for Summary Judgment for the Breach of Contract Claim**

As part of his opposition to GLMHRA's motion to dismiss or for partial summary judgment, plaintiff also moves both for summary judgment on his breach of contract claim and to expand discovery to include damages and rescission.  I will treat plaintiff's motion as two separate motions and will address the motion for summary judgment first.

Summary judgment should be granted only where the court, viewing the evidence in the light most favorable to the non-moving party, determines that no genuine dispute of material fact exists. <u>See</u> Fed. R. Civ. P. 56. The moving party has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record showing the absence of a genuine dispute of material fact. <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 323 (1986). Then the non-moving party must demonstrate that "*every essential element* of its claim or defense is at least trialworthy." <u>Price</u> v. <u>General Motors Corp.</u>, 931 F.2d 162, 164 (1st Cir. 1991) (italics in original). A dispute is genuine if it "may reasonably be resolved in favor of either party." <u>Cadle Co.</u> v. <u>Hayes</u>, 116 F.3d 957, 960 (1st Cir. 1997). Facts are "material" if they possess "the capacity to sway the outcome of litigation under applicable law." <u>Id.</u> The facts in genuine dispute must be significantly probative in order for summary judgment to be denied; "conclusory allegations, improbable inferences, and unsupported speculation will not suffice." <u>Id.</u>

Plaintiff's only remaining breach of contract claims are those arising out of GLMHRA's admitted failure to mail the letter required in Paragraph 2 and failure to pay the tuition and training fees required in Paragraph 5C, but only for the period from November 2000 through April 11, 2001. GLMHRA has conceded that it did not meet the obligations of Paragraph 5C for this period and has provided no reasons for this failure. I thus allow plaintiff's motion for summary judgment on this portion of his claim for breach of contract, and order that plaintiff provide the court with tuition invoices from any college that he attended between November 2000 and April 11, 2001. Paragraph 5C provides in full:

> For a period ending two years after execution of this Agreement, the
> Corporations will pay an amount for Mr. Bleau's enrollment in a

> program or course of training at an accredited college of Mr. Bleau's
> choice, or any training course leading to licensing or certification.
> The total amount to be paid pursuant to this paragraph shall not exceed
> $5,000 in each year (a total of up to $10,000).  Payments made
> pursuant to this paragraph shall be made directly to the college
> and not to Mr. Bleau.

(Docket No. 78, Exh. 1, at ¶ 5C.)  In keeping with the terms of the Agreement, GLMHRA is only

responsible for tuition fees from an accredited college or any training course leading to licensing

or certification.  These invoices must have been sent to GLMHRA previously, and GLMHRA's

liability is capped at $2,500, which is the prorated value of this provision for the six-month period

between plaintiff's signing of the Separation Agreement and April 11, 2001.

GLMHRA has also conceded that it did not issue the letter referred to in

Paragraph 2, but, as discussed above, a dispute exists over whether or not negotiations over the

content of this letter were taking place between November 2000 and April 11, 2001, and, if so,

whether these negotiations were sufficient to excuse GLMHRA from its obligation to issue the

letter.  This dispute is sufficient to convince me to deny plaintiff's motion for summary judgment

for GLMHRA's alleged breach of the provisions of Paragraph 2 between November 2000 and

April 11, 2001.

## C. Plaintiff's Motion to Expand Discovery

As part of his motion for summary judgment, plaintiff also moves this court to

"order discovery on damages for breach of contract and rescission and continue to order

discovery on all outstanding issues including defamation and the ADA claims and that discovery

include pre November 2000 actions by the defendant and its agents."  (Docket No. 80 at 15.)  As

I explained above, plaintiff has not shown that he is able to state a claim for actions that took

place before he signed the Separation Agreement in November 2000, so I will not order that discovery include any such actions. Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that parties "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party....For good cause, the court may order discovery of any matter relevant to the subject matter in the action." Fed. R. Civ. P. 26(b)(1). Plaintiff has failed to show that GLMHRA has opposed or failed to cooperate in any relevant discovery, and it is thus not necessary for me to make an order compelling discovery at the moment. See Fed. R. Civ. P. 37(a) (permitting an order compelling disclosure and discovery only when the other party fails to cooperate). I therefore do not think that such an order is necessary at this time and assume that discovery pertaining to all of plaintiff's remaining claims, including damages for the remaining breach of contract claims, will occur without the court needing to issue such an Order.

## IV. Plaintiff's Miscellaneous Potential Motions

Plaintiff's most recent filings suggest that he may be requesting the court to add a new defendant to this case and issue a preliminary injunction of some sort against both GLMHRA and this new defendant. (Docket No. 92.) If this is the case, plaintiff must file separate proper motions, and he must provide support for both requests.

## V. Summary

The ultimate result of this Memorandum and Order is that the following claims survive: (i) plaintiff's ADA and Rehabilitation Act claims that arose after the execution of the

Separation Agreement in November 2000; (ii) plaintiff's defamation claims that arose after the

execution of the Separation Agreement in November 2000; and (iii) plaintiff's claim for breach of

Paragraph 2 of the Separation Agreement between November 2000 and April 11, 2001.  I have

also allowed plaintiff's motion for summary judgment for his claim for breach of Paragraph 5 of

the Separation Agreement between November 2000 and April 11, 2001.

## ORDER

For the foregoing reasons, it is ORDERED:

(1) Motion of Defendant Greater Lynn Mental Health & Retardation Association,

Inc., to Dismiss Plaintiff's Breach of Contract Claim or For Partial Summary Judgment (Docket

No. 77) is ALLOWED in part and DENIED in part, as explained in Part III.A of this

Memorandum and Order; and

(2) Plaintiff Albert W. Bleau Jr. Motion for Summary Judgment of Breach of

Contract Claim & to Continue and Expand Discovery to Include Damages and Rescission

(Docket No. 80) is ALLOWED in part and DENIED in part, as explained in Parts III.B and III.C

of this Memorandum and Order.

_____/s/Robert E. Keeton_____
Robert E. Keeton
Senior United States District Judge
