# Greater Lynn Mental Health & Retardation Association, Inc.

37 Friend Street - P.O. Box 408 - Lynn MA 01903
phone: (781) 593-1088   voicemail: (781) 599-4240
fax: (781) 593-5731   e-mail: glmhra@glmh.org

FILED
CLERKS OFFICE
2006 JAN 10 P 3: 53
U.S. DISTRICT COURT
DISTRICT OF MASS.

November 16, 2000

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Albert W. Bleau, Jr.
127 Redington Street
Swampscott, MA 01907

Dear Mr. Bleau,

Effective November 17, 2000, all communication between yourself and Greater Lynn Mental Health and Retardation shall be communicated through Atty. Larry Donoghue. Please contact Atty. Donoghue at (617) 523-6666 with any information you wish to communicate to any employee of GLMHRA. Your are not to call GLMHRA offices directly under any circumstance.

With regard to your vehicle, Kathy Walker will drop off the title to you Monday morning, November 20th, at 9:00 am at 127 Redington Street. You are to sign the title and a copy. Kathy will return to your home at 4:00 pm on Monday to pick up the license plates, allowing you adequate time to take the necessary actions to put the vehicle on the road in your name. Failure to return the plates will result in the Association taking other action.

With regard to your personal belongings, they will be delivered to your home at 10:00 am Tuesday, November 21st. Please plan to be home to receive this delivery or leave your garage open for the packages to be left there. If this day and time is not acceptable, you may set an alternative appointment with Atty. Donoghue.

The completion of the above events will result in a complete fulfillment of all obligations to you on behalf of GLMHRA, Eastern Massachusetts Housing Corporation and all affiliates thereof.

Sincerely,

*James Cowdell*

JAMES COWDELL
Chief Administrative Officer

**GLMHRA**
Opening Doors of Opportunity for 40 Years
1958-1998

KROKIDAS & BLUESTEIN
ATTORNEYS
141 TREMONT STREET
BOSTON, MASSACHUSETTS 02111

RICHARD M. BLUESTEIN
MARIA J. KROKIDAS
SAMUEL NAGLER
JANET STECKEL LUNDBERG
ROBERT J. GRIFFIN
KAREN J. KEPLER
VINCENT J. PISEGNA
PAUL V. HOLTZMAN

TELEPHONE
(617) 482-7211

TELECOPIER
(617) 482-7212

ELKA T. SACHS
ANTHONY J. CICHELLO
JENNIFER GALLOP
MARTIN R. HEALY
BRENDA DAVIS HARSHAM

JAMES L. BUECHL
OF COUNSEL

October 15, 1998

Albert Bleau
c/o Greater Lynn Mental Health
  and Retardation Assoc., Inc.
37 Friend Street
P.O. Box 408
Lynn, MA 01903

Dear Al:

As you may recall, section 4958 of Public Law 104-168, the federal Taxpayer Bill of Rights 2 enacted on July 30, 1996 (the "Law"), imposes intermediate sanctions on exempt organizations for the purpose of discouraging and penalizing excess benefit transactions -- those transactions resulting in private inurement to certain disqualified persons. Recently, the IRS promulgated proposed regulations implementing Section 4958 which provide guidance on the interpretation of the statutory standards. 63 F.R. 41486. The proposed regulations contain many detailed examples of appropriate and inappropriate transactions. We would like to highlight that the proposed regulations do not have the force of law. There are indications that the IRS does not anticipate major changes in the proposed regulations before final promulgation, however, so we recommend that organizations follow the IRS' likely mandate. In that light, what follows is a discussion of the key provisions of the proposed regulations.

I. Legislative Background

As a general matter, section 4958 of the Law provides for the imposition of an excise tax whenever a Section 501(c)(3) or Section 501(c)(4) exempt organization participates in an excess benefit transaction. The intent of the Law is to ensure that dealings between exempt organizations and individuals who are in a position to exercise substantial influence over the affairs of the tax-exempt organization ("Disqualified Persons") are economically reasonable and do not result in private inurement. If the IRS determines that a transaction is not
reasonable or does not reflect fair market value, the "Disqualified Person" and the "Organization Manager(s)" who approved the transaction are subject to an excise tax on the portion of the benefit received by the Disqualified Person that is deemed to be excessive (the "Excess Benefit").

