UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

Albert William Bleau Jr.                          :

        Plaintiff                          :

                                      :

Vs.                                                               :          Civil Action
                                                    No. 04 – 10469REK

                                      :

Greater Lynn Mental Health                         :
& Retardation Association, et al,

        Defendants

## Memorandum

## Supporting Plaintiff's Opposition of Defendant's

## Motion To  Plaintiff's Motion For Leave To Conduct Additional Discovery And Defendant's Cross-Motion For A Protective Order And Plaintiff's Motion Clarifying Plaintiffs' Motion For Discovery

     The plaintiff requests that the Court deny the defendant's motion opposing plaintiff's motion for expanded discovery and deny the defendant's cross-motion for a protective order. The plaintiff has acted in bad faith and its motion should be denied for not being timely filed under the Federal Rules. Additionally, the defendant's motion would prejudice the plaintiff's case, cause undo delays, and place unnecessary costs on the plaintiff and the Court.

## Argument

    1.    In December, The plaintiff agreed to a joint motion to request the Court to delay its decision on the plaintiff's November 23, 2005 Motion For Expanded Discovery. The defendant assured the plaintiff that its request for a delay was in good faith. However, it is obvious that the defendant's request was solely to bide

1

time to give the defendant more opportunity to respond to the plaintiff's motion and to narrow the time available for the plaintiff to conduct discovery.

2.    The parties met under Rule 26, to develop a discovery plan and to negotiate the plaintiff's motion for expanded discovery. The defendant stated that they were opposed to the plaintiff's motion for expanded discovery and had no intention to negotiate any changes in their interpretation of the Rule as outlined in their recent motion for opposition.

3.    Additionally, the plaintiff's motions for expanded discovery and summary judgment should be granted. At the joint meeting, the defendant did not present any documentation or evidence that they had contacted the plaintiff after November 8, 2000 to negotiate the letter required by the Severance Agreement.

4.    In its October 25, 2005 Memorandum, the Court gave the defendant additional time to present documentation or evidence that they had contacted the plaintiff after November 8, 2000 to negotiate the letter required in the Severance Agreement. Defendant's counsel during oral arguments had previously told the Court that they had attempted to negotiate with the plaintiff. The plaintiff has asserted that this was false and has given the Court all communications in his possession including all correspondence received from the defendant and its former counsel Laurence Donoghue. There was no mention of the letter in any of the correspondence.

5.    The defendant stated, "'Fed. R. Civ. P. 30 (Advisory Committee notes, 1993 Amendment) states "Leave to take additional depositions should be granted when consistent with the principles of Rule 26(b) (2), defendant states that additional depositions should not be allowed if they are duplicative; if their purpose is to seek information obtainable from a source that is more convenient.'"

6.    If the defendant is truly concerned about duplicative discovery, they should file a stipulation that they did not contact the plaintiff concerning the letter after

November 8, 2000 and in the alternative, the Court should grant the plaintiff's motion for summary judgment since all the facts before the Court, support the plaintiff's motion for summary judgment.

7.    The only contact from the defendant were a letter from Atty. Laurence Donoghue of April 19, 2001 directing the plaintiff not to contact GLMHRA directly and that GLMHRA was voiding all its obligations under the Severance Agreement and a Donoghue letter of May 14, 2001 informing the plaintiff that GLMHRA would not address any of the plaintiff's complaints of defamation or any other issues relating to the Severance Agreement except plaintiff's concerns about the medical plan and the plaintiff's correspondence that accompanied his application for the CFO position. Both letters were filed with the Court with the plaintiff's motions and Statement of Material Facts and Chronology on October 11, 2005.

8.    If a stipulation were filed by the defendant, or if the Court granted the plaintiff's motion for summary judgment, an interrogatory, depositions or written questions on the breach of contract issue from November 8, 2000, would not be necessary.

9.    Defendant states " that former board members will not remember details of meetings that they attended or transactions that they participated in..." Plaintiff disagrees. Board members will certainly know if they were told that the plaintiff was a drug addict or an alcoholic or mentally disabled an unable to perform his duties and whether or not he stole or misappropriated GLMHRA funds or the retirement money. They certainly will remember who told them these things and whether they told anyone else. They also will remember why they never granted the plaintiff an interview or any consideration for the Executive Director's position. They should also remember GLMHRA policy as to what would be said to prospective clients and employers who called GLMHRA to verify the plaintiff's employment and work performance at GLMHRA and EMHC.

10.   The defendant wants discovery to proceed in phases beginning with the

3

ADA. This practice will cost more money for the plaintiff and be more time wasting for the Court contradicting defendant's stated intentions and would be prejudicial to the plaintiff. For example, some employees and board members, notably, President, Robert Tucker; James Cowdell; Executive Director, Paul Cote; Director of Operations, Elaine White; Human Resources Director's, Anne Perry and Sue Villett will possess information on the ADA complaint, the defamation complaint and the breach of contract complaint and should therefore be deposed only once on all three issues and not three times. Other individuals will be subject to discovery on one or two of the issues only.

11.    The complaints are interrelated since defamation and the breach of contract affect the ADA complaint and a violation of them would support the claim for ADA and therefore should be conducted before the ADA discovery.

12.    Any phasing of discovery, should commence with discovery of those individuals who only possess information on breach of contract, followed by individuals who only possess information on Defamation, followed by individuals who possess information on any two claims. Finally, discovery should proceed with individuals who possess information on all three claims: ADA, breach of contract and defamation.

