# UNITED STATE DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

Albert William Bleau Jr.

    Plaintiff

Vs.

    Civil Action
    No. 04 – 10469REK

Greater Lynn Mental Health
& Retardation Association, et al,

    Defendants

## Plaintiff's Request And Motion For Reconsideration of the Court's Orders of February 8, 2006

Plaintiff Albert W. Bleau Jr. respectfully requests reconsideration of the February 8, 2006 Orders of the Court.

The plaintiff makes this request under Rule 59 of the Federal Rules of Civil Procedure and in the alternative under Rule 60.

1) The plaintiff could not file within ten days of the February 8, 2006 ruling since the plaintiff does not have electronic privileges and was not aware of the Court's decision and did not receive the Court's Decision and Order until Wednesday, February 15, 2006. The plaintiff has filed within ten days from receiving The Orders of the Court as prescribed by Rule 59. The plaintiff works in Maine and was in Maine from February 8 until February 14, 2006. He worked in Lynn until late on February 14, 2006 and was not able to retrieve mail from his postal box until after work on February 15, 2006.

2) The plaintiff is requesting reconsideration because the Court did not consider plaintiff's response to defendant's January 20, 2006 objection filed on February 7, 2006 when making its decision on February 8, 2006. Additionally, the

1

plaintiff had previously requested discovery in January 2005 that was opposed by the defendant and denied by the Court. Discovery would have given the plaintiff easy access to the files that he recently obtained with great difficulty.

    3)     Plaintiff's February 7, 2006 response and objection cited sufficient cause that two of the provisions of Rule 60 had been met by the plaintiff. There was fraud and conspiracy to commit fraud in the negotiation and signing of the Severance Agreement by the defendant in securing plaintiff and EMHC's approval of the Severance Agreement.  Additionally, The information furnished by the plaintiff in his December 27, 2005 and January 6, 2006 motions was not easily attainable and was concealed and denied to the plaintiff by the defendants and quite possibly has been destroyed by the plaintiff or its agents. For example the attachments to the UFR's for fiscal years 2000 and 2001 could not be obtained from the state archives and Timothy Demakis informed the plaintiff that he either destroyed or transferred all EMHC files and audits to Mecone and Sanella when they took over the audit functions of EMHC. Specifically, the plaintiff is referring to the UFR's and audits and attachments to the financial statements and the UFR's for fiscal years 2000 and 2001 for EMHC and GLMHRA.

    4)     Defendant's concealment of the October 8, 2000 Griffin report, the September 25, 2000 EMHC audit and the GLMHRA 2000 preliminary draft audit from the plaintiff and from the EMHC Board during the negotiation and signing of the Severance Agreement are the basis of the plaintiff's allegation of fraud and conspiracy to commit fraud. Neither the plaintiff nor the EMHC board would have signed the Agreement had these audits and documents been in their possession on November 8, 2000 and for this reason the audits and documents were concealed.

    5)     The defendant continued this fraud during litigation by misleading this Court from granting the plaintiff's motion for summary judgment for Breach of Contract. Defendant misrepresented to this Court and the plaintiff that they had

2

negotiated with the plaintiff to resolve the letter required by the Severance Agreement after November 8, 2000 when they knew then and know now that no such negotiation ever took place.

6) Defendant submitted its response to plaintiff's December 27, 2005 and January 6, 2006 motions on January 20, 2006, twenty-four, and fourteen days respectively after the plaintiff's motions. The plaintiff was in Maine from January 19 through January 25, 2006. He received defendant's response on January 25, 2006 and responded timely by February 7, 2006.

7) The Court did not mention in its decision that since 2002, five mentally retarded citizens including the plaintiff's brother have died through the alleged negligence of the defendant. Three of those individuals including the plaintiff's brother were Consent Decree Clients protected under a Federal Court Order and Consent Decree issued by Federal Court Judge Tauro. The plaintiff was told by GLMHRA employees and can prove in discovery that nursing, dietary, training, psychological, occupational, speech and physical therapy services that were required by the Consent Decree were terminated by GLMHRA to pay for legal fees, high priced salaries and benefits for politically connected individuals and consultants. Without and injunction and protection from the Court the consent decree clients remain unprotected. This is directly related to the plaintiff's claims since the concealment of the cuts in services and inappropriate expenditures were the motivation for the fraud, breach of contract, defamation and discrimination against the plaintiff.

8) The plaintiff did not "cherry pick" the board as asserted by the Court. Samuel Vitali was excluded from the proposed EMHC board because he was and still is in conflict of interest and the plaintiff cited him as an associate to RICO conspirators in plaintiff's RICO complaint. He is and was the Legal Counsel for the Lynn Water and Sewer Commission that was under investigation by the Inspector

3

General's Office from 1999-2001. James Cowdell, the newly appointed administrator at GLMHRA beginning in August 2000, is and was the president of the Lynn City Council and recommends and appoints members to the Lynn Water and Sewer Commission. The Commission appointed the Legal Counsel, Samuel Vitali. Robert Tucker, past president and treasurer of GLMHRA, is and was the Deputy Director of the Lynn Water and Sewer Commission and was also appointed by the commission. Tucker voted to create a new high paid $75,000 per year administrative position for James Cowdell at GLMHRA and Cowdell supported Commissioners to give Tucker a $10,000 raise and promotion at the Commission.

9)   The other seven board members who were excluded from plaintiff's motions did not vote for the plaintiff's termination, were not involved in the private secret meetings of Tucker and other board members and agents, were not named in the plaintiff's RICO complaint. In addition, six of those members actively opposed the actions of Robert Tucker and other board members and defendant's MacKleish, Sherman and Griffin and auditors Mecone and Sanella.

For the aforementioned reasons the plaintiff requests that his request and motion be granted.

Respectfully submitted,

Albert W. Bleau Jr.
505 Paradise Rd. #208
Swampscott, MA 01907
(781) 962-2662

Dated: February 22, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon all counsel of record by First Class Mail on February 22, 2006.

Albert W. Bleau Jr.

4