Case 1:04-cv-10469-WGY   Document 116-3   Filed 02/22/2006   Page 1 of 20



For Legal Professionals | For Corporate Counsel | For Law Students

**Register/login to My FindLaw**

My current location: Portland, ME | Change Location

| Home | Practice Areas | Jurisdictions | Cases & Codes | News | CLE | Market Center | Research a Lawyer |

Federal Law | State Law | Case Summaries Search | U.S. Code | Supreme Court Cases

## Online CLE ON FindLaw
Powered by WestLegalEdcent

---

**Related FindLaw Resources**

- Visit the Litigation Practice Center
- Sign up for a FindLaw Newsletter

- View enhanced case on Westlaw
- KeyCite this case on Westlaw

🖨 Click for Printable version   ✉ Email this case

`http://laws.findlaw.com/1st/051306.html`

# States Court of Appeals
## For the First Circuit

---

No. 05-1306

ROGER EDWARDS, LLC,

Plaintiff, Appellant,

v.

FIDDES & SON LTD.,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. David M. Cohen, U.S. Magistrate Judge]

---

[Hon. Reginald C. Lindsay, U.S. District Judge]

------

Before

Torruella, Circuit Judge,
Coffin, Senior Circuit Judge,
and Howard, Circuit Judge.

------

Wilbur A. Glahn, III, with whom R. David DePuy, Scott H.
Harris, and McLane, Graf, Raulerson and Middleton, Professional
Association, were on brief for appellant.
David G. Klaber with whom Mark D. Feczko, Jeffrey S. King,
Gregory R. Youman, and Kirkpatrick & Lockhart Nicholson Graham
LLP were on brief for appellees.

------

February 13, 2006

------

**COFFIN, Senior Circuit Judge.** This is a product liability

action, resting on diversity jurisdiction, brought in the

district court for the District of Massachusetts. Plaintiff-

appellant was rendered a quadriplegic by injuries sustained when

the forklift he was operating tipped over as he attempted to

move a tree. Attributing the accident to a problem with the

forklift, he sought recovery from defendants-appellees for

alleged failures of design, lack of care in manufacturing,

inadequate warning, breach of implied and express warranty, and

misrepresentations in violation of the Massachusetts Unfair

Trade Practices Act, Mass. Gen. Laws ch. 93A. For reasons we
shall explain, we vacate the district court's summary judgment
for defendants and remand for further proceedings.

### I. Procedural Background

The accident happened in June 1999. Suit was brought nearly
three years later, in March 2002. Defendants filed a motion to
dismiss, and for a number of months the parties engaged in
filing various oppositions and replies. The court denied the
motion to dismiss in January 2003 and set a schedule that
required plaintiff to disclose his experts by January 30, 2004.
A joint motion for extension was granted in November 2003, and
the new date for plaintiff's expert disclosures was April 30,
2004. No further extension was sought until May 3, 2004, three
days after the deadline.

At that time, plaintiff sought an additional six-week
extension. The court denied this motion on May 21 based on Fed.
R. Civ. P. 37(c)(1), but plaintiff nonetheless proceeded to
gather his experts' reports and filed his disclosure on June 14
– six weeks late. During the following nine months, four
separate orders refusing reconsideration and precluding
plaintiff's experts' putative testimony were issued. The court
subsequently granted summary judgment for defendants, concluding
that, without experts, the plaintiff could not establish his
claims. It noted alternatively that the expert testimony would
not have helped because the experts failed to address the
critical issue of the forklift's condition at the time of its
manufacture in 1988.

The termination of a case based on such a procedural



**FindLaw**
For Legal Professionals

For Legal Professionals | For Corporate Counsel | For Law Students
Register/login to My FindLaw
My current location: Portland, ME | Change Location

| Home | Practice Areas | Jurisdictions | Cases & Codes | News | CLE | Market Center | Research a Lawyer |

Federal Law  |  State Law  |  Case Summaries Search  |  U.S. Code  |  Supreme Court Cases


Try it FREE Now!

