**UNITED STATE DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

```
                                                    F I L E D
                                                    Clerk's Office
                                                    USDC, Mass.
Albert William Bleau Jr.           :                Date  11/22/06
                                                    By    MP
      Plaintiff                    :                      Deputy Clerk

                                   :

Vs.                                :      Civil Action
                                          No. 04 – 10469WGY
                                   :

Bridgewell, Inc. (Greater Lynn Mental Health    :
& Retardation Association), et al,

      Defendants
```

**Plaintiff's Motion To Compel Discovery From**
**The Massachusetts Attorney General, Thomas Reilly**

Plaintiff respectively requests that this honorable court order the Massachusetts Attorney General's Office to provide the documents and information requested by the plaintiff pursuant to Federal Rule 45. See Attachment I

   1. Plaintiff previously requested documents from the Massachusetts Attorney General's Office in March 2006 and the Attorney General responded that his Office was not required to provide any documents requested by the plaintiff without an Order of the Court.

   2. The documents that are requested are essential for the plaintiff to prove that the defendant, Bridgewell did not have a justifiable non discriminatory

1

reason to terminate the plaintiff in April 1999 and did not have a justifiable non discriminatory reason not to interview and hire the plaintiff for the vacant Executive Director's position in 2004 as required by the McDonnell Douglas framework of the Supreme Court.   See Zapata-Matos v. Reckitt & Colman, F.1st (1st Cir. 2002). Under the McDonnell Douglas framework, once the plaintiff has met the low standard of showing prima facie discrimination, the employer must articulate a legitimate non discriminatory reason for its actions.

    3. The documents are also essential to substantiate the plaintiff's assertion that the defendant, Bridgewell had no intention of complying with the Severance Agreement and committed deception and fraud during the negotiation of the agreement and that the defendant was defaming the plaintiff prior to and after the signing of the Severance Agreement and did nothing to correct the defaming allegations, publications, reports and correspondences after November 4, 2000.

    4. It will also show that that the defendant had every intention to falsify records and financials to justify the dissolving of the former Eastern Massachusetts Housing Corporation to remove their board of directors and take over their assets and to prevent the plaintiff from ever returning as a consultant or Executive Director of that corporation.

    5. The plaintiff's intentional breach of contract also prevented the parties from ever returning to the status quo prior to November 4, 2000 since the Eastern Mass Housing Corporation (EMHC) that plaintiff led as Executive Director since its inception in 1978 was no longer in existence. The Court, in its

October 2005 Order has granted a partial Summary Judgment for the plaintiff on Breach of Contract. The plaintiff filed a motion and memorandum of law on January 6, 2006 to have the EMHC reconstituted and to protect the former assets of EMHC and this motion was denied by the court. See Attachment II.

6. The documents are essential to show that that the defendant and its agents retaliated against the plaintiff and continued to discriminate against the plaintiff after November 4, 2000 in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, et seq., and in violation of Title II of the Americans with Disabilities Act of 1990 (ADA) as amended, 42 U.S.C. §§ 12131-12165 and 42 U.S.C §§ 12101, et seq., and violated plaintiff's privacy rights under the United States Federal Confidentiality Regulations including 42.CFR part 2 DHHS and under the United States Federal Standards for Privacy of Individually Identifiable Health Information, final rule (Privacy Rule), of December 2000 pursuant to the Administrative Simplification provisions of the Health Insurance Portability and Accountability Act of 1996 (HIPPA) and 45 CFR Parts 160 and 164, Subparts, 164, Subparts A and E. 6.

7. Additionally, Congress enacted Title II of the ADA to combat discrimination by private and governmental entities as well in the operation of public services, programs, and activities. It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The statute authorizes private suits against public entities to enforce its provisions. See

42 U.S.C. § 12133(incorporating by reference 29 U.S.C. § 794a). If public entities can be sued, it stands to reason that the Attorney General's Office should be required to provide necessary documentation under Federal Rules for a claim of discrimination by a private party.

8. This motion to compel discovery was not filed sooner since discovery was suspended during the plaintiff's appeal of the February 8, 2006 order of the court.

The plaintiff respectfully requests that this motion be granted.

Dated: November 15, 2006               Respectfully submitted,

                                       _____
                                       Albert W. Bleau Jr.
                                       505 Paradise Rd. #208
                                       Swampscott, MA 01907
                                       (781) 962-2662

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon all counsel of record by First Class Mail on November 16, 2006.

