FILED
IN CLERKS OFFICE

UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

2006 DEC -4 P 3: 42

U.S. DISTRICT COURT
DISTRICT OF MASS.

Albert William Bleau Jr.                          :

    Plaintiff                                     :

                                    :

        Vs.                                       :          Civil Action
                                           No. 04 – 10469WGY

                                    :

Bridgewell, Inc. (Greater Lynn Mental Health                          :
& Retardation Association), et al,

    Defendants

## Plaintiff's Response And Opposition To Defendant Bridgewell, Inc. Opposition To Plaintiff's Motion To Sanction, Plaintiff's Motion To Delay the Trial And Plaintiff's Motion For Reconsideration and Requests To Delay Plaintiff's Deposition And For A Hearing To Develop A Revised Discovery Plan.

Pursuant to Rules 37.1, 1.3 and 26 the Plaintiff respectively requests that this

honorable court reject Bridgewell's opposition to plaintiff's motions to delay the

trial, to sanction the defendant and plaintiff's motion to delay plaintiff's deposition

and to order a revised joint new discovery plan.

    Plaintiff now submits the following facts and arguments to support the plaintiff's
opposition motion:

    1.   The plaintiff is conducting discovery on three separate claims: ADA,

defamation and breach of contract and this is de facto, three separate trials. There

were five defendants in these claims and one remains, however the other former

1

defendants have key information and complicity. Since they are longer defendants, plaintiff can not serve them with interrogatories and must use Rule 45 to request documents and must subpoena them for depositions.

2.    Two of the defendants, are corporations that have boards comprised of between five and eleven members as well as senior staff. This broadens substantially the time and expense associated with discovery.

3.    The defendant states that discovery is well on its way. This is untrue. Defendant has not responded to plaintiff's interrogatories. Defendant has not provided the documents requested by the plaintiff. Plaintiff will be filing a motion to compel the defendant to provide the requested documents. Defendant has admitted in a telephone conference on November 16, 2006 to destroying key evidence, namely the resumes of the applicants for the Executive Director position in 2003. It is possible that they have destroyed other documents as well.

4.    Plaintiff has not received important and vital Rule 45 requests for documents from Robert Griffin, Robert Sherman, Roderick MacLeish and the Massachusetts Attorney General's Office and has received very little cooperation. In fact, MacLeish and Sherman have not cooperated with discovery and have avoided service. They refused service at their law firms even though they are officers of the court and refused to give their home addresses resulting in the plaintiff and the server spending close to a day searching on the web and searching and cross referencing registry of deed files. Additionally, MacLeish's wife refused to accept service and when the server returned to their home after MacLeish returned from a weekend away, they refused to answer the door and

when he returned again they had left for New Hampshire. The plaintiff will be filing

a motion to sanction MacLeish and Sherman.

5.   To reduce time and expense, In March and April 2006, the Plaintiff

unsuccessfully attempted to receive affidavits and information from various current

and past Bridgewell employees, board members, consultants as well as from state

agencies and private employers. Bridgewell employees and board members, past

and present refused to cooperate. A sample affidavit was mailed out to over thirty

agencies and individuals. No one other than past Bridgewell, board president and

Eastern Massachusetts Corporation Clerk, Martena Fallon, has agreed to

cooperate. This will require the plaintiff to depose these individuals. If additional

depositions are not permitted by the court, the plaintiff will have to subpoena these

state agencies and individuals at trial. For this reason, the plaintiff will be asking

the court to allow up to ten additional written questions.

6.   The defendant argues that the Attorney General ordered that the defendant

be fired. The Attorney General has no authority under state law to order the firing

of a CEO of any Massachusetts' corporation for obvious constitutional, ethical and

conflict of interest concerns. When Eric Carricker asked the president of EMHC,

Stephen Speropolous in April 2000,  to fire the plaintiff, Mr. Speropolous told Mr.

Carricker to put it in writing with justifications and charges and then he would have

the board consider it and until that time, the board would take no such vote and

that there was no support on the board for that action. He also told Mr. Carricker

that he should be more concerned about the excessive unbudgeted and unfunded

legal fees especially those of MacLeish, Sherman and Griffin. Carricker never sent

a letter and took no action to oversee the excessive unfunded legal and consultant costs..

