UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

ALBERT WILLIAM BLEAU, JR.,
    Plaintiff

v.

BRIDGEWELL, INC., et al,
    Defendants

CIVIL ACTION
NO. 04-10469-WGY

---

**MEMORANDUM IN SUPPORT OF
DEFENDANT BRIDGEWELL'S MOTION FOR SUMMARY JUDGMENT**

In support of its Motion for Summary Judgment, the defendant, Bridgewell, Inc., (formerly the Greater Lynn Mental Health and Retardation Association and hereinafter referred to as "Greater Lynn"), states as follows:

**INTRODUCTION**

The plaintiff, Albert W. Bleau, Jr. (the "plaintiff" or "Bleau"), brings this *pro se* action against Greater Lynn, his former employer, alleging that it discriminated against him on the basis of his perceived disabilities of being a drug addict, alcoholic, and mentally ill in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 (the "ADA") and the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "Rehabilitation Act"). As construed by the Court, Keeton, J., the complaint also asserts claims of state law defamation, wrongful interference with contractual relations, breach of the Separation Agreement and General Release that the parties entered into in November 2000 (the "Separation Agreement"), and a claim based on a violation of Internal Revenue Service regulations. *Docket No. 28, 13-14*.

By a series of orders by the Court, Keeton, J., on various dispositive motions of the parties, all defendants except Greater Lynn have been dismissed and the only claims remaining

against Greater Lynn are:

1. ADA and Rehabilitation Act claims to the extent they arose after the execution of the Separation Agreement in November 2000.

2. Defamation claims to the extent they arose after the execution of the Separation Agreement in November 2000.

3. Claim for breach of Paragraph 2 (issuance of letter re departure) of the Separation Agreement from the time of the Separation Agreement until April 11, 2001, when Bleau materially breached the Agreement; and

4. Claim for breach of Paragraph 5C of the Separation Agreement (tuition payments) from the time of the Separation Agreement until April 11, 2001.

*Docket No. 93, at 12, 14-15; see also Docket No. 109, at 5; Docket No. 123, at 4.*

Previously, the Court, Keeton, J., in declining to treat Greater Lynn's dispositive motions as ones for summary judgment, noted that discovery had not yet commenced. *Docket No. 64, at 12; Docket No. 76, at 4.* Now that the parties have engaged in discovery, Greater Lynn is moving for summary judgment. For the reasons stated below, Greater Lynn respectfully states that no issue of material fact exists with respect to any of the remaining claims and, taking the evidence in the light most favorable to the plaintiff, Greater Lynn is entitled to judgment as a matter of law.

## PROCEDURAL BACKGROUND

On March 8, 2004, Bleau commenced this *pro se* action, alleging that Greater Lynn, Eastern Mass. Housing Corporation ("Eastern Mass.") and attorneys Roderick MacKleish ("MacKleish"), Robert Sherman ("Sherman"), and Robert J. Griffin ("Griffin") violated the ADA and the Rehabilitation Act in that they discriminated against him on the basis of his perceived disability and retaliated against him for having filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). By his complaint, Bleau alleges that the defendants perceived him to have a disability (based on an alleged disclosure of confidential

2

medical records in April 2000) and that it was this perception, along with the pre-Separation Agreement publication of confidential medical and psychological records to employees, board members, and others, that led to his involuntary leave of absence in November 1999, his termination in April 2000, and the defendants' refusal to rehire him in August 2003. *Docket No. 1, at 2;* see also *Docket No. 93, at 2 (Judge Keeton's description of complaint allegations)*.

From December 8, 2004 to October 25, 2005, the Court, Keeton, J., issued a series of Memoranda and Orders on various dispositive motions of the parties, dismissing all parties except Greater Lynn. *Docket Nos. 28, 64, 76, 93.* In particular, on December 8, 2004, the Court, Keeton, J., dismissed Bleau's claims against Greater Lynn for intentional interference with advantageous relations and for violation of IRS regulations. *Docket No. 28, at 18.* On June 3, 2005, the Court ruled that, in executing the Separation Agreement on November 6, 2000, Bleau made a knowing and voluntary waiver of all claims he had at that time against the defendants. *Docket No. 64, at 12.* On October 25, 2005, the Court determined that Bleau's letters of April 11, 2001 constituted a material breach of the non-disparagement provision of the Separation Agreement such that Greater Lynn was excused from the performance of future obligations under that Agreement. *Docket No. 93, at 5-8.* On that date, the Court also ruled that Greater Lynn was responsible (under Paragraph 5C of the Separation Agreement) for any qualified education expenses (up to $2,500) that the plaintiff incurred from November 2000 to April 11, 2001 so long as such invoices were previously sent to Greater Lynn, and ordered the plaintiff to provide the court with tuition invoices from any college that he attended between November 2000 and April 11, 2001. *Id. at 12-13.*

The end result of the October 25, 2005 Order was that, in addition to the claim under Paragraph 5C of the Separation Agreement, the following claims against Greater Lynn survived:

