May 2, 2000

Mr. Thomas Manning
Chairman, Board of Directors
Greater Lynn Mental Health and Retardation Association, Inc.
Lynn, MA

  Re: Greater Lynn Mental Health and Retardation Association, Inc.

Dear Mr. Manning:

  The Attorney General, upon review and discussion with various parties, has requested that Greater Lynn Mental Health and Retardation Association, Inc. (the Association), undertake an assessment of the Association's corporate governance. The Association has agreed to do so according to the terms set forth below. The Attorney General acknowledges that the Association and its Board of Directors (Board) has worked cooperatively with the Office of the Attorney General. The Attorney General further acknowledges that nothing contained in this letter constitutes an admission of liability by the Association or its Board.

  The Association hereby assures the Attorney General and agrees as follows:

  (1) The Association will appoint Robert J. Griffin, Esquire, of Krokidas and Bluestein, 141 Tremont Street, Boston, Massachusetts 02111 (Mr. Griffin), as a management advisor to the Association. Mr. Griffin will report to the Board and the Attorney General concerning the matters set forth below and such other matters as the Board or the Attorney General may determine. The Board will appoint Mr. Griffin as of May 5, 2000, and Mr. Griffin will serve for a period of three to six months as his duties may require. The Association agrees to defray the cost of Mr. Griffin's services, including any reasonable expenses that he may incur in the performance of his duties, according to the budget that Mr. Griffin submits to the Board by May 2, 2000, for the Board's review and approval.

1

(2)    The Board and the Attorney General agree that Mr. Griffin will review, consider, and report to the Board and the Attorney General concerning the following matters:

(a) the Association's management and financial operations, including the dependence of its program activities on the Association's affiliate, Eastern Massachusetts Housing Corporation, Inc. (EMHC);

(b) the Association's short and long term financial situation, including its investments;

(c) the Association's management structure and administrative practices;

(d) the Association's staffing and employment practices, including employee benefit plans;

(e) the Association's accounting procedures and spending practices, including the books and records of EMHC to the extent that they are available to the Association; and,

(f) the Association's and EMHC's current and future corporate relationships.

(3)    The Board agrees that it will meet at least once per month during the term of this agreement as the Board provides (for regular meetings) or upon the call of the president (for special meetings) in accordance with the Association's by-laws. The clerk of the Board will provide the same notice to Mr. Griffin of each meeting of the Board, whether regular or special, that the members of the Board receive. The Board and the Attorney General anticipate that Mr. Griffin will attend each Board meeting, and he will be consulted with respect to the scheduling of each such meeting. Mr. Griffin will report to the Board and the Attorney General concerning the following matters:

(a) improvements in the Association's corporate governance practices with respect to the Board's composition, the number of Board members, their qualifications and responsibilities, and their tenure; and,

(b) the responsibilities and compositions of committees of the Board.

The Board and the Attorney General agree that the focus of Mr. Griffin's efforts with respect to the Association's corporate governance is upon the Board's ability to discharge its fiduciary duty to oversee and manage the Association's charitable activities. The Attorney General further acknowledges the importance to the Association's charitable activities of community representation through Board membership.

(4) Mr. Griffin will provide monthly reports on the Association's activities to the Attorney General, to the Board, and to the Association's funding agencies, the Department of Mental Health and the Department of Mental Retardation.

(5) All members, officers and directors, and senior management staff of the Association shall cooperate fully with Mr. Griffin in fulfilling his obligations hereunder, including without limitation providing Mr. Griffin with files, documents and other information that Mr. Griffin may determine to be necessary to fulfill his obligations hereunder, including without limitation, to evaluate the effective provision by the Association of client programs and services.

(6) The Board and the Attorney General agree that, upon their receipt of Mr. Griffin's final report (which the parties anticipate that Mr. Griffin will provide within thirty days of the completion of his review, they will, if either party then suggests the need to do so, commence negotiations in good faith to achieve a further written agreement implementing Mr. Griffin's recommendations.

(7) The Association undertakes at its expense to provide to Mr. Griffin coverage as an additional insured under the Association's directors' and officers' liability insurance policy on the same terms and in amounts equal to those that the Association provides for members of the Board. The Association will also negotiate a mutually acceptable indemnification provision with Mr. Griffin as part of his management advisory contract with the Association.

(8) During the term of this agreement, should the Association through its Board of Directors seek to terminate or alter the duties of a member of senior management, the Board will provide thirty days written notice to Mr. Griffin prior to its taking such action. The Attorney General acknowledges that the Board retains the legal authority to employ and terminate employees of and consultants to the Association.

(9) Any material default of any agreements between the Association and bondholders of the Association that remains uncured, as set forth in the bond documents, constitutes a default hereunder.

(10) The Association understands that this agreement does not exempt the Association from future changes, if any, in Department of the Attorney General's regulatory or reporting requirements or other changes of law that impose additional or stronger requirements to which the Association would otherwise be subject.

(11) The provisions of this Agreement are specifically enforceable by the Attorney General.

(12)    The Association agrees that the Attorney General may make this agreement public in its entirety.

Very truly yours,

THOMAS REILLY
ATTORNEY GENERAL

by: *Jamie Katz*

Jamie Katz
Assistant Attorney General
Chief, Division of Public Charities
Public Protection Bureau
(617) 727-2200

AGREED:

Greater Lynn Mental Health and Retardation Association, Inc.

By: *Thomas R. Manning*    DATE: 5/5, 2000
Thomas Manning
Chairman, Board Of Directors
Greater Lynn Mental Health and Retardation Association, Inc.

Pursuant to a vote of the Board of Directors on 5/2 2000

4