UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                                    )
ALBERT WILLIAM BLEAU, JR.,              )
            Plaintiff                                        )
                                                                    )   CIVIL ACTION
v.                                                              )   NO. 04-10469-WGY
                                                                    )
BRIDGEWELL, INC., et al,                        )
            Defendants                                   )
_____)

**AFFIDAVIT OF PAUL J. COTE, JR.
IN SUPPORT OF DEFENDANT BRIDGEWELL'S
MOTION FOR SUMMARY JUDGMENT**

I, Paul J. Cote, Jr., hereby depose and state as follows:

1. I make this affidavit on my own personal knowledge, except where otherwise indicated.

2. I am currently the Commissioner of the Massachusetts Department of Public Health, having served in that position since approximately October 2005. Immediately prior to that, I was Commissioner of the Massachusetts Division of Health Care Financial and Policy.

3. In about July 2000, I became the interim executive director of the Greater Lynn Mental Health and Retardation Association ("Greater Lynn"). I served as interim director until I became executive director in about December 2000. I served in that capacity until about August 2003.

4. At the beginning of my tenure, Greater Lynn was in financial difficulties and the Public Charities Division ("Public Charities Division") of the Massachusetts Attorney General's Office was investigating Greater Lynn, and threatening to place it into receivership.

5. Also, pursuant to a May 2000 agreement with the Attorney General's Office, Greater Lynn had retained a management advisor, Robert Griffin, who was to oversee Greater

Lynn and report back to the Attorney General's Office.

6. In October 2000, Griffin submitted a report to the Attorney General's Office that was critical of Albert Bleau's leadership at Greater Lynn and the Greater Lynn Board's lack of oversight. At the time, Bleau had already been terminated from Greater Lynn. Griffin recommended, *inter alia*, that the Eastern Massachusetts Housing Corporation ("Eastern Mass.") be merged into Greater Lynn. A true and accurate copy of the Griffin Report is attached hereto as Exhibit A.

7. The Griffin Report indicates that copies of it were sent to Margaret Chow Menzer and Marianne Greeno. At the time, Margaret Chow Menzer was the legal counsel for the Massachusetts Department of Mental Retardation ("DMR") and Marianne Greeno was the legal counsel for the Massachusetts Department of Mental Health ("DMH"). As far as I know, the Griffin Report is a public record accessible by the general public upon request.

8. Eastern Mass. was a company that owned the real estate that Greater Lynn used and did not have any employees of its own, except Bleau, who was its executive director. During the time that Bleau was on leave from Greater Lynn, Bleau's became more involved in Eastern Mass. Unlike the Greater Lynn Board, the Eastern Mass. Board was not cooperating with the Attorney General's Office. Because of Bleau's continued and increasing involvement in Eastern Mass., the relationship between the two companies began to suffer.

9. On October 6, 2000, following his termination, effective September 8, 2000, Bleau filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that Greater Lynn had wrongfully discriminated against him on the basis of his general, age, and disability when it terminated him. A true and accurate copy of his EEOC complaint is attached hereto as Exhibit B.

10. Around this time, Bleau also filed a complaint against Greater Lynn with the Fair Labor and Business Practices Division of the Massachusetts Attorney General's Office.

11. Soon thereafter, Greater Lynn decided to renew negotiations with Bleau to secure his separation from Eastern Mass. and to resolve any and all disputes between Bleau and Greater Lynn and Eastern Mass.

12. James Cowdell and I conducted the negotiations with Bleau. At the time, Cowdell was the Chief Administrative Officer for Greater Lynn.

13. On November 6, 2000, Cowdell and I presented the Separation Agreement and General Release (the "Separation Agreement") to Bleau for signature.

14. Through oversight, the Separation Agreement that we presented to Bleau for his signature referenced a letter attached as Exhibit A that would state that he resigned to pursue other interests. No letter was drafted or brought to the signing. It was agreed that in the near future a letter would be prepared stating simply that Mr. Bleau had left the Agency to pursue other interests. The letter would be non-specific regarding reasons for the departure. Mr. Bleau understood that no draft letter was attached. At no point did we agree to send out a lengthy announcement listing Bleau's accomplishments. In fact, we made clear that we would not.

15. At no point after the Separation Agreement did I disparage Bleau nor do I have any knowledge of anyone at Greater Lynn disparaging him. Aside from providing copies of the Griffin Report to the Board of Directors, I am not aware of anyone from Greater Lynn distributing the Griffin Report to anyone. The financial difficulties that were caused by Bleau and the ensuing investigation of Greater Lynn by the Attorney General's Office were not things that Greater Lynn wanted publicized.

16. To my knowledge, no prospective employer ever inquired about Bleau.

3

17.  On one or two occasions, a reporter from a local newspaper inquired of me about Bleau's departure. I informed the reporter that Bleau had resigned to pursue other interests and would not provide any further comment.

18.  I was not involved in the process to select my successor in late 2003.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 17th DAY OF JANUARY, 2007.

_____
Paul J. Cote, Jr.

CERTIFICATE OF SERVICE

      I hereby certify that, on January 18, 2007, I filed this document with the Court electronically via the Court's CM/ECF system and that I served a copy of this documents upon each counsel and party who has appeared in the action but who has not signed up to receive electronic notice, serving a copy by first class mail.

                                                          */s/ William T. Harrington*
                                                          William T. Harrington