UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ALBERT WILLIAM BLEAU, JR., )<br>　　　　Plaintiff　　　　　　　　　 )<br>　　　　　　　　　　　　　　　　　 )<br>v.　　　　　　　　　　　　　　　　 )<br>　　　　　　　　　　　　　　　　　 )<br>BRIDGEWELL, INC., et al,　　　　 )<br>　　　　Defendants　　　　　　　　 )<br>　　　　　　　　　　　　　　　　　 ) | CIVIL ACTION<br>NO. 04-10469-WGY |

**AFFIDAVIT OF JAMES COWDELL
IN SUPPORT OF DEFENDANT BRIDGEWELL'S
MOTION FOR SUMMARY JUDGMENT**

I, James Cowdell, hereby depose and state as follows:

1.　I make this affidavit on my own personal knowledge, except where otherwise indicated.

2.　From December 1994 until about October 2000, I was a fund developer for the Greater Lynn Mental Health and Retardation Association ("Greater Lynn"). From October 2000 to about August 2004, I was the Chief Administrative Officer ("CAO") for Greater Lynn. As CAO, my duties included supervising the Human Resources, Training, Quality Assurance Departments . When Paul J. Cote, Jr. ("Cote") left his position as Executive Director in the summer of 2003, I also served as the acting Executive Director to about February 2004 until his replacement, Robert Stearns, was hired as Chief Executive Officer. In about August 2004, my title was changed to Chief Operating Officer ("COO"). As COO, I had my previous duties, but also was in charge of the Marketing, Maintenance and IT departments. Greater Lynn changed its name to Bridgewell, Inc. ("Bridgewell"), effective September 7, 2005. I retired from Bridgewell/Greater Lynn in September 2006.

3.　In October and November 2000, I, along with acting Executive Director Cote

negotiated a separation agreement with Albert Bleau ("Bleau").

4. On November 6, 2000, I presented the Separation Agreement and General Release (the "Separation Agreement") to Bleau for signature. I had previously met with Bleau and had several telephone conversations with him about the agreement.

5. Through oversight, the Separation Agreement that was presented to Bleau for his signature referenced a letter attached as Exhibit A that would state that he resigned to pursue other interests. No letter was drafted or brought to the signing. It was agreed that in the near future a letter would be prepared stating simply that Mr. Bleau had left the Agency to pursue other interests. The letter would be non-specific regarding reasons for the departure. Mr. Bleau understood that no draft letter was attached. Shortly after the severance agreement was signed, Mr. Bleau requested that Greater Lynn make a lengthy announcement in its newsletter outlining his accomplishments. Both Cote and I rejected this demand. At no point did we agree to send out a lengthy announcement listing Bleau's accomplishments. In fact, we made clear that we would not. We told him that we would send out a letter that would announce that he had resigned to pursue other interests as we had agreed to.

6. We had hoped that the signing of the Separation Agreement would end our relationship with Bleau. However, within days of signing the Agreement, Bleau was repeatedly calling me and making demands and accusations. On November 16, 2000, I sent him a letter telling him that all further contact with Greater Lynn should me made to our attorney, Laurence Donoghue of Morgan Brown & Joy in Boston. Despite this, Bleau continued to contact me. He repeatedly demanded that Greater Lynn send out a multi-page announcement setting forth Bleau's accomplishments at Greater Lynn.

7. Sometime in late November or December 2000, Bleau provided me a document

2

either identical or substantially similar to the one attached hereto as <u>Exhibit A</u>. He demanded that Greater Lynn send it out to our newsletter list, local newspapers, and elected officials. He made clear that he did not want the document to be changed. I informed him that Greater Lynn would send out a brief letter stating that he resigned to pursue other interests. He complained, and made clear that he did not want such a letter to be sent out.

8. We were never able to reach a resolution, as Bleau made clear that he did not want Greater Lynn to send out a letter stating that he resigned to pursue other interests, and insisted that the announcement promote him and list, in multiple pages, his accomplishments at Greater Lynn.

9. In early 2001, Greater Lynn learned that Bleau had sent out letters to 17 terminated Greater Lynn employees in early 2001, disparaging Greater Lynn and recommending to the former employees to file complaints against Greater Lynn with the Massachusetts Attorney General's Office. A true and accurate copy of the letter is attached hereto as <u>Exhibit B</u>. In April 2001, Greater Lynn learned that Bleau had sent a letter to the members of the Boards of both Greater Lynn and Eastern Mass. making various disparaging remarks about Greater Lynn management. A true and accurate copy of the April 11, 2001 letter to Board members is attached hereto as <u>Exhibit C</u>. On April 13, 2001, Bleau also sent letters to the commissioner of both the DMR and DMH requesting, among other things, that Greater Lynn be placed immediately into receivership. True and accurate copies of the April 13, 2001 letters are attached at <u>Exhibit D</u>.

10. At no point after the Separation Agreement did I disparage Bleau nor do I have any knowledge of anyone at Greater Lynn disparaging him after the Separation Agreement. Aside from providing copies of the Griffin Report to the Board of Directors, I am not aware of

3

anyone from Greater Lynn distributing the Griffin Report to anyone. The financial difficulties that were caused by Bleau and the ensuing investigation of Greater Lynn by the Attorney General's Office were not things that Greater Lynn wanted publicized.

11. To my knowledge, no prospective employer ever inquired about Bleau.

12. At no point after the Separation Agreement did any reporter from any newspaper ever inquire to me about Bleau.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 18th DAY OF JANUARY, 2007.

_____
James Cowdell

4

CERTIFICATE OF SERVICE

      I hereby certify that, on January 18, 2007, I filed this document with the Court electronically via the Court's CM/ECF system and that I served a copy of this documents upon each counsel and party who has appeared in the action but who has not signed up to receive electronic notice, serving a copy by first class mail.

                                                                      */s/ William T. Harrington*
                                                                      William T. Harrington