UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Albert William Bleau Jr.                          :

    Plaintiff                                    :

                                                 :

vs.                                               :    Civil Action
                                                      No. 04 – 10469REK
                                                 :

Greater Lynn Mental Health                        :
& Retardation Association, et al,


### AFFIDAVIT OF MARTENA C. FALLON

My name is Martena Fallon

I live at 75 Fox Hill Road, Nahant, MA 01908

I am over 18 years of age.

I hereby depose and swear as follows:


### EASTERN MASS HOUSING CORPORATION (EMHC)

That I was the Clerk of EMHC for several years prior to GLMH&RA's asset takeover and that I never resigned, nor was I ever replaced by the legally-established EMHC Board of Directors and it is my belief that I am still the Clerk of EMHC.

I have never signed or executed any documents to dissolve the EMHC Corporation; nor was I ever present at any meeting nor did I take any minutes of any meeting in which changes were made of the composition or makeup of the membership of the Board of Directors of EMHC nor have I ever signed any documents that refer to any of these matters.

That Albert Bleau was the Executive Director of EMHC from February 1978 to November 8, 2000.

That under his leadership and the board, EMHC grew from zero assets and no real estate assets to over twenty million dollars in assets with over seventy residential and commercial properties.

That Albert Bleau consistently performed his responsibilities as Executive Director with competence and distinction and I believe that Mr. Bleau is an extremely rare individual with outstanding abilities which would be hard to replace, and that EMHC's financial growth was possible only because Mr. Bleau's dedication to the corporate mandate, his incredible abilities and his overwhelming compassion for physically and mentally challenged citizens and his dedication to making their lives more complete and fulfilling.

That to my knowledge, EMHC had more than one and a half million dollars in cash assets on November 8, 2000 and EMHC finished every year since 1978 with a cash surplus and an increase in assets.

That on August 13, 2000, the EMHC board voted five to one to have Albert Bleau take over full management of EMHC and it voted to terminate the management contract with GLMHRA.

That the then Executive Director of GLMHRA, Paul Cote, ordered that EMHC Clerk, Martena Fallon, at the April 2001 board meeting not to take minutes of that meeting as the Board was being dissolved immediately pursuant to vote by the GLMH&RA Board and that Mr. Bleau would be indicted through the Attorney General's Office very shortly for violations of ERISA laws and other laws, that Mr. Bleau will be prosecuted, that the EFIP plan was illegal and for that reason GLMH&RA was transferring all assets from the EFIP Plan into the General Account; he alleged that members of our Board may be party to EFIP fraud.

That Paul Cote told EMHC board members at the April 2001 board meeting that the EMHC board was no longer needed and that GLMHRA was taking over EMHC.

That the EMHC board did not appoint GLMHRA Executive Director, Paul Cote, Executive Director of EMHC.

That EMHC voted at their August 13, 2000 board meeting to end the management contract with GLMHRA and to have Executive Director, Albert Bleau to take over full management of EMHC. EMHC requested a transfer of all its records and funds from GLMH&FA custody and GLMH&RA either failed or refused to hand over the assets and documentation.

That GLMHRA refused to turn over financial records, the bank accounts and funds owed to EMHC and as a result EMHC had limited funds and records to hire counsel or to take over full management of the corporation.

That EMHC did not vote to dissolve the EMHC corporation nor to turn over its assets to GLMHRA.

Mr. Robert Tucker, as officer of GLMH&RA, advised me that they needed the assets of EMHC and the EFIP Plan in order to satisfy the financial requirements of the Attorney General, failing which the Attorney General would take GLMH&RA into receivership because of the tremendous debt incurred from the "takeover" efforts of Attys. MacLeish and Sherman, Tom Manning, Claire Jackson and Robert Tucker..

### EMHC AUDIT

That Demakis and Demakis have been the EMHC auditors since its inception in 1978. The EMHC audit was always mailed to the board and me in draft form in September and in final form in October of each year by GLMHRA.

That I did not receive the EMHC audit dated September 25, 2000 prior to the signing of the Severance Agreement on November 8, 2000.