KROKIDAS & BLUESTEIN
OCTOBER 15, 1998
PAGE 2

II.    Who is Affected & What is Prohibited?

Disqualified Persons and Organization Managers are those individuals affected by the Law.

**A.    Disqualified Persons** are defined in the statute as (i) individuals in a position to exercise *"substantial influence"* over the affairs of the exempt organization, such as trustees, directors and officers; (ii) family members of Disqualified Persons; (iii) entities in which Disqualified Persons have a 35% voting or ownership interest; or (iv) anyone who was a Disqualified Persons within the 5 years preceding the transaction in question.

A Disqualified Person does not have to be an employee of the organization. The proposed regulations provide substantial guidance with respect to this definition, and also specify in particular that individuals functioning as a president, CEO, COO, Treasurer and CFO, regardless of title, are included within the category of Disqualified Persons. The proposed regulations also state that whether a person has substantial influence is based on all relevant facts and circumstances. In particular, a person with managerial control over a discrete segment of an organization may nonetheless be in a position to exercise substantial influence over the affairs of the entire organization. Other examples of Disqualified Persons in the proposed regulations are as follows: founders, substantial contributors, persons whose compensation is based on revenues derived from organization activities that such person controls, persons with authority to control or determine a significant portion of the organization's capital expenditures, operating budget or compensation for employees, persons with managerial authority or who serve as a key advisor to a person with managerial authority, or persons owning a controlling interest in an organization that itself is a Disqualified Person. Individuals not having substantial influence include persons associated with religious organizations who have taken a bona fide vow of poverty, independent contractors acting in that capacity (i.e. receiving fees for services rendered) or persons who receive preferential treatment based on the size of their donation where such treatment is offered to any donor making a comparable contribution as part of a solicitation effort intended to attract a substantial number of donors. In the case of multiple organizations affiliated by common control or governing documents, the proposed regulations provide that the determination of whether person has substantial influence will be made separately for each applicable exempt organization.

**B.    Organization Managers** include officers, directors, trustees or persons with similar responsibilities who knowingly and willfully participated in the transaction. The proposed regulations define Organization Managers to include any individual having powers or responsibilities similar to officers, directors or trustees. Any person who has authority merely to recommend particular administrative or policy decisions but not to implement them without approval of a superior, is not included. However, an individual who is not an officer etc. but who serves on a committee of the governing body is an Organization Manager. The proposed

KROKIDAS & BLUESTEIN
OCTOBER 15, 1998
PAGE 3

regulations define the terms "knowing" and "willful." They provide that participation by an Organization Manager in an Excess Benefit transaction includes silence or inaction where such individual has a duty to speak or act, but does not include instances where such individual opposes the transaction in fulfillment of his or her responsibilities to the organization. Also, if the Organization Manager relies on the advice of legal counsel expressed in a reasoned written legal opinion that there is no Excess Benefit transaction, participation in such transaction ordinarily will not be considered knowing or willful. Finally, independent contractors acting in the capacity of attorneys, accountants, investment managers and advisors are not included within the definition of Organization Managers in the proposed regulations.

C.    **Excess Benefit Transactions**, the transactions prohibited by the Law, include transactions for goods and services exceeding fair market value, unreasonable compensation packages or improper revenue sharing transactions, that directly or indirectly benefit the Disqualified Person. With respect to revenue sharing, the proposed regulations state that an Excess Benefit may exist, regardless of whether the compensation provided to the Disqualified Person exceeds the fair market value of consideration provided, if at any point such arrangement permits the Disqualified Person to receive additional compensation without providing proportional benefits which contribute to the organization's exempt purposes. In addition, the proposed regulations provide that payment of a premium for an insurance policy providing liability insurance to Disqualified Persons to cover excise taxes or indemnification for such persons is not considered an Excess Benefit transaction if the premium or indemnification is treated as compensation when paid and the total compensation is reasonable.

III.    Taxes and Penalties

There are three types of excise taxes authorized under the Law. Two of the taxes are imposed on the Disqualified Person and the other tax is imposed on the Organization Manager(s).