13.    The defendant states that plaintiff's current problems with gaining employment have nothing to do with current board members. This is incorrect since if they knew that allegations were incorrect, and they never did anything to correct this misconception previously given to employers and others, it would be relevant. These falsehoods are still prevalent in the human service industry. They also know that the letter as required in the Severance Agreement was never written or distributed.

13.    It is also relevant for a prospective employer or client to expect that someone such as the plaintiff who directed two companies for over thirty years be

4

given more details about the plaintiff's accomplishments and employment other than that they need to contact GLMHRA's attorney or that GLMHRA is not able to give out any information concerning the plaintiff's employment.

14.    This has only served to force prospective employers and clients to seek defaming information elsewhere in the Human Services Industry and in the political community that has been disseminated by the defendants, their staff, agents and employees.

15.    If current board members relied on false information to make their decision not to interview or hire the plaintiff, even if they themselves held no discriminatory intentions, they are still liable under ADA and it is relevant for discovery.

### Legal Standard

16.    See John R. Cariglia v. Hertz Equipment Rental Corporation and James Heard , United States Court of Appeals For the First Circuit April 4, 2004 Quoting Cariglia, "In Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F. 2d 5, 10 (1st Cir. 1990), the Court held that the 'biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case,' implying that the biases of those who do make or influence the employment decision are probative."

17.    Also see Stoller v. Marsh, 682 F. 2d 971, (D.C. Cir. 1982) where the court ruled that "an unfavorable employment decision resulting from inaccurate, discriminatorily-motivated evaluations by the employee's supervisors violates Title VII," even if the decisionmaker was completely free of amicus. "When a supervisor… deliberately places an inaccurate, discriminatory evaluation into an employee's file, he intends to cause harm to the employee...The employer—that is, the organization as a whole—cannot escape Title VII Liability simply because the final decisionmaker was not personally motivated by discrimination." Id. At 977. Similarly, the Fifth Circuit has held that the "discriminatory animus of a manager can be imputed to the ultimate

decisionmaker if the manager... had influence or leverage over" the decisionmaking. Laxton v. Gap Inc., 333 F. 3d 572, 84 (5th Cir. 2003). See also Russell v. McKinney Hosp. Venture, 235 F. 3d 219, 226 (5th Cir. 2000) ("If the employee can demonstrate that others had influence or leverage over the official decisionmaker, and thus were not ordinary coworkers, it is proper to impute their discriminatory attitudes to the formal decisionmaker."); Abramson v. William Paterson Coll., 260 F. 3d 265, 285-86 (3d Cir. 2001)("Under our case law, it is sufficient if those exhibiting discriminatory animus influenced or participated in the decision to terminate."). Abramson v. William Paterson Coll., 260 F. 3d 265, 285-86 (3d Cir. 2001) ("Under our case law, it is sufficient if those exhibiting discriminatory animus influenced or participated in the decision to terminate.").

18.    Also see Gusman v. Unisys Corp., 986 F. 2d 1146, 1147 (7th Cir. 1993) and Wallace v. SMC Pneumatics, Inc. 103 F. 3d 1394, 1400 (7th cir. 1997) and Kientz v. McDonnell Douglas Corp., 990 F. 2d 1051, 1057 (8th Cir. 1993); Stacks v. Southwestern Bell Yellow Pages, 27 F. 3d 1316, 1323 (8th Cir. 1994) "Disbelief of the reason, may along with the prima facie case, on appropriate facts, permit the trier of fact to conclude that the employer had discriminated. " Reeves v. Sanderson Plumbing Prods., Inc., v. 530 U.S. 133, 147 (2000) and Thomas v. Eastman Kodak Co., 183 F. 3d 38, 56 (1st Cir. 1999).

### McDonnell Douglas And Desert Inn

19.    The defendant states that the Court will make its decision under the McDonnell Douglas framework. McDonnell Douglas should not be the only consideration of this Court. This is a mixed motive case and the 2003 Supreme Court Decision in Desert Inn should also to be considered by this Court. The defendant certainly will argue a non discriminatory reason for not hiring the defendant, but this was not the only reason.

6

20.    The plaintiff has alleged that any alleged legitimate reason for not hiring the plaintiff was not the only factor or the motivating factor. Although the plaintiff may articulate a legitimate reason for not hiring the plaintiff, their actions could still be considered discriminatory under the ADA. McDonnell Douglas never addressed the issue of mixed motive analysis that was addressed in the more recent Desert Inn decision.

### Clarification Of Plaintiff's Motion For Expanded Discovery

21.    In the plaintiff's motion for expanded discovery, the plaintiff referred to Interrogatories. The plaintiff has always understood that since there are three claims subject to discovery: breach of contract, defamation and ADA, that the plaintiff would be able to submit three Interrogatories to the defendant.

21.    Plaintiff's Interrogatories will be very distinct and specific to each claim and there are easily 25 questions particular to each claim. If the plaintiff were required to submit only one Interrogatory, the plaintiff would be burdened with unnecessary expenses and time for depositions and written questions. It would seriously prejudice his claims.

For the aforementioned reasons articulated in the Memorandum, the plaintiff respectfully requests that the Court grant the plaintiff's motion to deny the defendant's motion opposing the plaintiff's motion for expanded discovery and to deny the defendant's cross-motion for a protective order and to grant the plaintiff's motion to submit three interrogatories to the defendant.

Respectfully submitted,

Albert W. Bleau Jr.
505 Paradise Rd. #208
Swampscott, MA 01907
(781) 962-2662

7

Dated:  February 16, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of
the above document was served
upon all counsel of record by First
Class Mail on February 17, 2006.

Albert W. Bleau Jr.

**8**