**Related FindLaw Resources**
- Visit the Litigation Practice Center
- Sign up for a FindLaw Newsletter

- View enhanced case on Westlaw

🖨 Click for Printable version    ✉ Email this case

- KeyCite this case on Westlaw

**http://laws.findlaw.com/us/000/02-679.html**

Jump to: [Opinion] [Concurrence]

# DESERT PALACE, INC., *dba CAESARS PALACE HOTEL & CASINO v. COSTA*

**certiorari to the united states court of appeals for the ninth circuit**

No. 02-679. Argued April 21, 2003--Decided June 9, 2003

Title VII of the Civil Rights Act of 1964 makes it an "unlawful employment practice for an employer ... to discriminate against any individual ... , because of ...

Case 1:04-cr-10469-WGY Document 116-3 Filed 02/22/2006 Page 5 of 20

sex." 42 U. S. C. §2000e-2(a)(1). In *Price Waterhouse* v. *Hopkins*, 490 U. S. 228, this Court considered whether an employment decision is made "because of" sex in a "mixed-motive" case, *i.e.*, where both legitimate and illegitimate reasons motivated the decision. Although the Court concluded that an employer had an affirmative defense if it could prove that it would have made the same decision had gender not played a role, it was divided on the question of when the burden of proof shifts to an employer to prove the defense. *Justice O'Connor*, concurring in the judgment, concluded that the burden would shift only where a disparate treatment plaintiff could show by "direct evidence that an illegitimate criterion was a substantial factor in the [employment] decision." *Id.*, at 276. Congress subsequently passed the Civil Rights Act of 1991 (1991 Act), which provides, among other things, that (1) an unlawful employment practice is established "when the complaining party demonstrates that ... sex ... was a motivating factor for any employment practice, even though other factors also motivated the practice," 42 U. S. C. §2000e-2(m), and (2) if an individual proves a violation under §2000e-2 (m), the employer can avail itself of a limited affirmative defense that restricts the available remedies if it demonstrates that it would have taken the same action absent the impermissible motivating factor, §2000e-5(g)(2)(B). Respondent, who was petitioner's only female warehouse worker and heavy equipment operator, had problems with management and her co-workers, which led to escalating disciplinary sanctions and her ultimate termination. She subsequently filed this lawsuit, asserting, *inter alia*, a Title VII sex discrimination claim. Based on the evidence she presented at trial, the District Court denied petitioner's motion for judgment as a matter of law and submitted the case to the jury. The District Court instructed the jury, as relevant here, that if

respondent proved by a preponderance of the evidence that sex was a motivating factor in the adverse work conditions imposed on her, but petitioner's conduct was also motivated by lawful reasons, she was entitled to damages unless petitioner proved by a preponderance of the evidence that it would have treated her similarly had gender played no role. Petitioner unsuccessfully objected to this instruction, claiming that respondent had not adduced "direct evidence" that sex was a motivating factor in petitioner's decision. The jury awarded respondent backpay and compensatory and punitive damages, and the District Court denied petitioner's renewed motion for judgment as a matter of law. A Ninth Circuit panel vacated and remanded, agreeing with petitioner that the District Court had erred in giving the mixed-motive instruction. The en banc court, however, reinstated the judgment, finding that the 1991 Act does not impose any special evidentiary requirement.

*Held:* Direct evidence of discrimination is not required for a plaintiff to obtain a mixed-motive jury instruction under Title VII. The starting point for this Court's analysis is the statutory text. See *Connecticut Nat. Bank* v. *Germain,* 503 U. S. 249, 253-254. Where, as here, the statute's words are unambiguous, the judicial inquiry is complete. *Id.,* at 254. Section 2000e-2(m) unambiguously states that a plaintiff need only demonstrate that an employer used a forbidden consideration with respect to any employment practice. On its face, it does not mention that a plaintiff must make a heightened showing through direct evidence. Moreover, Congress explicitly defined "demonstrates" as to "mee[t] the burdens of production and persuasion." 2000e-2(m). Had Congress intended to require direct evidence, it could have included language to that effect in §2000e-2(m), as it has unequivocally done when imposing