_____
Albert W. Bleau Jr.

Garrick Cole                           Donald K. Stern
Smith & Duggan LLP                     Bingham McCutchen LLP
Two Center Plaza                       150 Federal St.
Boston, MA 02108-1906                  Boston, MA 02110
(617) 248-1900                         (617) 951-8250

Salo Zelemeyer
Greenberg Traurig, LLP
One International Place, 20th floor
Boston, MA 02110

William T. Harrington
Glynn, Landry, Harrington,
& Rice, LLP
10 Forbes Rd.,
Suite 270
Braintree, MA 02184

# UNITED STATE DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

Albert William Bleau Jr.

    Plaintiff

Vs.

                                      Civil Action
                                      No. 04 – 10469REK

Greater Lynn Mental Health
& Retardation Association (Bridgewell, Inc.), et al,

    Defendants

### Plaintiff Albert W. Bleau Jr. Motion For An Injunction To Restrict The Sale, Transfer, Mortgaging Or Pledging of Certain Assets Of Defendant Greater Lynn Mental Health & Retardation Association Inc. Now Known And Doing Business As Bridgewell, Inc. of 471 Broadway, Lynnfield, Massachusetts And For The Appointment Of A Receiver

    Plaintiff requests that the Court enter an order prohibiting Greater Lynn Mental Health and Retardation Association, Inc., (GLMHRA) now known and doing business as Bridgewell, Inc. from transferring, selling, mortgaging or pledging any assets and that they do not expend any funds other than what is needed to pay for their normal business operations as outlined and approved in their current state, private and federal contracts and budgets and that Bridgewell, Inc. (GLMHRA) be ordered not to incur any additional liabilities without the approval of a Court Appointed Receiver who will report all such proposals to the Court.

    Plaintiff requests that the Court appoint a Receiver for defendant Bridgewell, Inc. (GLMHRA).

    Upon appointment of the Receiver, defendant Bridgewell, Inc. (GLMHRA) will preserve all records from 1999 to the present of GLMHRA (Bridgewell, Inc. and

1

EMHC and deliver to the Receiver the names, addresses and copies of the resident records including all progress notes and evaluations and ISP's of all Consent Decree individuals including those who became deceased from November 8, 2000 to the present; the closing documents and all correspondence and e-mails pertaining to the transfer, pledging and mortgaging of all real estate assets from November 8, 2000 to the present; copies of current financials and state contracts and the FY 2006 agency budget; copies of all bills from consultants, real estate sales agents, auditors and attorneys and law firms from August 1999 to February 1, 2006.

Upon the appointment of the Receiver, the current board of Bridgewell, Inc. (GLMHRA) will be dissolved and the agency Executive Director will report to and be under the direct supervision of the Receiver. Board members will be given the option to resign.

### Responsibilities Of The Receiver

1. Oversee all assets of the defendant
2. Take any and all necessary steps to protect Consent Decree mentally retarded citizens
3. Make all attempts to recover unnecessary and fraudulent expenditures of GLMHRA (Bridgewell, Inc) and the former defendant Eastern Massachusetts Housing Corporation (EMHC) from August 1, 1999 to the present for legal, consultant, auditing costs and real estate sale expenses and purchases that the Receiver considers to have been excessive and that were the result of fraud, conflict of interest, RICO or were not an "arms length transaction and recover any assets or receive just compensation for any assets sold below market value.
4. The Receiver will be given access to all properties as well as the

2

alarm codes and keys to all buildings and will be the designated person to make any changes to the alarm codes in the buildings.

5. The Receiver will have authority to approve all expenditures and the hiring and termination of all staff and the approval of all contracts and the approval to restrict, deny or allow access to all buildings and agency files.

6. The Receiver shall be authorized to make any financial decision and take any action that in his/her judgment is of an emergency nature. Emergency transactions or actions shall be submitted to the Court, the plaintiff and the defendants no later than seven days from the action.

7. The Receiver shall reduce agency expenditures including the lay off of unnecessary employees and consultants and legal expenses to pay for the cost of the Receivership.

8. The Receiver shall file monthly financial and progress reports to the Court, state and federal funding agencies including but not limited to The Department of Mental Health (DMH), The Department of Retardation (DMR), and Federal Office Of Housing and Urban Development (HUD) and to the plaintiff and the defendants.