7.    The defendant alleges that the plaintiff was fired because the bondholders refused to go forward with the bond if the plaintiff were the Executive Director of GLMHRA. In an August 6, 2000 letter Wayne Goglin, bond holder representative, stated that under no circumstances did the bondholders require, "that Albert Bleau be terminated as a condition of the bond" and as matter of fact the principal collateral for the July 2000 bond was property owned by EMHC where the plaintiff was the Executive Director. EMHC was a cosignatory to the bond with GLMHRA. See the letter from Wayne Godlin to GLMHRA attached to the original March 2004 ADA complaint and the October 3 memorandum. Additionally, the bond was totally unnecessary and was financially a bad deal for GLMHRA and EMHC. The only reason it was pursued by the Attorney General was to gain control over GLMHRA through Bob Griffin and bond convenants as an appointed monitor to continue the cover up and protection of MacLeish, Sherman and GLMHRA's officers for their malfeasance and mismanagement. Specific language was added into the bond establishing the monitor and giving oversight to the Attorney General. Most of the bond proceeds were used to pay MacLeish, Sherman, Griffin' s and other attorney legal fees and those of their appointed consultants that totaled over $400,000. This has been verified in financials submitted to this court in the October 12, October 25 and December 27th memorandums and attachments.

8.    Bridgewell continues to allege that the plaintiff violated ERISA Law and

mismanaged the Employee Fringe Incentive Plan despite the fact that an ERISA

expert, Attorney Leslie Slavin, in her letter of January 25, 2000, stated that were no

ERISA violations. The Slavin letter is attached to the original complaint of March

2004 and October 3, 2005 memorandum. The plaintiff was informed by the

Department of Labor as well that there were no violations. Both of these

statements were reported to the GLMHRA board, the Attorney General and to

MacLeish and Sherman. Martena Fallon also consulted with an ERISA attorney

and issued a detailed report to the board that was forwarded to the Attorney

General by the plaintiff in May 2001 that also substantiated that their were no

violations of ERISA or of State purchase of service regulations.  See attachment to

march 21, 2004 and October 3, 2005 memorandums.

   9.   The plaintiff met three times with Lt. Michael Ahern and  Assistant

District Attorney, Jennifer Hollingsworth in early 2001. They asked extensive

questions about the EFIP. They refused to allow the plaintiff to tape record the

sessions and also stated that they would not meet with the plaintiff if an attorney

were present. At the third meeting, the plaintiff began to take detailed minutes,

writing down their questions and summarizing plaintiff's responses. They became

angry and through the plaintiff out of the Attorney General's Office. On the way out

of the office, Lt. Ahern accused the plaintiff of being a cocaine addict. He

apparently had not yet been told that the plaintiff had tested negative on the drug

screen ordered by MacLeish with less than eight hours notice.  After the meeting,

the plaintiff noticed that his tape had been removed from the tape recorder that he

had in his brief case. Plaintiff had tape recorded the questions and answers from

memory after the first two meetings. Plaintiff had left his brief case in the conference room with Lt. Ahern and Jennifer Hollingsworth while the plaintiff used the rest-room. Following the meeting, the plaintiff sent out a letter and included the comprehensive analysis of ERISA, the EFIP and state and federal purchase of service regulations prepared by Martena Fallon and never heard from that office again. See attachment, plaintiff's correspondence to Assistant District Attorney Jennifer Hollingsworth dated May 30, 2001 attached to the original March 2004 complaint and as Attachment A36 to Attachment I, Chronology of plaintiff's October 3, 2005 memorandum.

10. The GLMHRA board, the Attorney General and his staff, specifically Eric Carricker and Jamie Katz, were complicit in covering up MacLeish's affair with one of GLMHRA's Chief Financial Officers, Janine Brown Smith, and covering up MacLeish and Sherman's mismanagement of the corporation and their unauthorized billing to defend MacLeish's girlfriend, Janine Brown Smith. Past president of GLMHRA and then clerk of the EMHC, Martena Fallon, filed a complaint with the Mass Bar of Overseers against MacLeish, but it was dismissed because they ruled that since she had resigned her position from GLMHRA's board, she had no standing. See Martena Fallon complaint, attached, previously to plaintiff's amended RICO complaint dated March 21, 2004.

11. Robert Sherman was a personal friend of the Attorney General and he was instrumental in Reilly's election to Attorney General and he was a former Assistant District Attorney in the Attorney General's office and an associate of Assistant District Attorney, Eric Carricker. Sherman used his connections and

influence to engage the attorney general and his staff to "go after the plaintiff" after the board voted in January 2001 for the plaintiff to return as Executive Director and many board members indicated a desire to fire MacLeish and Sherman. MacLeish and Sherman were subsequently fired in May 2000 but not before running up $225,000 in legal fees over a seven month period, more than had been spent by GLMHRA and EMHC during their entire 40 years of existence. They were replaced by Garrick Cole who the plaintiff had referred to president, Robert Tucker whose name and credentials were given to the plaintiff by his then attorney, Stephen Rosenfeld.