(i) ADA and Rehabilitation Act claims that arose after the execution of the Separation Agreement in November 2000; (ii) defamation claims that arose after the execution of the Separation Agreement in November 2000; and (iii) the claim for breach of Paragraph 2 (letter) of the Separation Agreement between November 2000 and April 11, 2001. The Court allowed discovery that would be relevant to these claims. *Id. at 14.*

Subsequently, the Court, Keeton, denied both Bleau's Motion for Reconsideration of the October 25, 2005 Order and Bleau's Motion for Reconsideration of such denial. *Docket Nos. 109, 123.* On May 30, 2006, Bleau filed a Notice of Appeal from the order denying his first Motion for Reconsideration. *Docket No. 124.* On June 15, 2006, the case was reassigned to the Honorable William J. Young. On July 19, 2006, the Court, Young, J., ordered the case administratively closed and stayed all discovery until the appeal was resolved. On September 29, 2006, the First Circuit Court of Appeals dismissed the appeal for want of appellate jurisdiction. The mandate was filed in this court on October 26, 2006. *Docket No. 137.* On November 6, this Court held a scheduling conference, where the matter was set for the March 5, 2007 running trial list. Per Court order, the Bleau was deposed on December 13, 2006. This has been the only deposition in this matter.

## SUMMARY OF UNDISPUTED FACTS

Bleau was the long-time executive director of Greater Lynn. *Statement of Undisputed Facts ("Undisputed Facts"), ¶ 4.* In late 1999, he was placed on paid administrative leave amid a company investigation concerning his management of an employee fringe benefit fund, certain expenditures Bleau had made, and his management of Eastern Mass., a close affiliate to Greater Lynn of which Bleau was also the executive director. *Id., ¶¶ 5-7.* Greater Lynn hired outside counsel to investigate and the Public Charities Division of the Massachusetts Attorney General's

4

Office ("Public Charities Division"), which has regulatory oversight of Greater Lynn, began an investigation. *Id., ¶¶ 4, 7-9*. In the early months of 2000, Greater Lynn's Board was also informed that the Attorney General's Criminal Division had opened an investigation of Bleau. *Id., ¶ 9*. Robert Tucker, the president of the Greater Lynn Board, met several times with representative of the Public Charities Division and was informed that the Attorney General's Office regarded Greater Lynn to be in serious financial and management difficulty and identified Bleau as the individual whose actions had created them, by making improper expenditures of state contract funds, misusing Greater Lynn and employee retirement funds, and submitting improper financial reports to the Massachusetts Department of Mental Health ("DMH") and Department of Mental Retardation ("DMR"). *Id., at ¶ 10*. The Attorney General's Office also informed Tucker and other members of the Board that, unless Greater Lynn: (1) entered into a management agreement whereby it retained a management advisor who would report to the Attorney General's Office; (2) appointed a new executive director, and (3) restructure, the Attorney General's Office would began an action to place Greater Lynn into receivership. *Id*.

In order to cooperate with the Attorney General's Office and also because of information received concerning Bleau sufficient to warrant termination, on April 20, 2000, the Board voted to terminate Bleau's employment. Because of his length of service, the Board voted to negotiate a severance agreement and to permit him to resign. *Id., ¶ 12*. In early May 2000, Greater Lynn entered into a management agreement with the Attorney General's Office, whereby Attorney Robert Griffin was appointed management adviser. *Id. at ¶¶ 11, 13*.

After Bleau refused to sign any proposed separation agreement, his employment was terminated, effective September 8, 2000. *Id., at ¶ 18*.

On October 6, 2000, Bleau filed a complaint with the Equal Employment Opportunity

5

Commission ("EEOC") alleging that his termination was on the basis of his gender, age and an unstated disability. *Id., at ¶ 19.*

In mid-October 2000, the management advisor, Robert Griffin submitted a Report to the Attorney General's Office which was critical of Bleau's actions and in which he made additional recommendations, including merging Eastern Mass. into Greater Lynn. *Id., at ¶ 21.*

On November 6, 2000, Bleau entered into a Separation Agreement and General Release ("Separation Agreement") with both Greater Lynn and Eastern Mass. *Id. at ¶ 27.* It was intended to put an end to Bleau's involvement with Greater Lynn and Eastern Mass. *Id. at ¶ 29.* Under it, Bleau *inter alia*, resigned his position at Eastern Mass., provided a general release in favor of both Greater Lynn and Eastern Mass., and agreed to dismiss his EEOC complaint within 48 hours. *Id. at ¶¶ 30, 35.* In exchange, Greater Lynn agreed to pay him $95,200 plus transfer to Bleau a vehicle with an agreed value of $21,600. *Id. at ¶ 32.* Greater Lynn also agreed to pay up to $10,000 in qualified retraining expenses over a two year period and to send a letter to its newsletter list stating that Bleau had resigned to purse other interests. *Id. at ¶ 33.* Greater Lynn in fact did pay Bleau the money and transfer the vehicle to him. *Id. at ¶ 32.*