That I did not know that it was based on auditor Mecone and Sanella's analysis that required EMHC to pay over one million three hundred thousand dollars to GLMHRA for recreational and vacation services provided by EMHC to GLMHRA employees and its clients and families.

During no fewer than two joint financial meetings between EMHC and GLMH&RA, I emphatically and specifically asked Mr. James Mecone, auditor, to state for the record whether the audits excluded any money from either corporation. On each occasion Mr. Mecone stated to everyone present that his audits included all funds and that we could be assured that no funds were excluded. The reason I asked this was my concern for the source of funds from which EMHC was purchasing real estate. We made decisions based on Mr. Mecone's financial records only to find out during 2000 that Mr. Mecone failed to disclose the EFIP Plan's assets, under-reporting to both boards at least $800,000 in assets.

That I did not receive the October 8, 2000 Attorney Robert Griffin report that erroneously alleged that EMHC was not an independent corporation and recommended that GLMHRA should appoint its own board and take over the EMHC corporation. I was also unaware at that time that Attorney Robert Griffin was an attorney for May Institute, a competitor of EMHC and had I been aware of that fact I would have challenged his involvement in the instant matter for his

being in a position of conflict which would benefit May Institute to the detriment of GLMH&RA.

That had I received the Demakis September 25, 2000 audit and the October 8, 2000 Griffin Report, and had we been advised of Atty. Griffin's conflict position, I would have supported a recommendation from Mr. Bleau to continue with the complete take over of the financial and program management of EMHC from GLMHRA with Mr. Bleau as its full time Executive Director and I would have had justifiable cause to rally the other members of the EMHC Board for more enthusiastic support.

As both a board member and a licensed MA real estate broker, I was in the midst of a transaction that would have yielded a sale price well between $1.2M to $2M for the Marquis Resort. I did not know that GLMHRA, once taking control of the EMHC, sold the Marquis Resort, a manager's house and a commercial half acre lot in Tilton, NH for $800,000 without any approval of the EMHC Board of Directors and without the legal clerk's certifications. This sale price was approximately four hundred to nine hundred thousand dollars less than what we were advised that we would receive once the condo conversion was complete and three hundred thousand dollars less than the market value reported to the EMHC board and me by our real estate company in NH if it were sold as is without the condo conversion.

That the Marquis Resort had already received Tilton Planning Board and Zoning Board approvals for its condo conversion and the documents required by the New Hampshire Attorney General's Office were nearly completed by EMHC's New Hampshire attorney.

That I did not know, until recently, that the proceeds of the $800,000 received by GLMHRA from the sale of the Marquis Resort and the proceeds from the prior sale of an EMHC waterfront property in Tilton, NH that sold for $247,000 were used to pay for costs incurred for GLMHRA legal, consultant and administrative costs for the MacLeish/Sherman-orchestrated takeover of GLMH&RA; which costs I consistently refused to honor as agency expenses during EMHC board meetings .

That the initial EFIP Plan included an agreement between GLMH&RA, EMHC and all contributing member employees which required that all funds from the mortgages on the Marquis Resort and the waterfront property and other mortgages on EMHC property held by the GLMHRA Employee Fringe Incentive Program (EFIP), once paid off, would be returned to the EFIP program for the benefit of GLMHRA employees and used for retirement benefits, health benefits not covered by the medical plan, educational benefits, and for employee incentives such as vacation benefits because all the funds in the EFIP Plan

4

belonged to the employees only and that neither EMHC nor GLMH&RA had any claim to the money because employee money funded the EFIP Plan.

Because of financial ineptness of the GLMH&RA Board of Directors and Administration, EMHC was obligated to sell at a price significantly below project market value a multi-unit property located on Breed Street, Lynn which property had great potential to service the GLMH&RA programs as well as generating significant assets with an appreciating real estate market. Sale proceeds were apparently used by GLMH&RA to offset costs incurred as a direct result of certain ambitious individuals who participated in actions which would yield them the position of Executive Director of GLMH&RA and EMHC. The proceeds of the sale belonged to the employees and not either of the agencies.