1. **25% Tax**: Disqualified Persons are subject to a 25% tax on the portion of the benefit that the IRS deems to be excessive.

2. **200% Tax**: The Excess Benefit must be corrected within a specified time frame. If the organization is not returned to the financial position in which it would be but for the Excess Benefit, the Disqualified Person is subject to an additional tax of 200% of the Excess Benefit. Correction is defined in the proposed regulations as undoing the Excess Benefit to the extent possible and taking any additional measures necessary to place the organization in a financial position not worse than it would have been in if it had acted properly. This would involve repayment of the amount equal the Excess Benefit plus any additional amount needed to compensate the organization for the loss of the use of the money or other property.

KROKIDAS & BLUESTEIN
OCTOBER 15, 1998
PAGE 4

      3. **10% Tax:** Organization Managers are subject to a 10% tax, not to exceed $10,000 per Excess Benefit transaction.

      Citing the statute's legislative history, the proposed regulations state that the IRS still may revoke the tax-exempt status of an organization for violating the private inurement proscription, with or without the imposition of intermediate sanctions (i.e. excise taxes). However, in practice, the excise taxes will be the sole sanction imposed by the IRS in those cases in which the Excess Benefit does not rise to a level where it calls into question, whether on the whole, the organization functions as a charitable or other-exempt organization.

IV.    Rebuttable Presumption of Reasonableness: 3 Part Test

      The proposed regulations provide that a compensation arrangement between an organization and a Disqualified Person is presumed to be reasonable, and a transfer of property or any other benefit is presumed to be at fair market value, if the following three conditions are satisfied[1]:

      (1) the compensation arrangement or terms of transfer are approved by the organization's governing body or a committee of the governing body composed entirely or individuals who do not have a conflict of interest [2];

      (2) the governing body, or committee thereof, obtained and relied upon appropriate data as to comparability prior to making its determination; and

      (3) the governing body or committee adequately documented the basis for its determination at that time.

Specifically, the proposed regulations provide that a governing body has appropriate comparability data if, given the knowledge and expertise of its members, it has information sufficient to determine whether a compensation arrangement will result in the payment of reasonable compensation or a transaction will be for fair market value. Relevant information includes compensation levels paid by similarly situated exempt and non-exempt organizations, independent surveys, written offers from competitors, independent appraisals and the like. Also, the proposed regulations provide that the IRS shall not draw an inference that there is an Excess Benefit from the fact that the transaction does not benefit from the presumption of

---

[1] There is a lesser standard for organizations with average annual gross receipts less than $1 million.

[2] This requirement should be viewed in conjunction with IRS guidelines, requirements of the state Attorney General's Office Division of Public Charities and standards contained in the state's Operational Services Division contract terms and conditions, with respect to conflicts of interest and related party transactions.

KROKIDAS & BLUESTEIN
OCTOBER 15, 1998
PAGE 5

reasonableness. Finally, the proposed regulations provide that the presumption may be rebutted by additional information showing the compensation was not reasonable or that the transfer was not for fair market value.

V.    Recommendations.

Since the Law generally applies <u>retroactively</u> to all transactions that occurred on or after September 14, 1995, organizations should reevaluate relevant transactions and existing contracts and attempt to conform them to the reasonableness standard in light of the proposed regulations. On a going forward basis, organizations should take the necessary steps to ensure that transactions with Disqualified Persons are protected by the presumption of reasonableness, i.e. that a formal, independent process is in place to review, approve and document transactions with Disqualified Persons as recommended above. Corporate compliance in this area also involves ensuring that conflicts of interest policies comport with relevant federal guidelines and state requirements. Finally, corporate insurance policies may need to be updated to cover the imposition of intermediate sanctions.

The IRS currently is accepting comments on the proposed regulations. Please let us know if you would like a copy of the proposed regulations, or if you are interested in submitting comments and would like assistance.

Yours truly,

Robert J. Griffin

RJG/sh

This letter should not be considered as legal advice or opinion on any specific facts or circumstances, and is intended for general informational purposes only. Furthermore, this letter might constitute "advertising" under the Massachusetts Rules of Professional Conduct.

CD\0001\62499.1