heightened proof requirements in other circumstances. See, *e.g.,* 42 U. S. C. §5851(b)(3)(D). Title VII's silence also suggests that this Court should not depart from the conventional rule of civil litigation generally applied in Title VII cases, which requires a plaintiff to prove his case by a preponderance of the evidence using direct or circumstantial evidence. This Court has often acknowledged the utility of circumstantial evidence in discrimination cases and has never questioned its adequacy in criminal cases, even though proof beyond a reasonable doubt is required. Finally, the use of the term "demonstrates" in other Title VII provisions tends to show that §2000e-2(m) does not incorporate a direct evidence requirement. See *e.g.,* 42 U. S. C. §2000e-2(k)(1)(A)(i). Pp. 7-11.

299 F. 3d 838, affirmed.

*Thomas, J.,* delivered the opinion for a unanimous Court. *O'Connor, J.,* filed a concurring opinion.

---

# DESERT PALACE, INC., *dba* CAESARS PALACE HOTEL & CASINO, PETITIONER

## *v.*

# CATHARINA F. COSTA

**on writ of certiorari to the united states court of appeals for the ninth circuit**

[June 9, 2003]

*Justice Thomas* delivered the opinion of the Court.

The question before us in this case is whether a plaintiff must present direct evidence of discrimination in order to obtain a mixed-motive instruction under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 (1991 Act). We hold that direct evidence is not required.

# I

# A

Since 1964, Title VII has made it an "unlawful employment practice for an employer ... to discriminate against any individual ... , *because of* such individual's race, color, religion, sex, or national origin." 78 Stat. 255, 42 U. S. C. §2000e-2(a)(1) (emphasis added). In *Price Waterhouse* v. *Hopkins,* 490 U. S. 228 (1989), the Court considered whether an employment decision is made "because of" sex in a "mixed-motive" case, *i.e.*, where both legitimate and illegitimate reasons motivated the decision. The Court concluded that, under §2000e-2(a)(1), an employer could "avoid a finding of liability ... by proving that it would have made the same decision even if it had not allowed gender to play such a role." *Id.*, at 244; see *id.*, at 261, n. (White, J., concurring in judgment); *id.*, at 261 (*O'Connor, J.*, concurring in judgment). The Court was divided, however, over the predicate question of when the burden of proof may be shifted to an employer to prove the affirmative defense.

Justice Brennan, writing for a plurality of four Justices, would have held that "when a plaintiff ... proves that her gender played a *motivating* part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account." *Id.*, at 258 (emphasis added). The plurality did not, however, "suggest a limitation on the possible ways of proving that [gender] stereotyping played a motivating role in an employment decision." *Id.*, at 251-252.

Justice White and *Justice O'Connor* both concurred in the judgment. Justice White would have held that the case was governed by *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U. S. 274 (1977), and would have shifted the burden to the employer only when a plaintiff "show[ed] that the unlawful motive was a *substantial* factor in the adverse employment action." *Price Waterhouse, supra*, at 259. *Justice O'Connor*, like Justice White, would have required the plaintiff to show that an illegitimate consideration was a "substantial factor" in the employment decision. 490 U. S., at 276. But, under *Justice O'Connor*'s view, "the burden on the issue of causation" would shift to the employer only where "a disparate treatment plaintiff [could] show by *direct evidence* that an illegitimate criterion was a substantial factor in the decision." *Ibid.* (emphasis added).

Two years after *Price Waterhouse*, Congress passed the 1991 Act "in large part [as] a response to a series of decisions of this Court interpreting the Civil Rights Acts of 1866 and 1964." *Landgraf* v. *USI Film Products*, 511 U. S. 244, 250 (1994). In particular, §107 of the 1991 Act, which is at issue in this case, "respond[ed]" to *Price Waterhouse* by "setting forth

standards applicable in 'mixed motive' cases" in two new statutory provisions.[1] 511 U. S., at 251. The first establishes an alternative for proving that an "unlawful employment practice" has occurred:

> " ' Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.' " 42 U. S. C. §2000e-2(m).