9. The Receiver will report to the Court any former or current employees, board members or consultants who in his judgment have not acted in the best interest of the agency and individuals with mental illness and mental retardation and whose actions were for their own self interest and violated their fiduciary responsibilities.

10. The Receiver will make any recommendations for action including the provision that they be barred permanently from serving on any Board of Directors of any non profit federally tax exempt corporation and that they be held financially liable for their actions.

11. The Receiver will recruit and train a new Board of Directors that will take over agency fiduciary responsibilities and oversight upon the termination of the

Receivership.

12. The Receiver will not be held liable for his/her actions except for violations of law or gross negligence and then only with approval from the Court in addition, can only be sued for his actions as Receiver with approval from the Court.

13. The Receiver shall be appointed for a term of two years or until the Orders of the Court are completed.

14. Should the Court grant the plaintiff's Motion for Summary Judgment filed on December 27, 2005, the plaintiff respectfully requests that he be appointed Receiver. Plaintiff's qualifications for appointment as Receiver are attached as Attachment I.

15. Should the plaintiff be appointed Receiver and his motion granted, a summary judgment will be granted in favor of the defendants Robert Griffin, Roderick MacKleish and Robert Sherman and consented to by the plaintiff.

16. Any compensation or benefits paid to or due to the plaintiff as Receiver will be applied to any settlement awarded to the plaintiff by the Court.

Plaintiff now submits an accompanying Memorandum of Law that supports plaintiff's Motion for an Injunction To Restrict The Sale, Transfer, Mortgaging or Pledging of Certain Assets Of Defendant Greater Lynn Mental Health & Retardation Association Inc. Now Known And Doing Business As Bridgewell, Inc. of 471 Broadway, Lynnfield, Massachusetts And For The Appointment Of A Receiver.

4

Respectfully submitted,

*[signature]*

Albert W. Bleau Jr.
505 Paradise Rd. #208
Swampscott, MA 01907
(781) 962-2662

Dated: January 6, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon all counsel of record by First Class Mail on January 9, 2006.

*[signature]*

Albert W. Bleau Jr.

UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Albert William Bleau Jr.          :

    Plaintiff                 :

                                                    :

Vs.                               :       Civil Action
                                                             No. 04 – 10469REK
                                                    :

Greater Lynn Mental Health        :
& Retardation Association, et al,

    Defendants

## Plaintiff Albert W. Bleau Jr. Motion To Order GLMHRA Now Doing Business As Bridgewell, Inc. to Reestablish The EMHC As A Charitable Corporation And To Reappoint Their Board Of January 1, 2000 With The Exception Of Samuel Vitali

    Plaintiff respectfully requests that the Court order defendant Greater Lynn Mental Health and Retardation Association, Inc., (GLMHRA) now doing business as Bridgewell, Inc. to reestablish EMHC as an independent 501 C 3 charitable corporation with its former Board of Directors of January 1, 2000 with the exception of Attorney Samuel Vitali.

    Plaintiff additionally requests that the Court order defendant Greater Lynn Mental Health and Retardation Association, Inc., (GLMHRA) now doing business as Bridgewell, Inc. to transfer all real estate assets and financial assets that were transferred from EMHC to GLMHRA now doing business as Bridgewell, Inc. to the newly reestablished EMHC.

    Plaintiff now submits an accompanying Memorandum of Law that supports plaintiff's Motion.

1

2

Respectfully submitted,

_[signature]_
Albert W. Bleau Jr.
505 Paradise Rd. #208
Swampscott, MA 01907
(781) 962-2662

Dated: January 6, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon all counsel of record by First Class Mail on January 9, 2006.

_[signature]_
Albert W. Bleau Jr.

UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Albert William Bleau Jr.           :

    Plaintiff                  :

                               :

Vs.                                :           Civil Action
                                            No. 04 – 10469REK
                               :

Greater Lynn Mental Health         :
& Retardation Association, et al,
    Defendants