12.  Under Massachusetts law the Attorney General can only gain control of a non profit agency through receivership. The two grounds for receivership are to protect the life and safety of the clients and for financial insolvency. Neither grounds existed since the GLMHRA had just received a two year certification with distinction from DMR, was fully licensed by DPH and DMH with distinction and had seen substantial growth of their profits and assets during fiscal years 1998 and 1999, the two years prior to the plaintiff being placed on a leave of absence at the insistence of MacLeish and Sherman. Additionally, GLMHRA had previously received a "no findings" audit after an exhausting nine month audit by the Massachusetts Auditor's Office. See Attachment II A, B , Chronology, to October 3, 2005 Memorandum.

13.  A financial crisis did occur at GLMHRA in May and June of 2000 while the plaintiff was out on leave as a result of the mismanagement and over spending directed by the Attorney General and his staff and by MacLeish, Sherman, Griffin

and GLMHRA's officers. GLMHRA was on line to overspend by close to One Million dollars. EMHC under the direction of the plaintiff "bailed them out" by selling assets and by using real estate assets to collateralize over $600,000 in loans. See memorandum and attachments of October 3, October 25 and December 27, 2005 and January 6, 2006.

14.  Defendant argues that the plaintiff received $100,000 as part of the Severance Agreement. What defendant failed to mention is that the plaintiff resigned a permanent position as Executive Director of the EMHC that he had held since he founded the corporation in 1978 that paid him $34,700 per year plus medical, dental, disability, life insurance and retirement benefits, company car and cell phone and that this position would increase in salary to up to $75,000 per year as a result of the EMHC board voting on August 13, 2006 to terminate the management contract with GLMHRA (now Bridgewell) and have the plaintiff take over complete financial and asset management of the seventy properties and forty plus vans owned by EMHC. Minutes of the August 2000 EMHC board meeting was previously attached to October 3, 2005 memorandum and has been substantiated by the affidavit of the Clerk of EMHC, Tena Fallon that is attached to this memorandum.

15.  The defendant also failed to mention that the letter required by the Severance Agreement was a motivating factor for the plaintiff since GLMHRA employees, board members and its agents, de-facto CEO's MacLeish, Sherman and Griffin had spread lies and disparaging remarks about the plaintiff and the MacLeish Report of January 2000 and the Griffin report of October 2000 that also

8

had the MacLeish report as an attachment had been circulated widely despite the fact that they were stamped confidential and the plaintiff knew that this would prevent him from gaining future employment, consultant contracts and clients from state agencies, private employers and individuals and would "deep six" plaintiff's soon to be founded insurance and investment business.

16.  The plaintiff works forty to sixty hours per week and lives pay day to pay day paying personal expenses and child support and has no financial resources for discovery other than what he can obtain on a scheduled basis from his weekly check. For this reason it is important that a detailed schedule for discovery be planned and that it be sequential following the guidelines of the original joint discovery plan.

17.  A consequence of defendant's defamation and breach of contract was that the plaintiff was unemployed for over three years and was forced to file bankruptcy. As a result, he has no credit cards and no ability to borrow to pay for discovery costs. See the attached Martena Fallon Affidavit that supports plaintiff's claim for ADA, defamation and breach of contract and fraud and deceit in the negotiation of the Severance Agreement.

18.  The plaintiff needs more time to hire, consult and raise the necessary resources to pay for counsel to assist the plaintiff during the deposition process. This would become more likely should the plaintiff's deposition be planned toward the end of discovery as originally planned.

19.  The plaintiff's intentional breach of contract also prevented the parties from ever returning to the status quo prior to November 4, 2000 since the Eastern

9

Mass Housing Corporation (EMHC) that plaintiff led as Executive Director since its inception in 1978 was no longer in existence. The Court, in its October 2005 Order has granted Summary Judgment for the plaintiff on Breach of Contract. The plaintiff filed a motion and memorandum of law on January 6, 2006 to have the EMHC reconstituted and to protect the former assets of EMHC and this motion was denied by the court.

For the fore mentioned facts, arguments and the attached affidavit, the plaintiff respectfully requests that his motion be granted.

Dated:  December 4, 2006                           Respectfully submitted,


_____

Albert W. Bleau Jr.
505 Paradise Rd. #208
Swampscott, MA 01907
(781) 962-2662

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of
the above document was served
upon all counsel of record by First
Class Mail on December 4, 2006.

Albert W. Bleau Jr.

Garrick Cole
Smith & Duggan LLP
Two Center Plaza
Boston, MA 02108-1906
 (617) 248-1900


Salo Zelemeyer
Greenberg Traurig, LLP
One International Place, 20th floor
Boston, MA 02110

Donald K. Stern
Bingham McCutchen LLP
150 Federal St.
Boston, MA 02110
(617) 951-8250


William T. Harrington
Glynn, Landry, Harrington,
 & Rice, LLP
10 Forbes Rd.,
Suite 270
Braintree, MA 02184

11