Following the signing of the Separation Agreement, Bleau made repeated demands on Greater Lynn Chief Administrative Officer, James Cowdell ("Cowdell"). *Id. at ¶ 37.* Bleau demanded that Greater Lynn send to its newsletter list, local newspapers and politicians a multi-page announcement listing Bleau's accomplishments. *Id.* In late November or December 2000, Bleau provided Cowdell a 4 page document entitled, "Albert Bleau: A Life of Service" and demanded that Greater Lynn send it to the above list. *Id. at ¶ 38.* Cowdell told Bleau that Greater Lynn was willing to send a letter stating that he had resigned to pursue other interests, as the Separation Agreement provided. *Id.* Bleau made clear that he did not want Greater Lynn to

6

send out such a letter. *Id.*

On April 11, 2001, Bleau violated the non-disparagement provision of the Separation Agreement by sending a letter to each member of the Boards of both Greater Lynn and Eastern Mass. making various disparaging statements about Greater Lynn. *Id. at ¶ 41.* Two days later, he sent the same letter, along with a cover letter requesting that Greater Lynn be placed into receivership, to the commissioners of both DMH and DMR. *Id. at ¶ 42.*

Bleau did not take any qualified retraining course at a college until late April, 2001, after his disparaging letters. *Id. at ¶¶ 48-50.*

On July 2, 2003, Bleau filed a voluntary petition for bankruptcy protection under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* ("Bankruptcy Code"), in the United States Bankruptcy Court for the District of Massachusetts. *Id. at ¶ 58.* Bleau did not declare his right of action against Greater Lynn as an asset of his estate. *Id. at ¶ 59.* On February 18, 2004, the Bankruptcy Court ordered Bleau discharged. *Id. at ¶ 60.* On March 8, 2004, the very day this action was filed, the Bankruptcy Court ordered the case closed. *Id. at ¶ 62.*

In August 2003, Greater Lynn advertised for the position of executive director. Bleau applied and was rejected. *Id. at ¶ 53.* Of the approximately 120 applications, his was one of the approximately 100 that the special committee decided not to pursue. *Id. at ¶ 52.* No member of the five person committee selected his application as one to pursue. *Id. at ¶ 55.* The committee only discussed his application briefly and no member expressed any belief that Bleau had a disability of any kind. *Id. at ¶ 56.* The general consensus among the committee and the Board was that the new executive director be someone who was not involved in the controversies that troubled Greater Lynn for the previous few years. *Id. at ¶ 57.* The person who was eventually

7

hired had not been involved in Greater Lynn previously and was well-qualified. *Id.*

## ARGUMENT

Summary judgment is appropriate if, after reviewing the facts in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P. 56(c).* The burden is on the moving party to show the absence of a genuine issue of material fact. *See Finn v. Consolidated Rail Corp., 782 F.2d 13, 15 (1st Cir. 1986).* If the movant sustains his or her burden, the nonmovant can only survive summary judgment if he or she proffers evidence supporting the existence of a genuine issue of material fact to be resolved at trial. *See Donovan v. Agnew, 712 F.2d 1509, 1516 (1st Cir. 1983).*

I. **BLEAU IS JUDICIALLY ESTOPPED FROM PURSUING HIS CLAIMS TO THE EXTENT THAT THEY AROSE PRIOR TO HIS JULY 2, 2003 BANKRUPTCY FILING.**

By voluntarily filing for Chapter 7 bankruptcy protection on July 2, 2003 without declaring his causes of action against Greater Lynn, Bleau is now judicially estopped from asserting such causes of action in this action and, in addition, lacks standing to assert them.

It is well-settled that where a debtor has a cause of action at the time of filing for bankruptcy, his failure to disclose the cause of action to the Bankruptcy Court precludes him from later pursuing the undisclosed claim. Such preclusion rests on judicial estoppel principles. The leading case in the First Circuit that applies this doctrine is *Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.), Inc., 989 F.2d 570, 571 (1st Cir.), cert. denied, 510 U.S. 931 (1993).*

In *Payless*, the First Circuit affirmed the dismissal of a fraud action on the basis that plaintiff failed to disclose its cause of action when it previously filed for Chapter 11 bankruptcy.