After April 2001, the GLMH&RA Board of Directors mailed me a token gift which apparently acknowledged the termination of my services on the EMHC Board, which gift was returned to them as I had not resigned my position on that Board.

### SEVERANCE AGREEMENT

That the EMHC board signed and voted to approve the Severance Agreement of November 8, 2000 with Executive Director, Albert Bleau. We approved the Agreement after being assured by GLMHRA Executive Director, Paul Cote that all provisions of the Agreement including the "letter" required in the Agreement had been finalized.

That I did not know that GLMHRA had sent a letter to Executive Director, Albert Bleau on November 14, 2000 instructing him that all provisions of the Agreement had been met, and that Mr. Bleau should only communicate with GLMHRA attorney Laurence Donoghue concerning any complaints or concerns about the Agreement.

That Executive Director, Paul Cote, did not inform me of the November 14, 2000 letter from GLMHRA or that Mr. Bleau had complained, after the signing of the Agreement, that GLMHRA senior and other staff, especially Elaine White, were engaged in the defamation of Mr. Bleau in violation of the Agreement.

### DEFAMATION & DISPARAGING REMARKS

That I have personal information concerning the defamation of Albert Bleau before and after November 8, 2000.

That during the spring of 2001 Paul Cote stated the following concerning Albert Bleau: that the Attorney General of Massachusetts demanded the termination of

Mr. Bleau's positions with GLMH&RA as well as EMHC because he had mismanaged the corporations, violated ERISA laws, absconded with corporate funds and that just as soon as his resignation was final that he would be indicted by the Attorney General's office. Mr. Tucker and Mr. Cowdell made the same allegations adding that unless I, as Clerk, signed certain documents that the AG would put both corporations into receivership that very day.

That the MA DMR and DMH had ordered that no further funding would be forthcoming to GLMH&RA until Mr. Bleau's services were terminated.

That GLMH&RA programs as initiated by Mr. Bleau's initiative which provided for vacation time, recreational activities, insurance benefits were all illegal and were being terminated immediately. Mr. Tucker and Mr. Cowdell made the same allegations.

I consulted over the internet with an Erisa attorney who advised that he had represented clients in similar situations as those being experienced by the GLMH&RA Board, EMHC Board and Mr. Bleau. This attorney advised that there were no Erisa violations as were being alleged by Attys. MacLeish and Sherman, by Mr. Tucker, by Mr. Manning, etc. and I forwarded all information to Mr. Tucker for his investigation. Mr. Tucker failed to consider this information but continued on with the assaults against Mr. Bleau.

## AMERICANS WITH DISABILITIES ACT

That I learned that Albert Bleau had applied for the GLMHRA Executive Director's position that was advertised in the spring of 2004 to replace the outgoing Executive Director, Paul Cote.

That I was informed .that he was not interviewed, hired or considered for the position because the Attorney General would not allow Mr. Bleau to hold this position or any similar position in the Commonwealth of Massachusetts because he was going to be indicted for alleged criminal actions against the Commonwealth.

That I was told or given information about Albert Bleau's medical condition or files by Nancy Rizzo and Robert Tucker on or about the summer of 2001 including statements concerning allegations of drug addiction, alcoholism and or mental instability. I understood from them that Mr. Bleau was being tested for alleged drug use.

I certify that the and above statements are true. I sign this document under the pains and penalties of perjury.

Date: /b/. 30 2006


Signature of Affiant

Martena C. Fallon
75 Fox Hill Road
Nahant, MA 01908

ESSEX COMMONWEALTH OF MASSACHUSETTS
_____, County, S.S.            Nov 30, 2006
On this 30 day of November, 2006
before me, the undersigned notary public, personally appeared
Martena Fallon, proved to me through satisfactory
evidence of identification, which were FL DL
(I.D.) to be the person(s) whose name(s) is/are signed on the preceding
or attached document and acknowledged to me that he/she/they signed
it voluntarily for its stated purpose, and who swore or affirmed to me that
the contents of the documen. are truthful and accurate to the best of
his/her/their knowledge and belief in my presence.
Isabella Cientanni
Expiration Date: Aug 2, 2013

ISABELLA CIENTANNI
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
August 2, 2013