The second provides that, with respect to " 'a claim in which an individual proves a violation under section 2000e-2(m),' " the employer has a limited affirmative defense that does not absolve it of liability, but restricts the remedies available to a plaintiff. The available remedies include only declaratory relief, certain types of injunctive relief, and attorney's fees and costs. 42 U. S. C. §2000e-5(g)(2)(B).[2] In order to avail itself of the affirmative defense, the employer must "demonstrat[e] that [it] would have taken the same action in the absence of the impermissible motivating factor." *Ibid.*

Since the passage of the 1991 Act, the Courts of Appeals have divided over whether a plaintiff must prove by direct evidence that an impermissible consideration was a "motivating factor" in an adverse employment action. See 42 U. S. C. §2000e-2(m). Relying primarily on *Justice O'Connor*'s concurrence in *Price Waterhouse*, a number of courts have held that direct evidence is required to establish liability under §2000e-2(m). See, *e.g., Mohr* v. *Dustrol, Inc.,* 306 F. 3d 636, 640-641 (CA8 2002); *Fernandes* v.

Case 1:04-cv-10469-WGY Document 116-2 Filed 02/22/2006 Page 11 of 20

*Costa Bros. Masonry, Inc.*, 199 F. 3d 572, 580 (CA1 1999); *Trotter* v. *Board of Trustees of Univ. of Ala.*, 91 F. 3d 1449, 1453-1454 (CA11 1996); *Fuller* v. *Phipps*, 67 F. 3d 1137, 1142 (CA4 1995). In the decision below, however, the Ninth Circuit concluded otherwise. See *infra*, at 6-7.

# B

Petitioner Desert Palace, Inc., dba Caesar's Palace Hotel & Casino of Las Vegas, Nevada, employed respondent Catharina Costa as a warehouse worker and heavy equipment operator. Respondent was the only woman in this job and in her local Teamsters bargaining unit.

Respondent experienced a number of problems with management and her co-workers that led to an escalating series of disciplinary sanctions, including informal rebukes, a denial of privileges, and suspension. Petitioner finally terminated respondent after she was involved in a physical altercation in a warehouse elevator with fellow Teamsters member Herbert Gerber. Petitioner disciplined both employees because the facts surrounding the incident were in dispute, but Gerber, who had a clean disciplinary record, received only a 5-day suspension.

Respondent subsequently filed this lawsuit against petitioner in the United States District Court for the District of Nevada, asserting claims of sex discrimination and sexual harassment under Title VII. The District Court dismissed the sexual harassment claim, but allowed the claim for sex discrimination to go to the jury. At trial, respondent presented evidence that (1) she was singled out for "intense 'stalking' " by one of her supervisors, (2) she received harsher

discipline than men for the same conduct, (3) she was treated less favorably than men in the assignment of overtime, and (4) supervisors repeatedly "stack[ed]" her disciplinary record and "frequently used or tolerated" sex-based slurs against her. 299 F. 3d 838, 845-846 (CA9 2002).

Based on this evidence, the District Court denied petitioner's motion for judgment as a matter of law, and submitted the case to the jury with instructions, two of which are relevant here. First, without objection from petitioner, the District Court instructed the jury that " '[t]he plaintiff has the burden of proving ... by a preponderance of the evidence" that she "suffered adverse work conditions" and that her sex "was a motivating factor in any such work conditions imposed upon her.' " *Id.*, at 858.

Second, the District Court gave the jury the following mixed-motive instruction:

> " ' You have heard evidence that the defendant's treatment of the plaintiff was motivated by the plaintiff's sex and also by other lawful reasons. If you find that the plaintiff's sex was a motivating factor in the defendant's treatment of the plaintiff, the plaintiff
> is entitled to your verdict, even if you find that the
> defendant's conduct was also motivated by a lawful reason.