**Memorandum
in Support Of Plaintiff's Motion For An Injunction To Restrict The Sale,
Transfer and Pledging of Certain Assets Of Defendant Greater Lynn Mental
Health & Retardation Association Inc. Now Known And Doing Business as
Bridgewell, Inc. of 471 Broadway, Lynnfield, Massachusetts
And
In Support Of Plaintiff's Motion That GLMHRA (Bridgewell, Inc.) Be Ordered
To Reestablish EMHC With All Its Assets And With Its Former Board Of
Directors As of January 1, 2000 With The Exception
Of Attorney Samuel Vitali
And
In Support Of Plaintiff's Motion That Past Board Members From August 1,
1999 To The Present And Current Board Members Of GLMHRA, The
Defendants And Defendants' Associates Including Current And Past
Employees And Consultants Identified In the Plaintiff's RICO Complaint To
This Court Be Barred From Serving On The Board Of Directors
Of Any 501 C 3 Or C 4 Charitable Non-Profit Corporation Or Charitable
Foundation
And
For The Appointment Of A Receiver Of GLMHRA (Bridgewell, Inc)**

Plaintiff has filed a Motion for an Injunction prohibiting GLMHRA now known and doing business as Bridgewell, Inc. from transferring, selling, pledging or mortgaging any assets other than what is needed to pay for their normal business operations as outlined and approved in their current state private and federal contracts and budgets and that Bridgewell be ordered not to incur any additional liabilities without the approval of the Court and that a Receiver for GLMHRA

1

(Bridgewell, Inc) be appointed by the Court.

Plaintiff has also filed a Motion to reestablish EMHC with its former Board Of Directors of January 1, 2000 with the exception of Samuel Vitali and plaintiff has filed a Motion that the Defendants, their Associates, and former and current Board Members of GLMHRA (Bridgewell) who served at any time from August 1, 1999 to the present with the exception of Martena Fallon, Norman Thibodeau, Paul Tremblay, Joanne George and Charles Comeau, Peter McGuinn and Stephan Speropolous be barred from serving on any 501 C 3 or C 4 non-profit charitable corporation or foundation.

## History

1. Plaintiff's complaint alleges that RICO was involved in defendants' actions and was the motivating reason for plaintiff's termination as Executive Director of GLMHRA and for the Breach of Contract, defamation and continuing retaliation and discrimination by the defendants including defendant GLMHRA and defendants' associates.

2. Plaintiff has alleged that as a result of defendants' actions that over $One Million Dollars was diverted from the former Eastern Massachusetts Housing Corporation and from GLMHRA for the defendants' and their associates and co-conspirators personal benefit. These funds were designated for services for individuals with disabilities.

3. Additionally, plaintiff has alleged that defendants and their associates used unethical and illegal tactics to take control of EMHC, and diverted over $20 Million Dollars of its assets to GLMHRA for their personal use and that they conspired and did cover up the misappropriation of GLMHRA and EMHC Assets.

## Argument

4.  The plaintiff has filed a memorandum on December 27, 2005 that additionally support his current Motions.

5.  In the December 27, 2005 Memorandum, the plaintiff alleged that GLMHRA (Bridgewell, Inc.) purchased a property on Tower Hill in Lynn at well above market prices and attached a copy of the deed. The plaintiff has now attached a copy of the deed showing that Tower Hill Associates headed by Pat McGrath purchased the property from the city of Lynn's Economic Development Commission for $1.5 Million a year earlier. See Attachment I. The property included 3.47 acres of land. GLMHRA (Bridgewell, Inc.) purchased a fraction of this property, 10,000 Sq. Ft. or 6% for $500,000, one year later.

6.  The plaintiff alleged in his December 27, 2005 Memorandum that GLMHRA (Bridgewell, Inc.) Board was in conflict of interest comprised of various current and past managers and consultants of state agencies, including various politically connected individuals and the ex wife of a major drug dealer.

7.  The plaintiff has learned that a current board member, Debbie Oblenas was a real estate broker for Top Realty that is totally owned by Pat McGrath who is also the principal partner of Tower Hill Associates that sold the Tower Hill property to the Defendant at an above market price.

8.  In the December 27, 2005 Memorandum, the plaintiff alleged that GLMHRA (Bridgewell, Inc.) sold a building and various finished parking lots, on 38-44 Central Ave. in Lynn for $681,000 at well below market price to the Mayo Group and the plaintiff attached a copy of the deed.

9.  The plaintiff also alleged that a vacant lot with less land area across the street in Central Sq. sold for over $One Million Dollars a year earlier. The plaintiff now attaches photographs for the Court to compare the value of the lots. See Attachment II.