*Payless*, *supra*, *989 F.2d at 570-571*. The court stated that "the basic principle of bankruptcy is to obtain a discharge from one's creditors in return for all of one's assets, except those exempt, as a result of which creditors release their own claims and the bankrupt can start fresh." *Id*. at 570. The court then criticized the plaintiff's strategy, which it described as being "to get rid of your creditors on the cheap, and start over with a bundle of rights." In the court's view, such a strategy constitutes "palpable fraud that the court will not tolerate, even passively." *Id. at 571*. The court explained that a debtor who has obtained relief in bankruptcy "on the representation that no claims existed, cannot [then] resurrect them and obtain relief on the opposite basis" and dismissed the plaintiff's complaint, describing the plaintiff's failure to schedule its claim as an asset as "an unacceptable abuse of judicial proceedings." *Id.*

The rule of *Payless* has been consistently followed in this circuit and district. *Jeffrey v. Desmond, 70 F.3d 183, 186-187 (1st Cir. 1995); Howell v. Town of Leydon, 335 F.Supp.2d 248 (D.Mass., 2004) (Ponsor, J.); Compton v. Depuy Orthopaedics, Inc., 2002 WL 1046698 (D.Mass. 2002) (Zobel, J.) (failure to list employment discrimination lawsuit on bankruptcy petition judicially estopped plaintiff from pursuing lawsuit); Welsh v. Quabbin Timber, Inc., 199 B.R. 224, 228 (D.Mass., 1996) (Gorton, J.); In re Sullivan, 346 B.R. 4, 31-32 (Bankr.D.Mass. 2006) (Feeney, C.J.).*

Here, as required by § 521(a)(1)[1] of the Bankruptcy Code, Bleau filed a schedule of assets at the time he filed his petition for Chapter 7 protection on July 2, 2003. *See Harrington Affidavit, Exhibits A-E*. In doing so, he was required to declare all of his assets. *See 11 U.S.C. § 521(a); Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 (3rd Cir. 1988)*. As the Payless court observed:

---

[1] This section, formerly § 521(1), has been renumbered by the Bankruptcy Abuse Prevention and Consumer Act of 2005, § 106(c)(1), Pub.L. No. 109-8, 119 Stat. 23 (2005). *See Graupner, supra, 450 F.Supp.2d at 124, n. 6.*

9

> A long-standing tenet of bankruptcy law requires one seeking benefits under its terms to satisfy a companion duty to schedule, for the benefit of creditors, all his interests and property rights.

*Payless, at 571.* Bleau, however, failed to declare his claims against Greater Lynn as an asset. In fact, none of his submissions to the Bankruptcy Court gave any notice of the existence of such cause of action. *See Harrington Affidavit, Exhibits B and C.*

Under the Bankruptcy Code, the assets included in the debtor's estate must include all legal and equitable interests the debtor possessed at the time of filing for bankruptcy. *11 U.S.C. §§ 541(a); In re Di Georgio, 200 B.R. 664 (C.D. Cal. 1996).* This includes any cause of action that the debtor has at the time the case is commenced. *Payless, supra, 989 F.2d 570; Graupner v. Town of Brookfield, 450 F.Supp.2d. 119, 124 (D.Mass. 2006) (Saylor, J.); Welsh v. Quabbin Timber, Inc., 199 B.R. 224, 228 (D.Mass. 1996) (Gorton, J.).* Moreover, all types of causes of action are covered, including discrimination and tort claims. *Bickford v. Ponce de Leon Care Center, 918 F.Supp 377 (M.D.Fla. 1996) (employment discrimination claim); Matter of Williams, 197 B.R. 398 (Bkrcty. M.D.Ga. 1996) (age discrimination claim); In re Corbi, 149 B.R. 325, 329 (E.D.N.Y. 1993) (malpractice claim); Cole supra, 18 Mass.App.Ct. at 951 (malicious prosecution tort claim).*

If Bleau had declared his right of action against Greater Lynn, the Chapter 7 trustee would have had the opportunity to investigate the claim and to pursue the cause of action for the benefit of Bleau's creditors. *Graupner, supra, 450 F.Supp.2d at 124-125, citing In re Tennyson, 313 B.R. 402, 406 (Bankr.W.D.Ky. 2004).* If the Chapter 7 Trustee had failed to pursue it on behalf of Bleau's creditors, the asset would have been deemed abandoned at the termination of the bankruptcy and would have reverted back to Bleau. *See 11 U.S.C. § 554(c); Graupner, supra, 450 F.Supp.2d at 125.* However, Bleau deliberately chose not to give the Bankruptcy Court this

option. His actions are tantamount to fraud on the court. In accordance with Payless, and in order to protect the integrity of the bankruptcy court system, this court should order that Bleau is now judicially estopped from pursing his pre-July 2, 2003 claims and, accordingly, should dismiss this action to that extent. *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir. 1988) *(doctrine of judicial estoppel seeks to protect integrity of the court system)*. "[H]aving obtained judicial relief on the representation that no claims existed, [Bleau] cannot now resurrect them and obtain relief on the opposite basis." Payless, supra, 989 F.2d at 571.[2]

Accordingly, given that, under the law of the case, Greater Lynn's obligations under the Separation Agreement ended as of April 11, 2001 *(Docket No. 93, at 8)*, Bleau's claims for breach of the Separation Agreement are barred. What remains of this action is Bleau's employment discrimination claim based on Greater Lynn's failure to rehire him in August 2003 and his defamation claim to the extent it relies on post-July 2, 2003 statements

## II. PLAINTIFF CANNOT ESTABLISH HIS ADA AND REHABILITATION CLAIMS BASED ON GREATER LYNN'S FAILURE TO REHIRE HIM IN 2003