> " ' However, if you find that the defendant's treatment of the plaintiff was motivated by both gender and lawful reasons, you must decide whether the plaintiff is entitled to damages. The plaintiff is entitled to damages

unless the defendant proves by a
preponderance of the evidence that the
defendant would have treated plaintiff
similarly even if the plaintiff's gender had
played no role in the employment decision.' "
*Ibid.*

Petitioner unsuccessfully objected to this instruction,
claiming that respondent had failed to adduce "direct
evidence" that sex was a motivating factor in her
dismissal or in any of the other adverse employment
actions taken against her. The jury rendered a verdict
for respondent, awarding backpay, compensatory
damages, and punitive damages. The District Court
denied petitioner's renewed motion for judgment as a
matter of law.

The Court of Appeals initially vacated and
remanded, holding that the District Court had erred in
giving the mixed-motive instruction because
respondent had failed to present "substantial evidence
of conduct or statements by the employer directly
reflecting discriminatory animus." 268 F. 3d 882, 884
(CA9 2001). In addition, the panel concluded that
petitioner was entitled to judgment as a matter of law
on the termination claim because the evidence was
insufficient to prove that respondent was "terminated
because she was a woman." *Id.,* at 890.

The Court of Appeals reinstated the District Court's
judgment after rehearing the case en banc. 299 F. 3d
838 (CA9 2002). The en banc court saw no need to
decide whether *Justice O'Connor's* concurrence in
*Price Waterhouse* controlled because it concluded that
*Justice O'Connor's* references to "direct evidence" had
been "wholly abrogated" by the 1991 Act. 299 F. 3d,
at 850. And, turning "to the language" of §2000e-2
(m), the court observed that the statute "imposes no

special [evidentiary] requirement and does not reference 'direct evidence.' " *Id.*, at 853. Accordingly, the court concluded that a "plaintiff ... may establish a violation through a preponderance of evidence (whether direct or circumstantial) that a protected characteristic played 'a motivating factor.' " *Id.*, at 853-854 (footnote omitted). Based on that standard, the Court of Appeals held that respondent's evidence was sufficient to warrant a mixed-motive instruction and that a reasonable jury could have found that respondent's sex was a "motivating factor in her treatment." *Id.*, at 859. Four judges of the en banc panel dissented, relying in large part on "the reasoning of the prior opinion of the three-judge panel." *Id.*, at 866.

We granted certiorari. 537 U. S. 1099 (2003).

# II

This case provides us with the first opportunity to consider the effects of the 1991 Act on jury instructions in mixed-motive cases. Specifically, we must decide whether a plaintiff must present direct evidence of discrimination in order to obtain a mixed-motive instruction under 42 U. S. C. §2000e-2(m). Petitioner's argument on this point proceeds in three steps: (1) *Justice O'Connor's* opinion is the holding of *Price Waterhouse*; (2) *Justice O'Connor's Price Waterhouse* opinion requires direct evidence of discrimination before a mixed-motive instruction can be given; and (3) the 1991 Act does nothing to abrogate that holding. Like the Court of Appeals, we see no need to address which of the opinions in *Price Waterhouse* is controlling: the third step of petitioner's argument is flawed, primarily because it is inconsistent with the text of §2000e-2(m).

Our precedents make clear that the starting point for our analysis is the statutory text. See *Connecticut Nat. Bank* v. *Germain,* 503 U. S. 249, 253-254 (1992). And where, as here, the words of the statute are unambiguous, the " 'judicial inquiry is complete.' " *Id.,* at 254 (quoting *Rubin* v. *United States,* 449 U. S. 424, 430 (1981)). Section 2000e-2(m) unambiguously states that a plaintiff need only "demonstrat[e]" that an employer used a forbidden consideration with respect to "any employment practice." On its face, the statute does not mention, much less require, that a plaintiff make a heightened showing through direct evidence. Indeed, petitioner concedes as much. Tr. of Oral Arg. 9.