10. In the December 27, 2005 Memorandum, the plaintiff also alleged and provided documentation that the defendant sold land and buildings in Tilton, NH valued at $1.2 to 1.7 Million dollars for $800,000 and a parking lot and building at 37 – 41 Friend St. in Lynn for $2.3 Million Dollars although it was valued at $3.5 to $4 Million Dollars. Defendant purchased a building and land at 471 Broadway in Lynnfield for $2.87 Million dollars when it was valued at less than $2 Million Dollars.

11. At least three consent decree clients and two former Hogan Regional Center clients have died due to neglect since January 1, 2001 and no independent investigation was conducted by DMR or by the Disabled Protection Bureau.

12. There has been no action from any state agency or Constitutional Officer or of current employees or board members or the defendants to protect the charitable assets, to recover assets fraudulently removed or sold or to protect the remaining consent decree mentally retarded citizens.

## Jurisdiction Of The Federal Court

13. There has been no action from any state agency or Constitutional Officer or of current employees or board members or the defendants to protect the charitable assets, to recover assets fraudulently removed or sold or to protect the remaining consent decree mentally retarded citizens.

14. The Defendant GLMHRA (Bridgewell, Inc.) receives Federal funds and is engaged in Interstate Commerce. See Attachment III.

15. Federal Judge Francis Tauro set precedent when he appointed a Receiver and had the Court oversee the treatment of mentally retarded citizens who were being abused and neglected by the DMH and DMR. Similar actions have occurred by Federal District Courts in Maine, Pennsylvania, New York and

many other Federal District Courts.

16. There has been documentation of Fraud and violation of federal laws including RICO.

17. The Defendant is depleting, mortgaging and pledging its assets to an extent that they will not be able to settle plaintiff's claims and address any orders made by the Court. Receivership and Court oversight of GLMHRA's (Bridgewell, Inc.) assets are necessary to protect the plaintiff's interests and rights.

18. IRS regulations provide various sanctions for conflict of interest and personal use of charitable assets as alleged and proven by the plaintiff. See Attachment IV

## Conclusion

My complaint alleges that RICO was involved in defendants' actions and was the motivating reason for my termination as Executive Director of GLMHRA and for the Breach of Contract, defamation and continuing retaliation and discrimination by GLMHRA and their associates.

I have alleged that as a result of their actions that over $One Million Dollars was diverted from the fore mentioned non profit corporations and from services for the developmentally disabled and individuals with mental illness for their and their associates and co-conspirators personal benefit.

Additionally, I have alleged that they employed unethical and illegal tactics to take control of another non-profit, EMHC, and diverted over $20 Million Dollars of its assets to GLMHRA for their personal use and to cover up the misappropriation of GLMHRA funds.

I have alleged that favors and consideration were given to past and present GLMHRA board members and staff to support the conspiracy and the misappropriation of funds.

My complaint alleges that the above individuals were a Racketeering Influenced Corrupt Organization (RICO) in violation of federal law and that my

5

opposition was the motivating reason for my termination as Executive Director of GLMHRA and for the Breach of Contract, Defamation and for their continuing retaliation and discrimination. My disability and allegations of ERISA and other violations were fabricated to win support from reluctant board members, staff and state agencies to support my termination.

For the reasons set forth above and for the reasons included in the previous Memorandum filed on December 27, 2005, the plaintiff requests that the Court grant his motions.

Dated: January 6, 2006

Albert W. Bleau Jr.

Respectfully submitted,

*/s/ Albert W. Bleau Jr.*

Albert W. Bleau Jr.
505 Paradise Rd. #208
Swampscott, MA 01907
(781) 962-2662

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon all counsel of record by First Class Mail on January 9, 2006.

*/s/ Albert W. Bleau Jr.*

AO88 (Rev. 1/94) Subpoena in a Civil Case

| | PROOF OF SERVICE | | FILED |
|---|---|---|---|
| | DATE | PLACE | IN CLERKS OFFICE |
| SERVED | 11/21/2006 | One Ashburton Place, Room 1813<br>Boston MA | 2006 NOV 22 A 8: 49 |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE | |
| Thomas Reilly & Massachusetts Attorney General's Office | | Mail Room | U.S. DISTRICT COURT<br>DISTRICT OF MASS. |
| SERVED BY (PRINT NAME) | | TITLE | |
| Edward Bowser | | Process Server | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on   11/21/2006
               DATE

SIGNATURE OF SERVER

200 Boston Avenue, Suite 2510
ADDRESS OF SERVER

Medford MA 02155

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.