Bleau asserts that Greater Lynn's failure to rehire him in August 2003 constituted unlawful discrimination on the basis of his perceived disability of being an alcoholic, drug addict and mentally ill. *See Complaint, Docket No. 1, at 2; Bleau Depo., at 222.*

In analyzing claims for disability discrimination under the ADA and Rehabilitation Act, courts apply the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, *411 U.S. 792, 93 S.Ct. 1817 (1973).* Under this framework, Bleau must make out a prima facie

---

[2] An additional basis for dismissal is that Bleau lacks standing to pursue such claims. This is because a cause of action "is a property right which passes to the trustee in bankruptcy, even if such cause of action is not included in schedules filed with the Bankruptcy Court." Welsh supra, 199 B.R at 229 quoting Carlock v. Pillsbury Co., 719 F.Supp. 791, 856 (D.Minn. 1989). Under Section 554(c) of the Bankruptcy Code, "property that is not formally scheduled is not abandoned and therefore remains part of the estate, and the debtor loses all rights to enforce it in his own name." Jeffrey v. Desmond, 70 F.3d 183, 186 n. 3 (1st Cir. 1995); Graupner, supra, 450 F.Supp.2d at 125. Therefore, upon his discharge from bankruptcy, the right to maintain his pre-July 2, 2003 claims remained part of the bankruptcy estate and did not revert to Bleau. See 11 U.S.C. § 554(c), (d); Jeffrey, supra, 70 F.3d at 186; Welsh, supra, 199 B.R. at 229.

11

case of discrimination. If he does this, the burden would shift to Greater Lynn to present evidence of a legitimate, non-discriminatory reason for the employment decision. At this point, the burden would shift back to Bleau to demonstrate that the non-discriminatory reason is a mere pretext and that the real reason is discrimination. <u>Clifford v. Barnhart</u>, 449 F.3d 276, 280-281 (1st Cir, 2006), citing <u>McDonnell Douglas</u>, 411 U.S. at 802, 93 S.Ct. 1817.

    A.     **<u>Bleau Cannot Establish a Prima Facie Case of Discrimination.</u>**

To establish a claim of disability discrimination under both the ADA and the Rehabilitation Act, an individual must show not only that he is disabled,[3] but also that he is qualified to perform the essential functions of the job in question and that his employer took adverse employment action against him on the basis of his disability. <u>Tardie v. Rehabilitation Hosp. of Rhode Island</u>, 168 F.3d 538, 5410542 (1st Cir. 1999); <u>Pacella v. Tufts University School of Dental Medicine</u>, 66 F.Supp.2d 234, 237 (D.Mass. 1999) (Young, C.J.). Bleau must also show that he had similar qualifications to the person Greater Lynn hired. <u>Clifford v. Barnhart</u>, 449 F.3d 276, 281 (1st Cir. 2006). An individual is "disabled" within the meaning of both acts if he has (1) a physical or mental impairment that substantially limits one or more of the major life activities; (2) a record of such an impairment; or (3) been regarded as having such an impairment. <u>See</u> 42 U.S.C. § 12102(2) & 29 U.S.C. § 705(20)(B)(i).

Bleau alleges only that Greater Lynn "perceived," or regarded, him as disabled. To prove that Greater Lynn regarded him as disabled, Bleau must show that Greater Lynn (1) mistakenly believed that he had a physical impairment that substantially limits a major life activity; or (2) mistakenly believed that an actual, nonlimiting impairment substantially limits a major life activity. <u>See Sullivan v. Neiman Marcus Group, Inc.</u>, 358 F.3d 110, 117 (1st Cir. 2004) (citing

---

[3] "The standards under the ADA [and] the Rehabilitation Act . . . are substantially similar and [can], therefore, be treated together for purposes of the pending motion." <u>Cormier v. Littlefield</u>, 13 F.Supp.2d 127, 129 (D.Mass. 1998); <u>see also Tardie</u>, 168 F.3d at 542 ("'Disability' is defined identically under the ADA and the Rehabilitation Act.").

12

*Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489 (1999)).

Nowhere in his complaint does Bleau allege the disability that Greater Lynn regarded him as having or his major life activity that the disability limits. Bleau's allegations appear to amount to the claim that Greater Lynn did not re-hire him in the fall of 2003 because the agency regarded him as an alcoholic, drug addict and/or mentally ill. *Bleau Dep., at 240.*[4]

Bleau cannot establish a prima facie case of discrimination based on Greater Lynn's failure to rehire him. There is no evidence that Greater Lynn perceived Bleau as suffering from an impairment that substantially limited a major life activity, or that, in assessing Bleau's August 2003 application, Greater Lynn based its decision on any perceived or contrived disability. For this reason alone, Bleau's ADA and Rehabilitation Act claims based on the 2003 failure to rehire must be dismissed.