Moreover, Congress explicitly defined the term "demonstrates" in the 1991 Act, leaving little doubt that no special evidentiary showing is required. Title VII defines the term " 'demonstrates' " as to "mee[t] the burdens of production and persuasion." §2000e (m). If Congress intended the term " 'demonstrates' " to require that the "burdens of production and persuasion" be met by direct evidence or some other heightened showing, it could have made that intent clear by including language to that effect in §2000e (m). Its failure to do so is significant, for Congress has been unequivocal when imposing heightened proof requirements in other circumstances, including in other provisions of Title 42. See, *e.g.,* 8 U. S. C. §1158(a)(2)(B) (stating that an asylum application may not be filed unless an alien "demonstrates by clear and convincing evidence" that the application was filed within one year of the alien's arrival in the United States); 42 U. S. C. §5851(b)(3)(D) (providing that "[r]elief may not be ordered" against an employer in retaliation cases involving whistleblowers under the Atomic Energy Act where the employer is able to "*demonstrat[e] by clear and convincing evidence* that

it would have taken the same unfavorable personnel action in the absence of such behavior" (emphasis added)); cf. *Price Waterhouse*, 490 U. S., at 253 (plurality opinion) ("Only rarely have we required clear and convincing proof where the action defended against seeks only conventional relief ").

In addition, Title VII's silence with respect to the type of evidence required in mixed-motive cases also suggests that we should not depart from the "[c]onventional rul[e] of civil litigation [that] generally appl[ies] in Title VII cases." *Ibid.* That rule requires a plaintiff to prove his case "by a preponderance of the evidence," *ibid.* using "direct or circumstantial evidence," *Postal Service Bd. of Governors* v. *Aikens*, 460 U. S. 711, 714, n. 3 (1983). We have often acknowledged the utility of circumstantial evidence in discrimination cases. For instance, in *Reeves* v. *Sanderson Plumbing Products, Inc.*, 530 U. S. 133 (2000), we recognized that evidence that a defendant's explanation for an employment practice is "unworthy of credence" is "one form of *circumstantial evidence* that is probative of intentional discrimination." *Id.*, at 147 (emphasis added). The reason for treating circumstantial and direct evidence alike is both clear and deep-rooted: "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Rogers* v. *Missouri Pacific R. Co.*, 352 U. S. 500, 508, n. 17 (1957).

The adequacy of circumstantial evidence also extends beyond civil cases; we have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required. See *Holland* v. *United States*, 348 U. S. 121, 140 (1954) (observing that, in criminal cases, circumstantial evidence is "intrinsically no different from testimonial evidence").

And juries are routinely instructed that "[t]he law makes no distinction between the weight or value to be given to either direct or circumstantial evidence." 1A K. O'Malley, J. Grenig, & W. Lee, Federal Jury Practice and Instructions, Criminal §12.04 (5th ed. 2000); see also 4 L. Sand, J. Siffert, W. Loughlin, S. Reiss, & N. Batterman, Modern Federal Jury Instructions ¶ ;74.01 (2002) (model instruction 74-2). It is not surprising, therefore, that neither petitioner nor its *amici curiae* can point to any other circumstance in which we have restricted a litigant to the presentation of direct evidence absent some affirmative directive in a statute. Tr. of Oral Arg. 13.

Finally, the use of the term "demonstrates" in other provisions of Title VII tends to show further that §2000e-
2(m) does not incorporate a direct evidence requirement. See, *e.g.,* 42 U. S. C. §§2000e-2(k)(1)(A)(i), 2000e-5(g)(2)(B). For instance, §2000e-5(g)(2)(B) requires an employer to "demonstrat[e] that [it] would have taken the same action in the absence of the impermissible motivating factor" in order to take advantage of the partial affirmative defense. Due to the similarity in structure between that provision and §2000e-2(m), it would be logical to assume that the term "demonstrates" would carry the same meaning with respect to both provisions. But when pressed at oral argument about whether direct evidence is required before the partial affirmative defense can be invoked, petitioner did not "agree that ... the defendant or the employer has any heightened standard" to satisfy. Tr. of Oral Arg. 7. Absent some congressional indication to the contrary, we decline to give the same term in the same Act a different meaning depending on whether the rights of the plaintiff or the defendant are at issue. See *Commissioner* v. *Lundy,* 516 U. S. 235, 250 (1996) ("The interrelationship and close