> **B.    Greater Lynn Has Established a Legitimate Non-Discriminatory Reason for its Decisions Not to Rehire the Plaintiff.**

Moreover, Bridgewell has come forward with undisputed evidence establishing that Greater Lynn declined to rehire Bleau for legitimate non-discriminatory reasons. Specifically, the undisputed evidence is as follows:

- On April 20, 2000, the Greater Lynn Board voted to terminate Bleau from his position as executive director of Greater Lynn *(Undisputed Fact, ¶ 12)*;

- After Bleau refused to sign a severance agreement, Bleau was terminated and taken off of the payroll, effective September 8, 2000 (Id. at ¶ 18);

- After Bleau filed an EEOC complaint in early October 2000 and, in order to secure his departure from Eastern Mass., the parties entered into a Separation Agreement in November 2000, under which Bleau received over $100,000 in consideration, in exchange for his release of Greater Lynn and Eastern Mass., his resignation from Eastern Mass., and his agreement to drop his EEOC complaint. *(Id. at ¶¶ 23, 27, 30-36).*

---

[4] During his deposition, the plaintiff acknowledged going to counseling from about 1995 to about 2002 for the use of alcohol and illegal substances, as well as other issues. *Bleau Depo., at 234-236.*

13

- The Separation Agreement in November 2000 was intended to put an end to Bleau's involvement with Greater Lynn and Eastern Mass. *(Id. at ¶ 29)*;

- Bleau's departure from Greater Lynn was the result of information concerning Bleau's misconduct, which had prompted the Massachusetts Attorney General's Public Charities Division to investigate the company beginning in early 2000 and to threaten placing the company into receivership *(Id. at ¶¶ 5 – 12)*;

- The Attorney General's Office made clear to Greater Lynn that it regarded Greater Lynn to be in serious financial and management difficulty and that it was opposed to any further role for Bleau in either Greater Lynn or Eastern Mass., which it recommended be merged into Greater Lynn *(Id. at ¶ 10)*;

- Greater Lynn was cooperative with the Attorney General's Office and followed each of the recommendations made by the management advisor that was appointed per the May 2000 agreement between the Attorney General's Office and Greater Lynn *(Id. at ¶¶ 10-16, 45-47)*;

- In July 2003, a special committee was established to fill the executive director position. The committee received approximately 120 applications. Bleau was not among the group of applicants selected for further consideration. *(Id. at ¶¶ 51-53)*;

- No member of the committee selected Bleau's application as one to pursue. The committee discussed the Bleau's application only briefly and no member of the committee mentioned the member's belief that Bleau was suffering from a disability *(Id. at ¶¶ 54-56)*.

- The general consensus among the committee and the Board was that the new executive director be someone who was not involved in the controversies that troubled Greater Lynn for the previous few years. The person who was eventually hired had not been involved in Greater Lynn previously and was well qualified for the position. *(Id. at ¶¶31-32)*.

Given this evidence, Bleau must come forward with evidence demonstrating that the non-discriminatory reason is a mere pretext for disability discrimination. *Clifford v. Barnhart*, 449 F.3d 276, 280-281 (1st Cir. 2006). As he is unable to do this, Bleau's discrimination claims should be dismissed.

III. **BLEAU CANNOT ESTABLISH ANY CLAIM OF RETALIATION.**

To succeed on a claim of retaliation, the plaintiff has to prove that he (1) engaged in

14

protected conduct, (ii) suffered an adverse employment action, and (iii) the two were causally linked. *Wright v. CompUSA, Inc.*, 352 F.3d 472, 478 (1st Cir. 2003) (ADA); *Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 48 (1st Cir. 2000) (Rehabilitation Act).

Here, the only protected action Bleau engaged in was his October 2000 and October 2003 EEOC complaints. The only "adverse employment action" was Greater Lynn's failure to rehire him in August 2003. As discussed above with respect to the discrimination claim, there is simply no evidence that Greater Lynn decided not to rehire Bleau because he had filed an EEOC complaint close to three years earlier. Accordingly, this Court should dismiss Bleau's retaliation claims under the ADA and Rehabilitation Act.

## IV.  PLAINTIFF'S DEFAMATION CLAIM.

While Bleau's complaint does not explicitly contain a claim of defamation, the Court has previously construed it as containing such a claim and Bleau's court filings and his deposition testimony have disclosed the asserted defamation. As per the Court's previous orders, any defamation must have occurred after the Separation Agreement in November 2000. In addition, if the Court adopts Greater Lynn's above argument respecting the effect of Bleau's bankruptcy filing on these proceedings, any defamation must have occurred after July 2, 2003.

Under Massachusetts law, in order to prove defamation, Bleau must establish that Greater Lynn "was at fault for the publication of a false statement regarding [him], capable of damaging [his] reputation in the community, which either caused economic loss or is actionable without proof of economic loss. *White v. Blue Cross and Blue Shield of Massachusetts, Inc.*, 442 Mass. 64, 66 (2004), citing *Ravnikar v. Bogojavlensky*, 438 Mass. 627, 629-630 (2003) and *Restatement (2d) of Torts, § 558 (1977)*. The publication requires that Greater Lynn communicate the defamatory statement to a third party. *White v. Blue Cross and Blue Shield of*

15

Massachusetts, Inc., 442 Mass. 64, 66 (2004); Ravnikar v. Bogojavlensky, 438 Mass. 627, 629-630 (2003).