Case 1:04-cv-10469-WGY Document 116-2 Filed 03/22/2006 Page 18 of 20

# *v.*

# CATHARINA F. COSTA

## on writ of certiorari to the united states court of appeals for the ninth circuit

### [June 9, 2003]

*Justice O'Connor*, concurring.

I join the Court's opinion. In my view, prior to the Civil Rights Act of 1991, the evidentiary rule we developed to shift the burden of persuasion in mixed-motive cases was appropriately applied only where a disparate treatment plaintiff "demonstrated by direct evidence that an illegitimate factor played a substantial role" in an adverse employment decision. *Price Waterhouse* v. *Hopkins*, 490 U. S. 228, 275 (1989) (*O'Connor, J.,* concurring in judgment). This showing triggered "the deterrent purpose of the statute" and permitted a reasonable factfinder to conclude that "absent further explanation, the employer's discriminatory motivation 'caused' the employment decision." *Id.,* at 265 (*O'Connor, J.,* concurring in judgment).

As the Court's opinion explains, in the Civil Rights Act of 1991, Congress codified a new evidentiary rule for mixed-motive cases arising under Title VII. *Ante,* at 8-11. I therefore agree with the Court that the District Court did not abuse its discretion in giving a mixed-motive instruction to the jury.

Case 1:04-cv-10469-WGY Document 116-2 Filed 03/22/2006 Page 18 of 20

# FOOTNOTES

**Footnote 1**

This case does not require us to decide when, if ever, §107 applies outside of the mixed-motive context.

**Footnote 2**

Title 42 U. S. C. §2000e-5(g)(2)(B) provides in full:

"On a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court--

"(i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title; and

"(ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A)."

**Footnote 3**

Of course, in light of our conclusion that direct evidence is not required under §2000e-2(m), we need not address the second question on which we granted certiorari: " What are the appropriate standards for lower courts to follow in making a direct evidence determination in 'mixed-motive' cases under Title

VII? " Pet. for Cert. i.

Sponsored Links

**Find a Lawyer**: Our free service locates Bankruptcy, Criminal, DUI, Family, Immigration, Personal Injury, Real Estate, or Trademark lawyers in your area who can help you with your legal issues.

**AbacusLaw**: Enter data once, use it everywhere! Integrated time/billing, accounting, calendar, cases, contacts, conflicts. Easy to learn, easy to use.

**U.S. Legal Forms, Inc.**: **Over 36,000 Legal Forms** Stop Reinventing the Wheel each time you draft a legal document. Save Time and Money! Visit USlegalforms.com Today!

**PCLaw & PCLawPro**: ONE integrated system to manage your whole office. Provides time billing, accounting and practice management. Download a FREE demo.

**Online Paralegal Services**: Proxilaw takes care of your document preparation and filing chores. Incorporation, living trusts, LLCs, divorce & more.

**Amicus Attorney**: Easy-to-use and intuitive - experience great practice management software that works the way you do. Free Trial.

**Tabs3 and PracticeMaster**: Reliable billing and practice management software for solo to mid-sized firms. Recommended by 94% of firms that use them.

**LexisNexis Time Matters 7.0**: Use Time Matters 7.0 and exceed client expectations with a complete view of your practice.

**LegalConnection**: Need an attorney? Our free service connects you to lawyers who can help you with your case.

**Lawyer Marketing**: web sites, attorney written custom content, visibility on FindLaw.com, search engine optimization.



THOMSON
FINDLAW

Help | Site Map | Contact Us | Media Kit | About Us | FindLaw Local | Disclaimer | Privacy Policy

Copyright © 1994-2006 FindLaw, a Thomson business