Here, Bleau admits that he has no personal knowledge of anyone from Greater Lynn making any disparaging remark about him since the Separation Agreement. *Undisputed Facts,* ¶¶ *65-66, 70, 75, 79, 83, 85, 87-88, 90-91, 93, 94, 95.* In order to succeed, he must come forward with competent evidence that someone from Greater Lynn, since the Separation Agreement, made a false statement to a third party about him that would tend to damage his reputation in the community. Bleau cannot do this and, for this reason, his defamation claim should be dismissed.

V. **GREATER LYNN IN ENTITLED TO JUDGMENT ON BLEAU'S CLAIMS FOR BREACH OF THE SEPARATION AGREEMENT**

Under the law of the case, any breach of the Separation Agreement by Greater Lynn must have occurred before April 11, 2001. *Docket No. 93, at 8.* Given Bleau's July 2, 2003 bankruptcy petition, Bleau is estopped from asserting any claim arising before the date of his bankruptcy filing. Accordingly, for the reasons discussed above, Bleau's claims for breach of the Separation Agreement should be dismissed. However, Bleau's claims are without merit for additional reasons.

A. **ALLEGED BREACH OF PARAGRAPH 2 OF SEPARATION AGREEMENT - FAILURE TO ISSUE LETTER.**

Paragraph 2 of the Separation Agreement provides in pertinent part as follows:

> Mr. Bleau shall be permitted to submit a letter of resignation, if he so chooses. The parties further agree that the Corporations shall issue a letter, in the form attached as Exhibit A, informing employees, consumers and friends of the Corporations that Mr. Bleau has resigned his employment with the Corporations to pursue others interests.

It is undisputed that no draft letter was attached at the time of signing and that Bleau was aware

16

of this when he signed the Agreement. *Undisputed Fact, ¶ 26; Cote Aff., ¶ 14; Bleau Dep., at 34-35.*

Bleau claims that, prior to signing the Agreement, Paul Cote and James Cowdell of Greater Lynn agreed that Greater Lynn would issue an extensive announcement outlining Bleau's accomplishments. *Bleau Depo., at 36, 74, 80-83.* Bleau states that the announcement would be at least two or three pages long and would include photographs. *Id. at 81.* Cote and Cowdell deny that any such agreement took place, and state that they agreed to send a letter out stating that he resigned to pursue other interests, as the written Agreement provides. *Cote Aff., ¶ 14; Cowdell Aff., ¶ 5.* While the parties disagree as to what was said during pre-execution discussions, such differences are immaterial as the Separation Agreement contains an integration clause, providing:

> The parties agree that this Settlement Agreement, with its attachments, is a fully integrated document and constitutes the entire agreement between them. The parties expressly disclaim reliance on any representation, written or oral, other than those contained in this document.

*Separation Agreement, ¶ 9.* At his deposition, Bleau acknowledged that he read both this provision and the Agreement before signing. *Bleau Depo., at 28, 90.* Also, by signing the Agreement, Bleau also acknowledged that he had "thoroughly reviewed all aspects of this Agreement" and that he had "read and fully understands all of the provisions of this Agreement and is voluntarily entering into this Agreement." *Id. at ¶ 10.* At his deposition, Bleau also acknowledged that he knew that no draft letter was attached *(Bleau Depo, at 34-35)*, that he knew the Agreement simply stated that the letter would state that he resigned to pursue other interests *(Id. at 35)*, and that he did not like the language concerning the letter and how the Agreement did not specify that the letter would list his accomplishments and contributions. *Id. at 85-86.*

17

Given that Bleau's breach of contract claim seeks to enforce an alleged agreement that is barred by the plain language of the Separation Agreement, Bleau's claim fails.[5] Bleau acknowledges that the written Separation Agreement conflicts with the alleged prior oral agreement. *Bleau Dep., at 85-86 ("I didn't like the language either because it isn't what we had agreed to in the prior meeting").*

Moreover, after the Separation Agreement was executed, Bleau continued to contact Greater Lynn employees and continued disparaging Greater Lynn and its employees. With respect to the letter to be sent out, Bleau made demands that the letter be quite lengthy and include a list of accomplishments. *Cowdell Aff., at ¶ 7.* He demanded that Greater Lynn send out a four page document and made clear he did not want Greater Lynn to send out a letter simply stating that he had resigned to pursue other interests. *Id.* Greater Lynn was never able to reach an agreement with Bleau as to the content of the letter, as Bleau's demands were not comparable to the Agreement's language that the letter state that he had resigned to pursue other interests. *Id.* Indeed, at his deposition, Bleau acknowledged that he would consider it a violation of the Agreement if Greater Lynn were to respond to an inquiry from a potential employer by stating the dates of employment and stating that he resigned to pursue other interests. *Bleau Dep., at 275-276.*

Given that Bleau is seeking to enforce an alleged "agreement" that contradicts the plain terms of the fully-integrated Separation Agreement and regards any letter complying with the written Separation Agreement as being in breach of the alleged verbal pre-signing agreement he

---

[5] The plaintiff's complaint does not assert a claim of rescission based on any claim of fraudulent inducement to enter the Separation Agreement. He also has never offered to return the over $100,000 in consideration he received as a result of entering into the Agreement. Moreover, even if his complaint is construed as asserting such a claim, such claim would be time-barred under M.G.L. c.    . This is because this suit was commenced on March 8, 2004 and the plaintiff has testified that he believed within days that Greater Lynn had not intended to comply with the agreement at the time of entering into it. *Bleau Depo. at 245-246, 257-258.*

18

is seeking to enforce, his claim must fail.

B. **ALLEGED BREACH OF PARAGRAPH 5C OF THE SEPARATION AGREEMENT - TUITION PAYMENTS.**

Paragraph 5C of the Separation Agreement provides as follows:

> For a period ending two years after execution of this Agreement, the Corporations [Greater Lynn and Eastern Mass.] will pay an amount for Mr. Bleau's enrollment in a program or course of training at an accredited college of Mr. Bleau's choice, or any training course leading to licensing or certification. The total amount to be paid pursuant to this paragraph shall not exceed $5,000 in each year (a total of up to $10,000). Payments made pursuant to this paragraph shall be made directly to the college and not to Mr. Bleau.

On October 25, 2005, the Court, Keeton, J., ruled that Bleau had materially breached the Separation Agreement on April 11, 2001, relieving Greater Lynn of any further obligations under it after that date. *Docket No. 93, at 8, 14-15.*[6] The Court also ruled that Greater Lynn was responsible, under Paragraph 5C of the Separation Agreement, for any qualified tuition payments up to $2,500 that Bleau incurred from November 2000 until April 11, 2001. *Docket No. 93, at 12.* The Court made clear that Greater Lynn was only responsible for tuition fees from an accredited college or any training course leading to licensing or certification and only for invoices previously submitted to Greater Lynn. *Id. at 13.* The Court then directed Bleau to submit to the Court "tuition invoices from any college that he attended between November 2000 and April 11, 2001." *Id. at 12.*

It is undisputed that Bleau never submitted any invoice to Greater Lynn for any course he took between November 2000 and April 11, 2001. It is also undisputed that Bleau never took

---

[6] In is undisputed that, on April 11, 2001, Bleau sent letters to each member of the Greater Lynn and Eastern Mass. Boards, accusing Greater Lynn of "illegally transferr[ing] over $600,000 from [Eastern Mass.] to pay [Greater Lynn] fringe costs," not hav[ing] the decency to talk to [the 17] employees [it fired]," acting in such a way that "John F. [Kennedy] is 'rolling in his grave'", and calling the new executive director the "least qualified" to hold such office. *Undisputed Fact, ¶ 41.* It is also undisputed that, on April 13, 2001, Bleau sent a copy of such letter to the heads of DMR and DMH, with a cover letter stating that "they have misdirected and misappropriated millions of dollars of corporate assets" and requesting that Greater Lynn be placed "into immediate receivership." *Undisputed Fact, ¶ 42.*

19

any course during this period and that his first course that he took after his departure from Greater Lynn was signed up for on April 12, 2001 and that he did not request payment for this until he sent a letter to Greater Lynn counsel on April 13, 2001, both after the material breach of the Separation Agreement. *Bleau Depo., at 96, 100-101, 267.*

Accordingly, consistent with this Court's October 25, 2005 Order *(Docket No. 93, at 12-13)*, judgment should enter for Greater Lynn on the plaintiff's claim of breach of Paragraph 5C of the Separation Agreement.

WHEREFORE, the defendant, Bridgewell, respectfully requests that this Court grant it summary judgment and dismiss the plaintiff's complaint.

Respectfully submitted:

The Defendant,
BRIDGEWELL, INC.,
by its attorneys,

*/s/ William T. Harrington*
William T. Harrington (BBO No 564445)
Glynn, Landry, Harrington, & Rice, LLP
10 Forbes Road, Suite 270
Braintree, MA 02184
(781) 356-1749

*/s/ Edward P. Harrington*
Edward P. Harrington (BBO No. 559482)
8 Winter Street, 12th Floor
Boston, MA 02108
(617) 423-5959

Dated: January 18, 2007

### CERTIFICATE OF SERVICE

I hereby certify that, on January 18, 2007, I filed this document with the Court electronically via the Court's CM/ECF system and that I served a copy of this documents upon each counsel and party who has appeared in the action but who has not signed up to receive electronic notice, serving a copy by first class mail.

*/s/ William T. Harrington*
William T. Harrington

20